## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOYCE BEATTY,<br><br>                *Plaintiff,*<br>   v.<br><br>DONALD J. TRUMP *et al.*,<br><br>                *Defendants.* | No. 25-CV-4480 (CRC)<br><br>**FIRST AMENDED COMPLAINT** |

### INTRODUCTION

1.     This is a lawsuit to protect and preserve the John F. Kennedy Center for the Performing Arts ("the Kennedy Center"), which Congress designated as a living memorial to President Kennedy.  Defendants have unlawfully renamed the Kennedy Center for President Donald Trump, will illegally shutter the Kennedy Center starting July 2026, and have announced plans to demolish the building around the same time.

2.     Shortly after President Kennedy's assassination, Congress designated the Kennedy Center as the sole national memorial to the late President within the nation's capital.  By law, the Kennedy Center serves as "a living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h.  But on December 18, 2025—in scenes more reminiscent of authoritarian regimes than the American republic—the sitting President and his handpicked loyalists voted at a meeting of the Kennedy Center's Board to rename this storied center after President Trump.  Plaintiff Congresswoman Joyce Beatty serves on that Board by virtue of her position in Congress.  When she tried to object to the unlawful renaming, she was repeatedly muted and prevented from speaking.

3.     The next day, workers installed Donald Trump's name above President Kennedy's on the exterior of the building, and ever since, the Kennedy Center has branded itself "The Trump

Kennedy Center."  This is a flagrant violation of the rule of law, and it flies in the face of our constitutional order.  Congress has named the center as "the John F. Kennedy Center for the Performing Arts" by statute.  Under our constitutional system, only Congress can modify a statute, and Congress must do so *by enacting a new statute*.  Congress has not changed the Kennedy Center's name.  Defendants are willfully flouting the law and marring this important national institution to satisfy President Trump's vanity.

4.      As a direct result of the unlawful renaming, patrons fled and artists canceled their performances in protest.  On February 1, 2026, after weeks of bad press and mounting criticism, President Trump abruptly announced on Truth Social that he had decided to close the Kennedy Center for approximately two years, starting July 2026.  The timing alone suggests that decision is meant to hide how this once great institution is failing as a direct result of President Trump's unlawful effort to rename the Kennedy Center for himself.

5.      President Trump's stated purpose for the two-year closure is to engage in "Construction, Revitalization, and Complete Rebuilding."  In subsequent remarks, President Trump said this complete rebuilding project will involve "using the steel" and "some of the marble" from the existing structure, and that the building will be "brand new."  In short, President Trump's own words indicate that he is planning to demolish the existing Kennedy Center building.

6.      To state the obvious, Congress has not authorized either closing the Center or conducting a "complete rebuilding."  Meanwhile, despite President Trump's claim that his plans are "totally subject to Board approval," he announced the Center's "rebuilding" and its two-year closure without consulting the Board or providing it any materials.  Nor have the appropriate regulatory entities, such as the National Capital Planning Commission, been consulted.  In email

communication to patrons, the Kennedy Center has nevertheless told the public it *will* close starting July 7, 2026—without having procured any of the necessary legal authorizations.

7.      This all fits a disturbing pattern.  Just a few months ago, President Trump bulldozed the historic East Wing of the White House, without authorization and after misleading the American public about his intentions.  It appears that President Trump and his allies are about to attempt the same thing with the Kennedy Center.

8.      Make no mistake: Defendants do not have authority to close the Center for two years—let alone demolish it—without congressional authorization at the minimum.  The Board is charged with maintaining a "living memorial" to President John F. Kennedy.  Closing the Center will violate that fundamental statutory mandate and is directly contrary to law.   20 U.S.C. § 76h. Meanwhile, by statute, the Board "shall" perform certain functions.  20 U.S.C. § 76j(a)(1).  For example, it must "present classical and contemporary music, opera, drama, dance, and other performing arts from the United States and other countries"; serve as a leader in "arts education and policy"; that it shall conduct "national and community outreach"; and provide facilities for "other civil activities."  *Id*.  Once the Center closes, however, the Board will cease performing those functions, once again violating the plain language of the statute that Congress enacted.

9.      At every step of the way, Defendants have behaved as if the law does not apply to them.  But it does.  This Court's intervention is urgently needed.  The unlawful renaming is causing on-going severe harm to the Kennedy Center.  The new plan to close and "completely rebuild" the center in July 2026 threatens to be the final nail in the coffin.  Plaintiff seeks a judgment declaring Defendants' actions unlawful, an injunction ordering Defendants to remove the signage purporting to rename the Kennedy Center after President Trump, an injunction ordering Defendants to provide

Plaintiff information and full participation in the oversight of the Kennedy Center, and an injunction preventing the unlawful shutdown and destruction of the Kennedy Center.

### JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.  The Court has authority to issue a writ of mandamus under 28 U.S.C. § 1361.

11.    This suit is not being brought collusively to confer jurisdiction that the Court would otherwise lack.[1]

12.    Venue is proper in this district under 28 U.S.C § 1391 because one or more Defendants reside in the District of Columbia, because a substantial part of the events occurred in the District of Columbia, and because a substantial part of property that is the subject of the action—the Kennedy Center—is situated in the District of Columbia.

### PARTIES

13.    Plaintiff Congresswoman Joyce Beatty is a member of the House of Representatives from Ohio's third congressional district.  By statute, she serves as an ex officio trustee of the Kennedy Center by virtue of her position in Congress with the full powers and obligations of a trustee.

14.    Plaintiff's standing in this action is based on her capacity as a co-trustee of the Kennedy Center (and if necessary, derivatively on behalf of the Board and the Center).  As a trustee, she has the right to sue to enforce the terms of the trust against her co-trustees.  Defendants' actions directly harm Plaintiff because they prevent her from fulfilling her statutory duties to maintain the Center as a living memorial to John F. Kennedy; she has been denied access to

---

[1] Federal Rule of Civil Procedure 23.1 does not apply to this action, but the First Amended Complaint includes this and other allegations to comply with Rule 23.1 out of an abundance of caution.

information necessary to perform her fiduciary duties; and she has been prevented from participating and voting at meetings. Defendants' actions also directly harm the Center which—as a trustee—Plaintiff is charged with protecting.

15.    Defendants Donald J. Trump, Jennifer Fischer, Sergio Gor, John Falconetti, Brian D. Ballard, Maria Bartiromo, Pamela Bondi, Mary Helen Bowers, Hannah F. Buchan, Robert Castellani, Elaine Chao, Pamella Roland DeVos, Patricia Duggan, Emilia May Fanjul, Lynette Friess, Pamela Gross, Lee Greenwood, Kate Adamson Haselwood, Laura Ingraham, Michele Kessler, Dana Kraft, Mindy Levine, Lynda Lomangino, Barbara Long, Allison Lutnick, Douglas Manchester, Catherine B. Reynolds, Denise Saul, Dan Scavino, Cheri Summerall, Usha Vance, Susie Wiles, Andrea Wynn, Paolo Zampolli, Robert F. Kennedy, Jr., Marco Rubio, Linda McMahon, Mike Johnson, Sam Graves, Julia Letlow, Mike McCaul, John Thune, Shelley Moore Capito, and Susan Collins serve as trustees of the John F. Kennedy Center for the Performing Arts, either by appointment of the President or ex officio, and are sued in that capacity.

16.    Defendant Richard Grenell serves as President of the John F. Kennedy Center for the Performing Arts.

17.    Defendant Trustees of the John F. Kennedy Center for the Performing Arts is the body established by statute that manages Defendant John F. Kennedy Center for the Performing Arts.

## LEGAL BACKGROUND

18.    In 1958, Congress established the National Cultural Center. In 1964—approximately two months after President Kennedy's assassination—President Johnson signed a law renaming the National Cultural Center after the late President Kennedy. *See* Joint Resolution Providing for Renaming the National Cultural Center as the John F. Kennedy Center for

Performing Arts, Pub. L. No. 88-260, 78 Stat. 4 (Jan. 23, 1964) ("Joint Resolution").  As Congress explained, it was fitting to name the institution after President Kennedy, who had been "particularly devoted to the advancement of the performing arts within the United States." *Id.*

19.    Today, according to the statutes Congress has enacted, there "is established in the Smithsonian Institution a bureau, which shall be directed by a board to be known as the Trustees of the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76h.  The trustees' duty "shall be to maintain and administer the John F. Kennedy Center for the Performing Arts" as "a living memorial to John Fitzgerald Kennedy." *Id.* § 76h; *see also id.* § 76i(a) (providing that the Board shall construct "a building to be designated as the John F. Kennedy Center for the Performing Arts"); Joint Resolution § 2 (providing that "any designation or reference to the National Cultural Center" means the "John F. Kennedy Center for the Performing Arts").

20.    Congress has declared that the "John F. Kennedy Center for the Performing Arts" "shall be the sole national memorial to the late John Fitzgerald Kennedy within the city of Washington and its environs."  20 U.S.C. § 76q.  And Congress was crystal clear that the center should honor President Kennedy alone.  By law, "the Board shall assure that after December 2, 1983, no additional memorials or plaques in the nature of memorials shall be designated or installed in the public areas of the John F. Kennedy Center for the Performing Arts." *Id.* § 76j(b)(1).  The only permissible exceptions are for "any plaque acknowledging a gift from a foreign country; any plaque on a theater chair or a theater box acknowledging the gift of such chair or box; and any inscription . . . acknowledging a major contribution." *Id.* § 76j(b)(2).  And notably, when Congress authorized changes to the building in 2012, Congress further specified that the Board could not acknowledge private donors anywhere "on the exterior of the project." *Id.* § 76i(c)(3).  Indeed, even members of Congress who support President Trump recognize that

changing the name requires congressional approval, which is why one of them introduced legislation in July 2025 to do just that. *See* Neda Ulaby, *Will the Kennedy Center Become the Donald J. Trump Center for the Performing Arts?,* NPR (July 29, 2025), https://www.npr.org/2025/07/29/nx-s1-5483848/kennedy-center-trump. To be clear: That legislation has gone nowhere, and the Center remains named—by law—for President Kennedy.

21.     The Kennedy Center's Board is comprised of a combination of ex officio trustees and general trustees, appointed by the President for a term of six years. *See* 20 U.S.C. § 76h(a)-(b). The law does not distinguish between the ex officio trustees and general trustees, and the former possess the same rights and responsibilities as the latter. By statute, Congress charged the entire Board with "all the usual *powers and obligations* of a trustee in respect of all trust funds administered by it." *Id*. § 76*l* (emphasis added).

22.     The Board may conduct "capital repair, replacement, improvement, rehabilitation, alteration, or modification necessary *to maintain* the functionality of the building and site at current standards of life, safety, security, and accessibility." *Id.* § 76j(a)(1)(G) (emphasis added). In the past, Congress has provided express statutory authority empowering the Board to undertake specific renovation projects. *See* John F. Kennedy Center Reauthorization Act of 2012, Pub. L. No. 112-131, 126 Stat. 377 (2012), *codified in* 20 U.S.C. § 76i (authorizing a major expansion project); John F. Kennedy Center Reauthorization Act of 2007, Pub. L. 110-338, 122 Stat. 3731 (2008), *codified in* 20 U.S.C. § 76m (authorizing a photovoltaic system for the main roof of the Kennedy Center); John F. Kennedy Center Parking Improvement Act of 1997, Pub. L. No. 105–95, 111 Stat. 2148 (1997), *codified in* 20 U.S.C. § 76i(b) (authorizing the building of a parking garage and certain site improvements). Additionally, according to statute, no "change in the

management and operation of the grounds may be made without the express approval of Congress." 20 U.S.C. § 76j(a)(2)(F).

23.     Congress has charged the Board with conducting certain mandatory statutory duties.  For example, the Board "shall" "present classical and contemporary music, opera, drama, dance, and other performing arts from the United States and other countries"; it shall serve as a leader in "arts education and policy"; it shall conduct "national and community outreach"; and it shall provide facilities for "other civil activities at the John F. Kennedy Center for the Performing Arts."  20 U.S.C § 76j(a)(1).

24.     In 2025, Congress appropriated $257 million to remain available until September 2029 for "necessary expenses for capital repair, restoration, maintenance backlog, and security structures of the building and site of the John F. Kennedy Center for the Performing Arts." Pub. L. No. 119-21, 139 Stat. 157 (2025).

## FACTUAL BACKGROUND

### *President Trump's Takeover*

25.     For years, the bipartisan board faithfully followed Congress's instructions and maintained the Kennedy Center as a living memorial to the President for whom it is named and as a thriving cultural institution.  But when President Trump came into office, he sought to bring the Kennedy Center under his thumb.  In February 2025, President Trump fired the Board's longtime chair, a businessman who had been appointed as a trustee by President George W. Bush; removed general trustees who would exhibit independent judgment; and replaced them with staunch loyalists who will do his bidding, including his own White House Chief of Staff, multiple Fox News personalities, and the spouses of his Vice President and Secretary of Commerce.

26.     President Trump also appointed himself as a general trustee and had the Board elect him as the new chair.  This is unprecedented.  No American president has ever appointed himself as a trustee of the Kennedy Center, let alone sought to serve as chair.

27.     Under President Trump's direction, the Board fired the Kennedy Center's experienced President and replaced her with Defendant Richard Grenell, who served in the first Trump Administration and has no material prior experience in the arts or arts administration. Defendant Grenell has purged the Kennedy Center's staff and replaced them with yet more loyalists.

28.     In President Trump's own words, "we took over the Kennedy Center." "I'm going to be chairman of it, and we're going to make sure that it's good and it's not going to be woke. There's no more woke in this country."  Jake Tapper, Pamela Brown, Piper Hudspeth Blackburn and Betsy Klein, *Trump Elected Chair Of The Kennedy Center By Newly Constituted Board*, CNN (Feb. 12, 2025), https://www.cnn.com/2025/02/12/politics/kennedy-center-chair-trump-elected-board.

29.     In May 2025, the newly constituted Board amended the Kennedy Center's bylaws in ways that purported to materially alter the Kennedy Center's governance structure and conflict with the federal statute Congress enacted. The January 2025 bylaws—mirroring the statute's plain text and decades of practice—provided no distinction in voting rights between ex officio and appointed trustees.  The May 2025 amendment declared that the "Board shall be composed of ex officio non-voting members and general trustee voting members."  This amendment purports to strip Plaintiff and other Congressional trustees of their ability to vote in governance matters.

30.     President Trump's takeover of this storied national institution immediately harmed the Kennedy Center.  Major artistic figures cut their ties with the Kennedy Center and related

entities.  The hit Broadway musical *Hamilton* cancelled its upcoming performance, as did actor Issa Rae.  Attendance at the Kennedy Center plummeted.  By October 2025, public reporting indicated that nearly half of the tickets were going unsold—a stark decline for the once popular venue. *See* Travis M. Andrews, Jeremy B. Merrill and Shelly Tan, *Kennedy Center Ticket Sales Have Plummeted Since Trump Takeover*, Wash. Post (Oct. 31, 2025), https://www.washingtonpost.com/entertainment/2025/10/31/kennedy-center-sales/; Ivy Buck & Anastacia Tsioulcas, *Here's Who's Canceled Their Kennedy Center Performances Since Trump Took Over*, NPR (Feb. 18, 2026), https://www.npr.org/2026/01/20/nx-s1-5675192/kennedy-center-canceled-performances.

*The Renaming of the Kennedy Center*

31.    But controlling the Kennedy Center was not enough for Defendants.  On August 12, 2025, Trump posted on his social media account "Great Nominees for the TRUMP/KENNEDY CENTER, whoops, I mean, KENNEDY CENTER, AWARDS . . . ."  On December 8, 2025, President Trump spoke at the Kennedy Center's annual awards ceremony and, again, purported to joke about renaming the center.

32.    Ten days later, his ill-concealed desire became a reality.  At 1:11 PM Eastern Time, on December 18, 2025, the White House Press Secretary announced the following on the social media site X:

> I have just been informed that the highly respected Board of the Kennedy Center, some of the most successful people from all parts of the world, have just voted unanimously to rename the Kennedy Center to the Trump-Kennedy Center, because of the unbelievable work President Trump has done over the last year in saving the building. Not only from the standpoint of its reconstruction, but also financially, and its reputation. Congratulations to President Donald J. Trump, and likewise, congratulations to President Kennedy, because this will be a truly great team long into the future! The building will no doubt attain new levels of success and grandeur.

Karoline Leavitt (@PressSec), X (Dec. 18, 2025, at 1:11 ET), https://x.com/PressSec/status/2001717032191168839.

33.    The very next day, workers installed new signage on the Kennedy Center's front portico, placing President Trump's name above President Kennedy's.  Meanwhile, the Kennedy Center's website was immediately updated to refer to it as "The Trump Kennedy Center," and the Kennedy Center began sending emails with the same new name.  *See* Alejandra Marquez, *New Trump-Kennedy Center Sign Is Affixed To Building Facade Despite Concerns About Legality*, NBC News (Dec. 19, 2025), https://www.nbcnews.com/politics/trump-administration/trump-kennedy-center-name-change-congress-rcna250081.



34.    The lightning speed with which this all occurred is deeply telling.  That Defendants had already procured matching signage for the Kennedy Center's front portico in advance and

prearranged for workmen to arrive the day following the Board meeting indicates that Defendants had planned to rename the Kennedy Center after Donald Trump, and nothing would or could change their minds.

35.    The conduct in the Board meeting itself confirmed that the meeting was a sham, orchestrated by President Trump and his loyalists as a pretext for a predetermined result.  There was no advance notice in the agenda that the Board would be considering a name change.  The meeting was held at the home of Andrea Wynn, the wife of a casino mogul and Republican donor, whom President Trump installed on the Board.  At the end of the meeting, President Trump's loyalists abruptly announced that they had news they would like to share: the Kennedy Center would now be renamed after Donald Trump.  President Trump's loyalists then purported to solicit feedback, and some voiced their support.

36.    Plaintiff Congresswoman Joyce Beatty attended virtually and had been unmuted previously during the meeting.  But when Plaintiff began speaking, identified herself, and indicated that she had a concern, she quickly found herself muted.  Plaintiff repeatedly attempted to unmute herself.  She found that she was unable to do so.  Instead, Plaintiff received written notices that she would *not* be unmuted, and therefore she could not participate in the meeting.   At the end of the meeting, members of the Board falsely declared that the vote had been unanimous.  It is clear that nothing could or would change Defendants' minds.

37.    Significantly, there was no discussion at the meeting about the potential risks or downsides of the renaming, particularly in light of the harm that Defendants' actions had already caused the Kennedy Center even prior to the renaming in terms of artist cancelations and plunging ticket sales. There was also no discussion about the conflict of interest for the Kennedy Center to be renamed after the sitting Chairman of the Board.

38.     After the Plaintiff spoke out publicly following the meeting, ex officio members House Minority Leader Hakeem Jeffries, Senate Minority Leader Chuck Schumer, Senators Sheldon Whitehouse and Mark Warner, and Representative Rick Larsen also issued a statement:

> At today's meeting, a sitting Member of Congress was muted, and participants were prevented from speaking — actions that reflect a troubling lack of transparency and respect for the rule of law. This whole process displays the corruption that permeates the entire Trump Administration, and as ex-officio members of the Kennedy Center Board, we will be unwavering in our commitment to holding this Administration accountable.

Press Release, *Statement From Kennedy Center Ex-Officio Board Members On Trump's Illegal Effort To Rename Arts Institution* (Dec. 18, 2025), https://jeffries.house.gov/2025/12/18/ statement-from-kennedy-center-ex-officio-board-members-on-trumps-illegal-effort-to-rename-arts-institution/.

39.     Members of the Kennedy family denounced Defendants' actions. Joe Kennedy III, the grandson of Senator Robert Kennedy and grandnephew of President Kennedy, wrote, "The Kennedy Center is a living memorial to a fallen president and named for President Kennedy by federal law. It can no sooner be renamed than can someone rename the Lincoln Memorial, no matter what anyone says."

40.     Kerry Kennedy, a niece of the late President, wrote:

> President Trump and his administration have spent the past year repressing free expression, targeting artists, journalists, and comedians, and erasing the history of Americans whose contributions made our nation better and more just. President Kennedy proudly stood for justice, peace, equality, dignity, diversity, and compassion for those who suffer. President Trump stands in opposition to these values, and his name should not be placed alongside President Kennedy's.

Kerry Kennedy, Facebook (Dec. 18, 2025), https://www.facebook.com/KerryKennedyRFK/posts/

president-trump-and-his-administration-have-spent-the-past-year-repressing-free-

/1405643367586747/.

41.    President Kennedy's niece Maria Shriver said:

> It is beyond comprehension that this sitting president has sought to
> rename this great memorial dedicated to President Kennedy.  It is
> beyond wild that he would think adding his name in front of
> President Kennedy's name is acceptable.  It is not.  Next thing
> perhaps he will want to rename JFK Airport, rename the Lincoln
> Memorial, the Trump Lincoln Memorial.  The Trump Jefferson
> Memorial. The Trump Smithsonian.  The list goes on.  Can we not
> see what is happening here? C'mon, my fellow Americans! Wake
> up! . . . .

Maria Shriver (@mariashriver), X (Dec. 18, 2025, 3:53 ET), https://x.com/mariashriver/status/

2001757626972148042?lang=en.

42.    The name-change accelerated the flight of performers and patrons from the

Kennedy Center.  To pick just a few examples, famed Composer Philip Glass canceled his planned

premiere of his new Symphony No. 15, explaining that the work is a "portrait of Abraham Lincoln,

and the values of the Kennedy Center today are in direct conflict with the message of the

Symphony"; the American College Theatre Festival suspended a 58-year partnership with the

Kennedy Center; and banjo player Bela Fleck withdrew from playing with the National Symphony

Orchestra, stating that playing at the Kennedy Center "has become charged and political."  Ivy

Buck & Anastacia Tsioulcas, *Here's Who's Canceled Their Kennedy Center Performances Since*

*Trump  Took  Over*,  NPR  (Feb.  18,  2026),  https://www.npr.org/2026/01/20/nx-s1-

5675192/kennedy-center-canceled-performances.

43.    Meanwhile, the *Wall Street Journal* recently reported that an analysis of a week's

ticket sales from 2026 showed a stark 70% drop from the three prior years.  *See* Annie Linskey

Follow, Jessica Toonkel Follow, Josh Dawsey Follow and Dave Michaels, *Behind Trump's Push to Remake the Kennedy Center in His Own Image*, Wall St. J. (Feb. 10, 2026), https://www.wsj.com/business/kennedy-center-donald-trump-d7a055c3.

*President Trump's Announced July 2026 Shuttering and Demolition*

44.    On February 1, 2026, President Trump announced on Truth Social—without prior notice to or deliberation by the Board—that the Kennedy Center would close for approximately two years starting this July for "Construction, Revitalization, and Complete Rebuilding."  The full Post is reproduced immediately below:



**Donald J. Trump** ✪ 🔲
@realDonaldTrump

After a one year review of The Trump Kennedy Center, that has taken place with Contractors, Musical Experts, Art Institutions, and other Advisors and Consultants, deciding between either Construction with Closure and Re-Opening or, Partial Construction while continuing Entertainment Operations through a much longer period of time, working in and around the Performances, I have determined that The Trump Kennedy Center, if temporarily closed for Construction, Revitalization, and Complete Rebuilding, can be, without question, the finest Performing Arts Facility of its kind, anywhere in the World. In other words, if we don't close, the quality of Construction will not be nearly as good, and the time to completion, because of interruptions with Audiences from the many Events using the Facility, will be much longer. The temporary closure will produce a much faster and higher quality result!

Based on these findings, and totally subject to Board approval, I have determined that the fastest way to bring The Trump Kennedy Center to the highest level of Success, Beauty, and Grandeur, is to cease Entertainment Operations for an approximately two year period of time, with a scheduled Grand Reopening that will rival and surpass anything that has taken place with respect to such a Facility before.

Therefore, The Trump Kennedy Center will close on July 4th, 2026, in honor of the 250th Anniversary of our Country, whereupon we will simultaneously begin Construction of the new and spectacular Entertainment Complex. Financing is completed, and fully in place! This important decision, based on input from many Highly Respected Experts, will take a tired, broken, and dilapidated Center, one that has been in bad condition, both financially and structurally for many years, and turn it into a World Class Bastion of Arts, Music, and Entertainment, far better than it has ever been before. America will be very proud of its new and beautiful Landmark for many generations to come. Thank you for your attention to this matter!

PRESIDENT DONALD J. TRUMP

**5.02k** ReTruths  **22.7k** Likes                    Feb 01, 2026, 6:21 PM

Donald J. Trump (@realDonaldTrump), Truth Social (Feb. 1, 2026, at 6:21 ET), https://truthsocial.com/@realDonaldTrump/posts/115997939705121174.

45.     President Trump's subsequent statements underscore that his "complete rebuilding" project is not routine maintenance. While simultaneously denying that the Kennedy Center would be torn down, President Trump has stated that the project would be "using the steel" and "some of the marble" from the current building, and that the building would be "brand new." Aaron Pellish, *Trump Says Kennedy Center Renovation Won't Be a Full Tear-down*, POLITICO (Feb. 2, 2026), https://www.politico.com/news/2026/02/02/trump-kennedy-center-renovation-00761377. A "brand new" building constructed from salvaged materials of a demolished predecessor is a new building, not a renovation and certainly not routine maintenance.

46.     President Trump's statements regarding the Kennedy Center mirror his tactics with respect to the East Wing of the White House. In July 2025, President Trump announced plans for a new White House ballroom, assuring the public that the construction "won't interfere with the current building." *President Trump Signs an Executive Order, July 31, 2025*, at 22:35, YouTube (July 31, 2025), https://www.youtube.com/live/NC09z2oqpDg?t=1350s. But several months later, President Trump completely demolished the East Wing without warning and without the required approval of the National Capital Planning Commission or following the procedures required under the National Historic Preservation Act.

47.     President Trump's February 1, 2026 announcement about the closure and rebuilding of the Kennedy Center was made without presenting any plans, analyses, timelines, or funding information to his co-trustees, without any Board vote, and without seeking any of the mandatory regulatory approvals that federal law requires before a project of significant scope may proceed. Although President Trump claimed that the project was the culmination of a "one year

review," such a review took place outside the confines of the Board's official considerations—if it took place at all. And in any event, documentation underlying that supposed "review" had not been made available to Plaintiff.

48.     The announcement that the Kennedy Center will close in July 2026 is also an abrupt reversal of the Kennedy Center's existing plans. The Board had previously discussed capital improvements using the $257 million congressional appropriation and had been informed at recent meetings that those improvements were underway. But there was never any discussion of a two-year closure or wholesale reconstruction. According to public reporting, Defendant Grenell told Kennedy Center staff in December that employees might need to switch offices or buildings as a result of maintenance projects, but never mentioned shutting down the Kennedy Center entirely, let alone for multiple years. And there is no indication that in requesting funding from Congress, Defendants told anyone that they planned to shut down the Kennedy Center for multiple years.

49.     Together, the sharp deviations from normal process, the context, and the timing of President Trump's announcement all suggest that the closure is pretext to hide the fact that the Kennedy Center is failing as a direct result of his unprecedented and unlawful actions since taking control of the Board.

*Plaintiff's Demand Letter*

50.     On February 20, 2026, Plaintiff sent a letter to President Trump and to Defendant Grenell to express her concerns about the announced shuttering of the Center. *See* Ex. A.[2] The

---

[2] On February 20, 2026, counsel for Plaintiff transmitted a courtesy copy of the letter to counsel for Defendants in this litigation. Because the email to Defendant Grenell bounced back and out of an abundance of caution, Plaintiff also subsequently emailed a copy of the letter to Elliot Berke, the Kennedy Center's general counsel, on February 24, 2024. Mr. Berke promptly acknowledged receipt. The initial letter sent to Defendant Grenell included a typo regarding the return date for the documents, which date was updated in the letter transmitted to Mr. Berke. On February 25,

letter demanded, no later than February 27, 2026, eight categories of information necessary for Plaintiff to perform her fiduciary duties as a trustee in evaluating the plan to close and demolish the Center: (1) a detailed description of the intended renovations, including proposed timelines, plans, drawings, contractor identities, and funding sources; (2) the timeline for the Board's consideration of the announced plans; (3) assurances that Plaintiff and other ex officio members would be permitted to participate in the decision-making process; (4) a timeline for securing required regulatory approvals from the National Capital Planning Commission, the Commission on Fine Arts, and other authorities; (5) assurances that no steps to effectuate any shutdown would be taken without 60 days' advance notice to the Board; (6) a list of all performance contracts in place for the two-year closure period and how they will be addressed; (7) a list of all contractors, musical experts, art institutions, and other advisors and consultants involved in President Trump's alleged "one year review"; and (8) all reports and communications from those consultants received by President Trump and Defendant Grenell.

51.    To date, Defendants have provided no substantive response to Plaintiff's demand for information and for assurances that Defendants will provide adequate notice before taking any irrevocable steps toward closure and demolition.  Indeed, it appears Defendants have already started taking steps toward implementing the closure, even though it has not yet been approved by the Board.  On February 24, 2026, the Kennedy Center sent an email communication to patrons, with the subject line "This is YOUR chance!," that stated that the Kennedy Center "will be temporarily closing our doors after July 7th for a massive, much-needed revitalization, which will . . . revolutionize the building."  This communication announced a specific closure date to the

---

2025, counsel for Plaintiff similarly provided the updated letter to counsel for Defendants in this litigation.  The copy of the letter in Exhibit A is the updated letter.

general public before any such date had been presented to or approved by the Board.  Performance contracts for the closure period are presumably being modified or terminated without Board approval and without Plaintiff's knowledge or participation.

52.    In sum, it appears that President Trump and Defendant Grenell are plowing ahead with imminent plans to demolish the Kennedy Center without regulatory approval—akin to how President Trump demolished the East Wing without the necessary approvals.

53.    On or about February 27, 2026, Plaintiff learned that President Trump will hold a special meeting of the Board on March 16, 2026 at 12:30 PM.  The meeting will take place at the White House.    The only substantive items on the agenda concern a "Presentation on Improvements," a "Discussion on Closure," and a "Vote on Closure beginning July 6th, 2026." Based on her prior experience at the December 18 meeting, in which she was muted and prevented from discussing the name change, Plaintiff fully anticipates that Defendants will once again prevent her from participating in the Board meeting.

*Legal Requirements For Major Projects*

54.    In addition to congressional approval, a project at the scale of a "complete rebuilding" contemplated by President Trump requires approval under several statutory schemes. A brief overview of those statutes is helpful to set the stage.

55.    The National Capital Planning Act ("NCPA"), 40 U.S.C. §§ 8701 *et seq.*, vests the National Capital Planning Commission ("NCPC") with authority over development affecting federal land in Washington, D.C. Section 8722(b) requires that the heads of federal agencies, before developing or constructing any public building in the District of Columbia, submit development plans to the NCPC and obtain its approval. The statute establishes that no construction may commence without NCPC review and approval.  40 U.S.C. § 8722(b)(1).

56.    The Kennedy Center is a federally owned building on federally owned land in the District of Columbia. Any significant construction, renovation, alteration, or demolition of the Kennedy Center—including the project Defendants have announced—constitutes "development" subject to NCPC review and approval under the NCPA.

57.    As far as Plaintiff is aware, Defendants have not submitted any development proposal to the NCPC.  They have not sought or received NCPC approval.  Public reporting, and the absence of any NCPC announcement, confirms that no review process has been initiated.  This is particularly striking given that public reporting indicated that the East Wing demolition in October 2025 similarly proceeded without NCPC approval, a prior unlawful act that Defendants appear prepared to repeat here.

58.    The National Historic Preservation Act (NHPA), 54 U.S.C. §§ 300101 et seq., imposes mandatory procedural requirements on federal agencies before undertaking any action that may affect historic properties.  Section 306108 provides that the head of a federal agency shall, prior to the approval of the expenditure of any federal funds on an undertaking, or prior to the issuance of any license, "take into account the effect of the undertaking on any historic property." This is implemented through the Section 106 consultation process, which requires the agency to consult with the Advisory Council on Historic Preservation and relevant State Historic Preservation Officers before proceeding.

59.    The Kennedy Center building is a contributing element of, or eligible for listing in, the National Register of Historic Places, and is in any event a federally designated national memorial. Any project that would materially alter or demolish the building—including the project Defendants have announced—constitutes an "undertaking" that "may cause effects on historic properties" within the meaning of NHPA and its implementing regulations at 36 C.F.R. Part 800.

60.     No Section 106 consultation has been initiated for the proposed Kennedy Center project. The Advisory Council on Historic Preservation has not been notified.  No State Historic Preservation Officer consultation has occurred.  On information and belief, Defendants have not complied with any aspect of the mandatory Section 106 process, which must be completed before any such project may lawfully proceed.

61.     Congress has made clear that the Smithsonian Institution—of which the Kennedy Center is a bureau—is deemed an agency for the purposes of compliance with the NCPA and NHPA.  *See* Smithsonian Facilities Authorization Act § 3(c)(2), Pub. L. No. 108-72, 117 Stat. 888 (2003).

62.     The Commission of Fine Arts Act, 40 U.S.C. §§ 9101 *et seq.*, establishes the Commission of Fine Arts and requires its review of plans for the construction, alteration, or demolition of certain buildings and structures in the District of Columbia.  The Commission advises on matters of art and architecture affecting the character of the nation's capital.

63.     Any project that would materially alter or demolish the Kennedy Center building— an iconic structure on the Washington waterfront that defines the character of the city's cultural district—is precisely the type of project subject to Commission of Fine Arts review.  Indeed, the Kennedy Center's organic statute expressly required the Commission of Fine Arts to approve the original construction "plans and specification."  20 U.S.C. § 76i(a).  As far as Plaintiff is aware, Defendants have not submitted any plans to the Commission of Fine Arts, and no such review has been initiated or completed.

64.     These three bodies of federal law reflect complementary congressional judgments: that significant development affecting the nation's capital, its federally owned land, its historic resources, and its architectural character should be subject to deliberate, multi-agency, publicly

transparent review before proceeding. They are not optional processes that agencies may bypass when inconvenient. They are mandatory prerequisites to lawful construction.

65.     For a recent renovation project completed in 2019, the Kennedy Center complied with these statutory requirements through engaging with the National Capital Planning Commission, the District of Columbia State Historic Preservation Office, and the Commission of Fine Arts, and solicited public review and comments. *See* January 2015 Memorandum of Agreement Among the National Park Service, the National Capital Planning Commission, the District of Columbia State Historic Preservation Office, and the John F. Kennedy Center for the Performing Arts Regarding the Kennedy Center Expansion Project Washington, D.C., https://www.ncpc.gov/files/Kennedy_Center_Expansion_Project_Memorandum_of_Agreement_ 7523_May2015.pdf. That process took at least a year and a half to complete. *See id*. at 3 (noting initiation of certain consultations on July 12, 2013); *id*. at 15 (agreement dated January 30, 2015).

66.     Defendants' failure to complete any of these processes—while simultaneously setting a public closure date and apparently proceeding with implementation—constitutes independent violations of federal law.

*Announced Closure*

67.     Finally, it bears emphasis: Even if President Trump does not plan on completely demolishing the Center, the two-year closure flatly violates the law.

68.     The Kennedy Center statute requires the Board to "maintain and administer the John F. Kennedy Center for the Performing Arts" as "a living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h. Congress was clear that a living memorial is one filled with vibrant activity. Congress directed (among other things) that the Board "shall" "present classical and contemporary music, opera, drama, dance, and other performing arts from the United States and

other countries"; that it shall serve as a leader in "arts education and policy"; that it shall conduct "national and community outreach"; and that it shall provide facilities for "other civil activities." 20 U.S.C § 76j.

69.     Shuttering the Kennedy Center for two years will turn the center into an empty husk.  This is the exact opposite of a living memorial, directly contradicts the mission with which Congress charged the Board, and constitutes a breach of Defendants' legal obligations.  Defendants have already acted without authority when they undertook steps to shutter the Center.

70.     Plaintiff sought to prevent the name change in December 2025, but was prevented from even voicing her opposition at the Board meeting.  Plaintiff has sought to procure information regarding the planned shuttering to which she is legally entitled, without any success.  Absent judicial intervention, the effort to corrupt the Kennedy Center into a vanity project for President Trump will continue to harm the institution.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**BREACH OF TRUSTEES' OBLIGATIONS UNDER 20 U.S.C. § 76*l* (RENAMING)**

71.     The preceding paragraphs are incorporated and realleged here.

72.     Federal law imposes the obligations of a "trustee" on the Kennedy Center Board of Trustees and the Board itself in their management of the trust's property.  *See* 20 U.S.C. §§ 76*l*(b), 76j.  The statute thus imports the ordinary common law duties of a trustee. *See NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981). Those obligations include, but are not limited to, the duty to administer the trust in accordance with the trust's terms and applicable law; the duty of loyalty; and the duty of prudence.  In addition, Defendant Grenell owes the duties of an employee to an employer.

73.     The trust's terms are established by federal statute. The Board's duty is to "maintain

and administer the John F. Kennedy Center for the Performing Arts" as "a living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h.

74.     Defendants renamed the Kennedy Center after President Trump in direct violation of the Center's organic statute that directs that it be "designated as the John F. Kennedy Center for the Performing Arts."  The renaming therefore violates the trust's own terms and terms of the statute.

75.     Furthermore, the renaming undermined the institution's brand and mission at the expense of President Trump's vanity.  Because the Board approved this change and did so without *any* consideration of the obvious conflict of interest and the potential legal and financial harms, the renaming was also a breach of the trustees' duties of loyalty and prudence.

76.     As a co-trustee, Plaintiff has standing and authority to bring this action to enforce the terms of the trust and obtain redress for these breaches. Restatement (Second) of Trusts § 391 (1959); Restatement (Third) of Trusts § 94 ("A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained . . . by a co-trustee."); *Holt v. College of Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750 (1964).  She brings this action in her capacity as trustee and, if necessary, derivatively on behalf of the Board and the Center.

### COUNT TWO
### BREACH OF TRUSTEES' OBLIGATIONS UNDER 20 U.S.C. § 76*l* (CLOSURE)

77.     The preceding paragraphs are incorporated and realleged here.

78.     The planned two-year closure and complete rebuilding flout the law and, as a result, constitutes an independent breach of the same legal obligations identified above.

79.     The Kennedy Center's organic statute expressly mandates that the Board maintain and administer the Kennedy Center as a *living* memorial.  Congress was clear that a living

memorial is one filled with vibrant activity. Congress directed (among other things) that the Board "shall" "present classical and contemporary music, opera, drama, dance, and other performing arts from the United States and other countries"; that it shall serve as a leader in "arts education and policy"; that it shall conduct "national and community outreach"; and that it shall provide facilities for "other civil activities." 20 U.S.C § 76j.

80.     Shuttering the Kennedy Center for two years directly contradicts the mission with which Congress charged the Board, and constitutes a breach of Defendants' legal obligations. Defendants acted without authority when they undertook steps to shutter the Center without approval from Congress or even the Board. This is a breach of their duties.

81.     To the extent the closure is designed to obfuscate the plummeting ticket sales and the flight of artists—as the facts suggest—Defendants are acting to avoid embarrassment, not in the best interests of the Kennedy Center. This is a breach of their duties.

82.     President Trump's purported "Complete Rebuilding" is additionally unlawful. Congress has not authorized the massive construction that President Trump has indicated he will undertake. To date, the Board has not been consulted nor provided its approval. President Trump and Defendant Grenell are barreling forward with their planned demolition without seeking the legally required approvals from NCPA, NHPA, or the Commission of Fine Arts Act, meaning that Defendants are administering the trust in violation of applicable law. This is a breach of Defendants' fiduciary duties.

83.     As a co-trustee, Plaintiff has standing and authority to bring this action to enforce the terms of the trust and obtain redress for these breaches.

**COUNT THREE**
**VIOLATION OF PLAINTIFF'S RIGHTS UNDER 20 U.S.C. § 76*l***

84.     The preceding paragraphs are incorporated and realleged here.

85.    As an ex officio member of the Kennedy Center Board of Trustees, Plaintiff possesses the same rights and responsibilities as any other trustee, including the right to participate in Board meetings, to vote on Board decisions, and to receive information necessary to discharge her fiduciary obligations.  These rights are conferred by federal statute and cannot be abridged by bylaw amendment or by unilateral action by a majority of the Board.  And regardless of Plaintiff's voting status, she possesses common law rights and duties as a trustee to obtain information about the trust's affairs and to participate in the administration of the trust.  Defendants violated Plaintiff's rights as a trustee in the following respects:

86.    *The December 2025 Meeting.* Defendants deliberately muted Plaintiff when she attempted to speak in opposition to the renaming.  She received written notices that she would not be unmuted.  She was prevented from speaking and was unable to cast a vote.  Defendants then falsely declared the vote unanimous.

87.    *The May 2025 Bylaw Amendment.*  The May 2025 bylaw amendment purporting to strip ex officio trustees of voting rights violates federal statute and is void.  As the December 2025 meeting indicates, Defendants have acted and will continue to act on the basis of this void amendment, depriving Plaintiff of her statutory voting rights on an ongoing basis.[3]

88.    *Withholding Information.* Defendants' refusal to respond to Plaintiff's letter and their unjustified and unlawful withholding of the requested information about the plans for closing and rebuilding the Center denies Plaintiff the information she needs to participate meaningfully in

---

[3] Even if the May 2025 bylaw amendment validly withdraws Plaintiff's voting authority (and it does not), the amendment does not permit Defendants to prevent Plaintiff from exercising her duties to engage in deliberation and obtain the information necessary for such deliberation.  A trustee's access to information and participation is independent of her voting status.

Board governance, to monitor for breaches of trust, and to exercise her duty to prevent or redress such breaches.

89.    *Exclusion from the Closure Decision.* The decision to close the Kennedy Center beginning July 7, 2026, and the communication of that closure date to the public, occurred without any Board meeting or vote, and without providing Plaintiff with the information she has demanded—information that is necessary for *any* trustee to review in order to faithfully discharge their fiduciary obligations in considering the magnitude of the changes at issue. Plaintiff has been excluded from a governance decision of the highest significance—one that could result in the permanent destruction of the trust's primary asset.

90.    To the extent the Board will consider whether to approve the closure at the special meeting announced for March 16, 2026, Plaintiff fully anticipates that she will once again be prevented from participating in that meeting.

91.    Each of these violations is a distinct and actionable breach of Plaintiff's statutory rights as a trustee and of Defendants' duties to their co-trustee.

## COUNT FOUR
### *ULTRA VIRES*

92.    The preceding paragraphs are incorporated and realleged here.

93.    The Kennedy Center Board possesses only the authority Congress granted it. Its authority derives from federal statute, and its actions must remain within the bounds of that statute. *See* 20 U.S.C. § 76h(a)(1) (charging the Board with the duty to "maintain and administer" the Kennedy Center and "to execute such other functions as are vested in the Board by this subchapter"). In engaging in each of the acts of misconduct outlined in the prior counts, Defendants have acted ultra vires.

94.  *The Renaming.* Congress named the Kennedy Center by statute.  Only Congress can change that name by enacting new legislation.  For the reasons explained above, Defendants have no statutory authority to rename the institution.  The purported renaming the Kennedy Center for President Trump and associated rebranding are ultra vires, in excess of statutory authority, void, and without legal effect.

95.  *The Closure.*  Congress charged the Board with maintaining and administering the Kennedy Center as a living memorial.  For the reasons explained above, Defendant Grenell and President Trump have no statutory authority to unilaterally shutter the institution—without Board approval—for a prolonged period of time.  Moreover, to the extent the Board ultimately authorizes the closure, the result is the same:  The closure violates the plain language of the statute.  The closure is thus ultra vires, in excess of statutory authority, void, and without legal effect.

96.  *The Demolition and Rebuilding Project.* For the reasons explained above, Defendant Grenell and President Trump have no statutory authority to unilaterally and completely rebuild the Kennedy Center building.  Moreover, to the extent the Board ultimately authorizes the rebuilding, that decision violates the plain language of the statute.  The planned rebuilding is therefore ultra vires, in excess of statutory authority, void, and without legal effect.

97.  *Violations of Federal Approval Requirements.* As described above, the announced project requires, as a matter of law, NCPC review and approval under the NCPA; Section 106 consultation under NHPA; and Commission of Fine Arts review. Proceeding with the project without these approvals—as is currently occurring—exceeds the Defendants' lawful authority and violates the legal framework within which they are required to operate.  These independent violations of federal law render the project unlawful on their face, regardless of any other authority

Defendants might claim.  The planned rebuilding is therefore ultra vires, in excess of statutory authority, void, and without legal effect.

98.    *Participation in Meetings and May 2025 Bylaw Amendment.* As described above, Defendants have no statutory authority to prevent Plaintiff from speaking and voting at board meetings.  To the extent the May 2025 bylaw amendment purporting to strip ex officio trustees of voting rights, it violates federal statute and is void.

99.    *Withholding Information.* As described above, Defendants have no statutory authority to refuse to provide Plaintiff the requested information on the closure and rebuilding of the Kennedy Center, which is needed to participate meaningfully in Board governance.

100.    *Exclusion from the Closure Decision.* As described above, Defendants have no statutory authority to exclude Plaintiff—who is a full member of the Board—from a governance decision of the highest significance that could result in the permanent destruction of the trust's primary asset.

101.    Defendants' ultra vires actions are constitutionally and legally void. The Court should declare them so and enjoin Defendants from continuing to act beyond their statutory authority.

## COUNT FIVE
## DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201 AND 2202

102.    The preceding paragraphs are incorporated and realleged here.

103.    Plaintiff is entitled to declaratory relief on the basis of all claims identified.  An actual and substantial controversy exists between Plaintiff and Defendants concerning: (a) whether the Kennedy Center may be renamed by Board resolution rather than by Act of Congress; (b) whether the May 2025 bylaw amendment lawfully strips ex officio trustees of their voting rights; (c) whether ex officio trustees have the right to participate in and vote on Board decisions; (d)

whether Defendants must provide Plaintiff with the information demanded in her February 20, 2026 letter; (e) whether Defendants may close the Kennedy Center for two years; (f) whether the reconstruction project may lawfully proceed without board approval, congressional authorization, NCPC approval, NHPA Section 106 consultation, and Commission of Fine Arts review; and (g) the nature and scope of the fiduciary obligations of the Defendant trustees.

## COUNT SIX
## ADMINISTRATIVE PROCEDURE ACT (APA)

104.    The preceding paragraphs are incorporated and realleged here.

105.    Defendant Trustees of the John F. Kennedy Center for the Performing Arts, and Defendant the John F. Kennedy Center for the Performing Arts are, with respect to the conduct alleged herein, federal agencies subject to the requirements of the APA, 5 U.S.C § 701(b)(1).[4]

106.    The APA provides for judicial review of "final agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

107.    The following constitute final agency actions that are not in accordance with law and in excess of statutory authority, reviewable under the APA:

108.    *The Renaming.* The Board's December 2025 resolution purporting to rename the Kennedy Center is final agency action that is not in accordance with law — specifically, it violates 20 U.S.C. §§ 76h, 76i(a), and 76q — and is in excess of the Board's statutory authority.

109.    *The Closure and Rebuilding Project.* The decision to close and rebuild the Kennedy Center—as evidenced by the February 1, 2026 announcement and the February 24, 2026

---

[4] Plaintiff acknowledges that, in *Dong v. Smithsonian Institution*, 125 F.3d 877 (D.C. Cir. 1997), the D.C. Circuit held that the Smithsonian Institution did not constitute an agency for purposes of 5 U.S.C. § 551(1), when interpreting the scope of the Privacy Act. Plaintiff intends to argue that the D.C. Circuit should overturn *Dong* and/or that *Dong* does not preclude review in this context.

communication to subscribers, and the ongoing implementation—constitutes final agency action that is not in accordance with law for at least the following independent reasons: (a) it exceeds the Board's statutory authority and violates the Board's statutory obligations to maintain the center as a living memorial; (b) it violates 20 U.S.C. § 76j(a)(2)(F), which requires congressional and Secretarial approval for changes to the management and operation of the grounds; (c) it violates the NCPA, 40 U.S.C. § 8722, by proceeding without NCPC review and approval; (d) it violates the NHPA, 54 U.S.C. § 306108, by proceeding without Section 106 consultation; (e) it violates the Commission of Fine Arts Act and related authorities by proceeding without required Commission of Fine Arts review; (f) it is being conducted without the appropriate approval from the Board.

110.    *The Bylaw Amendments.* The May 2025 bylaw amendments stripping ex officio trustees of voting rights is a final agency action not in accordance with 20 U.S.C. § 76h and in excess of statutory authority.

111.    *Withholding Information.* Defendants' failure to respond to Plaintiff's February 20, 2026 information demand constitutes a constructive denial of rights that amounts to final agency action reviewable under the APA, or alternatively constitutes agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1).

112.    Plaintiff is a person aggrieved by these agency actions within the meaning of 5 U.S.C. § 702, in her capacity as co-trustee of the Kennedy Center.

**COUNT SEVEN**
**MANDAMUS**

113.    The preceding paragraphs are incorporated and realleged here.

114.    In the alternative, to the extent relief is unavailable under the Constitution, statute, equity, common law, or any other legal theory, Plaintiff is entitled to a writ of mandamus. The

statutory obligations of the Defendant trustees are clear and ministerial in relevant respects: the Kennedy Center is named by statute; the statute prohibits installation of additional memorials on the exterior; the statute does not distinguish between the rights and duties of ex officio trustees and other trustees; the statute imposes mandatory obligations on the Board to maintain the Kennedy Center as a living memorial and perform certain mandatory functions; the statute requires congressional and Secretarial approval for material changes to the grounds; NCPA law requires NCPC review and approval before construction; NHPA requires Section 106 consultation before any undertaking affecting historic properties. These are not matters of discretion. Defendants have a clear legal duty to comply with them, and a writ of mandamus is appropriate to compel compliance.

115. A writ of mandamus is specifically appropriate to require Defendants to: remove all physical and digital signage purporting to rename the Kennedy Center after President Trump; refrain from commencing any construction, demolition, or closure of the Kennedy Center without first obtaining the required congressional, Board, NCPC, NHPA, and Commission of Fine Arts approvals; restore Plaintiff's full participation rights as a voting trustee; and provide Plaintiff with the information demanded in her February 20, 2026 letter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this court:

A. Declare that Defendants' actions violated federal law;

B. Declare that the name of the John F. Kennedy Center for the Performing Arts is fixed by federal statute and may not be changed except by Act of Congress, and that the Board's December 2025 vote purporting to rename the Center is null and void;

C. Declare that the May 2025 bylaw amendment purporting to strip ex officio trustees

of voting rights is null and void as inconsistent with federal statute;

D.      Declare that Plaintiff is a full voting member of the Kennedy Center Board of Trustees with governance rights equal to any other trustee;

E.      Declare that Defendants unlawfully prohibited Plaintiff from participating in the December 2025 Board meeting;

F.       Declare that Defendants may not prohibit Plaintiff from participating in the March 16, 2026, Board meeting;

G.      Declare that Defendants unlawfully withheld information demanded in the February 20, 2026 letter;

H.      Declare that the planned closure of the Kennedy Center is unlawful;

I.      Declare that any significant construction, alteration, or demolition of the Kennedy Center building requires congressional approval; Board approval; NCPC review and approval under 40 U.S.C. § 8722; NHPA Section 106 consultation under 54 U.S.C. § 306108; and Commission of Fine Arts review; and that Defendants' conduct in proceeding with the rebuilding project without obtaining any of these required approvals is not in accordance with law and in excess of statutory authority;

J.      Declare that Defendants have violated their fiduciary obligations as trustees;

K.      Order Defendants to remove any and all physical and digital signage purporting to rename the Kennedy Center after President Trump, including the signage on the building's front portico, the website, email communications, and other official materials;

L.      Order Defendants to provide Plaintiff with all eight categories of information demanded in her February 20, 2026 letter;

M.      Enjoin Defendants from further renaming the Kennedy Center, from further

installing physical or digital signage purporting to rename the Kennedy Center, and from

further publishing or producing any other official material in any medium that purports to

refer to the Kennedy Center as named for President Trump;

N.      Enjoin Defendants from closing the Kennedy Center, announcing or implementing

a closure date, taking steps to effectuate a closure such as canceling performance contracts,

commencing any construction, demolition, or structural alteration of the Kennedy Center

building, or taking any other step that would be difficult or impossible to reverse, unless

and until Defendants receive congressional authorization and comply with all legal

requirements declared above;

O.      Enjoin Defendants from preventing Plaintiff from speaking at meetings;

P.      Enjoin Defendants from preventing Plaintiff from voting at meetings;

Q.      In the alternative, issue a writ of mandamus compelling compliance with the relief

described above;

R.      Award any other such relief that this Court deems appropriate.

Dated: March 6, 2026                      Respectfully submitted,

/s/ Norman Eisen                          /s/ Nathaniel A.G. Zelinsky
NORMAN EISEN                              NATHANIEL A.G. ZELINSKY
   (D.C. Bar No. 435051)                     (D.C. Bar No. 1724093)
STEPHEN JONAS                             /s/ Kyle R. Freeny
   (D.C. Bar No. 90037069)                KYLE R. FREENY
DEMOCRACY DEFENDERS ACTION                   (D.C. Bar No. 247857)
600 Pennsylvania Avenue SE #15180         THOMAS C. GREEN
Washington, D.C. 20003                       (D.C. Bar No. 14498)
202-594-9958                              JOHN ALDOCK
norman@democracydefenders.org                (D.C. Bar No. 35949)
                                          SAMANTHA P. BATEMAN
                                             (D.C. Bar No. 492919)
                                          ELIZABETH D. COLLERY
                                             (D.C. Bar No. 4222246)
                                          MARY L. DOHRMANN
                                             (D.C. Bar No. 90042577)

JAMES I. PEARCE
  (D.C. Bar No. 90042280)
BARRY WM LEVINE
  (D.C. Bar No. 143784)
ALEXANDER KRISTOFCAK*
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
kfreeny@washingtonlitigationgroup.org
nzelinsky@washingtonlitigationgroup.org

* *Application for admission forthcoming; admitted only in California and New York; practicing under the supervision of D.C. Bar members*

*Attorneys for Plaintiff Joyce Beatty*

**VERIFICATION**

I, Congresswoman Joyce Beatty, declare as follows:

1.      I represent Ohio's Third Congressional District in the United States House of Representatives.  By virtue of my elected position in Congress, I also serve ex officio as a trustee of the John F. Kennedy Center for the Performing Arts.

2.      I am a Plaintiff in the present case.  I have reviewed and am familiar with the allegations in the First Amended Complaint, and I confirm that the matters alleged therein are true and accurate to the best of my knowledge, information, and belief.  Having received a copy of the First Amended Complaint and having reviewed it, I authorize the First Amended Complaint's filing.

3.      I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th Day of March, 2026.


                                        /s/ Joyce Beatty
                                        Joyce Beatty