UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOYCE BEATTY,<br><br>       *Plaintiff*,<br><br> v.<br><br>DONALD J. TRUMP *et al.*,<br><br>       *Defendants*. | No. 25-CV-4480 (CRC) |

## DECLARATION OF MALLORY MILLER

I, Mallory Miller, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I submit this declaration in support of Plaintiff's request for emergency relief. I have personal knowledge of the facts stated herein, except where stated otherwise.

2. I have been involved in the performing arts throughout my life, beginning formal ballet training at age eight. I trained in classical ballet at the Academy of Ballet Internationale and at the Jordan Academy of Dance in Indianapolis.

3. I hold a Bachelor of Arts in Journalism with a minor in Dance from Butler University, where I graduated in 2009. Butler University is home to one of the most prestigious collegiate ballet programs in the United States. In addition to my academic training, I have maintained an active connection to the performing arts through teaching and arts administration. I am also currently pursuing a graduate degree in Arts Management at American University.

4. After working in event planning for approximately ten years, I returned to the arts sector in 2019, when I joined Joy of Motion Dance Center, a dance nonprofit in Washington, D.C., as studio manager. In 2021, I was part of a producing team that presented a musical outdoor performance at the AFL-CIO in Washington, D.C.

5. From 2023 until August 2025, I was employed at the John F. Kennedy Center for the Performing Arts ("Kennedy Center" or "Center") as Assistant Manager of Dance Programming. In that role, my primary responsibilities included coordinating the logistics of the Kennedy Center's ballet and dance seasons, managing the Center's relationships with visiting dance and ballet companies, and working with the Center's campus planning team to schedule performances in the Kennedy Center's main venues.

6. In August 2025, I was terminated by the Kennedy Center's current leadership. My termination is the subject of an unfair labor practice proceeding filed by my union with the National Labor Relations Board.

7. Based on my direct experience at the Kennedy Center and my broader knowledge of the performing arts industry, programming for the Kennedy Center's season is planned at least a year in advance. While formal contracts are typically not executed until closer to the public season announcement, the substantive conversations and commitments that lead to those contracts begin well before that point.

8. The Kennedy Center's performance season begins in October. In the years I worked at the Kennedy Center, the season announcement typically occurred in late April or May. That means that the next couple of months is precisely when the Kennedy Center would ordinarily be finalizing its commitments with performing companies for the season beginning in October 2026. Decisions made, or not made, during this window determine what the next season looks like. If the window closes without those commitments being secured, the opportunity cannot be recovered.

9. Ballet companies in particular require substantial advance planning. Major companies such as American Ballet Theatre, the New York City Ballet, the Royal Ballet from London, and others plan their rehearsal schedules many months in advance. Most professional

ballet companies are governed by collective bargaining agreements that require dancers to receive their company class and rehearsals schedules before a performance week four to six weeks in advance. This operational reality makes it logistically impossible to book a major ballet company on short notice or to reschedule one after commitments to other venues have already been made.

10. New York City Ballet has performed at the Kennedy Center on an annual basis for many years. To my knowledge, New York City Ballet is still planning a June 2026 engagement at the Kennedy Center. I am deeply concerned that if the announced closure of the Kennedy Center continues to be implemented, the Kennedy Center will lose access to the New York City Ballet for the October 2026 season, and this will be reversible, even if this litigation is ultimately successful and the Center reopens. Ballet companies do not hold dates open indefinitely. If the Center proceeds with the plans to close in July and the upcoming season's commitments are not secured during the current booking window, I believe it will be extremely difficult, if not impossible, to secure New York City Ballet's participation in the following season. They will make other plans and those plans cannot simply be undone.

11. The Nutcracker season, which generates critical revenue for ballet companies and is among the most popular offerings for Kennedy Center audiences, begins the week of Thanksgiving. Based on my experience, I expect that if a court does not intervene soon and the Kennedy Center closes in July, it will be practically impossible to secure a Nutcracker production for the November and December holiday season. Companies that present Nutcracker at the scale of the Kennedy Center's Opera House must commit to that production many months in advance. Even if the Kennedy Center were to reopen a few months after it shuts down as a result of a favorable judgment in this lawsuit, a Nutcracker engagement for that November would almost

certainly be lost. That loss to the Center and the community would be permanent and could not be remedied after the fact.

12. I am also aware that the Kennedy Center has scheduled Broadway touring productions for the 2026 season, including The Outsiders, which was expected to open at the Kennedy Center in approximately August 2026. If the Center proceeds with its planned July closure, that engagement will be lost. Broadway touring productions operate on fixed itineraries and will move to the next city on their schedule. There is no realistic mechanism by which a touring production returns to a venue it has already bypassed. Ticket holders who purchased tickets to these performances will forever lose access to those performances.

13. An anticipated two-year closure of the Kennedy Center will cause severe and likely irreversible harm to the pool of experienced stagehands, technical crew, and production professionals on whose labor the Kennedy Center depends for every performance.

14. During the COVID-19 pandemic, when live performance was suspended, a substantial number of experienced stagehands and technical professionals in the Washington, D.C. region left the industry entirely because they could not sustain themselves financially without work. When performances resumed, the regional labor market for qualified stagehands and production crew was severely constrained, and it took years to rebuild that workforce.

15. If the Center proceeds with the plans for a two-year closure of the Kennedy Center — occurring less than five years after the pandemic disruption — there is no reason to expect experienced crew members to remain available and attached to the Kennedy Center even if the closure is ultimately reversed at the conclusion of this litigation. Many of these workers will find other work, leave the industry, or relocate. Those individuals will not be easily replaced, and the

damage to the Kennedy Center's production capacity will extend well beyond the formal period of closure.

16. The Kennedy Center's relationships with the performing companies it has presented for decades are not abstractions. They are relationships developed over many years by experienced arts administrators who understood those companies' artistic needs, earned the trust of their directors and managers, and could credibly represent the Kennedy Center as a committed long-term partner. The relationships between the Kennedy Center and the major performing companies it has historically presented have already been substantially eroded by recent changes at the Center, but a two-year closure will sever whatever goodwill remains and will likely be understood by those companies as a definitive rupture, not a temporary pause.

17. Based on my experience in arts administration, my specific knowledge of the Kennedy Center's operations and contracting practices, and my familiarity with the performing arts industry, the closure of the Kennedy Center will cause harms that cannot be remedied by a subsequent court order directing the Center to reopen after the fact. The performing seasons that are lost will not be recovered. The companies that commit to other venues while the Kennedy Center is closed will not cancel those commitments because a court has ordered the Center to reopen. The technical workforce that disperses in anticipation of a two-year closure will not reassemble on demand. These are permanent losses.

18. Moreover, these harms will start occurring well in advance of the July closure. In fact, they are already materializing. Employees of the Center with institutional knowledge are likely to start departing in anticipation of layoffs. Based on conversations with employees, I am aware that employees expect layoffs to begin in April 2026 (and therefore, even if this is only hearsay, it is hearsay that is likely to have serious consequences, as employees are ordering their

affairs in response to their expectations of April layoffs). Once those employee departures occur, the institutional knowledge those individuals carry cannot be recalled. The performing companies that would otherwise be committing to the Kennedy Center's next season during the current booking window are not making those commitments. Every week that passes without resolution makes recovery less likely.

19. A court order stopping the closure before these harms become irreversible is necessary to prevent this. Once preparations for closure are fully set in motion, no subsequent order can fully undo the damage to the Center, its reputation, its ability to provide quality art content to the local community, and to the employees and contractors whose livelihoods depend on its continued operations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/4/2026 .

*Mallory Miller*
Mallory Miller