**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOYCE BEATTY, | |
| *Plaintiff*, | |
| v. | Civil Action No. 25-4480 (CRC) |
| DONALD J. TRUMP, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 3

    A.    Legal Background ................................................................................ 3

    B.    Factual Background ........................................................................... 4

LEGAL STANDARD ........................................................................................ 6

ARGUMENT ..................................................................................................... 6

I.    Plaintiff Is Not Substantially Likely to Succeed on the Merits. ......................................... 6

    A.    Much of Plaintiff's emergency request—concerning attendance and participation at the upcoming meeting—is premised on factual inaccuracies. ........................................... 7

    B.    Plaintiff is not substantially likely to show that the Center violated the terms of the trust by amending its bylaws to reaffirm longstanding voting practices. ........................................... 7

    C.    Plaintiff has not satisfied the relevant common-law requirements to bring a breach-of-trust claim. ........................................... 10

II.    Plaintiff Has Not Met Her Burden to Show She Will Suffer Irreparable Harm. .............. 14

III.    The Balance of the Equities Favors Defendants. ................................................ 15

CONCLUSION ................................................................................................. 18

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alco Gravure, Inc. v. Knapp Found.*,
   479 N.E.2d 752 (N.Y. 1985) ................................................................................... 13

*Benedict v. Amaducci*,
   No. 92 Civ. 5239, 1993 WL 87937 (S.D.N.Y. Mar. 22, 1993) ............................... 16

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) ................................................................................... 6

*Cobell v. Norton*,
   391 F.3d 251 (D.C. Cir. 2004) ................................................................................. 6

*Depu v. Oath Holdings Inc.*,
   715 F. Supp. 3d 1 (D.D.C. 2022) ............................................................................. 17

*Dong v. Smithsonian Inst.*,
   125 F3d 877 (D.C. Cir. 1997) .................................................................................. 17

*\*Fam. Fed'n for World Peace & Unification Int'l v. Moon*,
   338 A.3d 10 (D.C. 2025), *cert. denied*, ---S. Ct.---, 2026 WL 642851 (Mar. 9, 2026) ............ 12

*\*Fam. Fed'n for World Peace v. Hyun Jin Moon*,
   129 A.3d 234 (D.C. 2015) ................................................................................. 11, 12

*Gordon v. Holder*,
   632 F.3d 722 (D.C. Cir. 2011) ................................................................................. 15

*\*He Depu v. Yahoo! Inc.*,
   950 F.3d 897, 905 (D.C. Cir. 2020) .............................................................. 11, 12, 13

*Holt v. Coll. of Osteopathic Physicians & Surgeons*,
   394 P.2d, 932 (Cal. 1964) ........................................................................................ 10

*\*Hooker v. Edes Home*,
   579 A.2d 608 (D.C. 1990) .............................................................................. *passim*

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
   933 F. Supp. 2d 58 (D.D.C. 2013) ............................................................................ 6

*Maryland v. King*,
   567 U.S. 1301 (2012) ............................................................................................... 17

*Mylan Pharms., Inc. v. Shalala*,
   81 F. Supp. 2d 30 (D.D.C. 2000) ............................................................................. 15

*New Mexico v. Musk,*
    769 F. Supp. 3d 1 (D.D.C. 2025) ................................................................. 14

*Nken v. Holder,*
    556 U.S. 418 (2009) ...................................................................................... 6

*Spicer v. Biden,*
    575 F. Supp. 3d 93 (D.D.C. 2021) ............................................................... 4

*Steeneck v. Univ. of Bridgeport,*
    668 A.2d 688 (Conn. 1995) .......................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ................................................................................ 6, 15, 16

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n,,*
    758 F.2d 669 (D.C. Cir. 1985) ..................................................................... 14

**Statutes**

*20 U.S.C. § 76h ............................................................................................. 3, 8

*20 U.S.C. § 76j ......................................................................................... 3, 4, 10

20 U.S.C. § 76k ................................................................................................. 4

*20 U.S.C. § 76*l* .................................................................................... *passim*

Act of Jan. 23, 1964, Pub. L. No. 88-260, 78 Stat. 4 ....................................... 3

National Cultural Center Act, Pub. L. No. 85-874, 72 Stat. 1698 (1958) ...................................... 3

**Other Authorities**

Document (governing document), Black's Law Dictionary (12th ed. 2024) ................................ 7

Ex officio, Black's Law Dictionary (12th ed. 2024) ....................................... 7

Restatement (Second) of Trusts § 380 (1959) .............................................. 7

Restatement (Third) of Trusts § 27 ............................................................... 10

Restatement (Third) of Trusts § 28 ............................................................... 10

Restatement (Third) of Trusts § 94 ......................................................... 10, 11

## INTRODUCTION

Plaintiff Joyce Beatty is a member of the United States House of Representatives and an *ex officio* member of the Board of Trustees ("the Board") of the John F. Kennedy Center for the Performing Arts ("the Center"), secondarily called the "Donald J. Trump and the John F. Kennedy Center for the Performing Arts." Her amended complaint raises a wide array of objections to the way the Board is carrying out its duties in administering the Center, including the Board's decision to add a new name for the Center, to consider a proposed renovation plan, and more. Those claims fail for lack of standing and on the merits, as Defendants will explain in due course.

Plaintiff's instant motion for a temporary restraining order, however, is narrower in scope. She seeks to enjoin Defendants from excluding her from attending, participating in, and voting at an upcoming meeting of the Board scheduled for March 16, 2026, and to require that Defendants provide her with advance access to information about any plans to close and "rebuild" the Center that will be discussed at that meeting. *See* Combined Mot. for TRO & Prelim. Inj. at 1–3, ECF No. 13; *see also* Mem. in Supp. of Pl.'s Combined Mot. for TRO & Prelim. Inj. at 11, ECF No. 13-1.[1] These requests sound in Count Three of her Amended Complaint, which alleges that the Board violated Plaintiff's rights as a trustee by amending the bylaws in May 2025 to reaffirm that *ex officio* trustees do not have rights to vote on Board matters, muting her during the December 2025 meeting at which the Board chose to provide a secondary name for the Center, and "withholding information" about the Board's preliminary plans to close the Center for renovations. *See* First Am. Compl. ¶¶ 84–91, ECF No. 12.

---

[1] Plaintiff also asks for preliminary injunctive relief enjoining Defendants from taking steps to implement the plan to "close" and "rebuild" the Center. *See* ECF No. 13 at 3. Given the Court's order requiring Defendants to "respond to" Plaintiff's "Motion for Temporary Restraining Order," Minute Order, *Beatty v. Trump*, No. 25-cv-4480 (Mar. 6, 2026), Defendants in this opposition respond only to Plaintiff's requests related to the upcoming Board meeting.

This Court should deny the temporary restraining order, because Plaintiff is not likely to succeed on the merits and cannot show irreparable harm.

As to the merits, the primary grounds for Plaintiff's requested relief are factually false. She was invited to the March 16 Board meeting and will be permitted to attend. She will be entitled to speak at that meeting on the same terms as all other trustees, subject to the Chair's orderly management of the proceedings. And she will receive the same information about any proposed renovations that is distributed to all other trustees at that meeting. To be sure, Plaintiff will not be permitted to vote. But that is because, under the Center's bylaws and established procedure, *ex officio* trustees have no right to vote. Plaintiff argues that the Board violated an amorphous breach-of-trust standard by changing its bylaws in May 2025 to affirm the longstanding practice that *ex officio* members do not vote on Board matters. There is no support for that proposition. The federal statute establishing the Center does not speak to voting rights of the *ex officio* trustees, and, indeed, distinguishes them from the governing general trustees, thereby leaving the matter to the Board itself to regulate. Plaintiff is therefore not substantially likely to show that the Board violated the terms of its trust by following its own bylaws, or that her claims as a trustee provide relief for her challenge to the Board's administration of its own affairs.

Nor can Plaintiff show that she will be irreparably harmed absent relief. Again, her request is premised on the mistaken assertion that she will be prevented from participating in the Board's March 16 meeting. She will not. And Plaintiff's challenge to the bylaw amendment memorializing her inability to vote on Board matters is far too late for emergency relief. Plaintiff could have challenged that decision when the Board amended its bylaws to make that change *ten months ago*. She did not. Her failure to timely challenge that decision cannot serve as the basis for emergency relief now. And this Court's intervention now, given that delay, would significantly prejudice

2

Defendants' interests managing their internal affairs and, further, would harm the public interest in the effective administration of federally chartered charitable trust instrumentalities.

For these reasons, the Court should deny the motion for a temporary restraining order.

## BACKGROUND

### A.    Legal Background

Congress first established the National Cultural Center in 1958. National Cultural Center Act, Pub. L. No. 85-874, 72 Stat. 1698 (1958). Shortly after President Kennedy's assassination, Congress and President Johnson renamed the new entity as the "John F. Kennedy Center for the Performing Arts." Act of Jan. 23, 1964, Pub. L. No. 88-260, 78 Stat. 4.

Congress provided that an array of individuals would, by virtue of their outside offices, sit as *ex officio* trustees on the Board, including the Secretary of State, the Mayor of the District of Columbia, the Speaker and Minority Leader of the House of Representatives, the Majority and Minority Leader of the Senate, and several other members of Congress. 20 U.S.C. § 76h(a)(2). Congress further provided that the Board would contain thirty-six "general" trustees, who "shall be appointed by the President" for terms of six years. *Id.* § 76h(a)(2)(L), (b).

Congress bestowed the Board with "all the usual powers and obligations of a trustee" with respect to the "trust funds" under the Board's control. *Id.* § 76*l*(b). Per the governing statutes, the "Board is authorized . . . to make such bylaws, rules, and regulations, as it deems necessary for the administration of its functions under this subchapter, including . . . bylaws, rules, and regulations relating to the administration of its trust funds and the organization and procedure of the Board." *Id.* § 76*l*(a). The Board is empowered to enter into contracts; prepare a budget; employ personnel; negotiate planning, design, engineering, and construction contracts; and manage the grounds of the Center in accordance with National Park Service regulations. *See id.* § 76j(a)(2).

Beyond establishing that the Board has the "usual powers" of a trustee, *id.* § 76*l*(b), and outlining the Board's specific duties, *see id.* § 76j, and powers, *see id.* § 76k, the statutes governing the Center provide no further specific requirements or privileges outlining the individual rights and duties that either class of trustees possess as members of the Board.

### B.    Factual Background

Plaintiff Joyce Beatty, a member of the House of Representatives from Ohio, is an *ex officio* trustee on the Center's Board by virtue of her position in Congress. ECF No. 12 ¶ 13.

Over the course of 2025, President Trump effected several changes to the Board. In February, he fired the Board's chair, replaced the Board's general trustees, and appointed himself as a general trustee, consistent with his removal and appointment authority as articulated in *Spicer v. Biden*, 575 F. Supp. 3d 93, 98 (D.D.C. 2021). *See* ECF No. 12 ¶¶ 25–26. The Board elected the President as Chair of the Board and then fired the Center's president, replacing her with Defendant Richard Grenell. *Id.* ¶¶ 26–27.

In May 2025, following the appointment of new general trustees, the Board voted to amend the Center's bylaws to affirm a longstanding practice that the "Board shall be composed of ex officio non-voting members and general trustee voting members." *Id.* ¶ 29; *see also* Declaration of Joseph LaFauci ("LaFauci Decl.") ¶¶ 3–4, Ex. A (confirming that *ex officio* members have "never counted toward a quorum of voting members" or "voted"); Declaration of William Shuster ("Shuster Decl.") ¶ 2, Ex. B (same). The proposed bylaw changes were provided to trustees and put to a vote at the May meeting. *See* LaFauci Decl. ¶ 4. Plaintiff does not allege that she did vote or would have voted against this amendment; nor does she allege that her participation would have defeated this vote. *See* ECF No. 12 ¶ 29. Indeed, at that vote, the amendments to the bylaws passed unanimously; no *ex officio* trustee or general trustee raised any objection or even sought discussion on the matter. *See* LaFauci Decl. ¶ 4.

4

On December 18, 2025, the Board voted to add Donald J. Trump's name to the Center. *See* ECF No. 12 ¶ 32. Plaintiff, who virtually attended the meeting at which that change was proposed and adopted, alleges that she sought to speak in order to raise "a concern" but "found herself muted" and "unable" to speak. *Id.* ¶ 36. At the end of the meeting, the Board "declared that the vote had been unanimous." *Id.* Plaintiff does not allege that her continued participation could or would have changed the outcome of the vote; she does not allege that a sufficient number of Board members agreed with her position to prevent a majority of trustees from voting to add President Trump's name to the Center's building and website. *See id.*

On February 1, 2026, President Trump announced that the Center would close for approximately two years for construction, revitalization, and "[r]ebuilding," subject to Board approval. *Id.* ¶ 44. On February 20, Plaintiff sent the President and Defendant Grenell a letter expressing concerns about the construction, and seeking eight categories of information related to the closure. *See id.* ¶ 50.

On February 27, Plaintiff learned by her own means of the upcoming Board meeting on March 16 and further learned that the Board will receive a presentation on upcoming improvements, discuss the closure, and vote on the closure. *See id.* ¶ 53. Although she alleges that she was not invited to participate in the meeting, Plaintiff did receive an invitation—sent to her personal email address, which was listed as her primary contact in accordance with her direction— to attend. *See* LaFauci Decl. ¶ 2. Indeed, Plaintiff will be permitted to attend the meeting, like any *ex officio* or general trustee. *See id.* Like any trustee, she will have the ability to participate in the meeting, subject to orderly management at the discretion of the Chair. *See id.* ¶ 6. Trustees will receive an update on construction—a preliminary version of which was shared with members of the Board's Building and Grounds Committee—at the upcoming March 16 Board meeting. *See id.*

Plaintiff initially filed this lawsuit on December 22, 2025. *See* Compl., ECF No. 1. Following announcement of the upcoming Board meeting, Plaintiff amended her complaint and moved for a temporary restraining order on March 6, 2026. *See* ECF No. 12; ECF No. 13.

## LEGAL STANDARD

"The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order . . . is very high." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 2d 58, 75 (D.D.C. 2013) (citation omitted). It is "never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion," *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citation omitted).

A party moving for a temporary restraining order "must demonstrate '(1) a substantial likelihood of success on the merits, (2) that [she] would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.' " *Jack's Canoes*, 933 F. Supp. 2d at 75–76 (quoting *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). Where, as here, the government opposes a motion for emergency injunctive relief, the third and fourth factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I.    Plaintiff Is Not Substantially Likely to Succeed on the Merits.

At this stage, Plaintiff seeks a temporary restraining order only to require Defendants to allow her to attend, participate, receive information relating to, and vote at the upcoming March 16 Board meeting. But there is no barrier to her attendance, participation, or receipt of information, and as an *ex officio* member she has no right to vote under the Center's bylaws.

**A.      Much of Plaintiff's emergency request—concerning attendance and participation at the upcoming meeting—is premised on factual inaccuracies.**

Plaintiff's primary complaint at this preliminary stage concerns her allegation that she was not invited to attend or participate in the Board's upcoming March 16 meeting. *See* ECF No. 13-1 at 10–11. Plaintiff is incorrect. She was invited to the meeting. *See* LaFauci Decl. ¶ 2. She will be permitted to attend. *See id.* And she will be permitted to participate, to the same extent as any other trustee, subject to the rules governing Board proceedings and as applied in the Chair's discretion. *See id.* ¶ 6. Any claim that Defendants will infringe Plaintiff's (asserted) rights to attend and participate in the upcoming meeting is groundless. She will have the same access to the meeting that every other trustee of the Board possesses. Plaintiff's primary request for emergency relief thus must fail as insufficiently substantiated.

**B.      Plaintiff is not substantially likely to show that the Center violated the terms of the trust by amending its bylaws to reaffirm longstanding voting practices.**

Plaintiff argues that it is a breach of trust to prevent her from voting at the March 16 Board meeting. But she acknowledges that the Center's bylaws clearly and expressly provide that only "general trustee" members—not the *ex officio* members of the Board, like Plaintiff—are entitled to vote on Board matters. ECF No. 12 ¶ 29; *see also* Ex. C to Pl.'s Mot. for TRO at 4, ECF No. 13-5. And the very common-law sources that Plaintiff cites confirm that the Board may change trustees' voting rights consistent with "the applicable governing document"—here, the Center's amended bylaws. Ex officio, *Black's Law Dictionary* (12th ed. 2024); *see also* Document (governing document), *Black's Law Dictionary* (12th ed. 2024) (noting that an "organization's governing documents may include a charter, articles of incorporation or association, a constitution, *bylaws*, and rules" (emphasis added)). Indeed, without any specific right to vote, Plaintiff's common-law sources suggest a trustee has no claim to any right at all. *See* Restatement (Second) of Trusts § 380 (1959) (noting that "the trustee of a charitable trust can properly exercise such

powers and *only* such powers" as "are conferred upon him in *specific words* by the terms of the trust" (emphasis added)).

Plaintiff is therefore forced to argue that the Center's bylaws—which were amended last year to reflect the longstanding custom and practice that only general trustees vote on Board matters, *see* LaFauci Decl. ¶¶ 3–4—are themselves unlawful. That argument is meritless. The statutory provisions governing the Center do not create or define any specific rights for trustees. Plaintiff's allegations purport to identify a statutory basis for Plaintiff to participate in Board meetings, vote on Board decisions, and receive information necessary to discharge her fiduciary obligations. *See* ECF No. 12 ¶ 85. But, in reality, she can cite no federal provision granting any right to vote as a Center trustee, or, indeed, any other right, because none exists. *See generally* 20 U.S.C. § 76h. So Plaintiff's allegation that the Board's May 2025 bylaw amendment violated the terms of the trust by removing a right that the terms confer on her, *see* ECF No. 13-1 at 16–17, is flatly incorrect.

All that the relevant provisions do is provide that the Board "be composed of" *ex officio* and general trustees. 20 U.S.C. § 76h(a)(2); *see also id.* § 76*l*(b) (providing that the "Board shall have all the usual powers and obligations of a trustee in respect of all trust funds administered by it"). And so it is. Plaintiff's claim rests entirely on a determination that the trust's "powers and obligations" include an obligation to ensure that all trustees always have a right to vote on and to receive advance information about Board matters. The text of the statute, however, does not contain any such requirements. *See id.* §§ 76h, 76*l*. Nor is it remotely unusual for different classes of trustees to have different rights to participate in a trust's administration and governance. *See, e.g.*, *Steneck v. Univ. of Bridgeport*, 668 A.2d 688, 690 (Conn. 1995) (describing different classes of trustees in bylaws for a state-chartered university, including non-voting honorary trustees).

Instead of specifying the trustees' rights, Congress affirmatively conferred on the Board broad authority to manage its own affairs: the Board "is authorized" to make "bylaws, rules, and regulations relating to the administration of its trust funds and the organization and procedure of the Board." 20 U.S.C. § 76*l*(a). And those bylaws, which were duly adopted by Board vote, exclude Plaintiff from voting rights, as she acknowledges.

Plaintiff cites a litany of statutes governing federally chartered trusts, each of which, she notes, provides certain rules and limits laying out the rights and responsibilities of *ex officio* and general trustees within each respective trust. *See* ECF No. 13-1 at 13–16 (collecting statutes). Tellingly, however, she cannot cite any similar provision in the statutes governing the Center's activities. Plaintiff tries to draw from that contrast an inference that Congress intended for all of the Center's trustees to have full voting rights. *See id.* at 16. But the more compelling inference is the exact opposite: if Congress knows how to impose restrictions on a Board's ability to manage its affairs—*e.g.*, by explicitly providing that certain trustees do and do not have voting rights— then its decision not to impose similar restrictions on the Center suggests it intended the Board to have full discretion to manage its internal affairs. *See* 20 U.S.C. § 76*l*(a).

Similar logic applies to Plaintiff's asserted informational right: Congress gave the Board discretion to determine the "procedure[s]" it would undertake to administer its trust funds. *Id.* Such discretion extends to the procedures—embodied in "bylaws, rules, and regulations," *id.*—that the Board might follow to discuss and vote on Board matters. The Center plans to provide trustees with information about proposed construction at the upcoming March 16 Board meeting. *See* LaFauci Decl. ¶ 6. Plaintiff has no basis, either in law or in the Center's bylaws, to obtain emergency injunctive relief because she believes that procedure is somehow inadequate.

9

In short, the significant discretion trusts have under the common law to manage their affairs, *see Hooker v. Edes Home*, 579 A.2d 608, 614 (D.C. 1990) (noting trustees' "discretionary day-to-day administration of the trust"), wholly defeats the weak presumption Plaintiff cites to attempt to read restrictions into the Center's statutes that simply do not exist.

### C.   Plaintiff has not satisfied the relevant common-law requirements to bring a breach-of-trust claim.

Plaintiff's request for emergency relief also fails for another reason. She alleges that, as "co-trustee," she may "sue to enforce the terms of the trust." ECF No. 12 ¶ 14. And she asserts that the Board's decision to prevent *ex officio* trustees from participating in the Board's vote "violated Plaintiff's rights as a trustee." *Id.* ¶ 85. But Plaintiff has failed to show that she satisfies the state-law predicates, as a trustee, to challenge the Board's actions.[2]

Plaintiff cites generally to the Third Restatement of Trusts and to a California Supreme Court case to invoke the "basic principle" that a trustee may bring claims against co-trustees to prevent a breach of fiduciary duties. ECF No. 13-1 at 21 (citing Restatement (Third) of Trusts § 94 and *Holt v. Coll. of Osteopathic Physicians & Surgeons*, 394 P.2d, 932, 934 (Cal. 1964) (en banc)). But she does not identify the source of law that *actually* applies here to govern her claim. *See id.* Given the location of the Center in the District of Columbia and the fact that this Court and the D.C. Circuit have previously assessed similar trustee claims under the laws of the District of

---

[2] Plaintiff cites to Restatement (Third) of Trusts § 94 for the "basic principle" that a trustee may bring claims against co-trustees. But any claim rooted in a trustee's right to sue to enforce the terms of a *private* trust stumbles immediately: private trusts exist only "for the benefit" of their "beneficiaries, who must be identified or ascertainable." Restatement (Third) of Trusts § 27(2). The Center, if it can even be construed as a classical trust, serves "purposes that are beneficial to the community" at large, not any specifically identifiable or ascertainable beneficiaries. *Id.* § 28(f); *see also* 20 U.S.C. § 76j(a)(1) (outlining the Center's responsibilities, including to present music, develop education policy and programming, and provide for other civic activities at the Center). At best the Center is a charitable trust, which is subject to very different legal rules, including a balancing of policy concerns and objectives. *See* Restatement (Third) of Trusts §§ 27(1), 28, 94 cmt g; *Hooker*, 579 A.2d at 614–15.

Columbia, providing persuasive and potentially binding precedent for this Court to apply, Defendants proceed here as if District of Columbia law governs.[3]

"Traditionally, 'only a public officer' " could "bring an action to enforce a charitable trust." *He Depu v. Yahoo! Inc.*, 950 F.3d 897, 905 (D.C. Cir. 2020) (quoting *Fam. Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 244 (D.C. 2015)). That rule derives from the traditional recognition that the beneficiary of a trust may generally sue to enforce its terms. *See Hooker*, 579 A.2d at 612 ("[I]t appears that at least a clearly identified intended beneficiary has a justiciable interest in enforcement of the trust."). But, where the benefit of a trust extends to the public at large, any cause of action is more limited given the "impossibility of establishing a distinct justiciable interest on the part of a member of a large and constantly shifting benefited class." *Id.* Accordingly, only a representative of the public could possibly be a proper plaintiff to enforce a charitable trust. *See id.*

The District of Columbia allows a narrow exception for individuals who have a "special interest" in the "continued performance of the trust distinguishable from that of the public at large" to sue to enforce the terms of a trust. *He Depu*, 950 F.3d at 905 (quoting *Fam. Fed'n*, 129 A.3d at 244); *accord* Restatement (Third) of Trusts § 94 cmt. g (outlining "special interest" doctrine for enforcement of charitable trusts). To show that a plaintiff has such a "special interest," the D.C. Court of Appeals requires: (1) that the action "challenge an 'extraordinary measure threating the existence of the trust,' not just an 'ordinary exercise of discretion' committed to the trustees"; and

---

[3] And, at any rate, District of Columbia law on trustees' rights to enforce the terms of charitable trusts accords with the common-law treatises Plaintiff cites. *Compare Hooker*, 579 A.2d at 614 (outlining the "special interest" doctrine permitting a limited class of individuals to sue to enforce charitable trusts), *with* Restatement (Third) of Trusts § 94 cmt. g (outlining the "special interest" doctrine permitting certain persons to enforce charitable trusts and noting the "balancing of policy concerns and objectives" factoring into the assessment of those persons' claims).

(2) that the plaintiff "belong to a class of potential beneficiaries that is 'sharply defined' and 'limited in number.' " *He Depu*, 950 F.3d at 906 (quoting *Hooker*, 579 A.2d at 614–15); *see also Fam. Fed'n*, 129 A.3d at 244–45 (applying *Hooker* test to "ousted directors" as "alleged successor trustees"); *Fam. Fed'n for World Peace & Unification Int'l v. Moon*, 338 A.3d 10, 27–28 (D.C. 2025) (affirming dismissal of claims brought by ousted directors because they did not challenge "extraordinary measures"), *cert. denied*, ---S. Ct.---, 2026 WL 642851 (Mar. 9, 2026).

Plaintiff fails out of the gate at the first prong, because the actions she challenges—(1) the Board's institution and application of a policy that *ex officio* trustees do not vote on Board actions and (2) the Board's day-to-day administration of meetings—reflect an "ordinary exercise of discretion" that does not "threaten[] the existence of the trust." *He Depu*, 950 F.3d at 906 (citation omitted); *see also Fam. Fed'n*, 129 A.3d at 245 n.18 (noting that the plaintiffs, including ousted directors, were "challenging an extraordinary measure—fundamentally changing the purpose of [the trust]"); *see also* 20 U.S.C. § 76*l*(a) (authorizing Board to promulgate bylaws, rules, and regulations "relating to" the "organization and procedure of the Board"). Plaintiff does not allege that the Board's decision to exclude her and other *ex officio* members from voting "threaten[s]" the Center's existence, which is necessary to proceed with her claims. *He Depu*, 950 F.3d at 906; *see also* ECF No. 12 ¶¶ 42–43 (alleging only harm to institution in form of lost ticket sales and cancelled artist performances). Nor could Plaintiff credibly claim that such an exclusion is an extraordinary change, considering that the Center has operated throughout its history, to the knowledge and belief of the Center's current administration, without permitting *ex officio* trustees to vote. *See* LaFauci Decl. ¶ 3; Shuster Decl. ¶ 2.

A decision to implement a policy governing trustees' voting rights—by effecting a change in the Center's bylaws, no less—sits at the core of the Board's "discretion." *He Depu*, 950 F.3d at

906 (citation omitted); *cf. Hooker*, 579 A.2d at 615–16 (indicating that "select[ion]" of beneficiaries and "sale of trust property" fall within board's ordinary discretion); *Alco Gravure, Inc. v. Knapp Found.*, 479 N.E.2d 752, 755–56 (N.Y. 1985) (explaining that beneficiaries may only sue where they challenge not the "ongoing administration of a charitable corporation" but "the dissolution of that corporation and the complete elimination of the individual plaintiffs' status as preferred beneficiaries"). Plaintiff's claims here thus fail because she merely challenges an "ordinary exercise" of the Board's discretion in administering the trust. *Hooker*, 579 A.2d at 615; *see* 20 U.S.C. § 76*l*(a).

It makes sense that trustees do not have a right to challenge in court each and every action a board of trustees takes as contrary to the board's fiduciary duties. Such a holding would generate "recurring burdens on the trust res and trustee[s] of vexatious litigation that would result from recognition of a cause of action by any and all of a large number of individuals who might benefit incidentally from the trust." *Hooker*, 579 A.2d at 612. The trust's bylaws and their procedures provide the best mechanisms for brooking debate, creating consensus, and consummating final acts of the Board. Permitting this suit to proceed here, and granting Plaintiff's emergency request, would create a mechanism for every aggrieved trustee to challenge every action his board took over his objection. That kind of result flies in the face of longstanding trust law.

\*    \*    \*

Plaintiff has failed to show that the Board violated the terms of the Center's trust because she can point to no provision conferring on her the right to vote (or any other right) that she claims. And she fails to show that her claim here against the trust permits her, as a trustee, to sue the trust to enforce its terms. She is thus not substantially likely to succeed on the merits.

II.     **Plaintiff Has Not Met Her Burden to Show She Will Suffer Irreparable Harm.**

A temporary restraining order is appropriate only if the applicant has demonstrated irreparable harm, a "threshold requirement in granting temporary injunctive relief." *New Mexico v. Musk*, 769 F. Supp. 3d 1, 5 (D.D.C. 2025) (citation omitted). The injury alleged must be "both certain and great, actual and not theoretical, beyond remediation, and of such *imminence* that there is a clear and present need for equitable relief." *Id.* (citation omitted). And a plaintiff must present a court with enough evidence to "substantiat[e]" their claim of irreparable injury. *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Plaintiff cannot demonstrate irreparable harm. The central thrust of her asserted injury— being prevented from attending and participating in the upcoming Board meeting, at least to the same extent that any attendee will be permitted to participate, *see* ECF No. 13 at 1; ECF No. 13-1 at 27–29—is entirely unsubstantiated by available evidence. Indeed, the Center invited Plaintiff— just as it invited each trustee—to attend the upcoming meeting. *See* LaFauci Decl. ¶ 2; ECF No. 13-1 at 10. Plaintiff's apparent failure to take notice of that invitation, which the Center sent to the primary method of contact she provided, cannot be a basis to invoke emergency relief here.

Further, Plaintiff cannot demonstrate irreparable harm by asserting a right to receive information in her capacity as a trustee that has not yet been made available to all trustees of the Board. *See* LaFauci Decl. ¶ 6. Indeed, per Plaintiff's own allegations, the meeting itself will serve to provide trustees with a "Presentation on Improvements" and a "Discussion on Closure." ECF No. 12 ¶ 53; *see also* LaFauci Decl. ¶ 6. Even if Plaintiff could show she has some right to receive the specific information she identified in her demand letter, she cannot show she will be irreparably harmed at this preliminary stage precisely because she *will* receive information about the proposed renovations at the upcoming Board meeting.

Finally, Plaintiff cannot demonstrate irreparable harm sufficient to receive a temporary restraining order establishing her right to vote because she has slept on her rights. The Board amended its bylaws in May 2025 to affirm that *ex officio* members do not vote on Board matters. That was seven months before the Board's December 2025 renaming vote and ten months before the upcoming March 16 Board meeting. Plaintiff's failure to timely challenge that vote should not and cannot serve as the basis for extraordinary temporary relief only one week before the meeting at which Plaintiff seeks to exercise her purported right. Plaintiff did not raise any objection to the proposed amendment to the bylaws at the meeting at which the proposal passed. *See* LaFauci Decl. ¶ 4. Indeed, she never raised any dispute with the change in her voting rights until she first filed this lawsuit (and, even there, Plaintiff's initial complaint failed to make any reference to the bylaws change). *See id.* ¶ 4; *see generally* ECF No. 1. Her failure to object then, roughly ten months ago, cannot serve as the basis for emergency relief now. *See Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (noting that a delay of "over two months" in bringing an action "militates against a finding of irreparable harm"); *Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) (holding that, although a delay in filing may not be the sole basis for denying preliminary injunctive relief, an "untimely filing[] may support a conclusion that the plaintiff cannot satisfy the irreparable harm prong").

Plaintiff has failed to substantiate her allegation that she will suffer irreparable harm absent extraordinary relief. She has thus failed to show a temporary restraining order is warranted.

## III.    The Balance of the Equities Favors Defendants.

Finally, emergency injunctive relief is only appropriate if the balance of equities weighs in the movant's favor. *Winter*, 555 U.S. at 24. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (citation omitted). Plaintiff argues here that "Defendants cannot claim any

cognizable harm in providing Plaintiff the information to which she is entitled and allowing her to participate in Board meetings." ECF No. 13-1 at 35.

To start: as noted above, Plaintiff has been invited to the meeting and is permitted to attend. *See* LaFauci Decl. ¶ 2. That very fact obviates nearly all of the harm Plaintiff asserts. Further, Plaintiff incorrectly suggests that it would cause Defendants no harm to provide her the eight categories of information she requested at this preliminary stage. *See* ECF No. 13-1 at 35. To the contrary, granting such relief would require Defendants to provide preliminary information to Plaintiff, before it has been finalized, and before it will be shared with the full Board, which will receive relevant information on the proposed renovation at the upcoming Board meeting. *See* LaFauci Decl. ¶ 6. That would inflict significant harm on Defendants, who are already in the process of preparing relevant information for trustees to consider. *See id.* And, moreover, Plaintiff *will* be provided with information regarding the proposed construction at the Center at the meeting. *See id.* She will have access to all the information necessary to discharge any duties she may have as a trustee of the Center, including reasonable access to all "material facts relative to" the construction. *See* ECF No. 13-1 at 19 (quoting *Benedict v. Amaducci*, No. 92 Civ. 5239, 1993 WL 87937, at *9 (S.D.N.Y. Mar. 22, 1993)); *see also* LaFauci Decl. ¶ 6.

Further, Defendants have been significantly prejudiced by Plaintiff's failure to raise any challenge to the Board's voting procedures until one week before the meeting at which Plaintiff seeks to assert her purported voting rights. As discussed above, the Board passed the amendment without objection in May 2025, roughly seven months before the Board's December vote and ten months before Plaintiff first raised any challenge to those procedures in any forum, by amending her complaint in this lawsuit. The Board has been engaged in significant planning activities since well before February 1, when construction plans were announced, *see* LaFauci Decl. ¶ 5, acting

16

all the while under the assumption that its duly adopted bylaws were properly in effect. Plaintiff

has provided no excuse for why her challenge to the Board's bylaw amendment is so substantially

delayed. And, ultimately, Plaintiff has provided no evidence that her participation in the May 2025

amendment, December 2025 vote, or upcoming March 2026 vote would have changed or will

change any of those votes' outcomes. Indeed, her allegations seemingly establish the opposite.

*See, e.g.*, ECF No. 12 ¶ 36 (noting that "nothing could or would change" the Board's unanimous

December vote); *id.* ¶ 38 (noting that only five *ex officio* trustees raised concerns about the Board's

vote, out of a total of twenty-three *ex officio* and thirty-six general trustees). Plaintiff's asserted

harm from her inability to vote is thus weak, and the prejudice to Defendants from intervention

now is severe. That fact tips the balance of equities squarely in Defendants' favor.

Finally, any order requiring the Board to set aside its bylaws to allow *ex officio* trustees to

vote at the upcoming meeting would enact significant harm to Defendants' ability to carry out the

lawful terms of their bylaws, as authorized by Congress. *See* 20 U.S.C. § 76*l*(b). Indeed, although

the Center is not a traditional government agency, *see Dong v. Smithsonian Inst.*, 125 F3d 877,

883 (D.C. Cir. 1997) (holding that the Smithsonian Institution, the Center's parent institution, is

not an agency under the Privacy Act), such an order would thwart the Center's ability to

"effectuat[e] statutes enacted by representatives" of the people of the United States. *Maryland v.*

*King*, 567 U.S. 1301, 1303 (2012) (citation omitted). Such an injury is always "a form of

irreparable injury." *Id.* (citation omitted). Further, the public interest is not served—and would

affirmatively be harmed—by this Court's intervention in what fundamentally distills to an internal

dispute about the proper method of administering the corporate or trust entity at issue. *See Depu*

*v. Oath Holdings Inc.*, 715 F. Supp. 3d 1, 26–27 (D.D.C. 2022) (citing *Hooker* for the proposition

that trusts creating a "public benefit" and "social gains" should not be subject to the "recurring

burdens" of "vexatious litigation" that would result from granting an expansive recognition of a cause of action to challenge trusts' actions (quoting *Hooker*, 579 A.2d at 610, 612)). Intervention now would signal that *any* trustee of any trust or similar nonprofit entity might receive similar relief simply because they disagree with an action the majority of their board voted to take.

In sum, Plaintiff faces little irreparable harm at this emergency stage. And Defendants' equities weigh heavily in favor of denying emergency relief now. The balance of the equities thus favors Defendants.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiff's motion for a temporary restraining order.

Dated: March 10, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

STEPHEN M. ELLIOTT
Assistant Branch Director

*/s/ William S. Jankowski*
WILLIAM S. JANKOWSKI
D.C. Bar No. 90021524
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
(202) 353-7578
william.s.jankowski@usdoj.gov

*Counsel for Defendants*