# Exhibit V

**JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS**

**INTERIM PROCUREMENT POLICIES AND PROCEDURES**

The President of the John F. Kennedy Center for the Performing Arts (the "Center") hereby adopts the following policies and procedures (the "Policies") on an interim basis to govern the procurement of contracts for goods and services including, but not limited to, those for the design, construction, maintenance, renovation, restoration and security of the buildings and grounds operated or owned by the Center. The President will share these Policies with the Building and Grounds Committee and will obtain its input prior to issuing a final set of Policies.

These Interim Procurement Policies and Procedures were adopted on November 17, 2025.

**Table of Contents**

100    General
101    Applicability
102    Senior Procurement Executive
103    Delegation of Authority to Contracting Officers
104    Authority and Duties of Contracting Officer
105    Contractor Qualification Requirements
106    Responsibility
107    Organizational Conflicts of Interest; Disqualification
108    Market Research
109    Preparing Solicitations
110    Publicizing Procurement Opportunities
111    Contract Types
112    Fixed-Price Contracts
113    Cost Reimbursement Contracts
114    Project Delivery Methods
115    Indefinite Delivery/Indefinite Quantity Agreements
116    Time and Materials Contracts and Labor Hours Contracts
117    Contracting Procedures Generally
118    Sole Source Contracts
119    Sealed Bidding
120    Competitive Negotiation
121    Simplified Contracting Procedures
122    DC Supply Schedule; GSA Schedule
123    The Contracting Officer's Responsibility for Contract Administration
124    Payment Requests
125    Exercising the Contract Options
126    Contract Modifications
127    Contract Termination

128     Contract Documentation
129     Disputes
130     Protests
131     Forms and Templates

**100**         **GENERAL**

100.1       These Policies set forth the procurement rules of the Center which was established by an act of Congress (Pub. L. No. 85-874 and codified at 20 U.S.C. § 76h(a)(1) which is referred to herein as the "Act"). The Center is governed by a Board of Trustees (the "Board"), and the Board is authorized to maintain and administer the Center as the National Center for the Performing Arts. Section 4(a)(2)(A) of the Act authorizes the Board to enter into contracts in order to carry out the functions of the Board which functions include maintenance, repairs and improvements to the Center's buildings and physical plant. Both the Board and the Center are exempt from the procurement rules generally applicable to the federal government and have the authority to issue and implement their own procurement rules.

100.2       The Board has authorized the President of the Center (the "President") to oversee and supervise the contracting function of the Center insofar as it relates to the maintenance, repair, improvement and security of the Center and directs the President to follow the procedures set forth in these Policies when entering into such contracts. The President is authorized to delegate his authority to the Senior Procurement Executive (the "SPE") and employees of the Center pursuant to the provisions of these Policies.

100.3       These procurement rules are for the benefit of the Center and are not intended to confer any rights or benefits on third parties. The principal purposes of these rules are to ensure that the Center's procurement activities:

(a)     Are carried out in a fair and objective manner that promotes confidence in the Center's integrity; and

(b)     Produce reasonable value and reasonable results for the Center, as determined by its President.

100.4       The President may waive the applicability of any provisions in these Policies that are not specifically required by statute if the President finds in writing that:

(a)     Such waiver is in the best interest of the Center;

(b)     Such waiver is not inconsistent with fair, competitive, and transparent procurement practices; and

(c)    Such waiver is technical in nature and would not alter the substantive business terms of a procurement after proposals have been received.

(e)    Such waiver has been developed in consultation with appropriate personnel (i.e. General Counsel, CFO, SPE, Vice President of Operations (VPO))

100.5    The Federal Acquisition Regulations and most federal procurement requirements generally do not apply to the Center's procurement activities. Given the unique status of the Center and to ensure that the Center and its vendors have a common understanding as to the legal requirements that are applicable to work performed for the Center, each contract entered into by the Center shall include a list of applicable statutory, regulatory, or executive requirements for the work performed, which list shall be determined by the Center's legal counsel in consultation with the SPE. Legal counsel may elect to require contracts to adhere to Executive Orders or Presidential Memoranda, even if not otherwise mandatory.

**101        APPLICABILITY**

101.1    These rules apply to the procurement of goods or services, including construction services, made by the Center in connection with maintenance, repair, improvement, and security across the building and grounds owned or operated by the Center:

(a)    Whether through purchase or lease; and

(b)    Whether the goods or services are already in existence or must be developed.

101.2    A procurement of goods or services does not include any goods or services that the Center may acquire as a gift, on a pro bono basis, or pursuant to agreements with any agency of the District of Columbia or federal governments.

101.3    These rules do not apply to:

(a)    The purchase or lease of real property by the Center;

(b)    The disposition of real or personal property by the Center; or

(c)    The retaining of individuals to serve as on-site consultants for specific, time-limited assignments.

**102**      **SENIOR PROCUREMENT EXECUTIVE**

102.1     The President shall appoint a duly qualified individual to serve as the Center's Senior Procurement Executive (the "SPE").  Working under the supervision of the Chief Financial Officer (the "CFO"), the SPE shall have overall responsibility for supervising the Center's procurement activities and to award any contracts pursuant to these rules. The President and SPE shall have the authority to award any contract.

**103**      **DELEGATION OF AUTHORITY TO CONTRACTING OFFICERS**

103.1     The SPE may delegate his or her contracting authority to employees of the Center who shall be designated as Contracting Officers. Any such delegation shall be in writing and shall specify any limits on a Contracting Officer's delegated authority (for example, limits on the dollar value of contracts the individual is authorized to award). In no case shall a Contracting Officer's authority exceed the SPE authority.

103.2     In delegating his or her contracting authority, the SPE shall ensure that each delegated Contracting Officer has the experience, knowledge, and judgment necessary to fulfill the duties of a Contracting Officer, including a solid understanding of the Center's Policies. Subject to compliance with these Policies, Contracting Officers have wide latitude to exercise business judgment in conducting procurements and managing contracts. Consequently, the ability to exercise that discretion wisely and responsibly is an important job qualification. In addition, the SPE shall ensure that Contracting Officers regularly receive training to strengthen and update their skills and knowledge concerning procurement matters.

**104**      **AUTHORITY AND DUTIES OF CONTRACTING OFFICER**

104.1     Only the President, SPE or a Contracting Officer shall have the authority to award, modify, or terminate contracts; provided, however, that prior to terminating any contract, the Contracting Officer shall first obtain the approval of the SPE. As necessary or appropriate in exercising his or her authority, a Contracting Officer shall request and consider the advice of specialists in auditing, law, technical disciplines, and other relevant fields.

104.2     A Contracting Officer for a particular procurement shall be responsible for:

(a)      Making any determination or findings that may be required in connection with that procurement;

(b)     Ensuring that all statutory and regulatory requirements that apply to the procurement have been identified and observed;

(c)     Ensuring that all necessary preconditions to contract award have been satisfied before the contract is awarded;

(d)     Maintaining the contract file, which serves as the repository for all required documentation concerning the procurement and any resulting contracts; and

(e)     Ensuring that all offerors participating in a procurement receive fair and impartial treatment.

104.3   The SPE holds the inherent authority to serve as a Contracting Officer.

**105     CONTRACTOR QUALIFICATION REQUIREMENTS**

105.1   (a)     To be eligible to receive a contract from the Center, a prospective contractor must satisfy three (3) basic qualification requirements. Specifically, the prospective contractor must:

        (1)     Be responsible; and

        (2)     Not be disqualified on the basis of conflicts of interest (either personal or organizational) or related ethical concerns.

        (3)     Must have a valid registration in the System for Award Management (SAM.gov)

    (b)     The issues of responsibility and conflicts of interests/disqualification are addressed in Sections 106 and 107, respectively.

**106     RESPONSIBILITY**

106.1   To receive a contract from the Center, a contractor must be responsible. To be considered responsible, a contractor must:

(a)     Have (or can obtain) the financial, technical, and organizational skills and resources, and the facilities and equipment, necessary to perform the contract in accordance with its terms;

(b)     Have a satisfactory performance record and relevant experience;

(c)     Have a satisfactory record of integrity and business ethics;

(c)     Have not been suspended, debarred, or otherwise ineligible to receive contracts from the Federal Government;

(d)     Meet any other qualification criteria that may be imposed by applicable laws or regulations; and

(e)     Provide adequate evidence that it has paid and filed all applicable federal income taxes and returns.

106.2    The Contracting Officer shall make a written determination if the contractor is found to be non-responsible. The Contracting Officer may, but is not required to, make a written determination if the contractor is found to be responsible.

106.3    In evaluating a prospective contractor's responsibility, a Contracting Officer may request information from the contractor and may also consider information available from other sources. Where necessary, the Contracting Officer may also perform a pre-award survey involving interviews with contractor personnel or visits to the contractor's facilities. Information on the capabilities and suitability of proposed subcontractors also may be considered in evaluating responsibility.

**107       ORGANIZATIONAL CONFLICTS OF INTEREST; DISQUALIFICATION**

107.1    The Center intends to avoid even the appearance of conflict of interest or impropriety in connection with its procurement activities.  Thus, even if a prospective contractor is determined to be responsible, the SPE has the discretion to disqualify the contractor (or to take other appropriate measures) based on a conflict of interest or another ethical consideration. Prior to taking any such action, however, the SPE shall confer with the Center's legal counsel.

107.2    If the Contracting Officer determines that there is a conflict of interest, the appearance of a conflict of interest, or another ethical consideration, the Contracting Officer, after consultation with the SPE, may:

(a)     Disqualify a contractor at any point during a procurement;

(b)     Rescind or terminate a contract subsequent to contract award; or

(c)     Take other appropriate corrective measures, such as canceling a pending solicitation and initiating a new procurement; provided, however, that prior to taking any such action, the Contracting Officer shall first obtain the approval of the SPE and CFO.

107.3    A determination by the Contracting Officer to take a corrective measure described in subsection 107.2 shall be made in writing and included in the contract file.

107.4   The ethical considerations that may authorize disqualification or another corrective measure go beyond a violation of the ethics and conflict of interest rules of the Center and the prospective contractor, if any.  The SPE or Contracting Officer may properly take corrective measures whenever necessary or prudent to avoid the appearance of impropriety or otherwise eliminate doubts about the integrity and fairness of a procurement. For example, situations in which corrective measures might be warranted include (but are not limited to):

   (a)   Cases where an employee of the Center involved in a procurement had a relationship with a contractor that fell outside the Center's recusal rules, but nonetheless raised questions about the procurement's integrity;

   (b)   Cases where a prospective contractor received preferential treatment in relation to its competitors;

   (c)   Cases where a prospective contractor hired a former employee of the Center who was privy to non-public information about the procurement, and involved that individual in its proposal preparation efforts; or

   (d)   Cases where there is clear evidence suggesting collusive bidding or similar anti-competitive practices by prospective contractors.

107.5   "Organizational conflicts of interest" also may warrant disqualification or other corrective measures. Organizational conflict of interest means a situation in which a contractor:

   (a)   May be unable to render impartial and objective assistance or advice to the Center; or

   (b)   May have an unfair advantage over potential competitors.

107.6   Organizational conflicts of interests can arise in a variety of circumstances. For example, a contractor that develops the technical specifications for an item that will be the subject of a future procurement may have an incentive to develop specifications favoring its own products unless it is barred from participating in the future procurement. Another example is a case where a contractor performs services for the Center that require access to non-public information (for example, proprietary data of other companies) and could therefore gain an unfair advantage over competitors in future procurements.

107.7   A number of measures may be appropriate for eliminating or mitigating organizational conflicts of interest, and the SPE has broad discretion to select the approach that is most suitable in any particular case. For example, a contract to assist the Center in developing requirements for a future procurement ordinarily

should include a clause prohibiting the contractor from participating in the future procurement. A contract in which the contractor gains access to proprietary information of other companies (or non-public information on the Center's procurement plans) should include an appropriate clause that prevents the contractor from using such information in any manner that might give it an unfair advantage.

107.8     In each case, the mechanism adopted to address an organizational conflict of interest should be designed to prevent:

(a)     The existence of conflicting roles that might bias a contractor's judgment; and

(b)     An unfair competitive advantage.

## 108     MARKET RESEARCH

108.1     Before issuing a solicitation or making a purchase, the Center shall:

(a)     Estimate the likely cost of the proposed procurement and ensure that adequate funds are available; and

(b)     Conduct appropriate market research.

108.2     Market research is designed primarily to familiarize the Center with the market for the goods or services it seeks to acquire in order to develop an appropriate strategy for conducting a prompt and efficient procurement that promotes reasonable competition between qualified firms. The extent of market research will vary depending on factors such as urgency, the size and complexity of the proposed procurement, and the Center's existing knowledge of the market based on its (or its key personnel's) past experience in procuring similar goods or services.

108.3     Market research, to the extent it is relevant to the particular procurement and not already known to the Center, generally should focus on obtaining information such as the following:

(a)     Customary practices in the relevant market;

(b)     The prospective sources that may be able to supply the goods or services;

(c)     The benchmarks available to evaluate the likely cost of the procurement and the reasonableness of prices or costs proposed by prospective contractors; and

(d)     The requirements of any laws or regulations unique to the procurement.

108.4     In conducting market research, the Center may solicit information from prospective sources on matters such as their interest in the potential procurement, the characteristics and costs of their products or services, their customary practices, and their knowledge of the industry generally. Such information may be solicited by requesting interested parties to submit written information (for example, by posting a notice on the internet seeking information pertinent to the proposed procurement), through meetings or telephone contacts, by distributing and seeking comments on a draft solicitation, or through other prudent means.

108.5     In addition to soliciting information from prospective contractors, the Center may also obtain information from other sources. For example, price information that can assist in estimating the likely cost of a procurement and in evaluating price reasonableness is frequently available from sources such as catalogs, internet sites, or records of past procurements, and the Center may obtain information from these sources.

**109     PREPARING SOLICITATIONS**

109.1     Following the conduct of market research, the SPE or Contracting Officer shall make a determination as to which procurement method identified in these Policies is most beneficial to the Center. The Center will ordinarily prepare a solicitation requesting responses; however, the Center may determine to purchase the required goods or services through its small purchase procedures or from local, state, or federal government supply schedules (such as GSA Schedules). Additionally, the Center is authorized to purchase through the following multi-state/national cooperative purchasing organizations: OMNIA Partners and Sourcewell.

109.2     When the Center issues a solicitation, its length and contents will depend on factors such as the size of the procurement, the nature and complexity of the goods or services, the contracting procedure to be used, and the contract type. In general, however, a solicitation should clearly describe the Center's needs (for example, by providing a statement of work outlining the type of services required or information specifying product characteristics or capabilities) and its evaluation criteria.

109.3     In preparing a solicitation, the Center should seek to enhance competition by carefully scrutinizing and eliminating, to the extent possible, any unnecessary requirements that may restrict the number of prospective sources or the range of goods or services they can offer. Such provisions may include, for example, technical specifications that unnecessarily limit the competitive field, unnecessarily aggressive delivery schedules, or burdensome terms and conditions that might deter smaller companies from competing.

109.4 The Center may issue solicitations in paper form or electronically. The Center may also use oral solicitations where efficient and practical (for example, where the procurement does not involve extensive specifications, detailed evaluation criteria, or numerous line items). Oral solicitations shall not be used for contracts that have an estimated value in excess of fifteen thousand dollars ($15,000).

109.5 The Center may cancel a solicitation or reject all bids or proposals received at any time before the contract award when cancellation is in the Center's best interests. The Center may cancel a solicitation after bids or proposals have been received only if (i) it lacks sufficient funding to support the price quoted by the lowest qualified bidder; (ii) it determines that it no longer needs the goods or services in question; or (iii) it has determined after reviewing the bids or proposals received that the requested goods or services are no longer market appropriate; provided, however, that prior to making any such determination the SPE shall confer with the CFO and General Counsel and obtain their concurrence.

## 110 PUBLICIZING PROCUREMENT OPPORTUNITIES

110.1 The Center may use a variety of methods to publicize a procurement. The specific method or methods used should be tailored to the particular procurement, taking into account factors such as the size of the procurement, the type of goods or services sought, the urgency associated with the requirement, and the most efficient means of disseminating information in the relevant market. The methods available to publicize procurement opportunities offered by the Center include print advertising, Internet notices, developing source lists of qualified firms known to supply particular categories of goods or services, soliciting specific sources through written notices or telephone contacts, and holding pre-bid or pre-proposal conferences.

110.2 In addition to publication or other method of publicizing the procurement opportunity described in Section 110.1, unless otherwise specified in this chapter, the Center shall also compile a list of at least three (3) vendors that the Center reasonably believes are qualified to provide the services or goods specified in a solicitation and shall provide those vendors with a copy of the solicitation. If the Center is unable to locate at least three (3) potential vendors, the Center shall provide the solicitation to as many vendors as it can reasonably identify.

110.3 The Center shall provide a copy of any solicitation to any interested party that requests such solicitation unless the Center has a legitimate reason based on (i) confidential information that Center is not at liberty to disclose; or (ii) the need to protect the safety and security of its employees, patrons or others who may use or access the Center.

**111      CONTRACT TYPES**

111.1      The type of contract awarded by the Center will generally depend on factors such as the particular goods or services to be acquired, whether the costs of the goods or services can be estimated in advance with reasonable accuracy, and the degree to which the precise nature and extent of the contract work is known at the time of award.

111.2      The Center may use a variety of contract types, including:

(a)      Fixed price contracts (fixed price contracts will generally be used in connection with the Design-Bid-Build delivery method pursuant to Section 114.3(a), purchases of discrete and identifiable goods or assets, and for other appropriate purchases);

(b)      Cost reimbursement contracts (cost reimbursement contracts will generally be used in connection with the Construction Manager at Risk, Construction Manager with Design Assist, Design Build; and Modified Design-Build delivery methods pursuant to Section 114.3(b)-(e) and for other appropriate purchases);

(c)      Delivery order contracts; and

(d)      Time-and-materials or labor hours contracts.

111.3      The Center may also award any alternative type of contract that will produce reasonable value in the context of a particular procurement. However, the Center may not award cost-plus-percentage-of-cost contracts.

**112      FIXED-PRICE CONTRACTS**

112.1      Fixed price contracts include several variants:

(a)      Firm, fixed price contracts;

(b)      Fixed price contracts with economic price adjustment; and

(c)      Fixed price incentive contracts.

112.2      Unlike cost reimbursement contracts, any type of fixed price contract obligates the contractor to complete the contractually-specified work for a fixed price.

112.3      A firm fixed price contract provides for a price that is not subject to adjustment, except in the event of a change to the contract work.

112.4    A fixed price contract with economic price adjustment provides for an upward or downward adjustment in the stated contract price based on changes in certain benchmarks specifically identified in the contract (for example, catalog prices or the producer price index for a particular commodity), subject to a ceiling on upward adjustments.

112.5    A fixed price incentive contract generally provides for establishing a final price by applying a formula based on the relationship between the total cost actually incurred by the contractor and a total target cost. A fixed price incentive contract results in the parties sharing in the cost savings or increases associated with differences between the actual and target cost. These contracts also can include incentive formulas based on the contractor's schedule or technical performance.

## 113    COST REIMBURSEMENT CONTRACTS

113.1    Cost reimbursement contracts provide for the contractor to recover the reimbursable costs it incurs in contract performance, plus a fee (that is, a profit).

113.2    A reimbursable cost must be:

(a)    Reasonable in nature and amount;

(b)    Properly allocable to the contract;

(c)    Determined in accordance with generally accepted accounting principles; and

(d)    Not identified as nonreimbursable under the terms of the particular contract.

113.3    To ensure that the Center's payment obligations are not open-ended, a cost reimbursement contract must specify an estimated total cost that the contractor cannot exceed (the "not-to-exceed limit"), except at its own risk, without the SPE or Contracting Officer's written approval. Because the contractor can cease performance once it reaches the estimated total cost (unless the SPE or Contracting Officer approves an increase), it is not obligated to complete the contract work unless it can do so within the not-to-exceed limit.

113.4    Cost reimbursement contracts can take three (3) forms:

(a)    Cost-plus-fixed-fee;

(b)    Cost-plus-incentive-fee; and

(c)    Cost-plus-award-fee.

113.5 The differences between the types of cost reimbursement contracts listed in Section 113.4 relate to the manner in which the contractor's fee is determined.

113.6 A cost-plus-fixed-fee contract provides for a fee that is fixed at the contract's inception and is not subject to adjustment unless the contract is modified to change the contract work.

113.7 A cost-plus-incentive-fee contract provides for a fee that generally is determined by applying a formula based on the relationship between the contractor's total reimbursable cost and a total target cost, subject to a specified minimum and maximum. These contracts also can include incentive formulas based on the contractor's schedule or technical performance.

113.8 A cost-plus-award-fee contract provides for:

(a) A base fee fixed at the contract's inception; and

(b) An award fee that the contractor may earn (in whole or in part) during performance, which is designed to motivate superior performance.

113.9 The award fee in a cost-plus-award-fee contract is determined unilaterally by the Center, based on its judgment and evaluation of how well the contractor has performed in relation to the award fee criteria identified in the contract. In no event shall the total award fee available to the contractor exceed ten percent (10%).

113.10 In appropriate circumstances, the Center may include a guaranteed maximum price ("GMP") in a cost reimbursement contract. A GMP differs from a not-to-exceed amount in that a contractor is required to complete performance of the base scope of work required under the contract for an amount that does not exceed the GMP. Under such an approach, if the total cost exceeds the GMP, the contractor shall be required to complete performance of the base scope of work at its own cost and expense.

**114      PROJECT DELIVERY METHODS**

114.1 Within the contract types described in Sections 111 through 113, the Center may adopt a number of project delivery methods, including Design-Bid-Build, Construction Manager at Risk, Construction Manager with Design Assist, Design-Build, Modified Design-Build, and other methods that are in the Center's best interest.

114.2 As part of the procurement planning process, the Center will determine the most appropriate delivery method for the project based on, among other considerations,

the scope of work, existing building conditions, project delivery schedule, existing market conditions, and other relevant considerations.

114.3    The general types of delivery methods include:

(a)    Design-Bid-Build:  Under this delivery method, the Center retains an architect to design the project. Once the design is complete, the drawings are put out to bid.  This delivery method results in a fixed price (or lump sum) type contract.

(b)    Construction Manager at Risk:  Under this delivery method, the Center will retain an architect to design the project. However, shortly after the design begins, the Center will engage a contractor to act as a construction manager. Typically, the contractor's work is divided into two (2) phases. During the first, or preconstruction, phase, the builder will work with the architect to ensure that the design is constructible, properly coordinated, and affordable. During the second, or construction, phase, the contractor is required to construct the project. At this point, the contractor may be required to provide the Center with a guaranteed maximum price.  In order to ensure that costs are properly controlled, the Center requires that the contractor bid its fee upfront and that all of the major trade packages be competitively bid by the contractor.

(c)    Construction Manager with Design Assist: Under this delivery method, the Center conducts the project in a manner similar to the Construction Manager at Risk approach.  However, in the Construction Manger with Design Assist approach, a portion of the design work, typically the mechanical, electrical and plumbing systems, is managed by the contractor.

(d)    Design-Build: Under this approach, the Center retains a single entity to be responsible for the design and construction activities. Work under the Design-Build approach is typically divided into two (2) phases: preconstruction and construction. The contractor is required to bid its fees upfront and all of the major trade packages must be competitively bid as well.

(e)    Modified Design-Build: Under this approach, the Center uses a bridging methodology where it will engage an architect during the early stages of the project (referred to as design development) and then assign the architect's contract to the contractor at the appropriate stage of the project. The remainder of the project then proceeds under the Design-Build approach.

114.4    The Center may combine aspects of the methods listed in Section 114.3 or alter aspects of these methods if doing so is in the best interest of the Center.

114.5    Contractors, including architects, construction managers, and design builders, required to facilitate these delivery methods shall be selected in accordance with the contracting procedures in Sections 117 through 122.

**115      INDEFINITE DELIVERY/INDEFINITE QUANTITY AGREEMENTS**

115.1    Under an indefinite delivery/indefinite quantity agreement (also known as task order contracts or an ID/IQ contract), the contractor's performance obligations are triggered when the Center subsequently issues task orders pursuant to the contract. ID/IQ agreements are generally used to purchase recurring types of services that are associated with routine maintenance and repair activities.

115.2    ID/IQ agreements include:

(a)    Requirements contracts; and

(b)    Indefinite quantities contracts.

115.3    A requirements contract provides the mechanism for the Center to order from the contractor all of its requirements for designated supplies or services during a specified period (subject to any maximum ordering limitation in the contract). This type of contract should only be used when the Center determines that a requirements contract will provide superior economic benefits to an ID/IQ contract as it locks the Center into one (1) source of supply for the goods or services required under the agreement. A requirements contract must be approved by the SPE in addition to the Contracting Officer.

115.4    An ID/IQ contract provides for an indefinite quantity, within specified limits, of supplies or services to be furnished during a fixed period.

115.5    An ID/IQ contract:

(a)    Requires the Center to order and the contractor to deliver at least the stated minimum quantity of supplies or services; and

(b)    Requires the contractor to deliver any additional quantities the Center may order during the contract period (subject to any maximum quantity limitations in the contract).

115.6    The Center may award a single ID/IQ contract for particular goods or services, or may award multiple contracts and choose between the selected contractors in awarding subsequent delivery orders.

115.7    If an ID/IQ contract is used, the Center shall establish, at the time of award, a procedure by which work will be awarded ("award procedure").

115.8    Generally, one (1) of the following two (2) award procedures shall be used:

(a)    The rotating award procedure, where work is assigned on a rotation basis (that is, the first task order is given to Contractor A, the second task order to Contractor B, etc.); or

(b)    The competitive award procedure, where the Center requests task order proposals from two (2) or more contractors holding an indefinite delivery contract.

115.9    The competitive award procedure is preferred.

115.10    If the competitive award procedure is used, each task order request shall specify:

(a)    The specific goods or services required;

(b)    A delivery date; and

(c)    Such other information as the Center may reasonably request.

**116    TIME AND MATERIALS CONTRACTS AND LABOR HOURS CONTRACTS**

116.1    Time-and-materials contracts provide for acquiring supplies or services on the basis of:

(a)    Direct labor hours charged at fixed hourly rates that include overhead and profit; and

(b)    Materials (which may be charged either at their actual cost or at fixed unit prices).

116.2    A labor hours contract is a time-and-materials contract that does not involve materials.  Both types of contracts should specify a ceiling price.

**117    CONTRACTING PROCEDURES GENERALLY**

117.1    Except as authorized by the President, every procurement shall be conducted in accordance with Policies, suitable to the specific procurement, that produce fair and reasonable value and results.

117.2    The contracting procedures the Center may include, but are not limited to, the procedures described in Sections 118 through 122.

117.3    Prior to initiating a procurement, the SPE or Contracting Officer shall obtain from the Center's Finance Department a Funds Availability Certification that identifies adequate funds are available for the proposed obligation. The SPE or Contracting Officer shall include a copy of this certificate in the contract file for each such procurement.

117.4    Prior to awarding any contract in excess of $250,000, the SPE or Contracting Officer is prohibited from fully executing the contract until a properly completed routing slip has been obtained, demonstrating concurrence from key organizational stakeholders. This essential internal control requires documented approval from the Executive Vice President, the General Counsel, the CFO, and the VPO.

## 118    SOLE SOURCE CONTRACTS

118.1    The SPE may award contracts on a sole-source basis if:

(a)    The goods or services sought by the Center are available from only one (1) responsible source; or

(b)    Circumstances beyond the Center's control require an immediate award; or

(c)    The requirement is unique or has a compelling business interest. A documented cost/benefit analysis is required to justify the efficiency and best interest of award.

118.2    The Contracting Officer must initiate a written Determination and Findings (D&F), certifying that the requirements of Section 118.1(a) or 118.1(b) are met. The Contracting Officer's D&F is then submitted to the CFO for concurrence. Once concurred upon, the SPE executes the D&F for circumstances under 118.1(a) or 118(b). If a sole-source procurement meets the Section 118.1 requirements and receives the necessary CFO concurrence, Presidential approval is not required.

118.3    The VPO must initiate a written D&F, certifying that the requirements of Section 118.1(c) are met. The VPO's D&F is then submitted to the CFO for concurrence. Once concurred upon, the SPE executes the D&F for circumstances under 118.1(c). If a sole-source procurement meets the Section 118.1 requirements and receives the necessary CFO concurrence, approval of the President is not required.

118.4    If the requirement of Section 118.1 has not been met, the Center shall adopt a competitive procurement strategy in which it evaluates bids or proposals from any source that wishes to compete or from a reasonable number of qualified sources.

118.5    If the Center makes a determination pursuant to Section 118.1 that a sole source procurement is necessary to meet an essential requirement of the Center, the D&F prepared under Section 118.2 or 118.3 serves as the required written documentation and shall authorize the immediate procurement goods, services, or construction without regard to the competitive procedures set forth in Sections 119, 120, 121 and 122.  In all other cases, the Contracting Officer shall use the procedures specified in Sections 119, 120, 121 or 122.

118.6    The written D&F initiated by the Contracting Officer or VPO and concurred upon by the CFO shall be consolidated into a single document for any sole source award and must include:

(a)    Justification for Non-Competition: A description of the nature of the requirement and a detailed explanation of why the award meets one of the criteria in Section 118.1 (a), (b), or (c).

(b)    Fair and Reasonable Price: A finding that anticipated costs to the Center are fair and reasonable.

(c)    Market Research/Contingency: For awards under Section 118.1(b), a description of circumstances which were not reasonably foreseeable, and a description of steps taken to solicit bids or proposals from as many potential competitors as possible under the circumstances.

118.7    The SPE shall not make a procurement under this section to meet a continuing need of the Center beyond what is necessary to meet the circumstances or until a competitive solution can be implemented.

**119    SEALED BIDDING**

119.1    The solicitation used to initiate a procurement conducted by sealed bidding is known as an Invitation for Bids ("IFB").

119.2    If the Center issues an IFB, the Center shall allow prospective bidders a reasonable time to prepare and submit bids. Except in the event of an emergency, this time period shall be no less than ten (10) business days.

119.3    The evaluation factors used in sealed bid procurements are limited to price and price-related factors.

119.4    The IFB shall specify:

(a) Any information necessary to explain how the Center will evaluate price (for example, whether option prices will be evaluated);

(b) Any price-related factors that will be evaluated and their relative importance in the overall evaluation scheme;

(c) A description of the goods or services sought (including quantity requirements);

(d) The contract delivery schedule;

(e) A description of any special qualification requirements the contractor must satisfy;

(f) Instructions for submitting bids (including the deadline for bid submission, the method(s) for submitting bids, any representations or certifications bidders must submit, and any requirements for the submission of items such as bid samples, subcontracting plans, or payment or performance bond);

(g) The period during which bids must remain open for acceptance; and

(h) The contract's terms and conditions.

119.5 Any changes in the information set forth in an IFB must be made by an amendment to the IFB.

119.6 Bids shall be submitted by a method specifically permitted by the IFB (for example, hand delivery, mailing, electronic transmission, or fax).

119.7 A bid may be withdrawn or modified at any time before bid opening by any of the methods permitted for submitting bids.

119.8 A late bid (or late modification or withdrawal) shall not be considered, except that the Center may accept a late modification to an otherwise successful bid that makes the bid more favorable to the Center. A late bid is any bid received after the bid date, unless such delay is caused by the Center.

119.9 The Contracting Officer shall prepare and maintain in the contract file an abstract listing the bid prices.

119.10 The contract shall be awarded to the qualified bidder whose bid is responsive to the IFB and is most advantageous to the Center considering only price and the price-related evaluation factors identified in the IFB.

119.11    To be considered responsive, a bid must comply in all material respects with the IFB. Responsiveness involves matters that relate to the bid itself as opposed to the responsibility or other qualifications of the bidder. In determining whether a bid is responsive, the Contracting Officer has the discretion to permit correction of minor informalities or irregularities.

119.12    The Contracting Officer shall endeavor to include with every IFB solicitation the form of the contract that the contractor will be required to enter into. To the greatest extent possible, the Center should endeavor to provide clear, concise contract documents. Contracts which consist of the solicitation, the proposal, and other documents attached together but not integrated into a single contract document are discouraged.

## 120    COMPETITIVE NEGOTIATION

120.1    The solicitation used to initiate a procurement conducted by competitive negotiation is known as a Request for Proposals ("RFP").

120.2    If the Center issues an RFP, the Center shall establish a reasonable deadline for offerors' submission of initial proposals.

120.3    The evaluation criteria used in procurements conducted by competitive negotiation include price or cost (including, but not limited to, hourly rates for services and fixed fees for cost reimbursement contracts) along with any other factors appropriate to the particular procurement (for example, the offeror's technical approach, past performance, etc.).

120.4    The RFP may, if the Center deems it advisable, contain either an estimate that generally describes the price range contemplated by the Center or a funding limitation for the procurement.

120.5    The RFP shall specify all evaluation factors and their relative importance. The RFP should also include:

(a)    A description of the goods, services, or scope of construction work sought (including quantity or estimated quantity);

(b)    The contract delivery schedule (including any permitted variations in the delivery schedule);

(c)    A description of any special qualification requirements the contractor must satisfy;

(d)    Instructions for submitting proposals including: the deadline for proposal submission, the method(s) for submitting proposals, the information to be provided in the proposal (including any requirements for past performance information or for subcontracting plans), and any representations or certifications the offeror must submit;

(e)    The period during which proposals must remain open for acceptance; and

(f)    The anticipated contract terms and conditions and the extent to which they are negotiable.

120.6    Any changes in the information set forth in an RFP must be made by an amendment to the RFP. Amendments shall be made no less than three (3) business days before the proposal submission date specified by the RFP.

120.7    Proposals shall be submitted by a method specifically permitted by the RFP.

120.8    The Center shall evaluate proposals based solely on the evaluation criteria specified in the RFP.  Where past performance is an evaluation factor, the Center is not limited to considering only the information from references listed by the offeror.

120.9    After initial proposals have been evaluated, the Contracting Officer may:

(a)    Make an award based on initial proposals; or

(b)    Establish a competitive range consisting of those proposals that remain under consideration (or a single proposal that remains under consideration) and initiate discussions with competitive range offerors. A competitive range shall include all proposals that, in the Contracting Officer's judgment (erring on the side of the offeror), could be awarded the procurement.

120.10    Discussions with offerors may be written (including electronic) or oral. The primary objective of discussions is to maximize the Center's ability to obtain the best value based on the evaluation factors set forth in the RFP. The scope and extent of discussions are a matter of Contracting Officer judgment.

120.11    At the conclusion of discussions, the Contracting Officer shall request that all offerors that still remain under consideration submit best and final offers by a common cut-off date.

120.12    The contract shall be awarded to the qualified offeror whose offer is most advantageous to the Center under the RFP's evaluation criteria.

120.13      The Contracting Officer shall prepare documentation explaining the basis for the contract award decision which shall be maintained in the contract file.

120.14      The Contracting Officer shall endeavor to include with every RFP solicitation the form of the contract that the contractor will be required to enter into. To the greatest extent possible, the Center should endeavor to provide clear, concise contract documents. Contracts which consist of the solicitation, the proposal, and other documents attached together but not integrated into a single contract document are discouraged

**121        SIMPLIFIED CONTRACTING PROCEDURES**

121.1       The basic purposes of simplified contracting procedures are to:

(a)      Promote economy, efficiency, and innovation in contracting;

(b)      Reduce administrative costs to the Center; and

(c)      Avoid unnecessary burdens or complexities that could reduce competition, such as by deterring smaller contractors from participating in a procurement.

121.2       Simplified contracting procedures may be used only with contacts that have an estimated value equal to or less than two hundred fifty thousand dollars ($250,000).

121.3       The Contracting Officer shall conduct simplified procurements in the manner that is most suitable, efficient, and economical based on the circumstances of each acquisition. As appropriate, the Contracting Officer may elect to use or adapt procedures that are part of the sealed bidding or competitive negotiation process.

121.4       On a simplified procurement, the Contracting Officer shall:

(a)      Promote competition to the extent practicable and efficient;

(b)      Establish reasonable deadlines for the submission of responses to solicitations; and

(c)      Evaluate quotations or offers in an impartial manner on the basis established in the solicitation.

121.5       If a contract that has an estimated value of more than fifteen thousand dollars ($15,000) is procured through the simplified contracting procedures, the Center shall obtain written quotes from at least two (2) potential suppliers.

121.6    The Contracting Officer may solicit quotations orally in appropriate cases when doing so is practical and economical. When soliciting quotations orally, the Contracting Officer shall instruct suppliers to respond in writing.

121.7    An oral solicitation shall provide a clear description of the Center's requirements (for example the type of goods or services sought, quantities, and schedule) and the basis on which the award will be made.

121.8    Written solicitations shall provide a complete statement of relevant information without being unnecessarily lengthy. A written solicitation should include the same information required in an oral solicitation, plus the following:

    (a)    Anticipated contract terms and conditions (and the extent to which they are negotiable);

    (b)    Applicable certifications or representations; and

    (c)    Instructions for submitting responses.

121.9    The basis for award may be price or cost alone or price/cost and other factors. Solicitations are not required to state the relative importance assigned to each evaluation factor.

121.10    The price/cost and other terms of the award shall be set forth in a written contract or purchase order. The Contracting Officer shall include a statement in the contract file briefly explaining the basis for the award decision.

**122    COOPERATIVE AGREEMENTS AND SUPPLY SCHEDULES**

122.1    The Center's procurement flexibility extends beyond standard solicitations by explicitly permitting the use of established government contracts and national cooperative agreements.

122.2    The Center is authorized to purchase required goods and services from various established supply schedules, which include, but are not limited to, local, state, or federal government supply schedules (such as GSA Schedules). These schedules are competitively awarded, long-term contracts that allow for the acquisition of goods and services at pre-negotiated prices, thereby expediting the procurement process.

122.3    In addition to leveraging supply schedule contracts, the Center may utilize designated national cooperative purchasing agreements. These agreements allow the Center to "piggyback" onto contracts that have been competitively solicited and awarded by other entities or "lead agencies". This method eliminates the need for the Center to conduct new, full competitive solicitations. The specific,

approved national cooperative purchasing agreements currently include: OMNIA Partners and Sourcewell. Use of these cooperative agreements enables the Center to achieve economies of scale and obtain best value through contracts awarded via a comprehensive public procurement process.

**123      THE CONTRACTING OFFICER'S RESPONSIBILITY FOR CONTRACT ADMINISTRATION**

123.1     The Contracting Officer for a particular contract has overall responsibility for the contract's administration. Among other things, this requires the Contracting Officer:

(a)      To monitor whether goods or services are delivered or completed on schedule and conform to contract requirements;

(b)      To ensure that any contractually required inspection or acceptance procedures are followed;

(c)      To monitor the contractor's compliance with any subcontracting requirements contained in the contract; and

(d)      To identify and attempt to resolve issues or problems that arise during contract performance.

123.2     The Contracting Officer is the only representative of the Center with the authority to take the following actions:

(b)      Exercise contract options;

(c)      Terminate the contract; and

(d)      Modify the contract.

123.3     Prior to terminating a contract, the Contracting Officer shall first obtain the approval of the SPE or CFO if the SPE is serving as the Contracting Officer.

123.4     No representative of the Center, including a Contracting Officer, shall:

(a)      Act in a manner that misleads a contractor regarding the limits of his or her authority; or

(b)      Direct or encourage a contractor to perform work that has not been properly authorized.

**124      PAYMENT REQUESTS**

124.1    Requests for payment must be submitted in writing by the contractor.

124.2    Contractor payment requests shall:

(a)    Certify that the contractor is entitled to payment in the requested amount; and

(b)    Include or attach any information necessary to demonstrate entitlement to the requested payment under the contract's terms.

124.3    Depending on the contract's payment provisions, a payment request may consist of, for example, a statement that specified work has been completed in a satisfactory manner, documentation showing that contract deliverables have been accepted by the Center, or information detailing the reimbursable costs incurred by the contractor.

124.4    A payment authorization shall not preclude the Center from seeking repayment (or pursuing other remedies) if it subsequently concludes that the contractor was overpaid or otherwise mispaid.

**125      EXERCISING CONTRACT OPTIONS**

125.1    The Contracting Officer may exercise a contract option upon determining that:

(b)    The goods or services covered by the option fulfill an existing need; and

(c)    Exercising the option is the most advantageous method of fulfilling the Center's need.

125.2    The determination to exercise a contract option shall be in writing and shall be included in the contract file.

125.3    To exercise an option with any associated dollar value, the Contracting Officer must first obtain the approval of the SPE and the Contracting Officer shall obtain from the Center's Finance Department a Funds Availability Certification that identifies adequate funds are available for the proposed expenditure. The SPE or Contracting Officer shall include a copy of this certificate in the contract file for each such procurement.

**126      CONTRACT MODIFICATIONS**

126.1    The Contracting Officer may modify a contract subject to the provisions of this section.

126.2    A modification must be within the general scope of the original contract. Any requirement for extra work that goes beyond the contract's general scope shall be the subject of a new procurement.

126.3    Prior to approving a contract modification the Contracting Officer shall obtain from the Center's Finance Department a Funds Availability Certification that identifies adequate funds are available for the proposed expenditure. The SPE or Contracting Officer shall include a copy of this certificate in the contract file for each such procurement.

126.4    A contract modification may be effected:

(a)    By a bilateral agreement executed by the Contracting Officer and an authorized representative of the contractor; or

(b)    By the Contracting Officer's issuance of a written change order, when the contract includes a changes clause permitting the Center to make unilateral changes in the contract work. Under such a clause, the contractor is obligated to perform in accordance with a change order issued by the Contracting Officer, and the contract price is adjusted to reflect the increase or decease in costs caused by the change.

**127    CONTRACT TERMINATION**

127.1    All contracts awarded by the Center shall include "Termination for Default" and "Termination for Convenience" clauses specifically defining the Center's termination rights.

127.2    When exercising the Center's rights under a termination clause in the contract, the SPE shall provide the contractor with a written notice specifying:

(a)    Whether the termination is for default or for convenience;

(b)    The effective date of the termination;

(c)    The extent of the termination if the termination is partial; and

(d)    Any special instructions that apply to the termination (for example, instructions concerning the disposition of contract inventory).

127.3    After terminating a contract for convenience, the SPE shall request a settlement proposal from the contractor and shall attempt to negotiate a settlement that resolves all of the parties' rights and liabilities (except those arising from any portion of the contract still in effect). If the parties negotiate a settlement, the SPE

shall prepare a memorandum describing the principal elements of the settlement and shall include the memorandum in the contract file.

127.4    The SPE must receive written approval from the CFO and General Counsel prior to termination of a contract.

**128    CONTRACT DOCUMENTATION**

128.1    The Contracting Officer is responsible for maintaining documentation regarding the contract and the procurement.

128.2    The contract file shall include:

(a)    The solicitation and any amendments;

(b)    The contract and any modifications;

(c)    Any type of documentation that is specifically required to be maintained in the contract file by other sections of this chapter;

(d)    Any other documentation that may be necessary to memorialize important decisions or events relating to the procurement or the contract.;

(e)    A Funds Availability Certification issued by the Center's Finance Department that indicates adequate funds are available for the proposed action; and

(f)    A routing slip demonstrating concurrence of contract award from key organizational stakeholders identified in 117.4.

**129    DISPUTES**

130.1    Each contract entered into by the Center shall include a disputes clause which sets forth the procedures by which disputes shall be resolved.

130.2    The disputes clause shall encourage informal resolution through representatives of the Center and the Contractor which process shall include an opportunity for the contractor to escalate the matter to level of the President. If such informal resolution is not successful, the disputes clause shall provide that any such dispute shall be heard in the federal courts located in the District of Columbia.

**130    PROTESTS**

130.1    All protests to the award of a contract by the Center shall be resolved in accordance with this section.

130.2      A protest shall be submitted to the Contracting Officer in writing.

130.3      A protest shall include:

(a)      The name of the protestor;

(b)      The name of the protestor's counsel or other representative;

(c)      A detailed description of the basis for the protest; and

(d)      A description of the relief requested.

130.4      The SPE shall be the initial decision maker and shall promptly issue a decision with regard to a protest. If, however, the SPE does not make a decision within 15 days after such protest is filed, the protest shall be deemed denied.

130.5      The protestor may appeal the SPE's decision to the CFO.

130.6      An appeal of the SPE's decision shall be submitted to the CFO within three (3) business days after the protestor receives the SPE's decision.

130.7      The decision of the CFO shall be the Center's final decision with regard to the protest.

130.8      (a)      All protests must be filed within the timeframes established in this subsection to be considered by the Center.

(b)      A protest that is not filed within these timelines will not be considered by the Center, and the protestor shall be deemed to have waived the right to protest.

(c)      A protest that is based on the language or requirements of a solicitation or is otherwise based on facts which are apparent on the face of the solicitation shall be filed at least five (5) business days before the date proposals are due.

(d)      A protest that is not based on the language or requirements of a solicitation or otherwise based on facts which are apparent on the face of a solicitation must be submitted within five (5) business days after the protestor knows or should have known of the facts that serve as the basis for the protest.

**131**      **FORMS AND TEMPLATES**

131.1    In order to facilitate smooth and efficient operations, the Center will prepare a set of standard contract forms that will be used by the SPE and Contracting Officers in procurement actions. These forms will include templates for IFBs and RFPs as well as a standard form contracts for ID/IQs and Task Orders. Contracting Officers shall use the forms as guides and shall not deviate from their material terms unless they first obtain the approval of the SPE.

131.2    Each contract entered into by the Center shall include a termination for convenience and termination for default clause in a form that has been approved by the Center's legal counsel.

131.3    Each contract entered into by the Center shall include a disputes clause in a form that has been approved by the Center's legal counsel.