**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOYCE BEATTY,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>DONALD J. TRUMP *et al.*,<br><br>　　　　　*Defendants*. | No. 25 Civ. 4480 (CRC) |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................................iii

INTRODUCTION ............................................................................................................................... 1

STATEMENT OF THE CASE ............................................................................................................ 2

    I.    Legal Background............................................................................................................ 2

    II.    Factual Background ........................................................................................................ 3

    III.    Procedural Background................................................................................................... 5

LEGAL STANDARD.......................................................................................................................... 6

ARGUMENT........................................................................................................................................ 7

    I.    The Court Should Grant Plaintiff Partial Summary Judgment ........................................ 7

        A.    The Kennedy Center Is Named For John F. Kennedy................................................. 7

        B.    The Court Should Grant Summary Judgment on Count One. ..................................... 11

        C.    The Court Should Grant Partial Summary Judgment On Count Four...................................... 15

        D.    The Court Should Grant Declaratory and Injunctive Relief. ...................................... 16

    II.    Defendants' Likely Article III Standing Arguments Are Meritless............................................. 19

CONCLUSION.................................................................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

*Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*,
778 F. Supp. 3d 56 (D.D.C. 2025) ................................................................. 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 7

*Bartlett v. Hatch*, 1864 WL 3792 (N.Y. Sup. Ct. 1864) .................................... 22

*Bost v. Illinois State Bd. of Elections*, 146 S. Ct. 513 (2026) .................... 21, 22

*Brown v. Brown-Thill*, 762 F.3d 814 (8th Cir. 2014) ......................................... 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................. 6

*Cook v. Marshall*, 126 F.4th 1031 (5th Cir. 2025) ............................................ 20

*Cook v. Trump*, 804 F. Supp. 3d 14 (D.D.C. 2025) ........................................... 16

*Crane v. Hearn*, 26 N.J. Eq. 378 (Ch. 1875) ..................................................... 22

*Dellinger v. Bessent*, 766 F. Supp. 3d 57 (D.D.C. 2025) ................................... 18

*Dong v. Smithsonian Inst.*, 125 F.3d 877 (D.C. Cir. 1997) ............................... 15

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ................................. 17

*Elmendorf v. Lansing*, 1820 WL 1653 (N.Y. Ch. 1820) ..................................... 22

*Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74 (D.D.C. 2025) ......................... 16

*Gantler v. Stephens*, 965 A.2d 695 (Del. 2009) ................................................. 13

*George v. McDonough*, 596 U.S. 740 (2022) ................................................ 12, 14

*Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2326021 (D.C. Cir. Aug. 13, 2025) .... 15

*Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023) ........................................... 19

*In re Adams' Est.*, 221 Pa. 77 (1908) ................................................................ 23

*In re Paul Smith's College of Arts and Sciences*, No. 2015-0597,
2015 WL 13413523 (N.Y. Sup. Ct. Oct. 06, 2015) ....................................... 13

*Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987) .................................... 7

*League of Women Voters of United States v. Newby,* 838 F.3d 1 (D.C. Cir. 2016) ..... 18

*Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025) ..................... 16

*Learning Res., Inc. v. Trump*, No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026) ... 16

*M.G.U. v. Nielsen*, 325 F. Supp. 3d 111 (D.D.C. 2018) ..................................... 18

*Marshall as co-trustee of 4-M River Farm Tr. v. Munder*,
No. 23 C 1958, 2023 WL 7325935 (N.D. Ill. Nov. 7, 2023) ....................... 20

*Masroor v. Noem*, No. 25-cv-256, 2025 WL 2439176 (D.D.C. Aug. 25, 2025) ... 15

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ............................... 17

*Monahan v. Holmes*, 139 F. Supp. 2d 253 (D. Conn. 2001)................................................ 20

*Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*, 26 F.4th 960 (D.C. Cir. 2022) . 15

*Nat'l Treasury Emps. Union v. Trump*, 780 F. Supp. 3d 237 (D.D.C. 2025) ............................... 16

*New Mexico v. Musk*, 784 F. Supp. 3d 174 (D.D.C. 2025)........................................................ 16

*NLRB v. Amax Coal Co.*, 453 U.S. 322 (1981)........................................................................ 12

*Open Communities Alliance v. Carson*, 286 F.Supp.3d 148 (D.D.C. 2017) ............................... 18

Perry, Jairus Ware *A Treatise on the Law of Trusts and Trustees* (4th ed. 1889) ........................ 23

*Princeton Excess & Surplus Lines Ins. v. Lexicon Title Servs., LLC*, No. 24-CV-1657 (ABJ), 2026 WL 369703 (D.D.C. Feb. 10, 2026).................................................................. 17

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................................................ 7

*Shapiro v. Tarnay*, No. 86 C 8247, 1987 WL 19140 (N.D. Ill. Oct. 22, 1987) ........................... 20

*Smith v. Pettigrew*, 34 N.J. Eq. 216 (Prerog. Ct 1881) .................................................... 22

*Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1985)........................................................... 13

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................ 22

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008)..................... 19, 20, 22, 23

*Taggart v. Lorenzen*, 587 U.S. 554 (2019) ............................................................... 12, 14

*Tanner-Brown v. Haaland*, 105 F.4th 437 (D.C. Cir. 2024)........................................... 22

*Thole v. U. S. Bank N.A*, 590 U.S. 538 (2020)............................................................. 20

*Tracy v. Cent. Tr. Co.*, 192 A. 869 (Pa. 1937)........................................................... 23

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ...................................................... 22

*United States Inst. of Peace v. Jackson*, 783 F. Supp. 3d 316 (D.D.C. 2025) ............................ 16

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962)........................................................ 7

*V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025)................ 16

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994) ...................................................... 18

**Statutes**

20 U.S.C. § 76h.................................................................................................... 17

20 U.S.C. § 76h(a)(1)....................................................................................... passim

20 U.S.C. § 76h(a)(2)............................................................................................ 2

20 U.S.C. § 76h(a)(2)(L)........................................................................................ 2

20 U.S.C. § 76h(b) ............................................................................................... 2

20 U.S.C. § 76i(a) ......................................................................................... 1, 2, 7

20 U.S.C. § 76i(c)(3)......................................................................................... 3, 9

20 U.S.C. § 76j(b)(1) ...................................................................................... passim

20 U.S.C. § 76j(b)(2) ................................................................................................ 3, 6, 9

20 U.S.C. § 76k(e) ........................................................................................................ 16

20 U.S.C. § 76*l* ............................................................................................................. 6

20 U.S.C. § 76*l*(b) ................................................................................................. passim

20 U.S.C. § 76q ........................................................................................................... 2, 8

31 U.S.C. § 1341 ............................................................................................................ 10

Consolidated Appropriations Act, 2026 § 718, Pub. L. No. 119-75 (2026) ................................ 10

Joint Resolution Providing for Renaming the National Cultural Center as the John F. Kennedy
    Center for Performing Arts, Pub. L. No. 88-260, 78 Stat. 4 (1964) ........................................ 2, 9

**Regulations**

Fed. R. Civ. P. 56(a) ...................................................................................................... 6

**Legislative Materials**

MEGA Act of 2025, H.R. 4715, 119th Cong. § 2 (2025) ............................................... 10

**Restatements**

Restatement (First) of Trusts §§ 391, 200 cmt. d. (1935) ............................................... 23

Restatement (Second) of Trusts §§ 391, 200 cmt. e (1959) ............................................ 23

Restatement (Third) of Trusts § 70 ................................................................................ 12

Restatement (Third) of Trusts § 76 ................................................................................ 12

Restatement (Third) of Trusts § 76(2)(b) ........................................................................ 13

Restatement (Third) of Trusts § 77(1) ............................................................................ 13

Restatement (Third) of Trusts § 77(2) ............................................................................ 13

Restatement (Third) of Trusts § 81 cmt. d ...................................................................... 14

Restatement (Third) of Trusts § 94 cmt. c ................................................................ 14, 21

**Other Authorities**

90A Corpus Juris Secundum Trusts § 576 ...................................................................... 14

Bogert's Law of Trusts and Trustees (Supp. rev. 2d ed. 1992) ........................................ 14

*Committee Approves FY26 Interior and Environment Appropriations Act* ................................ 10

Frankfurter, Felix, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947) 12

Hill, James, *A Practical Treatise on the Law Relating to Trustees, Their Powers, Duties,
    Privileges and Liabilities* 305 (1845) .......................................................................... 22

*Principles of Federal Appropriations Law* 3-286 (4th Ed.) .............................................. 10

Scalia, Antonin and Garner, Bryan A., *Reading Law: The Interpretation of Legal Texts*, 320
    (2012) .................................................................................................................. 12

Story, Joseph, *Commentaries on Equity Pleadings and the Incidents Thereof According to the Practice of the Courts of Equity, of England and America* 305 (3rd ed. 1844) ......................... 22

*The American Heritage Dictionary of the English Language* (5th ed. 2022) .................................. 7

*The John F. Kennedy Center for the Performing Arts Lapse Plan* (Dec. 2024) ........................... 10

*Webster's Second New International Dictionary* (1934) .................................................................. 8

*Webster's Third New International Dictionary* (1964) ................................................................... 7

**INTRODUCTION**

This motion presents a straightforward question: Can the Board of the Kennedy Center—in direct contradiction of the governing statutes—rename this sacred memorial to John F. Kennedy after President Donald J. Trump?  The answer is, unequivocally, "no."  By renaming the Center—in violation of the law—Defendants have breached the terms of the trust and their most basic fiduciary obligations as trustees.

Shortly after President John F. Kennedy's assassination, Congress designated the Kennedy Center as the "sole national memorial to the late" President in the nation's capital.  20 U.S.C. § 76q.  The statutory language could not be more unambiguous:  The "building" is "to be *designated* as the John F. Kennedy Center for the Performing Arts," *id*. § 76i(a) (emphasis added), and the Board's "duty . . . *shall* be to maintain and administer the John F. Kennedy Center for the Performing Arts" as a "living memorial to "*John Fitzgerald Kennedy*," 20 U.S.C. § 76h(a)(1) (emphasis added).  As the Court noted in its temporary restraining order ("TRO") decision, "with a handful of exceptions"—none of which apply here—"'no additional memorials or plaques in the nature of memorials shall be designated or installed in the public areas' of the Center."  TRO Op., ECF No. 24 at 5 (quoting 20 U.S.C. § 76j(b)(1)).

For decades, the trustees honored the terms of the trust as set forth in the statute and maintained the Kennedy Center as a living memorial to its namesake.  But that changed on December 18, 2025, when President Trump, through his handpicked Board purported to rename the Center after himself.  The next day, workers installed signage bearing President Trump's name *above* President Kennedy's.  The website and promotional materials now refer to the institution as the "Trump Kennedy Center."

The Court should right this wrong.  This is a pure question of law, and there are no material

disputes of fact. There is no clearer or more significant breach of fiduciary duty than the Board flouting the central purpose of the institution it is charged with protecting and which Congress enshrined into law: to maintain the Center as a memorial to John F. Kennedy—and to no one else. As the Court has already recognized, Plaintiff has the right—indeed, an obligation—to sue her co-trustees to prevent a breach of fiduciary duty. TRO Op., ECF 24 at 14. The Court should rule for Plaintiff.

## STATEMENT OF THE CASE

### I.    Legal Background

In 1964—approximately two months after President Kennedy's assassination—Congress enacted legislation renaming the National Cultural Center as "the John F. Kennedy Center for the Performing Arts" in the late President's honor. Pub. L. No. 88-260, 78 Stat. 4 (1964).

The Kennedy Center is governed by "the Trustees of the John F. Kennedy Center for the Performing Arts" (the "Board"). 20 U.S.C § 76h(a)(1). The membership of the Board is composed of 36 general trustees who are appointed by the President, *id.* § 76h(a)(2)(L), (b), and 23 trustees who serve on the Board by virtue of their public office, *id.* § 76h(a)(2). The latter category is commonly referred to as "ex officio" trustees. Congress charged the Board with "all the usual powers and obligations of a trustee." *Id.* § 76*l*(b).

The statute mandates that the Board "shall construct . . . a building to be designated as the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76i(a). The statute directs that the Board's duty "shall be to maintain and administer the John F. Kennedy Center for the Performing Arts" as "a living memorial to John Fitzgerald Kennedy." *Id.* § 76h(a)(1). And the statute designates the Kennedy Center as "the sole national memorial to the late John Fitzgerald Kennedy within the city of Washington and its environs." *Id.* § 76q.

By law, the Board "shall assure that . . . no additional memorials or plaques in the nature

2

of memorials shall be designated or installed in the public areas of the" Kennedy Center. *Id.* § 76j(b)(1). Congress enumerated three narrow exceptions to this categorical prohibition for: (i) "any plaque acknowledging a gift from a foreign country;" (ii) "any plaque on a theater chair or a theater box acknowledging the gift of such chair or box;" and (iii) "any inscription on the marble walls in the north or south galleries, the Hall of States, or the Hall of Nations acknowledging a major contribution." *Id.* § 76j(b)(2). When Congress authorized the REACH expansion in 2012, which added new rehearsal, education, and flexible spaces to the Kennedy Center, Congress additionally specified that the Board "may acknowledge private contributions" "in the interior of the project," "consistent with the requirements of section 76j(b)," but Congress was explicit that no private donors may be acknowledged "on the exterior of the project," *id.* § 76i(c)(3).

## II.    Factual Background

In February 2025, President Trump removed the Board's longtime Chair and replaced many of the previously appointed general trustees. Plaintiff's Statement of Material Facts ("SMF") ¶ 4. He appointed himself as a general trustee, and the Board elected him as Chair. *Id.* Among the newly installed trustees were his White House Chief of Staff, a Senior Advisor to the President, the Director of the Office of Presidential Personnel, the wife of the Vice President, the wife of the Secretary of Commerce, the Attorney General of the United States, and two Fox News hosts. SMF ¶ 5.

President Trump additionally replaced the Kennedy Center's experienced President with Defendant Richard Grenell. SMF ¶ 6. In May 2025, the newly constituted Board amended the bylaws to purportedly strip Plaintiff and other ex officio trustees of their voting rights. SMF ¶ 7.

Following President Trump's takeover of the Board, artists canceled their appearances at the Kennedy Center, including the Broadway musical Hamilton, actor Issa Rae, Puerto Rican band Balún, folk singer Rhiannon Giddens, and rock and roll band Low Cut Connie. SMF ¶ 32. The

3

producers of Hamilton cited a "new spirit of partisanship" under the new leadership. *Id.* Issa Rae attributed her decision to "an infringement on the values of an institution that has faithfully celebrated artists of all backgrounds through all mediums." *Id.* Balun stated, "recent events made it clear that the space no longer aligns with our values. Our safety, integrity, and commitment to justice come first." *Id.* Rhiannon Giddens explained, "I cannot in good conscience play at The Kennedy with the recent programming changes forced on the institution by this new board." *Id.* Low Cut Connie canceled its performance "[u]pon learning that this institution that has run non-partisan for 54 years is now chaired by President Trump himself and his regime." *Id.* Public reporting indicated that nearly half of the tickets were going unsold, the worst since 2018, except 2020, when the Kennedy Center was closed for most of the year due to COVID-19. SMF ¶ 33.

Before the December 2025 Board meeting, President Trump had telegraphed his desire to rename the Kennedy Center after himself, including in an August 2025 Truth Social post and at the December 2025 Kennedy Center Honors ceremony. SMF ¶¶ 8-9. On December 18, 2025, the Board convened at the private Florida home of a Republican donor whom President Trump had installed on the Board. SMF ¶ 10. Renaming the Kennedy Center appeared nowhere on the meeting's agenda. SMF ¶ 11. At the meeting's conclusion, without prior notice, Defendants abruptly announced a proposal to rename the Kennedy Center after President Trump. SMF ¶ 12. There was no meaningful discussion; when Plaintiff attempted to object, Defendants muted her; and the Board purported to vote to rename the Kennedy Center for Donald Trump. SMF ¶¶ 14-16.

On December 19, 2025, workers installed pre-fabricated signage of President Trump's name *above* President Kennedy's on the building's front portico. SMF ¶¶ 19-20. The Kennedy Center's website, emails, and promotional materials were immediately rebranded as "The Trump

4

Kennedy Center." SMF ¶¶ 22-24.

In the wake of the renaming, scores of prominent artists cancelled performances, including composer Philip Glass, Béla Fleck, the Martha Graham Dance Company, Renée Fleming, Brentano Quartet with Hsin-Yun Huang, and Chuck Redd. SMF ¶ 34. Philip Glass stated that "the values of the Kennedy Center today are in direct conflict with the message of the Symphony" and that he "feel[s] an obligation to withdraw this Symphony premiere from the Kennedy Center under its current leadership." *Id.* Brentano Quartet attributed its decision to "the recent changes at the John F. Kennedy Center." *Id.* Béla Fleck stated that performing at the Kennedy Center "has become charged and political, at an institution where the focus should be on the music." *Id.* Chuck Redd chose to cancel his appearance when he "saw the name change on the Kennedy Center website and then hours later on the building." *Id.* The Washington National Opera—using the Center as its home since 1971—also announced its departure. SMF ¶ 35. Ticket sales dropped 70% compared to the three prior years. SMF ¶ 36.

## III.    Procedural Background

Plaintiff Congresswoman Joyce Beatty serves as an ex officio trustee of the Kennedy Center by virtue of her public office. Plaintiff's Statement of Material Facts ("SMF") ¶¶ 1-2. On December 22, 2025, Plaintiff filed this action challenging the unlawful renaming of the Kennedy Center, and Defendants' efforts to prevent her from voting and speaking about the renaming at the December 18 meeting. ECF No. 1.

After President Trump announced the plan to shut down the Kennedy Center, Plaintiff filed the First Amended Complaint on March 6, 2026. ECF No. 12. That same day, Plaintiff moved for a TRO and preliminary injunction to access documents regarding the shutdown, to speak at an upcoming March 16, 2026 board meeting, to vote at the meeting, and to enjoin the shutdown. ECF No. 13.

5

On March 14, 2026, the Court issued its TRO Opinion, ensuring Plaintiff could participate in an upcoming March 16, 2026 Board meeting and receive material information in advance of the meeting.  ECF No. 24.  In its TRO decision, the Court observed that the Center is "not just as a national institution for the performing arts, but" also "a presidential memorial." *Id*. at 5.  "[W]ith a handful of exceptions, *see id*. § 76j(b)(2), 'no additional memorials or plaques in the nature of memorials shall be designated or installed in the public areas" of the Center. *Id*. § 76j(b)(1).'" *Id*. The Court also explained that "a Kennedy Center trustee can sue under 20 U.S.C. § 76*l* because the statute affords the Board 'all the usual powers and obligations of a trustee in respect of all trust funds administered by it,' *id*. § 76*l*(b)." *Id*. at 13. In enacting this precise language, "Congress intended to legislate against the backdrop of common-law trust principles," which permit a trustee to sue in certain circumstances.  *Id*. at 13-14.

Pursuant to the Court's March 18, 2026, scheduling order, Plaintiff now moves for partial summary judgment on the renaming issue, which presents a pure question of law.  Separately, Plaintiff is also filing a supplemental brief in further support of her motion for a preliminary injunction to enjoin Defendants from the effectuating the shutdown.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine

issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

## ARGUMENT

### I. The Court Should Grant Plaintiff Partial Summary Judgment.

#### A. The Kennedy Center Is Named For John F. Kennedy.

Congress was clear: The Kennedy Center is named for "John F. Kennedy," and no one else. The Board's decision to rename the Kennedy Center after President Trump is manifestly unlawful.

Start with Section 76i of the Kennedy Center's organic statute. It states: "The Board shall construct . . . a building *to be designated* as the John F. Kennedy Center for the Performing Arts." *Id*. § 76i(a) (emphasis added). The verb "designated" unambiguously establishes that the Center is named—by law—for John F. Kennedy. *See* Designate, *The American Heritage Dictionary of the English Language* (5th ed. 2022) (defining designate to mean "[t]o give a name or title to")[1]; Designate, Black's Law Dictionary (5th ed. 1979) (defining "designate" to mean "[t]o name"); Designate, *Webster's Third New International Dictionary* (1964) (defining "designate" to mean "to call by a distinctive title, term, or expression"); Designate, *Webster's Second New International*

---

[1] Available at: https://www.ahdictionary.com/word/search.html?q=designate

*Dictionary* (1934) (defining designate to mean "[t]o call by a distinctive title; to name; to characterize"). Defendants' purported redesignation of the Center to honor President Trump—without congressional authorization—defies that pellucid statutory language.

The surrounding text confirms that the trustees may not rename the Kennedy Center for another individual in addition to President Kennedy. Section 76h creates the Board, and states that the Board shall "be known as the Trustees of the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76h(a)(1). The Board's name unsurprisingly mirrors the institution which it oversees. Section 76h provides that the trustees' central "duty" "shall be to maintain and administer the John F. Kennedy Center for the Performing Arts and site thereof as the National Center for the Performing Arts, *a living memorial to John Fitzgerald Kennedy*." *Id*. (emphasis added). And nearby, in Section 76q, Congress mandated that the "John F. Kennedy Center Kennedy Center for the Performing Arts, *designated* by this subchapter, *shall be the sole national memorial* to the late John Fitzgerald Kennedy within the city of Washington and its environs." 20 U.S.C. § 76q (emphasis added).

In other words, the defining mission with which Defendants are charged is to memorialize President Kennedy, not anyone else, and to preserve the Center as the *only* such memorial in the nation's capital. Renaming the Kennedy Center for President Trump—without any authorization from Congress—undermines the Center's raison d'être, and frustrates its purpose as the only memorial to President Kennedy in Washington, D.C.

There is more. Congress expressly prohibited the trustees from attempting the kind of endeavor that Defendants undertook here. In the provision outlining the Board's duties, Congress stated that, starting December 2, 1983, the trustees "*shall* assure that" "*no additional memorials or plaques* in the nature of memorials shall be designated or installed in the public areas of the

8

John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76j(b)(1) (emphasis added). Congress then delineated three narrow exceptions to that categorical prohibition for: (i) "any plaque acknowledging a gift from a foreign country;" (ii) "any plaque on a theater chair or a theater box acknowledging the gift of such chair or box"; and (iii) "any inscription on the marble walls in the north or south galleries, the Hall of States, or the Hall of Nations acknowledging a major contribution." *Id*. § 76j(b)(2). None of these narrow exceptions permit the trustees to add President Trump's name to the Center's façade—above President Kennedy's name—and to rebrand the Center as the "Trump Kennedy Center."

Congress was particularly sensitive that no other names appear on the Center's exterior walls, other than the signage designating the institution as a memorial for President Kennedy. In the authorizing legislation, for the REACH expansion project, Congress stated that the "Board may acknowledge private contributions used in carrying out the expansion project in the interior of the project but may not acknowledge such private contributions o*n the exterior of the project*." *Id*. § 76i(c)(3) (emphasis added).

If that were not enough (it is), the legislation that established the Kennedy Center in 1964 was clear that Congress had named the institution for President Kennedy. The joint resolution's title was "Providing for *renaming* the National Cultural Center as the John F. Kennedy Center for the Performing Acts." Joint Resolution Providing for Renaming the National Cultural Center as the John F. Kennedy Center for Performing Arts, Pub. L. No. 88-260, 78 Stat. 4 (1964) (emphasis added). In the whereas clause, Congress was clear that this new "living memorial" was "*named in*" President Kennedy's "honor." *Id*. (emphasis added). Meanwhile, the bill struck out references to the "National Cultural Center" in the existing law and replaced them with the new name: "John F. Kennedy Center for the Performing Arts." *Id*. § 1. The bottom line: The Kennedy Center must

9

be named for President Kennedy—and no one else.

Tellingly, members of Congress know how to authorize the Board to deviate from the strict rules regarding names and memorials—and have declined to do so.  Last year, for example, some in Congress proposed legislation to rename the Kennedy Center's opera house for current First Lady Melania Trump.  *See* Press Release, Committee Approves FY26 Interior and Environment Appropriations Act (July 22, 2025), https://appropriations.house.gov/news/press-releases/committee-approves-fy26-interior-and-environment-appropriations-act.    Others    in Congress introduced legislation to rename the Kennedy Center itself after President Trump.  *See* MEGA Act of 2025, H.R. 4715, 119th Cong. § 2 (2025).  None of these proposals passed.

Finally, changing the Kennedy Center's name is egregious for an additional reason, although the Court need not reach this issue to rule for Plaintiff: Congressionally appropriated funds are used to maintain the Kennedy Center.  As a result, Defendants' renaming of the Kennedy Center violates a longstanding statutory mandate that no appropriated funds "shall be used" "for publicity or propaganda purposes" not "authorized by Congress."  Consolidated Appropriations Act, 2026 § 718, Pub. L. No. 119-75 (2026).[2]  This language is understood to prohibit "self-aggrandizement," including where materials are "designed to glorify" an "official"—which is precisely what Defendants have done here. *Principles of Federal Appropriations Law* 3-286 (4th Ed.),    https://www.gao.gov/assets/2019-11/687162.pdf.    Ignoring    those    conditions    on appropriations violates the Anti-Deficiency Act.  *See* 31 U.S.C. § 1341; *see also The John F. Kennedy Center for the Performing Arts Lapse Plan* (Dec. 2024), https://www.kennedy-center.org/globalassets/about-us/contingency-plan/kennedy-center-lapse-plan-december-2024-

---

[2] Section 718's language—which is routinely included in omnibus appropriations bills—mandates that "No part of any appropriation contained in this or *any other Act*," applying to funds appropriated both in that bill and other legislation.

update.pdf (detailing Kennedy Center plans to curtail certain operations, consistent with the Anti-Deficiency Act, in the event of a government shutdown).

To date, Defendants have not articulated a coherent defense of their nakedly unlawful actions.  In their response to Plaintiff's motion for a temporary restraining order, Defendants suggested the Kennedy Center is only "secondarily called the 'Donald J. Trump and the John F. Kennedy Center for the Performing Arts.' "  Def. Mem. in Opp. to TRO, ECF 19 at 1.  This is argle-bargle.  The Kennedy Center's organic statute does not permit the trustees to invent a brand new "secondary name" for the Center honoring a second individual other than President Kennedy.  Quite the opposite.  Congress named the Kennedy Center for John F. Kennedy—and placed firm limits on any other individuals for which it may be named.  Similarly, in his declaration for Defendants, Joseph LaFauci stated he works for "for the John F. Kennedy Center for the Performing Arts (doing business as and also known as the Donald J. Trump and John F. Kennedy Memorial Center for the Performing Arts[)]."  LaFauci Decl., ECF 19-1, § 1.  This also makes no sense.  Whatever powers the Board possess to use doing-business-as-names—such as when the institution uses the shorthand moniker "Kennedy Center"—that modest power does not extend to effectively rewriting the statutes Congress wrote and renaming the Center *for an entirely different person*.

In short, this is not a difficult question of statutory interpretation.  The Center is named for President Kennedy.  The purported renaming violates the law.  Full stop.

**B.  The Court Should Grant Summary Judgment on Count One.**

The Court should grant Plaintiff summary judgment on Count One of the Amended Complaint.  This Count offers the quickest and cleanest route for resolving the renaming issue.  It challenges Defendant breach of their fiduciary obligations as trustees and asserts Plaintiff's corresponding right to sue to prevent that breach.

Section 76*l*(b) of the organic statute charges Defendants with "all the usual powers and obligations of a trustee." 20 U.S.C. § 76*l*(b). As the Court observed at the TRO stage, Congress legislated "against the backdrop of common-law trust principle." TRO Op., ECF 24 at 14. In utilizing specific language to invoke the common law, Congress expressly incorporated that well-understood body of law into the statute. *See George v. McDonough*, 596 U.S. 740, 753 (2022) (explaining that "when Congress employs a term of art, that usage itself suffices to adopt the cluster of ideas that were attached to each borrowed word in the absence of indication to the contrary" (cleaned up)); *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) ("When a statutory term is obviously transplanted from another legal source, it brings the old soil with it." (quotation marks omitted)); *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981) ("Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."); Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 320 (2012) ("A statute that uses a common-law term, without defining it, adopts its common-law meaning."); Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947) (articulating "old soil" rule).

One of the basic common law "obligations of a trustee" which Congress incorporated into federal law, 20 U.S.C. § 76*l*(b), is the "duty" "to administer the trust, diligently and in good faith, in accordance *with the terms of the trust and applicable law*," Restatement (Third) of Trusts § 76 (emphasis added); *see id*. § 70 (trustee's powers are "limited by statute or the terms of the trust"). In this case, Congress set forth the trust's terms in the Center's organic statute and limited the trustee's powers by law. The organic statute designates the Kennedy Center as a living memorial to its namesake and prohibits the trustees from installing any "no additional memorials or plaques."

12

20 U.S.C. § 76j(b)(1).  The Kennedy Center's name is a central purpose of the trust.  The trustees must honor those terms. *See also In re Paul Smith's College of Arts and Sciences*, No. 2015-0597, 2015 WL 13413523, at *1 (N.Y. Sup. Ct. Oct. 06, 2015) (rejecting an application to change the name of the institution set in the trust document).  But Defendants are openly flouting the trust's terms.  In addition, Defendants are also violating their obligation to "protect[] trust property," Restatement (Third) of Trusts § 76(2)(b), by actively defacing the Kennedy Center and diluting the Center's unique association with President Kennedy's legacy.  These are quintessential breaches of duty.

The Court need not reach this issue to rule for Plaintiff, but in addition to violating the duty to follow the trust terms, Defendants violated their "obligation[]" of prudence, 20 U.S.C. § 76*l*(b), which requires trustees to "administer the trust as a prudent person would, in light of the purposes, terms, and other circumstances of the trust."  Restatement (Third) of Trusts § 77(1).  The "duty of prudence" also "requires the exercise of reasonable care, skill, and caution."  *Id.* § 77(2).  The renaming vote was not on the agenda for the December 18, 2025 Board meeting; there was no meaningful debate at the meeting; and there was no meaningful discussion about the potential risks or consequences of the renaming, for example by assessing the numerous artist cancellations in the wake of President Trump's takeover of the Board.  SMF ¶¶ 11-17, 32.  As a matter of law, prudent trustees would not vote to rename a statutory memorial, without notice, deliberation, or consideration of the consequences. *Cf. Smith v. Van Gorkom*, 488 A.2d 858, 874 (Del. 1985), *overruled on other grounds*, *Gantler v. Stephens*, 965 A.2d 695 (Del. 2009) (holding, under the significantly more deferential corporate director standard, that directors were "grossly negligent in approving the 'sale' of the Company upon two hours' consideration, without prior notice, and without the exigency of a crisis or emergency").

As this Court recognized at the TRO stage, TRO Op., ECF 24 at 14, Section 76*l*(b) provides Plaintiff the corresponding "right" as a trustee to sue to halt these egregious breaches of fiduciary duties, 20 U.S.C. § 76*l*(b).  If "a trust has several trustees, one or more of them can maintain a suit against one or more others to compel them to perform their duties under the trust or to enjoin them from committing or compel them to redress a breach of trust."  Restatement (Third) of Trusts § 94 cmt. c.  The principles are the same for charitable trusts, *see id.* § 94 cmt. f., and were incorporated into the statute that Congress enacted.  *See George v. McDonough*, 596 U.S. at 753; *Taggart*, 587 U.S. at 560.

But there is more.  Trust law—and by extension Section 76*l*(b)—imposes an affirmative "duty" on trustees like Plaintiff "to bring such a suit."  Restatement (Third) of Trusts § 94 cmt. c. "[I]t is a breach of trust for a trustee knowingly to allow a co-trustee to commit a breach of trust." *Id.* § 81 cmt. d.  In other words, should "a breach occur[], the trustee *must* take reasonable steps seeking *to compel the co-trustee to redress the breach* of trust."  *Id.* § 81 cmt. d. (emphasis added); *see, e.g.*, Bogert's The Law of Trusts and Trustees § 413 ("Cotrustees, former and subsequent trustees, or subtrustees frequently obtain standing to enforce a charitable trust."); 90A Corpus Juris Secundum Trusts § 576 ("A trustee may maintain a suit in equity against his or her cotrustee to restrain a violation of a duty.").  Plaintiff had no other option but to seek redress in this Court.[3]

Any trusteeship—but particularly the trusteeship of a sacred national memorial—carries serious "rights and obligations."  20 U.S.C. § 76*l*(b).  Defendants breached their most basic duty as trustees—as enshrined into law—when they renamed the Kennedy Center.  Plaintiff has an

---

[3] As the Court also observed in its TRO opinion, Plaintiff additionally has the ability to sue under trust law as a public official.  *See* TRO Op., ECF 24 at 19 (explaining that "Representative Beatty was appointed a trustee by virtue of her elected position, so perhaps she is a type of 'public official' who would have standing to enforce the trust under what *Hooker* calls the 'traditional rule.' ").

14

obligation to halt their unlawful action, and the right to seek judicial relief.  The Court should grant summary judgment on this Count.

### C.  The Court Should Grant Partial Summary Judgment On Count Four.

Counts Four provides the Court with an alternative avenue to rule for Plaintiff—via an *ultra vire*s claim—should the Court find Plaintiff may not proceed via 20 U.S.C. § 76*l*(b).[4]

"To state an *ultra vires* claim, a plaintiff must establish 'that (1) review is not expressly precluded by statute, (2) there is no alternative procedure for review of the statutory claim[,] and (3) the challenged action is plainly in excess of the agency's delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory.'" *Masroor v. Noem*, No. 25-cv-256, 2025 WL 2439176, at *3 (D.D.C. Aug. 25, 2025) (quoting *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2326021, at *12 (D.C. Cir. Aug. 13, 2025)).  "So long as a statutory provision plainly delineates the outer limits of agency authority and Congress has not expressly precluded judicial review, the provision may be susceptible to review for *ultra vires* acts that clearly violate its terms." *Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*, 26 F.4th 960, 971 (D.C. Cir. 2022).  Under this standard, court can review "claims involving positive statutory commands, questions of statutory interpretation, and questions regarding whether an agency decision was supported by a contemporaneous justification." *Id.* (cleaned up).

To pick just one example, the recent Supreme Court decision striking down tariffs imposed under the International Emergency Economic Powers Act was based on *ultra vires* claims.  *See*

---

[4] For purposes of appellate review, Plaintiff also moves for summary judgment on Count Six involving the Administrative Procedure Act (APA).  Plaintiff acknowledges that the D.C. Circuit has held the Smithsonian Institution is not an agency for purposes of the Privacy Act, relying in part on the APA's incorporated definition of an agency.  *See Dong v. Smithsonian Inst.*, 125 F.3d 877, 879 (D.C. Cir. 1997).  Plaintiff moves for summary judgment to preserve the argument that the D.C. Circuit should overturn *Dong*, if necessary.

*Learning Res., Inc. v. Trump*, No. 24–1287, 2026 WL 477534, at \*14 (U.S. Feb. 20, 2026) ("IEEPA does not authorize the President to impose tariffs."); *see also V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1376 (Ct. Int'l Trade 2025) ("The Worldwide and Retaliatory tariffs are thus *ultra vires* and contrary to law.").[5]

In this case, the renaming claim easily meets the requirements of *ultra vires* review. The Kennedy Center statute does not prohibit judicial review; on the contrary, it expressly permits judicial review in "a court of law." *See* 20 U.S.C. § 76k(e).  Assuming that Plaintiff cannot proceed via Section 76*l*(b), there would be no alternative procedure for judicial review.  Finally, for all the reasons described above, the statute has "clear and mandatory" language that resolves Plaintiff's claims.

### D.  The Court Should Grant Declaratory and Injunctive Relief.

As to remedy, Plaintiff respectfully requests that the Court grant both declaratory relief (Count Five), and injunctive relief based on Counts One and Four.  To the extent injunctive relief

---

[5] In just the last year, courts in this Circuit have recognized *ultra vires* claims numerous times.  *See Cook v. Trump*, 804 F. Supp. 3d 14, 32–33 (D.D.C. 2025), *stay pending appeal denied*, 2025 WL 2654786, (D.C. Cir., Sep. 15, 2025), *application for stay filed and argument by Supreme Court considered*, 146 S.Ct. 79 (Oct. 01, 2025) (holding that President Trump's removal of Lisa Cook violated the Federal Reserve Act); *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 88 (D.D.C. 2025), *stay pending appeal denied* 2025 WL 2738626 (D.C. Cir. Sep. 25, 2025); *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 230 (D.D.C. 2025), *vacated and remanded on other grounds*, No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026) (holding that tariffs imposed by President Trump under the International Emergency Economic Powers Act were *ultra vires*); *New Mexico v. Musk*, 784 F. Supp. 3d 174, 208 (D.D.C. 2025) (denying a motion to dismiss of a claim that the establishment of the Department of Government Efficiency was *ultra vires*); *United States Inst. of Peace v. Jackson*, 783 F. Supp. 3d 316, 375 (D.D.C. 2025) ("President's removal of all appointed Board members was unlawful, *ultra vires*, and a violation of that provision of the United States Institute of Peace Act."); *Nat'l Treasury Emps. Union v. Trump*, 780 F. Supp. 3d 237, 262 (D.D.C. 2025), *stayed pending appeal on other grounds*, 2025 WL 1441563 (D.C. Cir. May 16, 2025) (granting preliminary injunction on the basis of an Executive Order being *ultra vires*); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 778 F. Supp. 3d 56, 89 (D.D.C. 2025) (denying a motion to dismiss *ultra vires* claims).

16

is unavailable, the Court should grant mandamus instead (Count Seven).

*Declaratory relief.* A declaratory judgment is appropriate where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Princeton Excess & Surplus Lines Ins. v. Lexicon Title Servs., LLC*, No. 24-CV-1657 (ABJ), 2026 WL 369703, at *6 (D.D.C. Feb. 10, 2026). That standard is easily satisfied here. The parties dispute whether the renaming violates federal law, the violation is ongoing, and Defendants have given no indication they intend to reverse course—indeed, they continue to use the improper name in their filings. *See* LaFauci Decl. ¶ 1, ECF 19-1. Because the renaming claim turns entirely on the meaning of unambiguous statutory text applied to undisputed facts, a declaration requires no fact-finding, only legal interpretation. A declaration that Defendants have violated 20 U.S.C. § 76h *et seq.* by renaming the Kennedy Center will resolve the legal uncertainty and provide the predicate for the injunctive relief Plaintiff seeks.

*Permanent injunctive relief.* A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiff suffers irreparable injury that cannot be compensated with damages. As a trustee, she is legally obligated to "maintain and administer the John F. Kennedy Center for the Performing Arts" as "a living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h(a)(1). So long as the renaming persists, she cannot fulfill that duty. As the long history of injunctive relief in this

17

context demonstrates, *see infra* pp. 21-22, the ongoing frustration of her obligations as a trustee is an irreparable harm and cannot be remedied by damages. *Cf. Dellinger v. Bessent*, 766 F. Supp. 3d 57, 70 (D.D.C. 2025) (inability to perform a "statutory mission" is irreparable injury). Relatedly, the renaming is directly linked to artists canceling performances, undermining her ability to maintain the Center as a performing arts space and living memorial to President Kennedy. *See* SMF ¶ 34.

The balance of hardships strongly favors Plaintiff. Defendants may argue that removal of the new name from the building and websites entails cost and disruption, but any such costs are the direct consequence of their own unlawful decision to install the signage in the first place. *See M.G.U. v. Nielsen*, 325 F. Supp. 3d 111, 123 (D.D.C. 2018) ("Defendants 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" (quoting *Open Communities Alliance v. Carson*, 286 F.Supp.3d 148, 179 (D.D.C. 2017))). Meanwhile, Plaintiff and the public face ongoing, daily harm from the Center's continued operation under a name that violates federal law.

The public interest weighs unambiguously in favor of enforcing the statute Congress enacted. Congress designated the Kennedy Center as the sole national memorial to President Kennedy, prohibited additional memorials, and charged the Board with maintaining the Center as a living memorial in mandatory terms. Vindicating those statutory commands through injunctive relief serves the public interest. *See League of Women Voters of United States v. Newby,* 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994))). On the flip side, there is "no public interest in the perpetuation of unlawful agency action." *Id.*

*Mandamus.* Should the Court conclude that an injunction is not unavailable, the same relief

18

is warranted by writ of mandamus. Mandamus lies where "the plaintiff has a clear and indisputable right to relief," the defendant is "under a clear duty to act," and "the plaintiff has no adequate alternate remedy." *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023). All three requirements are met on this record. Plaintiff has a clear right to enforce the terms of the trust, that is, the statute in which Congress mandated that the building be designated as the John F. Kennedy Center for the Performing Arts, prohibited additional memorials, and imposed on Plaintiff an affirmative duty to enforce those terms. Defendants have a clear duty: the organic statute commands in unambiguous mandatory terms that the Board maintain the Center as a living memorial to President Kennedy. Defendants' conduct—renaming a federal memorial in direct contradiction of a governing statute—is "plainly and palpably wrong as a matter of law." *Id.* at 714 (quotation marks and brackets omitted). Accordingly, mandamus is warranted.

## II.    Defendants' Likely Article III Standing Arguments Are Meritless.

In their opposition to Plaintiff's motion for a TRO, Defendants indicated they will assert that Plaintiff's claims "fail for lack of standing," which presumably means Article III standing. Def. Mem. in Opp. to TRO, ECF 19 at 1. They are wrong.

To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact (*i.e.*, a concrete and particularize invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-274 (2008) (cleaned up). The explanation for why Plaintiff has standing is simple: She is a fiduciary charged with protecting the Center, and she is currently suffering an ongoing injury directly related to Defendants' actions in renaming the institution for Donald Trump. By law, Plaintiff must maintain Kennedy Center as a "living memorial" to a fallen

19

President—and no one else. *See* 20 U.S.C. § 76h(a)(1).  But as a direct result of her co-trustee's unlawful actions, Plaintiff cannot fulfill and is in breach of her most important duty.  She will remain frustrated from executing her legal obligations to maintain the Kennedy Center as a living memorial and protect the trust so long as the renaming persists.

The analysis that trustees have Article III standing in suits against their co-trustees does not break new ground.  *See Marshall as co-trustee of 4-M River Farm Tr. v. Munder*, No. 23 C 1958, 2023 WL 7325935, at *3 (N.D. Ill. Nov. 7, 2023) (explaining that co-trustee had Article III standing to sue another trustee because "asserted injury as to the improper distribution of the Trust's property is" "an invasion of a legally protected interest which is concrete and particularized and is actual." (cleaned up)); *see, e.g.*, *Cook v. Marshall*, 126 F.4th 1031, 1035 (5th Cir. 2025) (trustee brought action against trustee of closely related trust); *Brown v. Brown-Thill*, 762 F.3d 814, 817 (8th Cir. 2014) (affirming arbitration award in dispute between co-trustees); *Monahan v. Holmes*, 139 F. Supp. 2d 253, 256 (D. Conn. 2001) (court found federal jurisdiction for action brought by plaintiff co-trustee); *Shapiro v. Tarnay*, No. 86 C 8247, 1987 WL 19140, at *1 (N.D. Ill. Oct. 22, 1987).

Indeed, in a recent case involving Article III standing, the Supreme Court had little difficulty stating that "fiduciaries (including *trustees* who are fiduciaries) can sue other fiduciaries." *Thole v. U. S. Bank N.A*, 590 U.S. 538, 545 (2020) (emphasis added).  Chief Justice Roberts has similarly explained that, for Article III purposes, a "trustee's discharge of its legal obligation is an independent, personal benefit that supports the trustee's standing to sue in federal court." *Sprint Commc'ns Co.*, 554 U.S. at 304 n.4 (Roberts, J., dissenting).  That describes this case: By law, Plaintiff must maintain the Kennedy Center as a living memorial to President Kennedy.  Her co-trustees are preventing her from fulling her duty.  Moreover, Congress imposed

20

on Plaintiff an affirmative responsibility to prevent Defendants from breaching their duties. *See* Restatement (Third) of Trusts § 94 cmt. c. An order from the Court will allow Plaintiff's to "discharge" her "obligation[s]," and that "personal benefit" provides her "standing to sue in federal court." *Id.*

Put differently, Article III's standing requirement asks "a basic question" of every plaintiff: "What's it to you?" *Bost v. Illinois State Bd. of Elections*, 146 S. Ct. 513, 519 (2026) (quotation marks omitted). Plaintiff has a straightforward answer: She is a trustee charged by law with protecting the Kennedy Center—which is currently being harmed because of her co-trustees ongoing breach of their duties. As a trustee, Plaintiff has the sufficiently "personal stake in this case" which provides the necessary "standing to sue." *Id.* (quotation marks omitted). Plaintiff is thus not asserting a generic injury "common to all members of the public." *Id.* at 520 (quotation marks omitted). She is no "mere bystander[]," and hearing this case will not open the floodgates. *Id.* (quotation marks omitted). She is one of a handful of people Congress charged by law with governing and protecting this memorial.

In addition, Congress's decision to empower Plaintiff with "all the usual powers and obligations of a trustee"—incorporating the old soil of the common law—confirms Plaintiff's Article III standing. 20 U.S.C. § 76*l*(b). "[B]ecause Congress is well positioned to identify" "harms that meet minimum Article III requirements, its judgment is" "instructive and important." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). In this case, Congress used precise statutory language that transplanted the common law tradition—under which a trustee has the duty to sue in these circumstances—into the statute. That confirms that, in Congress's judgment, Plaintiff has suffered a cognizable injury.

The Supreme Court recently cautioned that courts need not "make standing law more

21

complicated than it needs to be," and the Court can stop here.  *Bost*, 146 S. Ct. at 523 (quotation marks omitted).  But if there were any doubt, the "history and tradition" of courts entertaining suits between co-trustees to prevent a breach of fiduciary duty confirms Plaintiff has asserted a cognizable Article III injury.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021); *see also Sprint Commc'ns*, 554 U.S. at 274; *Tanner-Brown v. Haaland*, 105 F.4th 437, 444 (D.C. Cir. 2024).

Historically, when one "trustee" "mismanages" or jeopardizes the trust, a court will prevent the wrongdoer "from further interfering with the estate."  *Elmendorf v. Lansing*, 1820 WL 1653 (N.Y. Ch. 1820).  As Justice Story explained, suits could be brought "by one trustee against the other" to compel performance of fiduciary duties.  Joseph Story, *Commentaries on Equity Pleadings and the Incidents Thereof According to the Practice of the Courts of Equity, of England and America* 305 (3rd ed. 1844).  An English treatise from 1845 succinctly summarized the law as follows:

> It is the duty of one trustee to protect the trust estate from any misfeasance by his co-trustee, upon being made aware of the intended act, by obtaining an injunction against him (*a*), and if the wrongful act has been already committed, to take measures by suit or otherwise to compel the restitution of the property and its application in the manner required by the trust (*b*).

James Hill, *A Practical Treatise on the Law Relating to Trustees, Their Powers, Duties, Privileges and Liabilities* 305 (1845); *see Crane v. Hearn*, 26 N.J. Eq. 378, 381 (Ch. 1875) (citing Hill's treatise); *Smith v. Pettigrew*, 34 N.J. Eq. 216, 218 (Prerog. Ct 1881) (same); *see also, e.g.*, *Bartlett v. Hatch*, 1864 WL 3792 (N.Y. Sup. Ct. 1864) ("[A] trustee may, in case of a threatened breach of trust by his colleague, institute an action for the purpose of restraining the threatened act").  Another Nineteenth Century treatise explained that "[i]n all cases, if a trustee becomes aware of any fact tending to show that his cotrustee is committing a breach of trust, . . . he must communicate

22

it to his cotrustees or make application to the court." Jairus Ware Perry, *A Treatise on the Law of Trusts and Trustees* 530-31 (4th ed. 1889); *see also, e.g.*, *In re Adams' Est.*, 221 Pa. 77, 81 (1908) (quoting Perry's treatise). After the turn of the century, the First Restatement of Trusts had no difficulty stating that, under well accepted legal principles, a trustee may—indeed *must*—sue in to prevent a breach of fiduciary duty by a co-trustee. *See* Restatement (First) of Trusts §§ 391, 200 cmt. d. (1935); *see also, e.g.*, Restatement (Second) of Trusts §§ 391, 200 cmt. e, 184 (1959); *Tracy v. Cent. Tr. Co.*, 192 A. 869, 870 (Pa. 1937) ("If there are several trustees, one or more of them can maintain a suit against another to compel him to perform his duties under the trust." (quoting Restatement (First) § 200 cmt. d.)).

In short, co-trustees "have long been permitted to bring suit," and Plaintiff has Article III standing. *Sprint Commc'ns*, 554 U.S. at 274. Indeed, it could have sweeping unintended consequences if the Court holds that the Constitution precludes federal courts from exercising jurisdiction in matters between co-trustees.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motion for partial summary judgment with respect to the renaming.

Dated: March 25, 2026

Respectfully submitted,

/s/ Norman Eisen
NORMAN EISEN
  (D.C. Bar No. 435051)
STEPHEN JONAS
  (D.C. Bar No. 90037069)
DAVID OGDEN
  (D.C. Bar No. 375951)

DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
  (D.C. Bar No. 1724093)
/s/ Alexander Kristofcak
ALEXANDER KRISTOFCAK*
KYLE R. FREENY
  (D.C. Bar No. 247857)

WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
kfreeny@washingtonlitigationgroup.org
nzelinsky@washingtonlitigationgroup.org

*Admitted pro hac vice; admitted only in California and New York; practicing under the supervision of D.C. Bar members*

*Attorneys for Plaintiff Joyce Beatty*

24