**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOYCE BEATTY, <br><br>     *Plaintiff,* <br><br>      v. <br><br> DONALD J. TRUMP *et al.*, <br><br>     *Defendants*. | No. 25 Civ. 4480 (CRC) |

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 7(h), Plaintiff Joyce Beatty respectfully submits the following response to Defendants' statement of undisputed material facts, ECF No. 34-2. In Part I, each of Defendants' numbered factual assertions are copied in whole, followed by Plaintiff's response. Part II contains additional facts material to the claims for which Defendants' seeks summary judgment, as to which Plaintiff contends that there exists a genuine issue necessary to be litigated, unless the Court finds otherwise.

**Part I: Plaintiff's Response to Defendants' Asserted Facts**

1. The core statutory duties of the Board of Trustees ("the Board") of the John F. Kennedy Center for the Performing Arts ("the Center") include (1) constructing capital repairs, replacements, rehabilitations, alterations, and modifications necessary to maintain the Center at current standards of life, safety, security, and accessibility and (2) providing all necessary maintenance, repair, and alteration of the Center's building and site in a manner consistent with requirements for high quality operations. 20 U.S.C. § 76j(a)(1)(G)–(H).

**Response:** Undisputed that 20 U.S.C. § 76j sets forth the duties of the Board, including

1

(among a number of other things) that the Board shall (a) "with respect to the building and site of the John F. Kennedy Center for the Performing Arts, plan, design, and construct each capital repair, replacement, improvement, rehabilitation, alteration, or modification necessary to maintain the functionality of the building and site at current standards of life, safety, security, and accessibility," *id.* § 76j(a)(1)(G); and (b) "provide . . . information and interpretation; and with respect to the building and site of the John F. Kennedy Center for the Performing Arts, all necessary maintenance, repair, and alteration of, and all janitorial, security, and other services and equipment necessary for the operations of, the building and site, in a manner consistent with requirements for high quality operation," *id.* § 76j(a)(1)(H).  The proper construction of those legal duties, including the scope of the Board's fiduciary duty to exercise reasonable effort and diligence in making decisions related to infrastructure, is a matter of law rather than of fact.

2.      In July 2025, Congress appropriated $256,657,000 million to the Center for "necessary expenses for capital repair, restoration, maintenance backlog, and security structures of the building and site of the John F. Kennedy Center for the Performing Arts." An Act to Provide for Reconciliation, Pub. L. No. 119-21, § 60025(a), 139 Stat. 72, 157 (2025). That funding is available until September 30, 2029. *See id.*

**Response:** Undisputed.

3.      The amount of funding Congress appropriated in 2025 represents about five to six times the amount that the Center typically receives in its annual appropriation from Congress. *See id.*; *see also, e.g.*, 20 U.S.C. § 76r(a), (b) (authorizing a total of $51 million in similar funding for fiscal year 2024, $49 million for 2023, $47 million for 2022, $45 million for 2021, and approximately $43 million for 2020).

**Response:** Undisputed as it pertains to the stated time frame.

2

4.      On February 1, 2026, President Trump announced that the Center would, subject to Board approval, close for two years for construction, revitalization, and rebuilding. Am. Compl. ¶ 44, ECF No. 12.

**Response:**  Undisputed that on February 1, 2026, President Trump announced in a Truth Social post that, "totally subject to Board approval, I have determined that the fastest way to bring The Trump Kennedy Center to the highest level of Success, Beauty, and Grandeur, is to cease Entertainment Operations for an approximately two year period of time . . ." for "Construction, Revitalization, and Complete Rebuilding."  Am. Compl. ¶ 44, ECF No. 12.  Plaintiff **disputes** that the planned infrastructure work (at least as contemplated prior to the date of that announcement) was the true reason for the announced closure.  *See, e.g.*, Beatty Decl. ¶¶ 18-20, ECF No. 13-2 (noting that the Board had not previously been informed of any closure, even though roughly $250 million in infrastructure work had already been contemplated); Floca Decl. ¶ 10, ECF No. 29-3 (effectively conceding that Defendants did not consult experts or truly conduct a "one-year review" before deciding to close the Center, purportedly for planned renovations); William Decl. ¶ 13, ECF No. 29-24 ("[W]ithout a proper cost-benefit comparison, Mr. Floca's conclusion is nothing more than a preference for a shutdown."); *id.* ¶ 20, (opining, based on expertise and review of documents provided by Floca, that the Center "is at least six months, and more likely closer to a year, away from being in a position where responsible construction could commence").

5.      On February 27, 2026, Plaintiff learned of a Board meeting that was scheduled for March 16. *Id.* ¶ 53. Plaintiff was invited to attend that meeting but did not discover the invitation—which went to her personal email's spam folder—until after she amended her complaint and moved for emergency relief. *See* Decl. of Todd Valentine ¶ 4, ECF No. 20-1.

**Response:** Undisputed but lacks necessary context.  One contributing factor for Plaintiff's

3

not discovering the invitation until after the filing of her complaint or motion for emergency relief was the failure by the then-president and the general counsel of the Kennedy Center to respond to an email from Plaintiff's Chief of Staff highlighting that she had not received the invitation and asking for information on how to RSVP. *See* Valentine Decl. ¶ 3, ECF No. 20-1.

6.      On March 15, in response to the Court's partial temporary restraining order, Defendants provided Plaintiff a set of documents related to the Board's consideration of the proposal to close the Center for renovation. *See* Decl. of Matthew Floca, ECF No. 29-2; Supplemental Decl. of Matthew Floca, ECF No. 29-3; Closure Background & Talking Points, ECF No. 29-4; Performance Contracts Affected by Closure, ECF No. 29-5; Building & Grounds Committee Agenda (March 2, 2026), ECF No. 29-6; Building & Grounds Committee Minutes (March 2, 2026), ECF No. 29-7; Building & Grounds Committee Agenda (March 12, 2026); Building & Grounds Committee Presentation (March 2, 2026), ECF No. 29-9; Capital Improvement Plan, ECF No. 29-10; Two-Year Renewal Project Budget, ECF No. 29-11; Renewal Project Photos, ECF No. 29-12; Interim Procurement Policies, ECF No. 29-13; Interim Procurement Policies, ECF No. 29-14; 2022 Comprehensive Building Plan, ECF No. 29-15; 2021 Comprehensive Building Plan, ECF No. 29-16; 2022 Soffit Failure Field Report, ECF No. 29-17; 2024 Leak Investigation Part 1, ECF No. 29-18; 2024 Leak Investigation Part 2, ECF No. 29-19; 2024 Leak Investigation Part 3, ECF No. 29-20.

**Response:** Undisputed.

7.      Plans for renovation of the Center show that renovation is projected to cost $248,900,000, more than $7 million less than the total amount that Congress appropriated to the Center for capital repair and restoration. ECF No. 29-10 at 2.

**Response:**  Undisputed that the document appearing at ECF No. 29-10, titled "2 Year

4

Renewal Project," shows a projected total cost of $248,900,000 for renovations, and that this amount is more than $7 million less than the total amount that Congress appropriated to the Center for capital repair and restoration. Plaintiff **disputes** whether the document in question covers all the renovations announced by, or intended to be undertaken by, Defendants, as nothing in the record confirms this fact (as opposed to renovations previously slated to occur while the Kennedy Center remained open). *See* Beatty Decl. ¶ 18 (describing prior plans for roughly $250 million in capital improvements, for which closure was never discussed). Plaintiff also **disputes** that the type of "complete rebuilding" announced by President Trump as a justification for closing the Kennedy Center could be accomplished anywhere near the roughly $250 million appropriated by Congress. *See* Taylor Decl. ¶ 15, Doc. No. 13-20 (opining that this amount "is well below what's necessary for the 'complete rebuilding' that President Trump has announced as the justification for the closure").

8.      The plans budget $38 million for building and structural rehabilitation, $4.4 million for site restoration, $5 million for security improvements, $37 million for public building space improvements, $19 million for employee office renovations, $11 million for elevator modernization and escalator capital repair, $48.5 million for revitalization of the Center's performance venues, $8 million in administrative costs, and $78.2 million for the renewal of safety and building systems, including renewal of piping, central plant upgrades, renewal of the condenser loop, electrical system upgrades, and renewal of the Center's river pump room. *See id.* at 3, 6, 8, 10, 13.

**Response:** Undisputed that the document in question shows those budget items.

9.      Mr. Floca has been undertaking a review of the Center's infrastructure needs since approximately February 2024, shortly after he joined the Center. ECF No. 29-3 ¶ 6.

**Response:** Undisputed as stated, but potentially misleading without further context. Plaintiff **disputes** that Mr. Floca's review of the Center's infrastructure needs, as stated above, is the same thing as (or in any way related to) the so-called "one year review" that President Trump referenced in his February 1, 2026, Truth Social post announcing the closure of the Center, or that the review described above encompassed a genuine review of the necessity or propriety of closing the Center to address infrastructure needs. *See* Floca Decl. ¶ 10, ECF No. 29-3 (conceding that, other than four documents that each predated 2025, Defendants did not review any other reports of experts or advisors as part of his "review of the Center's infrastructure needs and development of [his] recommendation to close and renovate the Center"); *see id.* ¶¶ 8-9 (noting that his "recommendation" to close the Center was first made in 2026).

10.    Relying on his comprehensive review of the Center's needs—a review that considered several external reports documenting significant structural deficiencies at the Center, including water intrusion, providing an analysis of the service life for certain Center infrastructure, and finding that vertical plumbing risers had reached a state of systemic failure—Mr. Floca developed a recommendation, which he communicated to President Trump on or about January 22 and January 28, 2026, to conduct a singular, 24-month closure of the Center to remedy those deficiencies and restore the Center's facilities. ECF No. 29-3 ¶¶ 7, 9; *see also* Third Decl. of Charles Matthew Floca, Ex. A to Defs.' Opp'n and Cross-Mot. for Summ. J.

**Response:** Undisputed that Mr. Floca claims that he made a recommendation in late January 2026 to President Trump to close the Center for a period of two years. Plaintiff **disputes** the true basis for this purported recommendation, including but not limited to the claim that it was based on a "comprehensive review of the Center's needs," as that claim is inconsistent with other record evidence. *See, e.g.,* Floca Decl. ¶ 10, ECF No. 29-3 (conceding that, other than four

documents that each predated 2025, Defendants did not review any other reports of experts or advisors as part of his "review of the Center's infrastructure needs and development of [his] recommendation to close and renovate the Center"); Doc. No. 29-4 (single-page barebones and conclusory statement of closure recommendation); Williams Decl. ¶ 12, ECF No. 29-24 (opining, based on expertise and review of Floca documentation, that a "credible determination" that the Kennedy Center could not undergo phased renovation "was not performed here"). *Compare* Taylor Decl. ¶ 15, ECF No. 13-20 (describing key documentation one would expect to see for a project of this magnitude in advance of a proposal to close an arts centers for renovation, including "extensive reports, cost analyses, construction plans, and third-party validated budgets, including but not limited to architectural plans, blueprints, identification of primary engineers, general contractor(s), and acoustical specialists, specific site planning, and independent cost analysts"), *with* ECF Nos. 29-4 to 29-20 (documents produced by Defendants fall well short of this standard and contain no cost-benefit analysis of closure).

11.    Construction plans contemplate that accessible portions of the Center's building may be used to "maintain the memorial experience" while construction is ongoing. ECF No. 29-7 at 3; *see also* ECF No. 29-9 at 17.

**Response:**  Undisputed that the document cited by Defendants—the Building and Grounds Committee Meeting Minutes dated March 2, 2026—states that the "Skylight Pavilion *may* be used to maintain the memorial experience, and campus grounds may remain accessible when construction permits" and "campus grounds *may* remain accessible when construction permits." ECF No. 29-7 at 3 (emphasis added).  For clarity, Plaintiff **disputes** that this statement, by its own qualified terms, represents a commitment by Defendants to "maintain the memorial experience" during the two-year period of the Center's planned closure.  Plaintiff also asserts, for the sake of

clarity, that the scope of the obligation to maintain the Center as a "living memorial to John Fitzgerald Kennedy" is a matter of law rather than of fact (which in her view includes, *but is not limited to*, maintaining the existing curated interpretive exhibition space dedicated to John F. Kennedy and his legacy).

**12.**     Plans and renderings do not suggest that the Center's building will be demolished and instead contemplate that many—if not all—of the existing building's structural elements will be retained. *See* ECF No. 29-9 at 14–16; ECF No. 29-10 at 3, 6, 8, 10 (planning for structural rehabilitation, restoration, improvement, renovation, and restoration). *Compare* Notice of Suppl. Authority at 1, ECF No. 23 (showing renderings of the Center after renovation), *with* Ron Blunt, *The John F. Kennedy Center for the Performing Arts*, Google Arts & Culture, https://artsandculture.google.com/asset/the-john-f-kennedy-center-for-the-performing-arts/8gHub722aKNhhw [https://perma.cc/6H4X-3MX6] (showing the current structure).

**Response:**     Plaintiff **disputes** that she has been provided with the sort of plans and rendering that are necessary to evaluate the actual scope of the planned renovations and capital improvements—documents one would expect to have been provided to Board members well in advance of the vote to approve the project and/or close the Center. *See* Taylor Decl. ¶ 15 (describing minimum key documents that would be expected). Accordingly, based on the limited documentation made available to her in comparison with the statements by President Trump about the scope of planned "rebuilding," Plaintiff cannot rule out that the Center's building will be substantially demolished, in line with prior statements made by President Trump and actions he has taken with respect to other buildings such as the East Wing. *See* Am. Compl. ¶¶ 44-45 (Trump's announcement of the "Complete Building" of Center and statement that the building would be "brand new," "using the steel" and "some of the marble" of the old edifice); *id.* ¶ 46

8

(President Trump's abrupt demolition of East Wing, after promising he would not "interfere with the current building"); *see also Special Envoy Ric Grenell Speaks at CPAC in Grapevine, Texas*, at 2:09, C-SPAN (Mar. 27, 2026), https://www.c-span.org/program/public-affairs-event/special-envoy-ric-grenell-speaks-at-cpac-in-grapevine-texas/676522 ("Some of our engineers were saying we should tear it down and start over.").

13.    Maintenance at the Center—including maintenance for issues identified in the reports Mr. Floca considered to develop his recommendation to close the Center for renovation—has been "deferred" for "decades." *Trump Kennedy Center Board Unanimously Approves Landmark Renovation*, Trump Kennedy Center, https://www.kennedy-center.org/news-room/press-release-landing-page/tkc-board-unanimously-approves-landmark-renovation/ [https://perma.cc/89FZ-BRM9]; *see, e.g.*, ECF No. 29-15 at 23 (indicating soffit panels needed repair); ECF No. 29-16 at 13 (same); ECF No. 29-17 at 6 (same); ECF No. 29-18 at 70 (same).

**Response:** Undisputed that certain maintenance at the Center has been deferred for multiple years and has been slated to be addressed as part of the capital improvements in FY 2026 for which Congress appropriated funding (well before there was any discussion of closing the Center). Plaintiff **disputes**, as unsupported by the very records cited by Defendants, that all maintenance has been deferred for decades.

14.    Plaintiff participated in the March 16 Board meeting. *See* Ex. 1 to Second LaFauci Decl. at 2.

**Response:** Undisputed that Plaintiff attended and spoke at the March 16 Board meeting. Plaintiff **disputes** that she was allowed to fully "participate" to the extent she is entitled, inasmuch as she was not permitted to vote. *See* ECF No. 34-5 at 8.

15.    At the meeting, Plaintiff indicated that she did not generally oppose renovation and

repair of the Center's building. *See id.* at 7–8.

**Response:** Undisputed.

16.    At the meeting, Plaintiff communicated her belief that the Board should delay renovation to allow for further study. *See id.*

**Response:** Undisputed.

17.    At the meeting, the Board's general trustees unanimously voted to close the Center for two years, starting on July 7, 2026, to permit renovations to occur. *See id.*

**Response:** Undisputed.

18.    Following the meeting, Richard Grenell is no longer in his role as President of the Center. *See id.* at 4–5.

**Response:** Undisputed.

19.    At the meeting, the Board elected Matthew Floca to serve as the Executive Director and Chief Operating Officer of the Center. *See id.* at 5. Mr. Floca succeeded Mr. Grenell as the seniormost executive officer of the Center. *See id.*

**Response:** Undisputed.

20.    Following the Board's December vote to adopt a secondary name, the Center's designation of the main building of the Center continues to include the title "John F. Kennedy Center for the Performing Arts," and the Center continues to maintain a living memorial to President Kennedy at the complex. *See, e.g.*, ECF No. 12 ¶ 33 (showing the retention of the statutorily mandated name on the building's facade); *A Living Memorial*, Trump Kennedy Center, https://www.kennedy-center.org/memorial/ [https://perma.cc/HK75-ZXC9].

**Response:**   Plaintiff **disputes** the term "secondary name" as it is used to characterize Defendants' purported renaming of the Kennedy Center.  *See, e.g.*, Am. Compl. ¶ 32 (White Press

Secretary's announcement that the Board "unanimously [sic] voted to rename the Kennedy Center to the Trump-Kennedy Center"); *id.* ¶ 33 (depicting new signage on Kennedy Center's front portico); Ashley Carnahan and Emma Colton, *Board votes Kennedy Center to be renamed 'Trump-Kennedy Center*, Fox News (Dec. 18, 2025), https://www.foxnews.com/politics/board-votes-kennedy-center-renamed-trump-kennedy-center-leavitt-says?msockid=2c29732c37926e9b283b65d8369f6f6e [https://perma.cc/4NCU-QGQX] (quoting Kennedy Center spokesperson as saying, "The Kennedy Center Board of Trustees voted unanimously today to *name* the institution The Donald J. Trump and The John F. Kennedy Memorial Center for the Performing Arts"). Plaintiff **disputes**, as a matter of law, that, following the formal renaming of the Kennedy Center to include Donald Trump's name first, Defendants continue to maintain the Center as a "living memorial" to President Kennedy as that phrase was intended by Congress, 20 U.S.C. § 76h. The main building is designated by signage as "The Donald Trump and The John F. Kennedy Memorial Center for the Performing Acts." Am. Compl. ¶ 33.

21. Other federal entities use secondary names. The Department of Defense is known in official correspondence, public communications, ceremonial contexts, and non-statutory documents within the executive branch as the "Department of War." Exec. Order No. 14347, 90 Fed. Reg. 43893, § 2(a) (Sep. 5, 2025). The Consumer Financial Protection Bureau is statutorily designated as the "Bureau of Consumer Financial Protection," 12 U.S.C. § 5491(a), but has been known since its inception as the "Consumer Financial Protection Bureau" and uses a logo reflecting that alternate name, Consumer Fin. Prot. Bureau, Financial Report of the Consumer Financial Protection Bureau 1 (2011), https://files.consumerfinance.gov/f/reports/CFPB_Financial_Report_FY_2011.pdf [https://perma.cc/Q64L-QNCK]. The Federal National Mortgage Association, *see* 12 U.S.C. § 1716b, is commonly known as "Fannie Mae," *see Fannie Mae Announces Results of Tender Offer*

*for Any and All of Certain CAS Notes*, Fannie Mae (Mar. 2, 2026), https://www.fanniemae.com/newsroom/fannie-mae-news/tender-offer-results-any-all-certain-cas-notes-feb-2026 [https://perma.cc/9A8G-LSG5]. The Center maintains a pavilion that is known as "The REACH at the Kennedy Center." *The REACH at the Kennedy Center*, Trump Kennedy Center, https://www.kennedy-center.org/reach/ [https://perma.cc/2LDB-JGWU].

**Response:** Plaintiff **disputes** the use of the term "secondary name" as it is used to characterize Defendants' purported renaming of the Kennedy Center. *See, e.g.*, Am. Compl. ¶ 32 (White Press Secretary's announcement that the Board "unanimously [sic] voted to rename the Kennedy Center to the Trump-Kennedy Center"); *id.* ¶ 33 (depicting new signage on Kennedy Center's front portico). As a matter of law and logic, Plaintiff **disputes** that certain of the "secondary names" identified above, such as the commonly-used shorthand name "FannieMae" for The Federal National Mortgage Association or "Consumer Financial Protection Bureau" for the Bureau of Consumer Financial Protection, bear any equivalence whatsoever to the purported renaming of the Kennedy Center, after a formal Board vote, to include Trump's name. Plaintiff further **disputes** President Trump's authority to rename the Department of Defense without congressional approval. Undisputed that the Center maintains a pavilion that is known as "The REACH at the Kennedy Center." Plaintiff disputes that "The REACH at the Kennedy Center" is a "secondary name" at all, or in any way comparable to the purported renaming of the Kennedy Center, because it is a distinct structure from the main building that was designated by Congress and it has no other, primary name.

22.     On March 30, 2026, staff from the Center held an initial planning meeting to discuss collaborating and consulting on the planned renovations at the Center with staff from the Commission on Fine Arts and the National Capital Planning Commission. *See* Third Decl. of

Charles Matthew Floca ¶ 8.

**Response:**  Undisputed that Defendants assert that Center staff held such a meeting on March 30, 2026.  Plaintiff lacks sufficient information to admit the participants, purpose, or substance of any such meeting.  *See* Floca Decl. ¶ 8.

**Part II: Additional Facts on Where There Is a Genuine Issue to Be Litigated**

23.    The Kennedy Center maintenance and projects that were funded by Congress in the 2025 appropriation are not the true reason for the two-year shutdown announced by President Trump on February 1. *See* ECF No. 29-3 ¶¶ 10, 12 (admitting that core details of the purported "one-year review," as described by President Trump, were not true); Williams Decl. ¶ 4-8, ECF No. 29-24 (stating, based on expertise and review of plans, that none of the project require full closure and that the Kennedy Center is well suited for a phased approached);Beatty Decl. ¶ 18 ECF No. 13-2 (explaining that until President Trump's February 1 announcement of the closure, the Board has never discussed the prospect of a full closure, even though $250 million in infrastructure work was contemplated).

24.    In the past, the Kennedy Center conducted significant renovation and maintenance projects in phases without shutting down the entire complex.  *See* Williams Decl. ¶¶ 4-10, ECF No. 29-24 (stating that the "Kennedy Center itself has employed phased renovation in the past" and enumerating several examples).

25.    Prior to deciding to close the Kennedy Center for two years, the building plan included multiple projects that were planned to be completed in phases, without a full closure. *See* ECF No. 13-2 ¶ 18 (Plaintiff explaining that until President Trump's February 1 announcement of the closure, the Board has never discussed a full closure).

26.    There were no outside experts or consultants involved in, or relied on, during the

"one year review" referenced in President Trump's February 1, 2026 Truth Social message about the closure.  ECF No. 29-3 ¶ 12.

27.    There were no reports generated by outside experts or consultants during the "one year review" referenced in President Trump's February 1, 2026 Truth Social message about the closure.  ECF No. 29-3 ¶ 10.

28.    Despite the widely acknowledged need to complete certain deferred maintained and other infrastructure projects at the Center, Mr. Floca did not discuss the prospect of closing the Kennedy Center for renovation with Plaintiff or other similar situated Board members prior to President Trump's February 1, 2026 announcement of his decision toward that end.  *See* ECF No. 29-22 at 5-6 (Mr. Floca's September 2025 board meeting discussion of the project's "prioritized projects," that "they are moving quickly on everything" and not mentioning a closure).

29.    The four reports relied upon by Mr. Floca during his review do not recommend a closure of the Kennedy Center. *See, e.g.*, ECF No. 29-15 at 130 ("Projects have been scheduled in such a way as to keep the facility operating to the maximum extent, with efforts phased over the multi-year period."); Ex 29-18 at 30-37 ("The process will include considerations for phasing, impacts to Kennedy Center operations, costs, and relative urgency classifications, among others."); Williams Decl. ¶ 4, ECF No. 29-24 ("[A]ll the work identified in the 2021, 2022, and 2024 assessment documents can be performed while maintaining operations in the Kennedy Center, through phased sequencing of the work. A complete two-year closure of the entire main building is not required to accomplish the deferred maintenance described in those reports.").

30.    The renovations planned during the two-year closure could be performed in phases, without shutting down the Kennedy Center for two years.  Williams Decl. ¶¶ 4-8, ECF No. 29-24 (stating, based on expertise and review of plans, that none of the projects require closure and that

14

the Kennedy Center is well suited for a phased approached).

**31.** Mr. Floca's "talking points" memo did not address the impact of a two-year closure on donors, performers, staff, or the reputation of the Kennedy Center or the impact on ticket sales and donations during this period. *See* ECF No. 29-4.

**32.** The closure will cause severe harm to relationships with performers, staff, audiences, donors, and the Center's reputation. *See* ECF No. 13-19 ¶¶ 7-15, ECF No. 13-20 ¶¶ 5-13, ECF No. 13-21 ¶¶ 13-19, ECF No. 13-22 ¶¶ 8-18.

**33.** The Board was not informed or consulted about the closure plan until after President Trump's February 1, 2026 announcement. *See* Beatty Decl. ¶ 18, ECF No. 13.2

**34.** Defendants have at least considered demolition of the Kennedy Center in lieu of renovation. *See Special Envoy Ric Grenell Speaks at CPAC in Grapevine, Texas*, at 2:09, C-SPAN (Mar. 27, 2026), https://www.c-span.org/program/public-affairs-event/special-envoy-ric-grenell-speaks-at-cpac-in-grapevine-texas/676522 ("Some of our engineers were saying we should tear it down and start over.").

Dated: April 13, 2026                                      Respectfully submitted,

/s/ Norman Eisen                                          /s/ Nathaniel A.G. Zelinsky
NORMAN EISEN                                              NATHANIEL A.G. ZELINSKY
  (D.C. Bar No. 435051)                                     (D.C. Bar No. 1724093)
STEPHEN JONAS                                            /s/ Alexander Kristofcak
  (D.C. Bar No. 90037069)                                ALEXANDER KRISTOFCAK*
DAVID OGDEN                                                 (D.D.C. No. NY0717)
  (D.C. Bar No. 375951)                                  KYLE R. FREENY
                                                           (D.C. Bar No. 1684764)

DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180                        WASHINGTON LITIGATION GROUP
Washington, D.C. 20003                                   1717 K Street, NW, Suite 1120
202-594-9958                                             Washington, D.C. 20006
norman@democracydefenders.org                            202-521-8750
                                                         kfreeny@washingtonlitigationgroup.org
                                                         nzelinsky@washingtonlitigationgroup.org

*\* Admitted only in California and New York; practicing under the supervision of D.C. Bar members*

*Attorneys for Plaintiff Joyce Beatty*