**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOYCE BEATTY,<br><br>                *Plaintiff*,<br><br>  v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>              *Defendants*. | Civil Action No. 25-4480 (CRC) |

## MOTION FOR A STAY OF PERMANENT INJUNCTION PENDING APPEAL

Two weeks ago, this Court permanently enjoined Defendants from, among other things, "displaying, installing, or maintaining any physical or digital signage on the Kennedy Center building or grounds that designates, suggests, or implies that the institution is named for any person other than President John F. Kennedy, including but not limited to the signage that currently reads 'The Donald J. Trump And' on the front of the Center's main building." Doc. 49 at 2. This Court also ordered Defendants to perform certain acts no later than June 12, 2026, including removal of the signage "that purports to rename the Kennedy Center after President Trump." *Id.* at 2-3.

Earlier today, the Board of Trustees voted to appeal this permanent injunction and to seek a stay of the permanent injunction pending that appeal. Accordingly, Defendants now move for a stay pending appeal, to preserve the status quo until the D.C. Circuit has an opportunity to consider the novel issues raised by this case. The factors governing whether to issue a stay include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

1

These factors weigh in favor of a stay. Defendants have strong arguments to raise on appeal, and the equities and public interest cut against requiring Defendants to remove the Center's signage only to put it up after prevailing on appeal, as that would be both wasteful for the Center and confusing for the public.[1]

1.      Starting with the balance of harms and the public interest, they powerfully favor a stay pending appeal. Absent a stay, Defendants will be forced to squander time and money—by both removing the signage and then potentially returning it after appeal—that cannot be recovered when Defendants prevail on the merits. That is the very definition of irreparable harm. *In re NTE Conn., LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022) ("financial injury can be irreparable where no adequate compensatory or other corrective relief will be available"). Additionally, removal of the name threatens to impede the Center's fundraising efforts and contribute to the financial decline of the Center. This loss of fundraising time and potential is also definitionally irreparable, and the public interest weighs in favor of an economically viable Center. Moreover, requiring a name change now, only to potentially revert back to the current name after appeal, would be incredibly confusing for the public. The far more sensible course is to allow the D.C. Circuit to adjudicate this appeal before requiring these sorts of compliance measures.

On the other side of the ledger, any harm to Plaintiff from a stay pending appeal is abstract at best. Even though this Court concluded that a permanent injunction was necessary to place Plaintiff "in good stead as to her statutory and fiduciary duties," Doc. 50 at 56, there is no reason to conclude that, pending an appeal, a stay would inflict any harm on Plaintiff that is "certain and great," *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

---

[1] In line with LCvR 7(m), Defendants conferred with Plaintiff before filing this motion. Plaintiff opposes the requested relief.

For these reasons, the equities and balance of harms strongly favor staying the injunction pending appeal, so that the D.C. Circuit can weigh in on the novel issues presented by this case before Defendants and the public suffer irreparable harm.

2.      As to the merits, the strength of Defendants' arguments is sufficient to warrant a stay, especially in light of the heavy equitable considerations at play on Defendants' side and the minimal (if any) harms to Plaintiff of allowing the signage to remain.  Defendants have raised substantial questions as to both standing and the Board's ability to adopt a secondary name for the Center and reflect that name on the Center's façade.

Regarding the former, the Center is likely to succeed on appeal in showing that Plaintiff does not have Article III standing to pursue her claim.  Plaintiff has not suffered an individualized harm traditionally recognized as providing a basis for lawsuits in American courts—especially considering that the Center is a *sui generis* charitable federal trust entity that operates to benefit members of the public rather than to provide any financial benefit to specified, individual beneficiaries. *See Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1226 (D.C. Cir. 2025) ("Article III looks for a close relationship between the harm remedied by courts in the past and the harm that the plaintiff wants remedied by a court today." (quotation omitted)).  Indeed, Plaintiff's lawsuit here implicates significant separation-of-powers issues by infringing on the executive's sovereign prerogative to prioritize among and pursue different legal actions, especially where the sovereign is—at common law—the sole entity responsible for enforcing the terms of charitable trusts. *See* Doc. 34-1 at 15.

Defendants are also likely to succeed in showing that the Board's vote to adopt a secondary name was lawful.  The Center's governing statutes require that the Board construct "a building to be designated as the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76i(a).  The

Board did so, and it maintains compliance with that directive today.  Nowhere in that directive, or anywhere else in the governing statutes, is there any limitation on the Board's ability to add a secondary name, and, indeed, other governmental entities—such as the Department of War—are commonly known by their secondary names.  *See* Doc. 34-1 at 31-32 (providing more examples).  Although the Court recognized these examples, its opinion distinguished them on the basis that none of them "implicate a presidential memorial that was legislatively intended to honor a specific public figure."  Doc. 50 at 51.  While true, that distinction is not legally meaningful.  Defendants' use of these examples served to demonstrate that, before now, naming statutes were not read to be exclusive, nor were those using secondary names understood to be violating the law.  That point holds regardless of the legislative intent behind a specific naming decision.

To be sure, there does exist a statutory directive forbidding, with some exceptions, the Board from designating or installing "in the public areas" of the Center any "additional memorials or plaques in the nature of memorials."  20 U.S.C. § 76j(b)(1).  But as Defendants previously explained, the lettering on the building's façade is not a "memorial" or a plaque "in the nature of" a memorial.  Doc. 34-1 at 32-33.  The signage including President Trump's name does not indicate that the text is intended to memorialize him, and the ordinary meaning of "memorial" demonstrates that the statute is intended to forbid only an addition that "helps remember some past impression," not an addition that acknowledges the involvement and leadership of the sitting President of the United States.  *Id.* at 33.  The Court disagreed, reading the addition as contrary to "the terms of Congress's clear proscription."  Doc. 50 at 51-53.  But, if Congress truly meant for a proscription so broad, then it would have used different language.  Instead of banning memorials or plaques in the nature of a memorial, Congress could have banned, for example, all "acknowledgements"—a term used elsewhere in the statutory scheme.  *See* 20 U.S.C. § 76i(c)(3).  Or Congress could have

banned all additions of plaques or text in the public areas of the Center.  But it did not.  And that choice in text matters.  *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) ("Where a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." (alterations adopted and quotation omitted)).  Defendants' reading pays attention to that choice, and therefore it is likely to prevail on appeal.

For these reasons, Defendants raise substantial issues on the merits that are likely to succeed on appeal.

## CONCLUSION

The Court should stay pending appeal its permanent injunction as it relates to naming.  The Court should also grant an administrative stay to allow for orderly adjudication of this motion, which was filed as early as practicable after the Board's vote taken earlier today.

Dated: June 11, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

/s/ *Brantley Mayers*
BRANTLEY MAYERS
(FL Bar. No. 1039996)
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Brantley.T.Mayers@usdoj.gov
(202) 890-9874

*Attorneys for Defendants*