IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOYCE BEATTY,

*Plaintiff,*

v.                                                            Civil Action No. 25-4480 (CRC)

DONALD J. TRUMP, *et al.*,

*Defendants*.

### JOINT STATUS REPORT

Pursuant to the Court's June 16, 2026 Minute Order, the parties provide their respective positions about the status of this litigation. As required by the Court's order, Defendants here "apprise the Court of the status of plans for the Kennedy Center construction project, Board actions in that regard, and any other pertinent developments." Min. Order (June 16, 2026). Defendants here also "detail steps taken to comply with the Court's [ECF No. 48] Preliminary Injunction Order, including plans for public access and ongoing programming, activities, and operations after July 5, 2026." *Id.*

A.    **Defendants' Statement:**[1]

i.    *Plans for construction*

As of filing, undersigned counsel understands that Center management intends to compile materials for a Board vote on multiple options for completing necessary capital repair and construction and fulfilling the Board's statutory and fiduciary duties under the law. *See* Decl. of

---

[1] In Defendants' view, this status report should simply inform the Court as to the questions of fact about which it inquired.  The Court should disregard Plaintiff's legal arguments, which are not within the scope of this Court's June 16 order and not within the function of a status report. However, given Plaintiff's lengthy arguments, Defendants have provided a brief response.

1

Charles Matthew Floca, ¶¶ 6–7. Although recommendations have not yet been finalized, Center management intends to present to the Board with an array of options. *See id.* One option will likely contemplate a complete closure of the Center to conduct construction activities with no ongoing programming. *See id.* ¶7(a). Another option will likely contemplate a partial closure of various spaces within the Center and its building, enabling some continued public access and limited programming in spaces unaffected by the need for capital repair. *See id.* ¶ 7(b). A third option will likely contemplate a highly limited series of phased closures to address only the Center's most serious infrastructure needs while scheduling and maintaining a full slate of programming. *See id.* ¶ 7(c). Center management expects to present these options to the Board for a vote in mid-July. *See id.* ¶ 7.

The Center continues to prepare for additional capital repair and construction activities. The Center expects those activities to take place between roughly July and December 2026, although the exact timeline of these repairs is subject to change following the Board's continued consideration of the most responsible path forward for the Center to conduct capital repair and construction.

### ii. Steps for compliance

As required under the Court's preliminary-injunction order, since that order was entered, Center management has not "take[n] steps to further effectuate the March 16 decision" by the Board to wind-down programming activities and to close the Center's doors by July 5, 2026. ECF No. 48 at 1. Center management currently intends for the Center and its building to maintain an operational model past the originally planned closure date of July 5. *See* Floca Decl. ¶ 5. That model, which the Center is currently following, contemplates continued public access to the Center's public spaces and to the living memorial for President Kennedy. *See id.* The Center is

planning to maintain its educational and community-outreach programming and operations during the pendency of the planned capital repair. *See id.*

The Court's order did not affirmatively require the Board to *re*schedule programming that had previously been cancelled or to seek new programming, and instead affirmatively contemplated that the Board might "approve[] any closure consistent with the Court's Memorandum Opinion." ECF No. 48 at 1; *see also* ECF No. 50 at 88–89 (explaining that the Board is not "necessarily barred from closing the Kennedy Center while renovations take place" and may "reconsider[] the closure issue in a prudent manner"). The Court's order, a negative injunction, prevented Defendants from taking any steps to "further" effectuate the Board's vote to close the Center for two years, as of the date of the Court's order. ECF No. 48 at 1. As Defendants have already confirmed, they have done exactly that.

Plaintiff here argues that Defendants misconstrue the Court's injunction, but they ignore that the Court's order *expressly contemplated* that the Center might proceed exactly as it is here: by gathering pertinent information for the Board to consider related to the costs and benefits of conducting capital repair, scheduling programming, maintaining public access to the Center's building and grounds, and shutting down the Center's operations. *See* ECF No. 50 at 87-89. Defendants *are* maintaining the Center's operations as of the date the negative injunction entered.

For these reasons, and in light of the present uncertainty, counsel understands that Center management has not yet taken any affirmative steps related to programming or staffing. *See* Floca Decl. ¶ 6. Such decisions will await the Board's final decision about the appropriate path forward and this Court's review of that decision. *See id.*

Indeed, the course of the Center's programming activities over the coming two years depends on multiple contingencies: what recommendations the Center's management makes to the

3

Board, what decision the Board makes regarding the prudent path forward, and the outcome of any judicial review. Therefore, any immediate affirmative programming action is neither required by this Court's order nor prudent.

*       *       *

Defendants respectfully request that the Court require the parties to file a joint status report within two weeks after the next meeting of the Center's Board apprising the Court of any further proceedings that might be necessitated by the Board's actions at that meeting.

Defendants further respectfully request that the Court stay Defendants' obligation to answer or otherwise respond to Plaintiff's complaint pending the final disposition of appellate proceedings in *Beatty v. Trump*, No. 26-5224 (D.C. Cir.), including any petition for a writ of certiorari that may be sought therefrom. Defendants' responsive deadline is June 29, 2026, the next business day after the applicable 30-day window following the Court's issuance of its preliminary-injunction and summary-judgment orders. *See* Min. Order (Mar. 23, 2026); *see also* ECF No. 48; ECF No. 49. Plaintiff requests that the parties proceed to an answer and to discovery. But discovery at this stage is and would be premature, given that the Board's decisionmaking process for voting on any potential closure of the Center has not yet been finalized. Moreover, following that process, Defendants are likely to take the position that there would be no disputes of material fact that might be susceptible to resolution by further discovery, especially if Plaintiff herself comes to agree with and votes to affirm any Board decision to close the Center for repairs. And the pending appeal encompasses related and threshold issues that would either directly govern or greatly inform further litigation of Plaintiff's breach-of-trust claim. Preemptive discovery into an as-yet unfinalized decisionmaking process would waste the parties' resources. And finally, any harm to Plaintiff from staying discovery would be minimal at best.

Defendants continue to ensure compliance with the Court's permanent injunction as to naming. The Kennedy Center name has been restored to physical signage, the Kennedy Center website, email signatures, email communications, letterhead, brochures, promotional materials, press releases, signs, employee identification cards, contracts, memoranda of understanding, and any other agreements to which the Center or its board is a party. ECF No. 59-1. Defendants will expeditiously address any remaining uses of the President's name if and when they become aware of their existence.

**B.    Plaintiff's Statement:**

*i.    Closure*

Plaintiff has serious concerns both about (1) Defendants' non-compliance with the preliminary injunction, which Defendants appear to be deliberately misconstruing; and (2) their proposed schedule, which appears designed to prevent this case from proceeding promptly to final judgment.[2]

We start with the law.  Defendants misconstrue the order by selectively quoting language out of context, while ignoring the bolded text: "The Defendants may not take steps to further effectuate the March 16 decision for the pendency of this action, or until the Board approves any closure consistent with the Court's Memorandum Opinion, **and the Court issues a further Order dissolving or modifying this preliminary injunction**."  ECF No. 48 at 1.  Defendants focus on how the Board could potentially, consistent with the Court's opinion and after acting in a prudent manner, authorize a closure.  But Defendants ignore the fact that the injunction will remain in

---

[2] Plaintiff understands Defendants intend to submit one or more declarations with this status report. Plaintiff has not had an opportunity to review any such declaration.  Plaintiff objects to the extent Defendants submit any new information that Plaintiff has not had a chance to review and respond to, and asks for an opportunity to address the declaration(s) in filings or at a status conference if necessary.

place—and Defendants will be barred from effectuating any shutdown—unless and until the Court says otherwise. *Id.* To be clear, under the Court's opinion, the Board cannot simply "redo" its vote. The Board must act prudently and must seek further relief from the Court before it may disrupt the status quo, to ensure the Board is not again rubberstamping an illegal shutdown. All the while, Defendants *cannot* effectuate the planned closure and must maintain operations.

But Defendants' submission confirms that they plan to turn the Kennedy Center into a lifeless husk by refusing to take any steps to maintain the Center's operations, and will effectively close the Center as a performing arts venue come July 5, 2026—contrary to the Court's preliminary injunction order. In this filing, Defendants unequivocally state they will not take "any affirmative steps related to programming or staffing." To be clear, Plaintiff is not asking the Court to micromanage what shows the Kennedy Center puts on. But as things stand now, absent action on Defendants' part, the Kennedy Center will have no meaningful operations after July 5, 2026. Defendants are thus following through with, and continuing to implement, their existing plans to close the Center, contrary to the Court's preliminary injunction order. *See* ECF No. 48 (enjoining Defendants from "enforcing or implementing the John F. Kennedy Center for the Performing Arts Board of Trustees' March 16, 2026 decision to 'wind-down' programming activities and 'close' the Center's 'doors entirely effective July 5.'").

Defendants now request a further delay in proceedings until "after the next meeting of the Center's Board," which they suggest (but do not commit) will occur in mid-July. Defendants also request a stay of answering the complaint until the D.C. Circuit and potentially the Supreme Court decides the (completely unrelated) appeal of the renaming order. This is untenable. It would effectively permit Defendants to continue ignoring the Court's order for weeks, and perhaps longer, entrenching their improper shutdown decision based on vague plans and without any

deadline. And it also would effectively stay the factual development of this litigation until a completely unrelated appeal is resolved—which could take a year or more.

The bottom line is this: Defendants believe they need not do *anything* to maintain meaningful operations. Having gutted staff and programming, Defendants believe they can sit back and allow their pre-planned shutdown to commence. This is risible. But Defendants' position is even more concerning because there are obvious steps that could be taken now to ensure that meaningful operations continue after July 5, 2026. For example, the long running and commercially successful program "Sheer Madness" held its final show in early June, after the Court had already issued its order to halt the shutdown. Defendants could have potentially attempted to ensure Sheer Madness remained onsite in the near future. Defendants also could make efforts to ensure the National Symphony Orchestra performs for some or all of the coming season.

Instead of undertaking those and/or other similar measures, Defendants flatly refuse to do anything, implementing their shutdown decision by inertia. To be clear, again, Plaintiff is not asking the Court to pick and choose what programming Defendants present, or to micromanage operations. Defendants must do something, however, to ensure there are meaningful operations come July 5, 2026, in order to comply with the plain terms of the preliminary injunction, and they must do so in good faith. Defendants' claim that "the course of the Center's programming activities over the coming two years" might change at a later date (for example, if the Board conducts a real analysis, votes to shutdown, and the Court dissolves its injunction) does not absolve Defendants of their obligation to do something *now* to ensure meaningful operations continue after the July 5, 2026. Moreover, to the extent resuming operations requires (for example) rehiring fired

7

staff, Defendants failure to do *anything* now only undermines their ability to comply with the injunction down the road.

Plaintiff therefore requests that the Court reiterate that—until "the Court issues a further Order dissolving or modifying th[e] preliminary injunction"—Defendants must take good faith steps to resume meaningful programming. ECF No. 48 at 1. Plaintiff also requests the Court order Defendants to submit a sworn certification of compliance with that request, and to provide Plaintiff (who is a trustee) weekly updates through counsel as to the concrete steps taken to resume programming. Requiring such regular updates through counsel will ensure Plaintiff that steps are being undertaken without Defendants needing to make frequent public filings in this Court.

To permit this case to proceed toward final resolution without delay, Plaintiff also respectfully requests that the Court decline to stay or extend Defendants' obligation to answer the First Amended Complaint on June 29, 2026, and order the parties to meet and confer and submit a proposed schedule for discovery, in accordance with Federal Rule of Civil Procedure 26(f) and Local Rule 16.3(a), by July 7, 2026. There are issues of fact that can be resolved only through discovery, and even if the Board considers the question of closure anew, discovery that is sought in the interim will inevitably be relevant to that decision, just as much as to the original decision. Accordingly, there is no basis for forestalling the commencement of discovery in this action.

### ii.    *Renaming*

Plaintiff brings to the Court's attention two pertinent developments regarding the Court's summary judgment order, which raise serious concerns regarding compliance with that order as well. Starting over the weekend, Plaintiff repeatedly requested clarity from Defendants on these developments, to no avail. Plaintiff also specifically requested that Defendants provide information as to these developments in this status report. Instead, to date, Defendants have

refused to provide any explanation whatsoever, despite Plaintiff stressing the seriousness of the matter and despite Defendants speaking to the press as described below. Given Defendants' refusal to respond, and the gravity of Plaintiff's concerns (which are compounded by Defendants' deliberate non-compliance with the preliminary injunction order), Plaintiff requests the Court order them to explain their actions in a sworn declaration.

*First*, on June 12, 2026, before taking down President Trump's name from the Kennedy Center's façade, Defendants constructed scaffolding and hung a tarp to shield the work from public view. Today, the tarp inexplicably remains. Indeed, it appears that the tarp will be there for the long term. Defendants have fashioned two doorways in the structure to permit pedestrian access underneath the structure, and the entire assemblage appears to be semi-permanent. As a result, today, this tarp largely obscures John F. Kennedy's name on the front portico.

This latest development is a transparent effort to frustrate a return to the status quo that existed prior to the Board's unlawful vote to rename the Kennedy Center on December 18, 2025. Despite not responding to Plaintiff, Defendants apparently told a reporter that the "scaffolding and tarp will remain up as crews address maintenance needs of the marble and soffit panels."[3] This is plainly pretextual: The scaffolding appears to be approximately twenty feet *below* the soffits. Nor have Defendants provided any explanation of these supposed "maintenance needs." Instead, Defendants appear to be actively undermining the restoration of the Kennedy Center's name, in a petty act of defiance. In addition to raising concerns about compliance, willfully sabotaging

---

[3] Piper Hudspeth Blackburn and Abigail Roedersheimer, *Kennedy Center Exterior Remains Covered After Trump's Name Is Removed*, CNN (June 15, 2026), https://www.cnn.com/2026/06/14/politics/kennedy-center-exterior-remains-covered-after-trumps-name-is-removed.

Kennedy Center's iconic façade to assuage Defendants' vanity or massage broken egos is a clear breach of fiduciary duty.

That alone is worrisome. But there is additional context that heightens Plaintiff's concerns: When Defendants requested an extension from the Court on the evening of June 12, 2026 to comply with the preliminary injunction, they did so based on their representation that "thunderstorms" "presented safety concerns to workers." ECF No. 58-1 (Floca's declaration). It now appears the purpose for the extension may have been, at least in significant part, to gain additional time to construct the tarp assembly to shield the work from public scrutiny. Indeed, when Defendants finally got around to removing the letters in the early hours of June 13, 2026, the letters came off *by hand*. *See* Elizabeth Williamson and Julia Jacobs, *Kennedy Center Removes Trump's Name From Façade*, N.Y. TIMES (June 12, 2026), https://perma.cc/4UXR-X6ZM. As a result, it seems at least plausible that, had Defendants not been focused on constructing their bizarre and unnecessary privacy screen on the night of June 12, 2026, the letters could have been removed before the Court's ordered deadline.

Plaintiff therefore requests Defendants be ordered to provide, in a sworn declaration, an explanation of the tarp's purpose and details regarding when the tarp will come down.

*Second*, in their stay motion filed in the D.C. Circuit on the evening of Friday, June 12, 2026, Defendants stated the following:

> Without the name, "Trump" on the Building, our fundraising will not only come to a halt, but any and all monies raised or committed would be obligated to be returned, refunded, or terminated. The Bylaws of **The Trump Kennedy Center for the Performing Arts Foundation** state, unequivocally: "The Corporation may make donations to the Center in support of its educational, artistic, cultural, and performing arts functions; **provided, however, that in so doing, the Board of Directors shall condition such donations to the Center upon the name of the Center remaining unchanged as the 'Donald J. Trump and John F. Kennedy Memorial Center for the Performing Arts.'** In the event the Center should at any time remove the name of President Donald J. Trump from its filings, marketing,

branding, façade, or any other affiliated location, the Corporation shall recover from the Center the total of all gifts, donations, and contributions made to the Center by or on behalf of the Corporation." The reason for this clause is that people and companies, who have given, or will be giving, millions of dollars to the Center were only willing to do so with the name "Trump" on the Building. Many did it because they loved the concept of two Great Presidents, one Republican, one Democrat, working together as one—In many ways, a bipartisan relationship! All of this money, hundreds of millions of dollars, will have to be immediately returned, or not received by the Center.

Defendants' Stay Mot. 2, No. 26-5224 (D.C. Cir. June 12, 2026) (emphasis added).

This latest assertion is deeply concerning.  To be clear, Defendants never raised the existence of a so-called Foundation (*i.e.*, the "Corporation") at any point in this litigation until now, and have therefore forfeited it.  These asserted bylaws may not even exist.  But to the extent this is not puffery, the continued maintenance of a legal entity named "The Trump Kennedy Center" appears to violate the Court's injunction.  *See* ECF No. 49 at 2.  Moreover, Defendants are threatening to sabotage the Kennedy Center by invoking a poison pill—apparently of their own making—that would directly rob the Center of funding if they are not permitted to continue to violate the law.  To state the obvious, this scorched earth tactic—*i.e.*, holding the trust itself hostage in a bid to violate trust's terms—is a clear breach of fiduciary duty.

Again, despite not responding to Plaintiff's repeated requests through counsel for information for nearly a week, Defendants have spoken to the press about this issue, although that statement raises more questions than answers.  In particular, the Board voted on June 11, 2026, to create a purported endowment within the Center to honor President Trump.  In at least one article, the Center's spokesperson referred to a so called "Trump Kennedy Center Fund," which may or may not be the same entity as the Foundation referenced in the D.C. Circuit filing.[4]  (Publicly

---

[4] Emma Nicholson, *Kennedy Center to Establish New Endowment in Trump's Name After Court Forces Name Change*, CBS (June 14, 2026), https://www.cbsnews.com/news/trump-kennedy-center-fund-name-removed/.

available corporate registration documents suggest The Trump Kennedy Center for the Performing Arts Foundation may have instead been a preexisting entity, whose name was changed in March 2026.) The confusion only underscores the need for Defendants to explain themselves.

Plaintiff will shortly respond in the D.C. Circuit to underscore why this latest forfeited assertion regarding the Foundation's bylaws does not warrant a stay pending appeal from that Court. But Plaintiff raises the issue now, before this Court, because Defendants' assertion raises questions about Defendants' ongoing compliance with the Court's permanent injunction. Plaintiff therefore requests that Defendants be required to provide a sworn declaration detailing what the Foundation is, when it was created, when it received its current name, who controls it, its relationship to the Kennedy Center, and whether the Foundation is the same or different from the so-called Fund; if the Fund is a different entity, to provide all of the above information regarding the Fund as well; to provide a copy of the claimed bylaws of the Foundation and/or any Fund; or to state that no such Foundation, Fund or bylaws exist.[5]

\* \* \*

Plaintiff reiterates her objections to effectively staying the shutdown portion of the case while the unrelated renaming appeal proceeds, and to a potentially indefinite delay of further status reports. Defendants should answer the Amended Complaint and the parties should propose a schedule for resolving this matter. Finally, Plaintiff respectfully requests the Court require Defendants to provide the sworn declaration and updates described above.

---

[5] Plaintiff has been informed of several instances of President Trump's name appearing online and on physical signage after Jule 12, 2026. Plaintiff has and will continue to transmit such information to Defendants' counsel. With the caveats regarding the concerns detailed above, Plaintiff appreciates Defendants' commitment to "expeditiously address any remaining uses of the President's name if and when they become aware of their existence."

12

Dated: June 19, 2026

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
 (D.C. Bar No. 1724093)
KYLE R. FREENY
 (D.C. Bar No. 1684764)
ALEXANDER KRISTOFCAK
 (D.C. Bar No. 90045623)

WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
kfreeny@washingtonlitigationgroup.org
nzelinsky@washingtonlitigationgroup.org

NORMAN EISEN
 (D.C. Bar No. 435051)
STEPHEN JONAS
 (D.C. Bar No. 90037069)
DAVID W. OGDEN
 (D.C. Bar No. 375951)

DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

BRANTLEY MAYERS
Counsel to the Assistant Attorney General

STEPHEN M. ELLIOTT
Assistant Branch Director

*/s/ William S. Jankowski*
WILLIAM S. JANKOWSKI
D.C. Bar No. 90021524
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
(202) 353-7578
william.s.jankowski@usdoj.gov

*Counsel for Defendants*

13

**CERTIFICATE OF SERVICE**

I, William S. Jankowski, hereby certify that on June 19, 2026, I electronically filed the foregoing, and all its attachments, using the Court's CM/ECF system, which automatically serves this document upon all counsel of record, in keeping with LCvR 5.4(d).

/s/ William S. Jankowski
William S. Jankowski

*Counsel for Defendants*