**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOYCE BEATTY,

*Plaintiff*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

No. 25 Civ. 4480 (CRC)

**MEMORANDUM IN SUPPORT OF MOTION FOR EMERGENCY INJUNCTIVE RELIEF**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................ 1

BACKGROUND ........................................................................ 3

ARGUMENT ........................................................................ 8

I. The Kennedy Center Memorializes President Kennedy Alone. ........................................ 9

II. The Recognition Resolution Is Unlawful. ........................................ 11

A. Defendants Cannot Add Trump's Name To The Portico. ........................................ 11

B. Defendants Cannot Rename The Kennedy Center's Grounds The "President Donald J. Trump Plaza." ........................................ 14

C. There Are Additional Reasons To Reject The Recognition Resolution. ........................................ 17

III. The Equities Favor Injunctive Relief. ........................................ 19

CONCLUSION ........................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418 (D.C. Cir. June 17, 2026) ........................ 3

*Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13 (D.D.C. 2025) ................................ 2, 3

**Statutes**

20 U.S.C. § 76h ........................................................................................................ 3, 15, 17

20 U.S.C. § 76h(a)(1) ........................................................................................................ 1, 9, 14

20 U.S.C. § 76i ........................................................................................................ 4

20 U.S.C. § 76i(c)(3) ........................................................................................................ 4, 10, 16

20 U.S.C. § 76i(c)(4)(C) ........................................................................................................ 15

20 U.S.C. § 76j(a)(1)(F) ........................................................................................................ 15

20 U.S.C. § 76j(a)(1)(G) ........................................................................................................ 15

20 U.S.C. § 76j(a)(2)(F) ........................................................................................................ 16

20 U.S.C. § 76j(b) ........................................................................................................ 5

20 U.S.C. § 76j(b)(1) ........................................................................................................ 5, 10, 12, 16

20 U.S.C. § 76j(b)(2) ........................................................................................................ 10, 13

20 U.S.C. § 76k(a) ........................................................................................................ 15

20 U.S.C. § 76k(b) ........................................................................................................ 15

20 U.S.C. § 76q ........................................................................................................ 3, 9

20 U.S.C. § 76s ........................................................................................................ 14, 15

Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, § 718 (2026) .............................. 17

Pub. L. No. 116-94, § 603, 133 Stat. 2534 (Dec. 20, 2019) ...................................................... 10

**Other Authorities**

2A, Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:11 (7th ed.) ........................................................................................................ 10

George G. Bogert et al., *The Law of Trusts and Trustees* § 558 ............ 17, 18

John F. Kennedy Center Plaza Authorization Act of 2002, Pub. L. No. 107–224, 116 Stat. 1340 (Sept. 18, 2002) ............ 16

Kingsberry, Janay, *Trump's New Plan to Get His Name Back on the Kennedy Center*, The Atlantic (Aug. 13, 2026) ............ 7

U.S. Gov't Accountability Off., *Principles of Federal Appropriations Law 3-286* (4th ed. 2017) ............ 17

**Rules**

Fed. R. Civ. P. 65(b) ............ 3

**Legislative Materials**

H.R. Rep. 107-622 (2002) ............ 15

**Restatements**

Restatement (Third) of Trusts § 77 cmt. b ............ 18

Restatement (Third) of Trusts § 78(1) ............ 18

Restatement (Third) of Trusts § 78(2) ............ 18

Restatement (Third) of Trusts § 87 cmt. c ............ 18

## INTRODUCTION

It's déjà vu all over again. By federal statute, the "John F. Kennedy Center for the Performing Arts and site thereof" serve as "a living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h(a)(1). Two months ago, this Court issued a crystal-clear decision: "Congress gave the Kennedy Center its name, and only Congress can change it." Mem. Op., ECF No. 50 at 2. The Court made clear that Congress took "pains to ensure that the Kennedy Center's public spaces honor President Kennedy and President Kennedy alone." *Id*. at 49. By law, no "other individual" besides President Kennedy may "be memorialized on the front portico of the building." *Id*. at 48. Nor does the Board have the power to "designate new memorials in the public areas of the Center without Congressional approval." *Id*. at 50. The Court ordered Defendants to remove President Trump's name from the façade. *See* ECF No. 49. After waiting until the last possible minute, Defendants complied in the early morning hours of June 13, 2026. In an act of obvious petulance, however, Defendants hung a tarp over the building's iconic lettering, obscuring President Kennedy's name from the face of the institution meant to memorialize his legacy.

Now, in a new and breathtaking act of defiance of Congress and of this Court, Defendants have voted to return President Trump's name to the Kennedy Center's façade. This time, Trump's name will appear on the building's front portico not once, but twice. Underneath President Kennedy's name, it will say: "Restored and Renovated by President Donald J. Trump" and "Endowed by the Trump Kennedy Center Fund."

Defendants also voted to rename the grounds on which the Center sits for President Trump—in contravention of Congress's express designation of the grounds as part of the "living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h(a)(1). Meanwhile, despite repeated requests from Plaintiff, Defendants have refused to delay effectuating their latest resolution until

after the Court rules on this motion in a reasonable timeframe, instead imposing an arbitrary September 8 deadline. As a result, absent emergency relief from this Court, Defendants will rush to knowingly violate the law and thumb their nose at the Court.

Enough is enough. Defendants' contemptuous behavior must stop. The Court decided this issue on May 29, 2026. Defendants do not like the law, and they do not like this Court's enforcement of the law. But they are not above the law, and so they must comply. This latest move is a transparent effort to rename the Center in President Trump's honor, and at a minimum constitutes an unlawful attempt to memorialize President Trump by returning his name to the portico and grounds where this Court held it does not belong. Plaintiff and the Court should not need to play Defendants' game of whack-a-mole. If permitted to proceed, Defendants will openly flout the law, and—as they apparently did the first time they unlawfully tacked President Trump's name onto the marble edifice—risk added damage to the historic façade. Plaintiff respectfully requests the Court issue an order permanently enjoining Defendants' latest actions and put an end to this childish gambit.

To facilitate this Court being able to decide this matter on a reasonable timeline and to issue a reasoned decision, Plaintiff also requests the Court enter an immediate temporary stay while it "awaits full briefing and argument," whether it characterizes that order as an administrative stay or a temporary restraining order. *Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13, 16 (D.D.C. 2025). Because Defendants will agree to pause their unlawful activities only until September 8, they have created an unnecessary fire drill—to Plaintiff's and the Court's detriment. There is no need for this manufactured emergency, which has already forced Plaintiff to brief this motion at breakneck speed. An order briefly preserving the status quo will enable the Court to hold a hearing if necessary and issue a decision in an appropriate manner.

If the Court does not issue a temporary stay, Plaintiff respectfully submits that it is imperative for the Court to rule before September 8, 2026. Anything less would do considerable harm to the public's faith in the rule of law.[1]

## BACKGROUND

**1.** Following President John F. Kennedy's assassination, Congress established the Center that bears his name to memorialize him—and him alone.

As this Court has stressed, "Congress honored the fallen president not just with a building, but an entire institution." Mem. Op. at 49. By law, there "is established in the Smithsonian Institution a bureau" directed by "the Trustees of the John F. Kennedy Center for the Performing Arts" "whose duty it shall be to maintain and administer the John F. Kennedy Center for the Performing Arts and site thereof as the National Center for the Performing Arts, a living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h. This institution which bears President Kennedy's name serves as "the sole national memorial to the late John Fitzgerald Kennedy within the city of Washington and its environs." 20 U.S.C. § 76q.

[1] District courts have found authority to issue administrative stays based on "the All Writs Act" and their "inherent authority to manage" their "docket[s]." *Nat'l Council of Nonprofits*, 763 F. Supp. 3d at 16. *But see Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418, at *1 (D.C. Cir. June 17, 2026) (holding, in an unpublished decision, that district courts lack authority to enter administrative stays). At minimum, the Court can safely enter a temporary restraining order under these unique circumstances to ensure it has more time to decide this matter in an orderly fashion. *See* Fed. R. Civ. P. 65(b). This Court's permanent injunction opinion already found that equity favors relief here, and a temporary restraining order would plainly be warranted. As this Court already found, Plaintiff will succeed on the merits and suffers irreparable harm absent relief. Moreover, Defendants have now implied that adding new letters onto the marble could do immediate, irreparable harm to that historic façade. Defendants are not harmed—at all—by being forced to comply with the Court's decision. And the public interest strongly favors not rewarding Defendants' contemptuous effort to defy the Court. At bottom, it would be breathtaking, indeed, if the Court could not issue a temporary order to provide a little additional time for briefing and argument, when the Court already ruled for Plaintiffs and Defendants are openly defying the Court.

Congress acted comprehensively to ensure the institution honors President Kennedy and no one else. Among other things, Congress formally "designated" the institution "the John F. Kennedy Center for the Performing Arts," *id*. § 76i, and prohibited the designation or installation of *any* "additional memorials or plaques in the nature of memorials" in its "public areas," with three extremely limited exceptions that do not apply here, *id*. § 76j(b)(1). As the Court found, this "prohibition is unambiguous, and the narrow exceptions only serve to reinforce the breadth of the bar on public memorials and plaques." Mem. Op. at 50. Moreover, "Congress was so wary of diluting the power of the public dedication to the slain president that, when it authorized the REACH expansion in 2012, it noted that the Board could 'acknowledge private contributions' that made the expansion possible, but only 'in the interior of the project' and not 'on the exterior[.]'" *Id*. (quoting 20 U.S.C. § 76i(c)(3)).

But eight months ago—on December 18, 2025—Defendants voted to rename the Kennedy Center after Donald Trump. "The next day, President Trump's name was affixed on the Center's front portico above President Kennedy's." Mem. Op. at 10. This represented a massive breach of the trustees' fiduciary duties and a clear *ultra vires* action, to say nothing of a direct assault on the separation of powers and the rule of law. The renaming did enormous "damage" "to the trust *res*." *Id*. at 56 n.23. Artists "canceled upcoming performances," the Washington National Opera parted "ways with the institution," and ticket sales "experienced a precipitous drop," as "did viewership of the Kennedy Center Honors broadcast." *Id*.

**2.** Plaintiff Congresswoman Joyce Beatty serves as an ex officio member of the Center's Board of Trustees. Four days after the renaming, she promptly brought this lawsuit to halt the unlawful effort to memorialize President Trump by defacing this sacred monument to a slain

President. On May 29, 2026, this Court granted Plaintiff partial summary judgment as to renaming and awarded declaratory and permanent injunctive relief in her favor. ECF Nos. 49, 50.

The Court was crystal clear. "Congress gave the Kennedy Center its name, and only Congress can change it." *Id.* at 2, 91. "The text, structure, and evolution of the organic statute makes the institution's name abundantly clear. Congress likewise took pains to ensure that no other memorial-like dedication would grace the Center's public spaces." *Id.* at 91. By "affix[ing] President Trump's name to the building's façade," Defendants "violate[d] Congress's unequivocal mandate." *Id.* Defendants have no power to "designate new memorials in the public areas of the Center without Congressional approval." *Id.* at 50. And no one other than President Kennedy may be "memorialized on the front portico of the building." *Id.* at 48.

The Court rejected Defendants' specious justifications for their actions. Particularly relevant here, the Court rejected Defendants' arguments "that physical addition of President Trump's name to the face of the building [wa]s not a 'memorial' or 'plaque in the nature of' a memorial under § 76j(b)." *Id.* at 51. The record makes clear "that the renaming was meant to honor President Trump's work on the Center." *Id.* at 52. Moreover, "nothing in the ordinary meaning of 'memorial' suggests that the word necessarily denotes posthumous commemoration, even by the Defendants' own cited dictionary definition." *Id.* at 53. And "[a]s a textual matter, Congress has not just banned public 'memorials' at the site, but 'plaques *in the nature* of memorials'"—a sweeping prohibition indeed. *Id.* at 52 (quoting 20 U.S.C. § 76j(b)(1)).

The Court gave Defendants two weeks to comply with the law and its order. *See* ECF No. 49 at 2. Defendants waited until the eleventh hour before filing a stay request, which this Court and the Court of Appeals rejected. Finally, on the evening of June 12, Defendants constructed scaffolding, hung a tarp over most of President Kennedy's name to block the public view, and

finally removed President Trump's name from the Kennedy Center's façade. Today, the tarp remains, redacting President Kennedy's name from view on the face of the sole institution in the nation's capital meant to serve as the national memorial to his legacy.

**3.** On August 13, 2026, the Board held a meeting at which Defendants proposed and—over Plaintiff's vigorous objection—adopted a new recognition resolution to honor President Trump. *See* ECF No. 66-2.[2]

The recognition resolution had not been placed on the agenda, and the prepared draft of the resolution had not been circulated to trustees prior to the meeting. *See* Zelinsky Decl. ¶ 4 & Ex. A. The resolution asserts that the Center "would be in financial ruin without President Trump's unique stature as both an unparalleled fundraiser and world-class developer," and states that "it is due to President Trump's position as the head of the Center that both financial backers and Congress have been willing to, and remain willing to, support the Center to prevent financial ruin." ECF No. 66-2 at 1. The resolution resolves "that the Center desires to recognize and honor President Trump's current and future existential and unprecedented contributions to the survival

[2] On the eve of the deadline for Plaintiff to file this motion, Defendants informed Plaintiff that they had provided the Court with the wrong version of the resolution. Defendants subsequently filed a different resolution as an errata. *Compare* ECF No. 64-2, *with* ECF No. 66-2. At this juncture, Plaintiff knows only that two versions of the resolution were shown by zoom to the Board, one of which appears to have been the version originally filed with the Court as ECF No. 64-2. Plaintiff objects to this eleventh hour errata and does not concede that the latter-field resolution represents the operative one. It is possible that Defendants are confused or mistaken about *which version they passed*—a fact that only underscores the shambolic nature of the proceedings on August 13. In the end, none of this is material: Either version of the resolution is unlawful. In this motion, Plaintiff focuses on the text of ECF No. 66-2, for the avoidance of any doubt that she deserves relief. The accompanying redline shows that the second-filed version changes some of the tenses of the verbs from past to present. Zelinsky Decl. Ex. B. This appears to be an effort by Defendants to suggest that their inscriptions and plaza designation do not memorialize President Trump, because they are honoring "current and future" actions, not past actions. ECF No. 66-2 at 1. If this is their theory, it is preposterous. The inscriptions are written in the past tense. Moreover, President Trump's current actions today become past actions tomorrow—meaning the inscriptions and plaza renaming honor past actions. Nor is the bar on memorialization limited to past acts.

of the Center." *Id*. And the resolution directs the Center's Executive Director and Chief Operating Officer to do three things:

First, "honor the President's contributions, current and future, with an inscribed recognition on the building, below the name of the Center, as follows:

***The John F. Kennedy Memorial Center for the Performing Arts***
***Restored and Renovated by***
***President Donald J. Trump***"

Second, "to further recognize the President's contributions, current and future, upon the endowment of the Trump Kennedy Center Fund reaching $100M," modify the inscription to read:

***The John F. Kennedy Memorial Center for the Performing Arts***
***Restored and Renovated by***
***President Donald J. Trump***
***Endowed by the***
***Trump Kennedy Center Fund***

Third, "name the physical site and grounds upon which the Center sits, which are not named in the governing statutes, the 'President Donald J. Trump Plaza.'" *Id*.

After the vote, one Defendant trustee appointed by President Trump indicated "that he would support Trump's name being included 'everywhere that it could be possible.'"[3]

**4.** Immediately following the Board meeting, Plaintiff's counsel contacted Defendants' counsel, who committed in writing not to "effectuate the façade/plaza resolution until, at the earliest, August 27th." In preparing the recent joint status report, Plaintiff's counsel repeatedly requested that Defendants further commit to hold off effectuating the recognition resolution until after the Court ruled on its legality. But Defendants refused and instead have agreed to wait only until September 8, giving Plaintiff no other choice but to agree to the compressed briefing schedule

[3] Janay Kingsberry, *Trump's New Plan to Get His Name Back on the Kennedy Center*, The Atlantic (Aug. 13, 2026), https://www.theatlantic.com/culture/2026/08/kennedy-center-trump-board/688276/.

proposed in the parties' status report. In the process of drafting the status report, Defendants' counsel also indicated that the marble on the front portico requires "remediation" "following removal of President Trump's name," ECF No. 64 at 8; Zelinsky Decl. ¶ 5, making clear that Defendants' past actions and proposed future actions violate not just the law and President Kennedy's memory but also the physical structure of the Kennedy Center.

This request for emergency injunctive relief follows.

## ARGUMENT

This motion should not be necessary. This Court's earlier decision was clear: "Congress gave the Kennedy Center its name, and only Congress can change it." Mem. Op. at 2, 91. No person other than President Kennedy may "be memorialized on the front portico of the building." *Id*. at 48. The Board also may not "designate new memorials in the public areas of the Center without Congressional approval." *Id*. at 50. The "entire institution," "not just . . . a building," "honor[s] the fallen president." *Id*. at 49.

These declarations were not mere passing asides. They were the central thrust of this Court's opinion. Over and over again, the Court underscored that—absent narrow exceptions, not relevant here—Congress mandated that the Kennedy Center's "public spaces honor President Kennedy and President Kennedy alone." *Id*. at 49. Defendants' resolutions knowingly violate the law, again, and play chicken with the Court. This is again a breach of the trustees' fiduciary duties, *ultra vires*, and in clear contravention of the Court's earlier decision. *See id*. at 44-47 (cause of action for breach of fiduciary duties); *id*. at 53-55 (ultra vires). The Court should permanently enjoin this latest ruse. Meanwhile, because Defendants have manufactured a September 8

deadline, the Court should enter an immediate temporary stay to dispense with this artificial emergency and enable the Court to consider this matter in an orderly fashion.[4]

## I. The Kennedy Center Memorializes President Kennedy Alone.

At this point, the merits are well-trod ground. "Congress gave the Kennedy Center its name, and only Congress can change it." Mem. Op. at 2, 91. The "Kennedy Center must be named for, and is meant to honor, President Kennedy alone." *Id.* at 50. Absent exceedingly narrow exceptions that do not apply here, the Board cannot memorialize anyone other than President Kennedy, lest it dilute the institution's mission as the sole national memorial to the late President.

Start with the obvious points. The organic statute formally designates the institution as the "John F. Kennedy Center for the Performing Arts" and uses that name "no fewer than two dozen times." *See* Mem. Op. at 49. Congress made clear that the Center's raison d'être is to serve as "the sole national memorial" in the nation's capital to its namesake—and not anyone else. 20 U.S.C. § 76q. Moreover, as this Court has stressed, "Congress honored the fallen president not just with a building, but an entire institution." Mem. Op. at 49. That eponymous institution includes both "the John F. Kennedy Center for the Performing Arts and site thereof," which serve as "a living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h(a)(1).

---

[4] There should be no doubt that the Court possesses jurisdiction to issue relief notwithstanding the fact that Defendants have appealed the initial order enjoining the renaming. Indeed, concluding otherwise would mean the appeal effectively acted as a mandatory stay pending appeal—when both this Court and the Court of Appeals denied a stay. There are two alternative and mutually exclusive buckets into which this motion falls, either one of which would mean the Court has jurisdiction over this motion. First, if the issues raised by the motion are deemed to involve the issues on appeal, then the Court retains jurisdiction to enforce its prior order pending the appeal under well-established principles. Second, if the issues are deemed different from those involved on appeal from the original permanent injunction, there is no question the Court would also retain jurisdiction to address those separate issues. But under either scenario, the Court has jurisdiction to halt this blatant act of defiance after the Court of Appeals denied Defendants' motion for a stay pending appeal. Should Defendants argue otherwise, Plaintiff stands ready to brief this issue.

Meanwhile, Congress took pains to ensure that the institution's "public spaces honor President Kennedy and President Kennedy alone." Mem. Op. at 49. In particular, Section 76j(b)(1) provides that "no additional memorials or plaques in the nature of memorials shall be designated or installed in the public areas of the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76j(b)(1). As the Court has explained, this "prohibition is unambiguous" and "unequivocal." Mem. Op. at 50. It prevents any "additional memorials in the Center's public areas." *Id*. at 55.

That conclusion grows even clearer in light of Section 76j(b)(2), which provides "a handful of enumerated exceptions" to (b)(1)'s sweeping prohibition on new memorials. *Id*. at 49. As the Court recognized, these "narrow exceptions only serve to reinforce the breadth of the bar on public memorials and plaques." *Id*. at 50; *cf.* 2A, Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:11 (7th ed.) ("A true statutory exception exists only to exempt something which would otherwise be covered by an act.").

Indeed, as this Court noted, "Congress was so wary of diluting the power of the public dedication to the slain president that, when it authorized the REACH expansion in 2012, it noted that the Board could 'acknowledge private contributions' that made the expansion possible, but only 'in the interior of the project' and not 'on the exterior[.]'" Mem. Op. at 50 (quoting 20 U.S.C. § 76i(c)(3)). Moreover, Congress knows how to authorize additional memorials at the Kennedy Center when it so desires. For example, in 2019, Congress specifically provided by law for a plaque "to commemorate the 60th anniversary of the signing of the National Cultural Center Act ...signed into law by President Dwight D. Eisenhower on September 2, 1958." Pub. L. No. 116-94, § 603, 133 Stat. 2534 (Dec. 20, 2019).

Finally, the statutory silence is as telling as the text. As this Court explained, there are "no

statutory sources that empower the Board to change the name or designate new memorials" "without Congressional approval." *Id.*

## II. The Recognition Resolution Is Unlawful.

The Board's recognition resolution—adding two new inscriptions onto the portico in Donald Trump's honor and renaming the plaza for him—is a transparent attempt to effectuate the renaming in another guise. If a patron attends the Kennedy Center, sees Donald Trump's name emblazoned on the portico, and learns about "President Donald J. Trump Plaza," it will appear that the institution is—once again—named for Donald Trump. Moreover, whether or not this is a renaming (to be clear: it is), this latest gambit at minimum unlawfully memorializes Donald Trump (including once more on the front portico). This plainly violates the statutory prohibitions on memorializing anyone other than President Kennedy, and also exceeds the Board's statutory authority. In short, the resolution unquestionably violates the Kennedy Center's organic statute and openly flouts this Court's decision. The Court should reject this latest act of defiance.

### A. Defendants Cannot Add Donald Trump's Name To The Portico.

Defendants intend to add President Trump's name back onto the front portico—not once, but twice—in an absurd effort to circumvent the Court's renaming ruling. But this Court already explained that the Board *cannot* rename the Kennedy Center. Defendants' latest work-around is a blatant attempt to rename the institution for President Trump by any means possible, this time by characterizing it as a "recognition." It is just as unlawful. "Congress gave the Kennedy Center its name." Mem. Op. at 2, 91. Congress did *not* call the institution the "Kennedy Center, Restored and Renovated by Donald Trump." But to anyone who sees the front façade of the Kennedy Center festooned with these new inscriptions, the institution will again appear to honor Trump. Indeed, the sequence of events—coming on the heels of the earlier attempt to rebrand the institution—

indicates that's the point of this new maneuver. But as before, "only Congress can" effectuate this kind of renaming of this sacred national memorial to a slain President. *Id.*

Moreover, even if these new inscriptions on the front portico did not technically constitute a renaming—and they do—they would still constitute prohibited "memorials or plaques in the nature of memorials." 20 U.S.C. § 76j(b)(1). The recognition resolution makes clear that the inscriptions "recognize and honor President Trump's" alleged "contributions to the . . . Center." ECF No. 66-2 at 1. The inscriptions themselves venerate President Trump's putative actions to have "restored," "renovated," and "endowed" the Center. *Id.* These new inscriptions are thus an unlawful "effort to ensure that future visitors would be aware of the President's 'past' work." Mem. Op. at 53. Any suggestion that these inscriptions do not fall within the statutory prohibition on additional memorials in Section 76j(b)(1) is "risible, both in light of the record evidence and as a matter of common sense." *Id.* at 51-52.[5]

The portico inscriptions are also particularly brazen acts of defiance because they ignore the Court's repeated admonition that no one other than John F. Kennedy can "be memorialized on the front portico of the building." *Id.* at 48; *see also, e.g.*, *id.* at 50 (explaining that the Board violated the terms of the trust by mounting Trump's name "alongside President Kennedy's on the front portico of the main building"); *id.* at 55 ("Placing President Trump's name on the front portico of the building further contravenes the organic statute's unequivocal prohibition on additional memorials in the Center's public areas.").

Moreover, the Board's direction to install the words "Endowed by the *Trump Kennedy*

[5] Defendants cannot escape the bar on memorializations with their eleventh-hour modification of parts of the resolution to the present tense. *See supra* p. 6 n. 2. The inscriptions are *still* in the past tense; from the perspective of a person observing these inscriptions in the future, any efforts made today to memorialize President Trump's "current" actions will honor his past work; and the bar on memorials does not only apply to past impressions. *See* Mem. Op. at 52.

*Center Fund*" on the front of the building is a direct violation of the Court's existing order. That inscription will resurrect the precise phrase—"Trump Kennedy Center"—which the Court's prior order expressly enjoined Defendants from using. *See* ECF No. 49 at 2-3. And it gets worse: in their earlier filings before the D.C. Circuit, Defendants also stated that the Fund's bylaws mandate that the Fund condition all "donations to the Center upon the name of the Center remaining unchanged as the 'Donald J. Trump and John F. Kennedy Memorial Center for the Performing Arts,' " and claw back all donations should the name be changed. Defendants' Stay Mot. 2, No. 26-5224 (D.C. Cir. June 12, 2026). This is nothing less than a poison pill entirely of Defendants' own making, calculated to undermine this Court's decision and President Kennedy's legacy. Plaintiff therefore requests that—in addition to enjoining Defendants from effectuating the resolution—the Court's order expressly vacate the bylaws and enjoin Defendants from effectuating them.

It seems Defendants intend to argue that adding the words "Restored and Renovated by" or "Endowed by" before President Trump's name on an inscription allows them to navigate around and defy the law, just as they claimed the right to have a "secondary name" the first go-round. Like their prior argument, this is absurd. Those words actually confirm the obvious fact that these inscriptions memorialize President Trump. Moreover, because these inscriptions are meant to honor a "major contribution" from President Trump, they cannot appear on the façade or anywhere outside the building. 20 U.S.C. § 76j(b)(2).

To be clear: President Trump has not made any such "major contribution" to the Center in any way. Instead, President Trump seeks to take personal credit for signing legislation in which Congress appropriated funds for the Kennedy Center paid for by the American taxpayer. That the money comes from the public fisc makes this effort to recognize President Trump on the façade

all the more galling—particularly when he has overseen a precipitous decline in performances and patrons. But even if President Trump had made a personal contribution, this is not a legal way for the Board to recognize it.[6]

**B. Defendants Cannot Rename The Kennedy Center's Grounds The "President Donald J. Trump Plaza."**

Defendants' decision to rename the grounds the "President Donald J. Trump Plaza" is likewise part of a shameless attempt to circumvent the Court's decision and the Center's organic statute. To the extent Defendants contend that only the building and not the site itself is "named in the governing statutes," ECF No. 66-2 at 1, that is incorrect. The statute makes clear that any name for the grounds must mirror the Center's name, because the grounds serve as an integral part of the living memorial to President Kennedy. Moreover, as with the inscriptions, this latest gambit violates the prohibition on memorials and exceeds the Board's authority.

As this Court explained, "Congress honored the fallen president not just with a building, but an entire institution." Mem. Op. at 49. The institution as a whole—including the grounds—is named for President Kennedy. The governing statutes thus refer to the "site" Defendants seek to rename as the "grounds of the John F. Kennedy Center for the Performing Arts," and the "building and site of the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76s. Congress thus made clear that the site shares the name of the building which it houses and the institution of which it is a part—all of which is named for President Kennedy.

Indeed, Congress's intent to name the entire institution as a whole for President Kennedy, not just a building, is found throughout the statute. *See, e.g.*, 20 U.S.C. § 76h(a)(1) (establishing

[6] Moreover, the fact that Congress expressly authorized a plaque commemorating President Eisenhower's signing legislation to establish the National Cultural Center, *see supra* p. 10, underscores that Congress must specifically authorize commemorations that memorialize a President's legislative act related to the Kennedy Center—including President Trump's recent signing of legislation appropriating funds for renovations.

"in the Smithsonian Institution a bureau" led by "the Trustees of the John F. Kennedy Center for the Performing Arts" to "maintain and administer the John F. Kennedy Center for the Performing Arts and site thereof as the National Center for the Performing Arts"); *id*. § 76i(c)(4)(C) (providing that the REACH "will become part of the existing (as of June 8, 2012) structure of the Center"); *id*. § 76j(a)(1)(G) (charging the Board with conducting maintenance with respect "to the building and site of the John F. Kennedy Center for the Performing Arts"); *id*. § 76j(a)(1)(F) (addressing management and operations of "the grounds of the John F. Kennedy Center for the Performing Arts"); *id*. § 76k(a) (referring to the "John F. Kennedy Center for the Performing Arts[] as a bureau of the Smithsonian Institution"); *id*. § 76k(b) (referring to officers "of the John F. Kennedy Center for the Performing Arts"). For these purposes, there is no meaningful distinction between the building, the ground beneath it, and the institution that is the Kennedy Center.

Moreover, there can be no doubt that the grounds—in particular—cannot be named for someone besides John F. Kennedy. Congress expressly mandated that both "the John F. Kennedy Center for the Performing Arts *and site thereof*" serve as "a living memorial to John Fitzgerald Kennedy"—and no one else. 20 U.S.C. § 76h (emphasis added). This language is crystal clear: The Board must maintain the entire site *as a memorial to President Kennedy*. The Board cannot rename the site after anyone else without doing severe violence to this portion of the statute and undermining the central purpose of the institution.

That statutory text alone is enough to reject this latest attempt to rename the Kennedy Center grounds. But there is more. In 2002, Congress authorized the Board to build a large pedestrian plaza—to be called the "John F. Kennedy Center Plaza," 20 U.S.C. § 76s—over the Potomac Freeway, which would have provided "a new public space and stately approach to the Kennedy Center from the east." H.R. Rep. 107-622 at 3 (2002); *see* John F. Kennedy Center Plaza

Authorization Act of 2002, Pub. L. No. 107–224, 116 Stat. 1340 (Sept. 18, 2002). The project never came to fruition. But this legislative text, which remains in the United States Code, makes clear that there is no plausible distinction between the name of the building and the grounds on which it sits. At minimum, this text prevents the Board from designating that location as a different plaza named for President Trump.

Moreover, naming the plaza for President Trump again violates Section 76j(b)(1), which precludes adding additional memorials and plaques in the nature of memorials—even for empty public spaces that do not bear President Kennedy's name. That broad prohibition exists, as this Court has underscored, because Congress was extremely "wary of diluting the power of the public dedication to the slain president"—a memorial which, again, expressly extends to the entire site. Mem. Op. at 50. Under Defendants' proposed approach, by contrast, the Board could emblazon *everything* at the Kennedy Center with Donald Trump's name—from the garage to the giftshop—without limit, so long as the named space lacks a formal name in the organic statute. That is precisely the kind of race to rebrand the Kennedy Center and dilute its status as a memorial that Congress feared. And the fact that Congress took pains to ensure that *any* acknowledgment of donors takes place *inside* the main building or the REACH, *see* 20 U.S.C. §§ 76i(c)(3), 76j(b)(2), is a strong indication that Congress did not want the Board memorializing anyone other than President Kennedy on the grounds outside a building. Moreover, the Board cannot make any "change in the management and operation of the grounds" without "the express approval of Congress"—and Congress has not approved this renaming. 20 U.S.C. § 76j(a)(2)(F).

Finally, as the Court has emphasized, the Board lacks affirmative statutory authorization "to designate new" memorials "without Congressional approval" other than a few narrow circumstances, such as those identified in Sections 76j(b)(1) and 76i(c)(3). Mem. Op. at 50. Given

the care with which Congress delineated the Board's various duties and powers, *id*. §§ 76h et seq., the similar care with which Congress named the Kennedy Center, the recent express authorization of a small plaque commemorating President Eisenhower's signing historic legislation, and the strong measures Congress took to prevent the dilution of Kennedy's name, that silence is again a strong indication that Congress did not want the Board to conduct this kind of wholesale rebranding of the site of a sacred national memorial.

**C. There Are Additional Reasons To Reject The Recognition Resolution.**

The Court can stop here. But there are three more ways in which the recognition resolution is unlawful.

*First*, because appropriated funds are used for maintenance and renovations, this latest recognition resolution violates a longstanding statutory mandate that no appropriated funds "shall be used" "for publicity or propaganda purposes" not "authorized by Congress." Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, § 718 (2026).[7] This language is understood to prohibit "self-aggrandizement," including where materials are "designed to glorify" an "official"—which is precisely what Defendants have done here. U.S. Gov't Accountability Off., *Principles of Federal Appropriations Law 3-286* (4th ed. 2017), https://www.gao.gov/assets/2019-11/687162.pdf.

*Second*, even if the Board had located a loophole in the literal text of the statute—and to be clear, for the reasons above, it has not—the Board is not permitted to accomplish indirectly what the statute forbids directly. *See* George G. Bogert et al., *The Law of Trusts and Trustees* § 558 ("Courts characterize the cases in which they review and upset a trustee's use of discretionary

[7] Section 718's language—which is routinely included in omnibus appropriations bills—applies to "appropriation contained in this or any other Act." Section 718's limitation thus applies to funds appropriated both in that bill and *other legislation*.

powers as those involving 'abuse of discretion,' 'bad faith,' 'dishonesty,' or 'arbitrary' action."); Restatement (Third) of Trusts § 78(1) ("[A] trustee has a duty to administer the trust solely in the interest of the beneficiaries, or solely in furtherance of its charitable purpose."); § 78(2) ("[T]he trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests."); § 87 cmt. c ("[A]n abuse of discretion occurs when a trustee acts from an improper . . . motive."). To be clear: The effort to evade Congress's clear intent through this gambit is a breach of fiduciary duty.

*Third*, the bizarre and rushed way in which the Board adopted this new recognition resolution—keeping trustees in the dark until the last minute, neither circulating the resolution in advance nor including the measure on the agenda—was wildly imprudent and constituted a breach of fiduciary duty. *See* Restatement (Third) of Trusts § 77 cmt. b (explaining that the "duty of *care* requires the trustee to exercise reasonable effort and diligence" which "will ordinarily involve investigation appropriate to the particular action under consideration, and also obtaining relevant information"); Bogert's *The Law of Trusts and Trustees* § 558 (noting that courts have held a trustee's conduct to be arbitrary where she has "gone through the formality of exercising . . . discretion without deliberately considering the circumstances").

Indeed, the process—and the apparent lack of any consideration for the harm it would again cause the trust—echo the secretive process that produced the unlawful shutdown vote this Court previously enjoined. Mem. Op. at 79 & n.31. And in any event, the fact that the Center's management deliberately hid the plan to propose this extraordinary resolution from the Board by excluding it from the agenda strongly suggests they knew it was unlawful and wanted to forestall scrutiny until a hurried vote could be secured.

## III. The Equities Favor Injunctive Relief.

As the Court previously found, equity favors injunctive relief where the Board erects unlawful memorials to anyone but President Kennedy. *See* Mem. Op. at 56 (court evaluates (1) irreparable injury; (2) inadequacy of legal remedies; (3) balance of hardships; and (4) public interest).

As before, Plaintiff faces irreparable injury absent relief from this Court, which remedies at law cannot redress. "[O]nly an injunction prohibiting the Board from continuing to effectuate its unlawful decision will place Beatty in good stead as to her statutory and fiduciary duties." *Id*. Moreover, the first renaming caused enormous damage "to the trust *res*" in the form of artist cancelations, plummeting ticket sales, and declining viewership. *Id*. at 56 n.23. There is every reason to conclude the recognition resolution will exacerbate these harms.

The "balance of hardships also strongly favors the Congresswoman." *Id*. at 57. Defendants again face no harm from being unable to proceed with their blatant unlawful conduct. *Id*. Moreover, Defendants have implied that their prior unlawful imposition of President Trump's name potentially damaged the Kennedy Center's historic marble. *See* ECF No. 64 at 8; ECF No. 64-1 ¶ 6; Zelinsky Decl. ¶ 5. Meanwhile, the harms to Plaintiff are profound. This endeavor is once again corrupting the institution that she is charged with protecting—and, indeed, will potentially cause further physical damage to the Center's historic marble.

Finally, even more so than before, the public interest strongly favors swift equitable relief. Put simply: Defendants' repeated and highly public defiance of the judicial process undermines the rule of law. To this day, Defendants maintain a tarp over the Center's façade, frustrating this Court's order and obscuring President Kennedy's name on the portico of the institution that is meant to memorialize him. Meanwhile, even after this Court outlined how prudent fiduciaries

must act, Defendants treated their legal duties with contempt—springing this new recognition resolution on the Board without warning.

Perhaps most importantly: With this latest resolution, Defendants openly defied the Court's renaming decision. The Court explained that the Kennedy Center must honor its namesake, and that no one else may be memorialized on the front portico. Defendants seem determined on trying anyway—and are openly scorning the rule of law in the process. Finally, because Defendants contemptuously refuse to await the Court's ruling before proceeding with their unlawful acts, they have manufactured an unnecessary emergency. The public interest is not served by this behavior, and equity does not reward this conduct.[8]

* * *

This matter should have been put to rest on May 29, 2026. But rather than pursue their appeal—which they notably did *not* seek to expedite—Defendants have engaged in the worst kind of mendacity. The parties should not be back in front of the Court on this issue. Yet here we are. The Court should make it clear that this behavior must stop.

**CONCLUSION**

For the foregoing reasons, the Court should enter an immediate temporary stay and order permanent injunctive relief.

---

[8] Defendants' behavior is no less contemptuous because their unlawful recognition resolution directs Defendant Floca only to "undertake all legal means to effectuate such recognition." ECF No. 66-2 at 2. There *are no legal means* which would permit Defendants to effectuate the three tasks identified in the resolution—as this Court's decision made emphatically clear. The fact that Defendants will also not wait for the Court to rule—but instead insist on plowing ahead after September 8—demonstrates their contempt for the legal process.

Dated: August 20, 2026

Respectfully submitted,

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
KYLE R. FREENY
(D.C. Bar No. 1684764)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID W. OGDEN
(D.C. Bar No. 375951)
DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*