**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOYCE BEATTY,

*Plaintiff*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25-4480 (CRC)

**DEFENDANTS' RESPONSE TO MOTION FOR EMERGENCY INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 5

ARGUMENT ........................................................................................................ 6

I. The Planned Inscriptions on the Front Portico are Lawful. ........................................ 6

II. Beatty Cannot Challenge the Board's Decision to Name the Physical Site and Grounds the "President Donald J. Trump Plaza," which is Lawful in Any Event. ...... 9

III. Beatty's Other Arguments Fail Too. ........................................ 16

IV. A Procedural Issue Also Weighs in Favor of Denial. ........................................ 17

V. The Equities Do Not Favor Relief. ........................................ 19

VI. The Court Should Not Grant an Administrative Stay. ........................................ 20

CONCLUSION ........................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**

*Acting Comptroller Gen. Fisher to the Chairman, Nat'l Lab. Rels. Bd.*,
31 Comp. Gen. 311 (Jan. 18, 1952) ........ 16

*Adair v. England*,
193 F. Supp. 2d 196 (D.D.C. 2002) ........ 18

*Am. Petrol. Inst. v. E.P.A.*,
683 F.3d 382 (D.C. Cir. 2012) ........ 6

*Chen v. Fed. Bureau of Investigation*,
721 F. Supp. 3d 1 (D.D.C. 2024) ........ 20

*Church v. Biden*,
573 F. Supp. 3d 118 (D.D.C. 2021) ........ 20

*Dellinger v. Bessent*,
768 F. Supp. 3d 30 (D.D.C. 2025) ........ 21

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) ........ 14

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ........ 19

*Expenditure of Appropriated Funds for Informational Video News Releases*,
28 U.S. Op. O.L.C. 109, 2004 WL 3554705 (2004) ........ 16

*Feng Wang v. Pompeo*,
354 F. Supp. 3d 13 (D.D.C. 2018) ........ 19

*Fisheries Survival Fund v. Jewell*,
236 F. Supp. 3d 332 (D.D.C. 2017) ........ 19

*Gen. Servs. Admin. Use of Gov't Funds for Advert.*,
25 Op. O.L.C. 91, 2001 WL 34815743 (2001) ........ 16

*Hamilton v. Transp. Sec. Admin.*,
240 F. Supp. 3d 203 (D.D.C. 2016) ........ 9

*Heartland Reg'l Med. Ctr. v. Leavitt*,
415 F.3d 24 (D.C. Cir. 2005) ........ 17

*Kingdom v. Trump*,
No. 26-5181, 2026 WL 1905418 (D.C. Cir. June 17, 2026) ........ 20

*LeBoeuf, Lamb, Greene & MacRae, LLP. v. Abraham*,
180 F. Supp. 2d 65 (D.D.C. 2001) ........ 18

*Luna Perez v. Sturgis Pub. Schs.*,
598 U.S. 142 (2023) ........ 15

*Martinez-Andino v. DHS*,
No. 26-1208 (BAH), 2026 WL 1801137 (D.D.C. June 23, 2026) ........ 18

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ........ 6, 8

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006) ........ 10

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) ........ 12

*O'Brien v. Weld*,
92 U.S. 81 (1875) ........ 10

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
810 F.3d 631 (9th Cir. 2015) ........ 18

*Shelton v. King*,
229 U.S. 90 (1913) ........ 17, 19

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ........ 8

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........ 19

*United States v. Texas*,
144 S. Ct. 797 (2024) ........ 20

*United States v. Wells*,
519 U.S. 482 (1997) ........ 10

*Wis. Cent. Ltd v. United States*,
585 U.S. 274 (2018) ........ 7

**Statutes**

20 U.S.C. § 76h ........ 14

20 U.S.C. § 76h(a)(1) ........ 11, 12, 13

20 U.S.C. § 76i(a) ........ 11, 13

20 U.S.C. § 76i(c)(3) ........ 8

20 U.S.C. § 76i(c)(4) ........ 14

20 U.S.C. § 76i(c)(4)(C) ........ 14

20 U.S.C. § 76j(a)(1)(F) ........ 13

20 U.S.C. § 76j(a)(1)(G) ........ 13

20 U.S.C. § 76j(a)(2)(F) ........ 11, 15

20 U.S.C. § 76j(b) ........ 8, 15

20 U.S.C. § 76j(b)(1) ........ 7, 8, 9

20 U.S.C. § 76j(b)(2)(C) ........ 9, 15

20 U.S.C. § 76k(a) ........ 13

20 U.S.C. § 76k(b) ........ 13

20 U.S.C. § 76q-1 ........ 14

20 U.S.C. § 76q-1(a)(5) ........ 15

20 U.S.C. § 76s ........ 15

Pub. L. No. 98-205 ........ 7

Pub. L. No. 119-75 ........ 16

## INTRODUCTION

The Kennedy Center is in terrible trouble. The crisis is so acute that, without the Trump Administration, its people, and President Trump, the Center cannot survive, either structurally or financially.

The building has become dangerously dilapidated, outdated, and decrepit. It is structurally unsound, fundamentally unsafe, and embarrassing to the Nation's Capital. Because the Center's finances are in crisis, the Center is facing terminal decline. Like many arts and entertainment facilities, the Center has been losing tens of millions of dollars each and every year for decades, and it is projected to lose over $100 million per year long into the future. In short, both physically and financially, the Kennedy Center is in critical condition. To bring this sick and poorly run facility back to health will require time, energy, talent, and large amounts of money.

Upon re-taking office in 2025, President Trump assumed that challenge. He obtained $258 million in funding from Congress for capital restoration, and has marshalled a new donor base to finance an endowment for the Center. These efforts promise to raise hundreds of millions of dollars to fund desperately needed structural improvements, thereby making the Center physically and financially secure for generations to come and, perhaps most importantly, to make the Center structurally safe from collapse or calamity.

The Trump Administration, and President Trump, have also committed an enormous amount of time and energy in planning for the forthcoming renovation and restoration of this building, a task which President Trump, given his unrivaled expertise and experience in real estate and construction, and prominence as President, is uniquely qualified to accomplish.

The Board recognizes that President Trump's efforts and prestige provide the sole hope for the Center's financial survival, and structural renewal. The Board also underscores, and the undisputed evidence demonstrates, that without the prominent recognition of The Trump Administration, and President Trump's efforts, the donors will not contribute, and the Center will continue to be in a financial and structural death spiral. The Trump Administration, and President Donald J. Trump, should, therefore, be given the respect and dignity of acknowledgement.

In June, the Board unanimously voted—Democrat Representative Joyce Beatty included—to recognize the President. Next, on August 13, the Board voted, by an overwhelming majority to take three specific actions in order to recognize and acknowledge President Trump.

In fact, though Congresswoman Beatty voted against the August 13 measure, she explicitly stated that she had "no objection" to one component of it—re-naming the Center's grounds after President Trump to honor the work he is doing to save the Kennedy Center.

Without those efforts, the Center will deteriorate further into an unsafe, decrepit structure that will be required to be taken down, with a determination to follow on what to build on the site, such as a large outdoor amphitheater overlooking the Potomac River that has been proposed, by some, for many years. Such a replacement will fail to adequately honor President John F. Kennedy, but would be simpler and more economical to build, operate, and maintain.

Nevertheless, Beatty, seemingly motivated by a partisan end to ensure the Kennedy Center does not succeed under President Trump's leadership, now asks this Court to prohibit those three crucial and plainly lawful initiatives adopted by the Board in order to recognize the Trump Administration's unique contribution to the Center's viability: (1) adding the inscription "renovated and restored by President Donald J. Trump" on the front of the building under the Center's name; (2) adding the phrase "endowed by The Trump Kennedy Center Fund" (which is

already in existence, and ready to go!), under the first inscription; and, (3) naming the site that contains the Center the "President Donald J. Trump Plaza."

Congresswoman Beatty cannot challenge the renaming of the Plaza—an action that she affirmatively stated at the Board meeting that she did not object to. Beatty lacks standing in her capacity as an *ex officio* Board member (with no legal right to vote), to challenge an action that she agreed to in her capacity as a nonvoting member. Her claim of standing makes a mockery of Article III, destroys the lawsuit's basis, and reveals the nakedly partisan nature of her efforts.

Even worse, Beatty's claim further tarnishes this Court's decision with Beatty's appearance of bias and partisanship that sullies Beatty's endless litigation against the Board, and threatens to further embroil the Court in a partisan lawsuit lacking merit. More importantly, it almost guarantees the continued decline and eventual demise of the Kennedy Center, probably leading to the construction of a new, but very different kind, of venue.

All three actions adopted by the Board are completely lawful. No statute names the Plaza or prohibits the Board from re-naming it. Just the opposite! Congress has authorized the Board to "maintain and administer" the "site" containing the Center, and that entails the authority to name it. In fact, just seven years ago, the Center named a substantial portion of its grounds, "The REACH," without a semblance of protest. Nobody had any idea what it even meant. Evidently, Beatty contends that the Center's grounds can be re-named only if the re-naming does not acknowledge President Trump. That position has no merit.

Likewise, the two planned inscriptions on the front portico are plainly lawful. An acknowledgement of the Trump Administration's, and President Trump's, present and future efforts to renovate and restore the Center is not a "memorial" under any plausible reading of the

statute. Such acknowledgements of major donors are ubiquitous in similar facilities, and Beatty offers no plausible reason to suppose that Congress foreclosed them here.

The equities overwhelmingly favor Defendants. The Center is not, has never been, and will not become a profit-making enterprise. Instead, the Center is a cultural and entertainment facility designed to promote the interests of society, Washington, D.C., and the world. President Trump's efforts promise to stem the Center's tremendous financial losses, place the Center on stable financial footing for decades to come, and rebuild and renovate the decimated structure. These goals should be shared by all who want to see the Center survive and thrive. By contrast, Beatty's attempt to challenge the Plaza's re-naming, after admitting she has "no objection" to it, reveals that her lawsuit is a hyper-partisan effort to oppose any recognition of President Trump's contributions to the Center. She suffers no plausible irreparable harm from reflexively opposing President Trump at every turn.

An order blocking the Board from appropriately recognizing President Trump will cause donors to flee, financial contributions to dry up, and structural rehabilitation to stop. There will simply not be the expertise or funding necessary to rebuild and renovate this decimated structure. The Trump Administration is ready to go but, without it, the Kennedy Center cannot be saved. There are many conflicts of interest having to do with the Kennedy Center, and it would be a shame if those conflicts of interest would destroy the very thing that we are all trying to save. In short, without appropriate recognition, the Kennedy Center will be back where it was at the beginning — A financially insolvent facility, housed in a decrepit, dilapidated, crumbling building, that is bleeding hundreds of millions of dollars in losses, and continues to race toward physical and financial ruin.

The bottom line is this: Even Beatty should prefer a healthy, restored Center to a decaying hulk that is doomed to inevitable destruction or collapse. The Court should allow the Board and President Trump to bring the Center back to a level of greatness far higher than it has ever had before. This would be the fitting tribute that President Kennedy so well deserves.

**BACKGROUND**

On May 29, 2026, this Court granted partial summary judgment to Plaintiff and permanently enjoined Defendants from taking any action that could be construed as renaming the Kennedy Center. *See* Doc. 49 at 2. A few weeks later, the Board of Trustees met and unanimously agreed to find a lawful way to acknowledge the contributions of President Donald J. Trump and the Trump Kennedy Center Fund. *See* Ex. A at 6-9.

On August 13, 2026, the Board reconvened and, after much discussion and debate, passed a resolution that implements such acknowledgement. *See* Ex. B at 14-18. After recognizing, among other things, that President Trump is "successfully engaging in fundraising efforts" and "overseeing an extensive restoration and renovation," a near-unanimous Board expressed its "desire[] to recognize and honor President Trump's current and future existential and unprecedented contributions to the survival of the Center by all legal means," in any of the following three ways:

*First*, "to honor the President's contributions, current and future," the Board wishes to place an inscription on the front of the building, stating "renovated and restored by President Donald J. Trump."

*Second*, to "further recognize the President's contributions, current and future," the Board wishes to add "endowed by The Trump Kennedy Center Fund" under the first inscription once the Fund's endowment reaches at least $100 million.

*Third*, the Center "desires to name the physical site and grounds upon which the Center sits" the "President Donald J. Trump Plaza."

At the Board meeting, Beatty, in the context of asking whether the resolution "complies with the statute governing the Center, which restricts inscriptions and plaques to specified exceptions," made clear that "she had no objection . . . to the naming of the plaza." Ex. B at 16. Even so, Beatty announced that she was voting no on the resolution as a whole, "having been advised that it may not be in compliance." *Id.* at 17. She also noted that she was opposed to "changing the exterior name." *Id.* at 15. Ultimately, twenty board members voted in favor of the resolution and three *ex officio* members, including Beatty, opposed it. *Id.* at 17-18. Now, Beatty asks this Court to enjoin effectuation of the resolution, including its provision naming the plaza. *See* Doc. 67-1 (Mem.).

## ARGUMENT

### I. The Planned Inscriptions on the Front Portico are Lawful.

Beatty first challenges the planned inscriptions on the Front Portico. *See* Mem.11-14. This Court need not reach Beatty's arguments about the inscription reflecting the Fund's contributions because it is not imminent. This inscription will be added only once the Fund's endowment reaches $100 million. Doc. 66-2 at 1. Beatty provides no reason to think this date is approaching, especially because the Fund has not yet started raising money. *See* Declaration of Joseph LaFauci ¶ 4. And absent imminence, Beatty lacks standing to seek an injunction as to the Fund's inscription and her arguments are not ripe. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010) (explaining that a permanent injunction "guard[s] against any present or imminent risk of likely irreparable harm"); *Am. Petrol. Inst. v. E.P.A.*, 683 F.3d 382, 386 (D.C. Cir. 2012).

In any case, Beatty's merits arguments do not provide a basis for relief with respect to either inscription provision.

*First*, Beatty claims that the inscriptions constitute a renaming of the Kennedy Center. Mem.11-12. Not so. The name remains, as this Court has ordered (but subject to appeal), the John F. Kennedy Center for the Performing Arts, and that name, or an acceptable variation thereof (*e.g.*, Kennedy Center), will remain on all "official materials." Doc. 49 at 2. No reasonable reading of the recognition resolution leads to any other conclusion. Even if Beatty's imagined patron believes that the new inscriptions acknowledge or "honor Trump," Mem.11, that does not mean the Center is named for the President, just like the Eisenhower Theater does not mean that the Center is named for President Eisenhower. Instead, the inscriptions only describe President Trump's role as the one responsible for the Center's renovation and restoration.

*Second*, Beatty claims that the planned inscriptions constitute statutorily prohibited "memorials or plaques in the nature of memorials . . . in the public areas of the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76j(b)(1). This argument also does not justify relief. Defendants recognize that this Court previously rejected Defendants' reading of this provision. Doc. 50 at 51-53. Defendants' position remains that statutory history[1] points to a narrower prohibition than the one employed by the Court. And statutory structure points the same way too. If Congress truly intended a proscription as broad as the Court concluded, then Congress would have used different language. Congress specifically limited its constraint to statutory "memorials

[1] At April's hearing, Defendants noted that Congress enacted 20 U.S.C. § 76j(b)(1) as part of a bill that authorized the construction of a memorial to posthumously commemorate "the life and accomplishments of Juliette Gordon Low" over a half-century after her passing. Pub. L. No. 98-205, 97 Stat. 1387, 1387 (1983). Rather than mere "legislative history," Doc. 50 at 53, this context suggests that, at the time Congress enacted 20 U.S.C. § 76j(b)(1), it understood that provision's use of the word "memorial" to have a similar sweep. *See Wis. Cent. Ltd v. United States*, 585 U.S. 274, 284 (2018) ("[I]t's a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary, contemporary, common meaning at the time Congress enacted the statute." (citation modified)).

or plaques in the nature of memorial," 20 U.S.C. § 76j(b)(1);[2] Congress did not ban, for example, all "acknowledgements"—a term used elsewhere in the statutory scheme, *see* 20 U.S.C. § 76i(c)(3); *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) ("Where a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." (alterations adopted and quotation omitted)). Nor did Congress ban all additions of plaques or text in the public areas of the Center. And Congress made clear that testimonials—or "expression[s] of appreciation" and "tributes," *Testimonial*, def. 3, Webster's Third New International Dictionary (1986)—did not come within the statute either. Put simply, the scope of the statutory prohibition is narrower than Plaintiff would have it.

In any case, even under reasoning of this Court's prior order, the planned inscriptions do not run afoul of 20 U.S.C. § 76j(b). Previously, this Court started by noting that the "lettering literally reads: "The Donald J. Trump and John F. Kennedy *Memorial* Center for the Performing Arts." Doc. 50 at 52 (emphasis in the original). But under the planned inscriptions, there would be no renaming whatsoever. This Court also reasoned that the statutory prohibition applied because the renaming was "an effort to ensure that future visitors would be aware of the President's 'past' work." Doc. 50 at 53. Here, on the other hand, the Board made clear that this acknowledgement is not a renaming, nor a memorial, nor a plaque in the nature of a memorial, and that it is intended to acknowledge President Trump for his present and future commitments to the Center. *See* Doc. 66-2 at 1. Beatty's response—that the inscriptions could one day honor "past work," Mem.12n.5—is not cause for an injunction now. *See Monsanto Co.*, 561 U.S. at 162.

---

[2] This Court previously found the "plaques in the nature of memorials" clause to be evidence in support of a broad statutory sweep. Doc. 50 at 52. But "in the nature of" simply means "of the type, form, or character of; similar to, like; equivalent to, classifiable as." *Of/In the Nature of*, def. 4a, Oxford English Dictionary (rev. ed 2003). Therefore, the statute prohibits only plaques "classifiable as" memorials, and no more.

Beatty is also wrong to argue that all "major contribution[s]" "cannot appear on the façade or anywhere outside the building." Mem.13. The provision on which Beatty relies merely provides that a memorial or plaque in the nature thereof is exempt from 20 U.S.C. § 76j(b)(1) if it is an "inscription on the marble walls in the north or south galleries, the Hall of States, or the Hall of Nations acknowledging a major contribution," 20 U.S.C. § 76j(b)(2)(C). Because the planned inscriptions do not run afoul of § 76j(b)(1), there is no need to find an exception.

Finally, Beatty is wrong to suggest that reference to the "Trump Kennedy Center Fund" runs afoul of this Court's previous order. Mem.12-13. That order did not purport to limit private parties from using a name that includes the phrase "Trump Kennedy Center." Rather, consistent with Article III's limitations, this Court's order clearly applies to the Defendants in front of this Court and to "official" uses of the phrase. *See* Doc. 49 at 2-3; *Hamilton v. Transp. Sec. Admin.*, 240 F. Supp. 3d 203, 205 (D.D.C. 2016) ("[T]he Court is powerless to issue an injunction against non-parties." (quotation omitted)). Therefore, any use of the phrase by a private party in a non-official setting does not run afoul of the order, even if that private party shares a relationship with a named Defendant, and Beatty provides no reason to think it violates any provision of law either.[3] Further, recognizing the eventual contributions of the Fund in no way implies that the Center, rather than the Fund, is named for President Trump.

For these reasons, the Board's resolution is authorized by the relevant statutes.

## II. Beatty Cannot Challenge the Board's Decision to Name the Physical Site and Grounds the "President Donald J. Trump Plaza," which is Lawful in Any Event.

Previously, Beatty contended that she had standing to sue the Board as a dissenting co-trustee. *See, e.g.*, Doc. 30 at 19-23. And this Court agreed. *See* Doc. 50 at 34 ("[W]hether a

[3] Because neither the Fund nor the Foundation are parties to this litigation, this Court should not otherwise entertain requests for relief directed at them. *Contra* Mem.13.

lawsuit is the only way for a minority trustee to discharge her duty of reasonable care, assuming Beatty is right on the merits, she will satisfy her administrative duty if she prevails on her renaming claim."). Defendants maintain their disagreement with this Court's conclusion, and the standing issue is on appeal. But even if this Court's earlier standing analysis is correct, Beatty remains unable to challenge the Board's decision to name the physical site and grounds on which the Center sits the "President Donald J. Trump Plaza."

This conclusion directly flows from the fact that, at the August 13th Board meeting, Beatty stated that she had "no objection" to "the naming of the plaza." Ex. B at 16. Beatty is foreclosed from arguing that her "legal obligations" (Doc. 50 at 42) necessitate a challenge to the Board's vote when she, only days ago, informed her co-trustees that she had no objection to that part of the resolution. After the Board acted in accord with Beatty's opinion, she may not switch horses and argue the opposite in federal court. *Cf. O'Brien v. Weld*, 92 U.S. 81, 84-85 (1875) ("A party cannot even encourage an act to be done, and then exercise a legal right in hostility to such act, to the injury of the party obeying his intimations."). In other words, Beatty may not "complain" about an alleged error that she "invited." *United States v. Wells*, 519 U.S. 482, 488 (1997) (quotation omitted). And she may not manufacture standing by voicing approval for part of the very Board decision that she claims injured her. *See Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing."). There, to Defendants' knowledge, is no support in trust law, precedent, or history and tradition for Beatty's suit in these circumstances, and this Court should accordingly not grant relief.

Even if this Court concludes that Beatty can challenge the Board's decision to name the plaza, this Court should conclude that Beatty was right in conceding its propriety. Congress has

not named the physical site and grounds of the Center, nor has Congress expressly retained for itself the authority as to what the name should be. Instead, statute after statute makes clear that Congress's designation applies only to the Center's building. In the beginning, Congress directed the Board "to maintain and administer the John F. Kennedy Center for the Performing Arts and *site thereof* as the National Center for the Performing Arts." 20 U.S.C. § 76h(a)(1) (emphasis added). Congress also ordered the Board to construct "a *building to be designated* as the John F. Kennedy Center for the Performing Arts on a site in the District of Columbia." 20 U.S.C. § 76i(a) (emphasis added).[4] And Congress made clear that the Board oversaw not only the building but also had the duty of "manag[ing] and operat[ing] the grounds of the John F. Kennedy Center for the Performing Arts." 20 U.S.C. § 76j(a)(2)(F).

Each of these statutes draw a distinction between the building—designated by Congress as the John F. Kennedy Center for the Performing Arts—and the site or grounds, which is unnamed. The Board's jurisdiction therefore encompasses a complex of buildings, gardens, and landscape features, each of which are maintained and administered by the Board. Indeed, in addition to the "John F. Kennedy Memorial Center for the Performing Arts" building, the campus includes the REACH Welcome Pavilion, the REACH Skylight Pavilion, and the REACH River Pavilion.[5] It also includes the REACH Gardens, the Presidential Grove, and the Video Wall Lawn.[6] And there is the REACH Plaza, North Plaza, River Plaza, Entrance Plaza, Victura Deck, and myriad sculptures.[7]

---

[4] To be clear, Defendants maintain, as they did before, that this designation does not preclude adding President Trump's name to the Center.

[5] *See* The Kennedy Center, *Full Map of the Kennedy Center*, https://perma.cc/39UY-5UTN.

[6] *Id.*

[7] *Id.*

Critically, as noted above, this campus has no statutorily provided name. And Defendants submit that there is no statutory impediment to the Board naming the complex the "President Donald J. Trump Plaza." On the contrary, the Board is vested with general authority "to maintain and administer" the sprawling site. 20 U.S.C. § 76h(a)(1). This authority includes the power to name the unnamed complex "President Donald J. Trump Plaza." Indeed, there is precedent for the Board exercising its authority to name unnamed spaces and buildings on the complex. For example, although Congress authorized the construction of the expansion project now known as the REACH, it did not prescribe a name for the expansion; rather, the Board exercised its general authority in naming the project the REACH.[8] Similarly here, the Board has the authority to affix President Trump's name to the plaza in recognition of his extraordinary contributions to the Kennedy Center.

In response, Beatty contends that Congress has already named the "grounds . . . for President Kennedy." Mem.14. This contention fails to persuade. For support, Beatty first notes that this Court previously wrote that Congress honored President Kennedy "not just with a building, but an entire institution." Doc. 50 at 49. Beatty claims that this snippet resolves this issue. But, on its face, that language does not prohibit the Board's naming of the plaza. Further, the question at issue now was not the question at issue then, and Beatty therefore errs in representing that this Court's prior language resolves this motion. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023) ("[O]ur opinions dispose of discrete cases and controversies and they must be read with a careful eye to context."). And, in any case, the very

[8] David Siegel, *The Kennedy Center Previews Its New Addition*, DC Theater Arts (June 4, 2019), https://web.archive.org/web/20260204040740/https://dctheaterarts.org/2019/06/04/kennedy-center-preview-the-reach/.

statute on which this Court relied on in reaching that conclusion confirms that, for naming purposes, the Center and the site are treated differently. *See* Doc. 50 at 49 (quoting 20 U.S.C. § 76h(a)(1)).

Beatty also relies on a handful of statutes. Mem.14-15. But none of them answer the question in her favor either. As explained, the Board has the statutory authority to "maintain and administer" the site as it sees fit, which includes a power to establish a name. *See* 20 U.S.C. § 76h(a)(1). And Beatty does not identify another statutory provision that takes this power away or limits it in any way relevant to the recognition resolution.[9]

Most of the cited statutes refer to the "grounds of the John F. Kennedy Center for the Performing Arts," 20 U.S.C. §§ 76j(a)(1)(F), 76s, or the "building and site of the John F. Kennedy Center for the Performing Arts," 20 U.S.C. §§ 76j(a)(1)(G), 76s. But references to the site of a building or the building's grounds do not, in and of themselves, name the site or grounds, especially when Congress has elsewhere "designated" the building alone, *see id.* § 76i(a). Beatty otherwise relies on statutes that, for example, refer to the officers "of the John F. Kennedy Center for the Performing Arts," *id*. § 76k(b), or that refer to the Center as a "bureau" of the "Smithsonian Institution." *id.* §§ 76h(a)(1), 76k(a). These statutes suggest that the Center is "not just a building," Mem.14, but they are not affirmative evidence that the Board is barred from naming the grounds. Beatty's reasoning would mean that the Board has long been in violation of the law. But no one reasonably believes that the Board is in violation of its duties because it has permitted, for example, the naming of River Plaza and North Plaza. Beatty then notes (Mem.15) that the REACH—an

[9] Thus, Congressional "silence" cuts in Defendants' favor, not Beatty's. *Contra* Mem.17. The fact that Congress mandated a plaque to commemorate the 60th anniversary of the signing of the National Cultural Center Act, *see* Mem.10, does not undermine the Board's actions here. Congress can mandate commemorations when it sees fit, but the Board may otherwise act as it sees fit, so long as it complies with the statutory scheme, as it did here.

"addition to the south end of the building of the John F. Kennedy Center for the Performing Arts"—"bec[a]me part of the existing . . . structure of the Center" in 2012. 20 U.S.C. § 76i(c)(4), (C). This provision is also unavailing; like the others Beatty cites, it too includes no legislative prohibition on the Board's ability to name the grounds.

Beatty also argues that the Board's vote runs afoul of the Board's duty to maintain the Center and its site as "a living memorial to John Fitzgerald Kennedy." Mem.15; *see* 20 U.S.C. § 76h. This contention makes little sense. The Kennedy Center—along with the site on which it stands—serves as a memorial to President Kennedy regardless of whether the plaza is named for President Trump. The two are not mutually exclusive, and Beatty stretches the statute far too thin in arguing otherwise. A main venue inside the Center is named for President Eisenhower, the Concert Hall's stage is named after composer John Philip Sousa, and the walls of the Hall of Nations, Hall of States, and REACH are dotted with inscriptions recognizing the contributions of countless other individuals. The continued existence of those spaces does not mean the Center has ceased to memorialize President Kennedy.

Beatty next claims support from a statute naming a plaza that, as Beatty admits, "never came to fruition." Mem.15-16. Beatty thinks that this statute—which authorizes construction of the "John F. Kennedy Center Plaza," 20 U.S.C. § 76q-1—"makes clear that there is no plausible distinction between the name of the building and the grounds on which it sits," Mem.16. On the contrary, the fact that Congress enumerated a name indicates that the grounds are otherwise without a codified name. In other words, if Beatty was right, and Congress had already named the grounds, then there would have been no reason for Congress to have named the planned plaza. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 53 (2024) ("Proper respect for Congress cautions courts against lightly assuming that any of the statutory terms it has chosen to

employ are superfluous or void of significance." (quotation omitted)). And other language in the same statute suggests that Congress understood the plaza to be distinct from the Center itself, refuting Beatty's belief that Congress views the building and the grounds to be one in the same. *See* 20 U.S.C. § 76q-1(a)(5) ("providing for construction of a Plaza *adjacent to* the Center" (emphasis added)). Finally, Beatty is wrong to contend that the Board "designated" the unbuilt plaza "as a different plaza named for President Trump." Mem.16. The Board named the existing site, not an unfulfilled project.

Beatty also invokes the statute proscribing the designation or installation of "memorials or plaques in the nature of memorials . . . in the public areas of the John F. Kennedy Center for the Performing Arts," absent the applicability of a statutory exception. 20 U.S.C. § 76j(b). But Beatty does not explain how the Board's resolution in and of itself constitutes a memorial or a plaque in the nature of a memorial. And Beatty's fear that the memorial to President Kennedy will suffer from dilution (Mem.16) distracts from the judicial inquiry at present, which is whether the Board decision at issue violates the text of any statute enacted to protect the Center's "status as a memorial" (*id.*), *see Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) ("[I]t is our job to apply faithfully the law Congress has written, and we cannot replace the actual text with speculation as to Congress' intent." (citation modified)), and fails to properly account for the fact that Congress has allowed for inscriptions on the inside of the Center, *see* 20 U.S.C. § 76j(b)(2)(C), which presumably could pose this same risk of dilution. Finally, naming the plaza in no way effects a "change in the management and operation of the grounds" necessitating Congressional approval, 20 U.S.C. § 76j(a)(2)(F); *contra* Mem.16.

* * *

In sum, Beatty's first instinct was the right one. The Board can lawfully name the plaza after President Donald J. Trump.

**III. Beatty's Other Arguments Fail Too.**

Beatty offers three additional reasons as to why she should win relief. None of them suffice.

*First*, Beatty argues that the resolution "violates a longstanding statutory mandate that no appropriated funds 'shall be used' 'for publicity or propaganda purposes' not 'authorized by Congress.'" Mem.17 (quoting Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, § 718 (2026)). But section 718, which is understood to prohibit "self-aggrandizement," does not have any bearing on the Board's vote. "Self-aggrandizement" is understood by the Department of Justice's Office of Legal Counsel and the Government Accountability Office to refer to a prohibition on agency officials from using appropriated funds to emphasize the importance of "the agency or a particular agency activity." *Gen. Servs. Admin. Use of Gov't Funds for Advert.*, 25 Op. O.L.C. 91, 2001 WL 34815743, at *3 (2001) (quoting *Acting Comptroller Gen. Fisher to the Chairman, Nat'l Lab. Rels. Bd.*, 31 Comp. Gen. 311, 313 (Jan. 18, 1952)); *see also*, *e.g.*, *Expenditure of Appropriated Funds for Informational Video News Releases*, 28 U.S. Op. O.L.C. 109, 2004 WL 3554705, at *7 (2004).

Notably, the Comptroller General concluded that a mass mailer with excerpts of newspapers praising a sitting President, transmitted on State Department letterhead, was not "self-aggrandizement" in violation of the prohibition because "the expenditure of appropriated funds was not for the aggrandizement of the Department of State." *Gen. Servs. Admin. Use of Gov't Funds for Advert.*, 2001 WL 34815743, at *3 (quotation omitted). Here, any expenditure of appropriated funds related to the recognition resolution would not go to the aggrandizement of the Kennedy Center, its activities, or any of its officials.

*Second*, Beatty claims that the Board "is not permitted to accomplish indirectly what the statute forbids directly." Mem.17. But this is no excuse for Beatty's failure to identify an applicable statutory prohibition. Congress has not prohibited the Board from recognizing and acknowledging President Trump in the ways the Board has chosen, and the fact that Congress may have prohibited *other* ways of recognizing President Trump is no answer.

Beatty's related argument that the Board's vote constitutes an abuse of discretion (Mem.17-18) is entirely unavailing—especially when Beatty previously agreed that the Board should recognize President Trump's contributions, *see* Ex. A at 6-9. And it runs afoul of the "settled principle that trustees having the power to exercise discretion will not be interfered with so long as they are acting bona fide." *Shelton v. King*, 229 U.S. 90, 94 (1913). "To do so would be to substitute the discretion of the court for that of the trustee." *Id.* at 94-95.

*Third*, Beatty claims that the process behind the recognition resolution's adoption also provides cause for relief. Mem.18. But Beatty does not tell the whole story. As detailed above, the Board has attempted to find a lawful way to honor President Trump's contributions for the last nine months. After this Court concluded that the Board's first attempt violated the governing statutes, the Board returned to the drawing board and unanimously agreed over two months ago that it was important to find a lawful way to acknowledge the President's contributions. *See* Ex. A at 6-9. And then, at the August 13 board meeting, the Board discussed the resolution, including its legality, and voted. *See* Ex. B. at 14-18. This nine-month process is not the "wildly imprudent" process that Beatty makes it out to be, Mem.18, and provides no reasons to enjoin effectuation.

## IV. A Procedural Issue Also Weighs in Favor of Denial.

Beyond her merits issues, Beatty faces a procedural one too. Although this Court has the power to "enforce its prior order pending the appeal," Mem.9n.4, Beatty cannot, as she attempts to do here, seek new relief through a motion to enforce, *see Heartland Reg'l Med. Ctr. v. Leavitt*,

415 F.3d 24, 29 (D.C. Cir. 2005) ("Success on a motion to enforce a judgment gets a plaintiff only the relief to which the plaintiff is entitled under its original action and the judgment entered therein." (citation modified)). Instead, Beatty must seek new injunctive relief. And for a federal court to have jurisdiction to enter new injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). This means a motion for injunctive relief "must be closely related to the facts, legal issues, and parties addressed in the . . . complaint[]." *Adair v. England*, 193 F. Supp. 2d 196, 201 (D.D.C. 2002). Thus, "if the motion raises issues different from those presented in the complaint, the court has no jurisdiction over the motion." *LeBoeuf, Lamb, Greene & MacRae, LLP. v. Abraham*, 180 F. Supp. 2d 65, 69 (D.D.C. 2001).

As relevant here, the Amended Complaint challenges only the Board's December 18, 2025, decision to "rename" the Kennedy Center the "Donald J. Trump and John F. Kennedy Memorial Center for the Performing Arts" or the "Trump Kennedy Center." *See* Am. Compl. (Doc. 12) ¶¶ 32-33, 72-76, 94. 103, 108. Beatty's motion, though, challenges Board action taken almost nine months later that does not purport to alter the name of the Kennedy Center. *See generally* Mem. And given these factual differences, the legal issues are different too. Beatty's Amended Complaint did not put at issue, and thus this Court's partial summary judgment order did not address, whether the Board could name the Center's grounds, for example. Accordingly, this motion does *not* "stem[] from the same basic circumstances described by the original complaint." *Martinez-Andino v. DHS*, No. CV 26-1208 (BAH), 2026 WL 1801137, at *15 (D.D.C. June 23, 2026). This means that, at current, Beatty cannot seek the relief she does. And Beatty does not provide any reason to think otherwise—her footnote (Mem.9n.4) addresses only this Court's

jurisdiction in the light of the pending appeal and does not address the obvious discrepancies between the relief she seeks now and the relief she sought in her amended complaint. This provides yet another reason to deny relief.

**V. The Equities Do Not Favor Relief.**

To win a permanent injunction, Beatty "must demonstrate: (1) that [she] has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). She does not meet her burden.

To start, Beatty blends merits and equities. She claims irreparable harm because she will be unable to fulfill her duties as a trustee. Mem.19. But this contention wrongly assumes that the Board's new decision is unlawful. *See id.* In any case, although recognizing that the Court has previously disagreed, Defendants maintain that Beatty's alleged and abstract inability to fulfill her statutory duties does not qualify as an injury that is "certain, great and actual." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017); *see* Doc. 34-1 at 40-42. This is especially true with respect to the inscription regarding the Fund. As noted above, Beatty does not explain how the addition of this inscription is imminent and thus cannot show any irreparable harm now that stems from it. Also, Beatty's speculation about the impact of the recognition resolution on the Center (Mem.19) could not possibly constitute irreparable harm. *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 27 (D.D.C. 2018) ("[S]peculation is insufficient to establish irreparable harm.").

Weighed against Beatty's uncertain harm is the real harm to the Board caused by the intrusion on its discretionary authority, which is counter to well-understood principles of judicial review in this context. *See Shelton*, 229 U.S. at 94-95; *cf. Trump v. CASA, Inc.*, 606 U.S. 831, 859

(2025). Such an intervention would not be in the public interest. To argue otherwise, Beatty distorts the record. Mem.19-20. To be clear, Defendants have abided by each and every order this Court has entered.[10] And, out of respect for the judicial process and the rule of law, the Board included in the recognition resolution a pre-effectuation period for judicial review, *see* Ex. B at 17 (Secretary Lutnick explaining that "that if the court were to disagree, the Board would not execute it, confirming that the Center will not proceed unless it is within legal parameters and that this is the purpose of the fourteen-day period"), which Defendants have agreed to extend to allow for more time. Beatty is therefore wrong that the equity factors weigh in favor of relief.

## VI. The Court Should Not Grant an Administrative Stay.

Finally, this Court should not enter an administrative stay. As Beatty recognizes, the D.C. Circuit has recently concluded that there is no "discernible legal basis" for such relief. *Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418, at *1 (D.C. Cir. June 17, 2026); *see also United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J. concurring in denial of applications to vacate stay). (observing that the Supreme Court and "[t]he courts of appeals" issue administrative stays, with no mention of district courts). Instead, any temporary or preliminary injunctive relief must follow consideration of the ordinary four factors, *Church v. Biden*, 573 F. Supp. 3d 118, 132 (D.D.C. 2021), and, for the reasons above, those four factors cut against relief here. And even if this Court concludes that an administrative stay is available and warranted, it should exist only for a definite amount of time, and, in any case, no longer than the time Rule 65(b) allows for temporary

---

[10] First, nothing in the recognition resolution is at odds with the clear and unambiguous terms of this Court's permanent injunction order. *See Chen v. Fed. Bureau of Investigation*, 721 F. Supp. 3d 1, 8 (D.D.C. 2024). Second, even if this Court thought any of the recognition resolution's terms are at odds with the terms of its permanent injunction, Defendants have not taken any steps to effectuate the resolution, meaning there is no violation of the order in any event. Instead, the Board has complied with that order in all respects. *See* Doc. 59-1.

restraining orders. *See Dellinger v. Bessent*, 768 F. Supp. 3d 30, 32 (D.D.C. 2025) ("While Rule 65(b)(2) is silent on the timeline for temporary restraining orders entered with notice, it is generally accepted that the standard fourteen days followed by a fourteen-day extension for good cause applies to a TRO entered with notice as well.").

**CONCLUSION**

For the foregoing reasons, this Court should deny Beatty's motion for a permanent injunction.

Dated: August 24, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

*/s/ Brantley T. Mayers*
BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 890-9874
brantley.t.mayers@usdoj.gov