# Exhibit B

**THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS**

# BOARD OF TRUSTEES — Meeting Minutes

Thursday, August 13, 2026 | 10:40AM | Held Virtually via Zoom

**EXECUTIVE BOARD MEMBERS PRESENT:**

Chairman, President Donald J. Trump *(addressed the meeting by phone; vote relayed)*
Vice Chair, Jennifer Fischer *(presiding)*
Secretary, Sergio Gor *(through Item III)*
Secretary, Brian Ballard *(elected at Item III)*
Treasurer, John Falconetti
General Counsel, Elliot Berke

**ATTENDED VIRTUALLY:**

Brian Ballard, Presidential Appointee
Maria Bartiromo, Presidential Appointee
Pamela Bondi, Presidential Appointee
Mary Helen Bowers, Presidential Appointee
Hannah F. Buchan, Presidential Appointee
Robert Castellani, Presidential Appointee
Pamella Roland DeVos, Presidential Appointee
Patricia Duggan, Presidential Appointee *(connection lost, recorded by email)*
John Falconetti, Presidential Appointee
Jennifer Fischer, Presidential Appointee
Lynette Friess, Presidential Appointee
Ambassador Sergio Gor, Presidential Appointee
Pamela Gross, Presidential Appointee
Kate Adamson Haselwood, Presidential Appointee
Laura Ingraham, Presidential Appointee
Dana Kraft, Presidential Appointee
Mindy Levine, Presidential Appointee
Lynda Lomangino, Presidential Appointee
Allison Lutnick, Presidential Appointee
Douglas Manchester, Presidential Appointee
Laurie Perlmutter, Presidential Appointee
Catherine B. Reynolds, Presidential Appointee
Denise Saul, Presidential Appointee
Andrea Wynn, Presidential Appointee
Paolo Zampolli, Presidential Appointee
Representative Joyce Beatty, Ex-Officio Member
Representative Rick Larsen, Ex-Officio Member
Senator Sheldon Whitehouse, Ex-Officio Member
Emily Berret — on behalf of Leader Hakeem Jeffries, Ex-Officio Member
Elizabeth Falcone — on behalf of Senator Mark Warner, Ex-Officio Member
Johanna Hardy — on behalf of House T&I Chairman Sam Graves, Ex-Officio Member
Ted Verrill — on behalf of Representative Julia Letlow, Ex-Officio Member
Jonathan Misk — Office of Senator Sheldon Whitehouse

Ann Jacobs — Office of Representative Rick Larsen
Todd Valentine — Office of Representative Joyce Beatty
Adam Tomlinson – on behalf of Senator Shelley Moore Capito, Ex-Officio Member

**ABSENT:**

Secretary Elaine Chao, Presidential Appointee
Emilia Fanjul, Presidential Appointee
Alma Gildenhorn, Presidential Appointee
Lee Greenwood, Presidential Appointee
Barbara Long, Presidential Appointee
Dan Scavino, Presidential Appointee
Cheri Summerall, Presidential Appointee
Susie Wiles, Presidential Appointee *(vote relayed)*
Mayor Muriel Bowser, Ex-Officio Member
Secretary Lonnie Bunch, Ex-Officio Member
Senator Shelley Moore Capito, Ex-Officio Member
Senator Susan Collins, Ex-Officio Member
Senator Deb Fischer, Ex-Officio Member
Chancellor Lewis Ferebee, Ex-Officio Member
Speaker Mike Johnson, Ex-Officio Member
Secretary Robert F. Kennedy, Jr., Ex-Officio Member
Representative Michael McCaul, Ex-Officio Member
Robert Newlen, Ex-Officio Member
Secretary Marco Rubio, Ex-Officio Member
Leader Chuck Schumer, Ex-Officio Member
Leader John Thune, Ex-Officio Member
Billie Tsien, Ex-Officio Member

**STAFF PRESENT:**

Donna Arduin, Chief Financial Officer
Ary Boltansky, Education Grants Manager
Ben Dransfield, Unified Communications Manager
JoEllen Dinges, Associate General Counsel
Bronagh Donlon, Vice President of Special Events
Laura Hagan, Associate General Counsel
Laura Hanley, Director of Special Projects
Joe LaFauci, Vice President of Board Relations and Protocol
Lydia Makande, Associate General Counsel
Allie Marvin, Director of PR for institution
Bob Sellappan, Chief Information Officer
Taylor Strand, Director of Protocol
Sarah Weingast, Associate General Counsel

**ALSO PRESENT:**

Secretary Howard Lutnick, U.S. Secretary of Commerce
Ashley Davis, Vice Chair, National Symphony Orchestra
Darin Buchalter, Chief Executive Officer, Delta Consulting Group
John Cracraft, JLL Project Principal

## I. Call to Order

Jennifer Fischer

The annual meeting was called to order at 10:42 a.m. ET, held virtually via Zoom. A quorum of the Board of Trustees was confirmed to be present.

## II. Approval of Prior Meeting Minutes

Jennifer Fischer

A motion was called to approve the minutes of the June 11, 2026 Board of Trustees meeting.

Representative Rick Larsen noted several typographical errors for staff to correct, and further noted that the formal name of the subcommittee that dealt with the reconciliation bill (referenced on p. 8) was stated improperly. Rep. Larsen advised that the correct formal name is the Subcommittee on Economic Development, Public Buildings, and Emergency Management, and that he would provide the correction to Mr. LaFauci. Vice Chair Fischer accepted the corrections.

**Motion:** by John Falconetti
**Second: by Rick Larsen**
**Vote:** Motion carried by show of hands, 25 in favor, none opposed, one abstention (Ms. Gross). The minutes of the June 11, 2026 meeting were approved as amended.

The minutes were further amended later in the meeting on the motion of Senator Whitehouse. See Item IV.

## III. Election of Officers

Joe LaFauci

Mr. LaFauci advised the Board that, per the Bylaws, the annual meeting requires the election of officers, and that the Nominating and Governance Committee had met two days earlier, on Tuesday, August 11, 2026, to consider the slate.

General Counsel Elliot Berke observed that it would be recommended for the slate to be moved by a member of the Board who was not on the slate. Ms. Fischer confirmed that, as one of the officers, she could not bring the slate forward. Mr. Berke clarified that it is preferred to move the slate as a whole, rather than office by office.

At the request of Representative Larsen, the slate was read in full:

| Office | Nominee | |
|---|---|---|
| Chairman | President Donald J. Trump | Re-election |
| Vice Chair | Jennifer Fischer | Re-election |
| Treasurer | John Falconetti | Re-election |
| General Counsel | Elliot Berke | Re-election |
| Secretary | Brian Ballard | New — succeeding Sergio Gor |

Representative Joyce Beatty asked whether there would be time for nominations from the floor, and whether other nominations had been submitted. Pamella Roland DeVos, chair of the Nominating and Governance Committee, responded that the Committee had largely carried forward the prior term's

slate, that some new names had been put forward, and that the slate presented reflected the Committee's decision. Mr. LaFauci added that the Committee is appointed by the Chair not less than thirty days prior to the annual Board meeting. Representative Beatty indicated that she accepted that answer.

Secretary Lutnick stated that although it was not the ordinary process, the Board was open to nominations from the floor, and invited any member wishing to nominate an alternative candidate to do so. No nominations were made from the floor.

Ambassador Sergio Gor raised a point of clarification, asking whether the members of Congress serving on the Board are voting members. Representative Beatty noted that they had voted in the last meeting as well. Vice Chair Fischer confirmed that they are.

**Motion: by Mindy Levine**
**Second:** Made from the floor
**Vote:** Motion carried by voice vote, 23 in favor, 3 opposed. Representative Beatty, Representative Larsen and Senator Whitehouse were recorded in opposition. The slate was elected.

## IV. Amendment to the June 11, 2026 Minutes — Senator Sheldon Whitehouse

Senator Whitehouse, who had joined the meeting after the minutes were approved, asked to return to the earlier item in order to have his amendment considered.

Senator Whitehouse advised the Board that the minutes contain a reference to a comment he had made: that the measure voted upon at the previous meeting neither creates nor funds any entity — and that proposed amendatory text had been circulated to Senator Whitehouse's office in advance through staff. Mr. Berke confirmed, as counsel, that the Senator's statement of the matter was correct.

The amendment revises page 9 of the June 11, 2026 minutes to read as follows:

> "Senator Whitehouse noted that the actual operative language of the resolution neither creates nor approves a fund, which counsel confirmed. The resolution says we will abide by the law and by court orders."

**Motion: by** Senator Sheldon Whitehouse, Ex-Officio Member
**Second: by Hannah Buchan**
**Vote:** Motion carried by voice vote. None opposed. One abstention: Pamela Gross

## V. Litigation Update — Elliot Berke

Mr. Berke advised the Board at the outset that he would not address legal strategy, for reasons of privilege, and that nothing in his report constituted a waiver of privilege. He confirmed that no decisions regarding the litigation, and no actions taken at this meeting, are made without consultation with outside counsel. Mr. Berke noted that a litigant in one of the matters is a member of the Board.

Mr. Berke reported on three principal matters:

**1. Beatty v. Trump** The Center has appealed a ruling concerning the name and concerning the right of ex officio members to vote. Under the court's order, ex officio members may presently vote; that ruling

is now on appeal. The Center did not appeal the ruling concerning closure, and that litigation continues; the Board's vote on the renovation at this meeting will determine the next stage. A joint status report is due within five days of this meeting, and in any event by August 20, 2026. The Department of Justice takes the position that the preliminary injunction must be formally dissolved before any decision regarding the renovation can take effect, and that process will begin following the vote. This will not prevent the National Symphony Orchestra from announcing and proceeding with its plans for off-site performance.

**2. DC Preservation League v. Board of Trustees of the John F. Kennedy Center for the Performing Arts.** An answer has been filed and counsel are required to file a report every ninety days. There is no injunction in this matter; the process is going forward. Mr. Berke expressed confidence in the outcome.

**3. The Washington National Opera v. U.S.** An extension of time to answer has been granted and the answer is now due October 13, 2026. It is being drafted together with the Center's counterclaims. The case is filed in the Court of Federal Claims, which permits the Department of Justice to represent the Center.

Senator Whitehouse asked Mr. Berke to address a further matter concerning Mr. Chuck Redd, who had cancelled a Christmas Eve performance, and the attorney's fees judgment entered against the Center. Mr. Berke reported that the Center had brought litigation against Mr. Redd, that in his view the case was not well advised given that the performance was free and the compensation to the artist relatively small, and that the Center lost. Under applicable anti-SLAPP provisions. the Center has been ordered to pay Mr. Redd's attorney's fees in the amount of $250,000. That award will be appealed, as the amount is outrageous; Center's own costs in the matter were less than ten percent of that sum.

Mr. Berke estimated the cost of appeal to be approximately $10,000 to $15,000, which he considered a bargain measured against the fees charged by Mr. Redd's counsel.

Senator Whitehouse asked that the Center examine the performance of its outside counsel in that matter, stating that deadlines had been repeatedly missed and page limits ignored, characterizing the handling of the litigation as amateurish, and stating that the Kennedy Center deserves better. He asked whether the Center was reviewing whether that firm would be retained again, and further asked for an explanation of why the firm had been retained in the first instance and who had selected it. Mr. Berke confirmed that the selection is under review, and responded that the field had been canvassed to identify counsel thought to be well suited to bring the case.

Secretary Lutnick stated that the Board will clearly review that selection and its outcome, that he agreed with the concerns raised, and that the Center will be much more considered and precise in how it proceeds going forward.

## VI. Buildings and Grounds — Independent Assessment

Hannah Buchan / Darin Buchalter

Ms. Buchan reported that the Buildings and Grounds Committee had held several meetings reviewing the options to be presented — whether to leave the building partially open, or to close it and operate from the REACH with the National Symphony Orchestra performing off campus. Ms. Buchan advised

that the Committee had spent considerable time reviewing the materials from JLL and having discussions with Darin Buchalter. She believes there is a clear path forward with regard to efficiency and cost savings with the partial closure. Secretary Lutnick stated that the Center hired two experts to do a complete analysis – JLL and Delta Consulting. JLL's full Project Plan of approximately 130 pages had been sent to every Member; Delta's report is being finalized and the Center asked him to do an executive summary of his findings and recommendations..

Secretary Lutnick noted that the Center as a whole will not close. The REACH is new and will stay open and will continue to program. Secretary Lutnick met with the National Symphony Orchestra which remains fully committed to the Center and the Center remains fully committed to them. The NSO is a national treasure. Secretary Lutnick noted that we are only talking about the main building and how to renovate it. Secretary Lutnick pointed out that at the Mark Twain Awards, the air conditioning failed in the morning and the executive staff had to make it work. Secretary Lutnick closed his remarks by observing that the building needs massive renovations, and that JLL and Delta had no dog in the hunt and were hired to do a full, independent analysis with no preconceived notions.

The meeting was then turned over to Darin Buchalter, CEO of the Delta Consulting Group

**Qualifications and Scope of Engagement**

Mr. Buchalter described a thirty-six year career as a board advisor and expert witness in the real estate and construction industry, including testimony in federal courts and arbitral forums worldwide and before the Ninth Circuit. Delta Consulting Group has provided advisory services internationally for twenty-six years and employs 180 personnel, largely accounting, valuation and engineering professionals. He noted the firm's involvement with high-visibility sites in Washington, D.C., including Capitol Hill, the Senate and House office buildings and the Library of Congress, and a client relationship with the Architect of the Capitol spanning more than ten years.

Delta was engaged to independently assess the construction program and identify the most effective path forward for the repair and renovation of the Center while balancing operations and mission. The analysis relied on the JLL 2026 Comprehensive Project Development Plan and the 2021 DLR Comprehensive Building Plan, supplemented by Delta's own site tours alongside on-site project managers, interviews with finance, programming and operations staff, and briefings with Board committees. Mr. Buchalter emphasized that Delta had no prior involvement with the Center and no preconceived notion as to the proper path forward.

**The Two Scenarios**

Delta evaluated each scenario against the priority of work, schedule impacts, capital cost against the fixed appropriation, operating expense implications, and the implications for the Center's long-term mission. Delta thinks about the project as "What is priority of Work" It's a fixed appropriation, going to spend it on certain improvements. Question is What are operating Costs? Take into consideration long-term mission.

Operate and partially renovate means continuing to operate main building. The REACH continues to operate under either scenario.

Mr. Buchalter stated that the state of disrepair of the Center is significant and that the remedy will necessarily be invasive, and that the JLL report, the prior evidence, the site visits and the invasive testing currently underway all show rapidly accelerating deterioration. He further stated that these conditions "instantly challenging" to consider how the Center can continue to operate during the planned construction activities.

**Operate and partially renovate.** The complexity of construction would be severe, requiring that patrons, workmen and equipment be safely channeled so that they never meet, producing an invasive visitor experience. We would have to expect having equipment on various decks, temporary entrances; a very invasive, frankly unpleaseant experience for someone visiting the Center. Costs more and takes longer. The $257 million appropriation would cover only approximately half of the work. Delta prioritized utilities — the entirety of the mechanical, electrical and plumbing systems, which are antiquated and in disrepair. In thirty-six years, Mr. Buchalter has only seen one electrical room that looks like the electrical room at the Center. Once the utilities work is completed (cost $225M) , there would be insufficient funds (shortfall of $124M) to complete the structural renovation and no remaining funds at all for venue improvement. Revenues would be expected to decline, a compression Delta believes is already visible in year-over-year revenue decline because of uncertainty and friction; would expect that to continue. The main building does not segment well, gravitating around a core rather than separable wings; on a four-year assumption, approximately a third of the building would have to be closed at any given time, reducing programming space by a third (to allow for equipment etc). That's additional revenue degredation. The capital program would be underfunded by as much as half, while the Center runs a meaningful operating deficit, directing fundraising toward the deficit and capital gaps rather than toward an endowment.

**Close the main building.** The $257 million appropriation covers most of the program. Escalating the 2021 study to present-day dollars yields approximately $285 million; the resulting $30 million difference could be addressed through value engineering, modest fundraising, or scope adjustment. Executing over a certain two-year period rather than an uncertain four-year period produces a dramatically different exposure to cost escalation and a different level of safety. Delta believes operating costs can be curtailed. The Center can build excitement around the reopening. By leveraging the REACH and thinking about its mission, we can ensure it keeps the mandate during shutdown. Mr. Buchalter advised that he had been involved in renovation of Carnegie Libraries, so he understands the cultural mandate. The partial closure would be a much more virtuous use of fundraising dollars.

**Recommendation**

Mr. Buchalter stated Delta's recommendation to close the main building and renovate, as the most efficient, economical and safest way to maximize permanent capital improvements while maintaining mission continuity and the memorial experience.

## VII. Board Discussion

Jennifer Fischer

**Cost Comparison**

Secretary Lutnick asked Mr. Buchalter to confirm whether a four-year phased approach would cost approximately $500 million, with additional annual fundraising requirements, producing a comparison figure of $600 to $650 million. Mr. Buchalter confirmed the characterization, stating that the Board would either have to raise $300 million plus a $70 to $80 million annual deficit for four years, or raise the $80 million annual deficit while cutting the scope of work in half.

**Materials and Process**

Representative Beatty stated that her packet contained only two PowerPoint slides, received two days prior, and asked whether other trustees had received the detailed materials referenced in the presentation. She noted the difficulty of digesting the volume of material within a one-hour meeting and stated that if a vote were to be called, she would need more time.

Mr. LaFauci confirmed that a 180-page PDF had been distributed to all Board members on the Tuesday prior to the meeting. Secretary Lutnick clarified that two separate documents were involved: the JLL report, running approximately 130 pages, distributed to every Board member; and the Delta report, prepared at a summary level, Delta's full report of roughly 100 pages not having been distributed because it was repetitive of the same analysis. He emphasized that JLL and Delta worked independently, with no predetermined outcome.

Secretary Lutnick further stated that the REACH will remain open and programming will continue, that the memorial will be moved to the REACH, and that the only question before the Board is whether the renovation of the main building proceeds in stages or as a single concentrated effort. He cited the Chairman's record as a builder, referenced donated materials including steel for the ballroom and a donated air conditioning system, and stated that the Chairman is willing to complete the work for $257 million in two years and has agreed to seek to raise the endowment. He stated that the Center has lost approximately $100 million per year in operations for the last decade against approximately $85 million per year in fundraising, for a net loss of $15 million.

Representative Beatty responded that she had received the JLL materials but not the full Delta report, that she has never argued the need for renovations, and that she was seeking clarity on the meaning of "partial" and on how programming would continue, in order to be sure the Board was not putting the cart before the horse with respect to what the litigation required.

Secretary Lutnick responded that the litigation made clear that the Board should conduct a full and complete analysis, and reiterated that the Center will not close and will not stop programming. It will move the memorial to the REACH for the interim period. The question for the Board is it will cost twice as much and twice as long if you do it in parts: do we hit the whole building for $257 million or do we do it in phases which will cost $500 million?  Secretary Lutnick noted President Trump has agreed to seek to raise the endowment ; he’s the best fundraiser in the world.

Representative Beatty stated that she never argued the need for renovation. She clarified that she had received the 100 page JLL report; she did not receive the Delta report other than the two PowerPoint slides.

At Rep. Beatty's request, Mr. Buchalter clarified the meaning of 'partial' - the most focused way to think of it is whether it is best to close the main building for a focused two year period for renovation or to rotate areas of the building over a four year period, sectioning off areas to do work. He reiterated the safety concerns of the public having access to the main building under construction. Trustee Andrea Wynn spoke in support of closing the main building while making use of the REACH.

**Report Reconciliation, Operating Deficit and the NSO**

Representative Larsen stated that he was not prepared to endorse characterizations of the Chairman as the greatest builder or fundraiser, citing cost overruns on the ballroom construction and delays to transit projects, but added that he did not consider the point relevant to the Board's discussion.

Rep. Larsen asked how the 2021 DLR report had been used relative to the 2026 JLL report. Mr. Buchalter responded that Delta aligned the two reports and found no notable change in scope; the real issues existed in 2021 and exist in 2026, with continuing deterioration. Delta treats the 2021 study as the cost baseline, escalated to present-day dollars, producing the $285 million figure. The JLL report's value lies in its detailed examination of individual building components, which allowed Delta to prioritize utilities over structure and over venue improvements.

Rep. Larsen asked whether the $78 million operating deficit was tied strictly to the four-year analysis and asked if there was an operating deficit associated with the two-year analysis. Mr. Buchalter responded that there is an operating deficit analysis associated with the two-year scenario, reflecting scaled programming and overhead including orchestra touring, and that over the two-year period Delta believes the deficit is relatively de minimis, as summarized on the sources-and-uses slide.

Rep. Larsen requested a document memorializing the NSO's commitment to the Center. Vice Chair Fischer responded that an affiliate agreement has been in effect since 1986 and remains fully in effect, and that amending it requires three-quarters of the Kennedy Center Board and three-quarters of the NSO Board.

Ashley Davis, Vice Chair of the National Symphony Orchestra, confirmed that the NSO is eager to continue as part of the Kennedy Center and is looking forward to announcing its season, and that the commitment is in writing through the affiliate agreement. Ms. Davis reported that no musicians have left over the past two years. Vice Chair Fischer noted the success of the NSO's summer season at Wolf Trap.

**Request for Pro Forma Financials**

Senator Whitehouse requested pro forma financials for the two-year period during which the JLL project would proceed, on a REACH-operating-only basis, summarizing his request in six points:

1. A REACH-operating-only scenario for the two-year period.
2. Forward-looking revenue and operating expense projections, noting that the falloff in revenues described by Mr. Buchalter is not reflected in figures reaching back into 2024.
3. A risk and range analysis of necessary capital expense under best-case and worst-case plausible scenarios.
4. An assessment of restoring the Center's performance capability, a number of acts having been unwilling to perform there.

5. The obligations reflected in the NSO agreement.
6. Any reportable prospect of an endowment.

Senator Whitehouse characterized these as baseline requirements for a decision of this kind, and noted that the authorizing committee would have to approve any shortfall.

Vice Chair Fischer responded that the pro formas are important and have been the subject of extensive internal discussion, but that costs escalate and money is lost each day a decision is deferred. She noted that programming at the REACH is limited by the size of those facilities, but that the REACH will produce savings with the symphony by accommodating rehearsals and equipment storage, and will house the John F. Kennedy memorial, relocated from the third floor, allowing public access at all hours. She also drew the Board's attention to the condition of the parking garage.

**Report of the Chief Financial Officer**

At Secretary Lutnick's request, Chief Financial Officer Donna Arduin gave a report on the Center’s financials.

Vice Chair Fischer stated that a decision on when and how to renovate must precede the building of reopening programming.

## VIII. Board Action — Resolution Regarding Closure of the Main Building — John Falconetti

Treasurer Falconetti, stating that he did not wish to limit discussion, advised the Board that a resolution had been prepared for its consideration and asked that the General Counsel read it to the Board. General Counsel Berke read the resolution aloud while it was displayed to the Board. The resolution, as executed, provides as follows:

**RESOLUTION OF THE BOARD OF TRUSTEES**
**OF THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS**

WHEREAS, the Board of Trustees has engaged the services of Delta Consulting Group, an internationally recognized leader in project advisory services, risk mitigation, and construction planning and management, to provide an independent and objective analysis of the Center’s options to address decades of physical neglect and deferred maintenance;

WHEREAS, the two options for the renovation and restoration presented to the Buildings and Grounds Committee, and then to the full Board, included either a closure of the main building

with continued programming in the REACH and offsite or a phased renovation while programming continues throughout the Center;

WHEREAS, Delta Consulting Group conducted a thorough review of the costs and benefits of each option, and reported its findings through an oral presentation:

WHEREAS, Delta Consulting Group's findings, reflected in its report and in the Minutes, demonstrate that the risks and costs of a phased renovation and restoration so greatly outweigh any potential benefit that the only viable safe and fiscally prudent course is to shut down the Center's main building entirely during construction;

WHEREAS, Delta Consulting Group's findings will be memorialized for the Board and will be submitted as part of any court record;

WHERAS, the Board has also reviewed the Comprehensive Project Development Plan dated June 8, 2026 and anticipates further updates consistent with it.

WHEREAS, the Board is fully committed to its statutory and fiduciary obligations to maintain the Center as the Nation's Cultural Center, to maintain public access to the Memorial to John F. Kennedy, to maintain the historic and architecturally significant nature of the Center's main building, and to continue to present arts and educational programming during construction; and

WHEREAS, the Board believes that continuing its artistic and educational programming at the Center's performing arts facilities in the REACH, maintaining the memorial to President Kennedy for public access, and through its partnership with the National Symphony Orchestra, supporting those performances offsite, as well as other signature artistic productions offsite including but not limited to the Kennedy Center Honors and the Mark Twain Prize for American Humor, allows the Kennedy Center to perform its statutory mandate while the main building and theaters are closed for renovation;

IT IS HEREBY RESOLVED that the John F. Kennedy Center for the Performing Arts shall continue to present educational and artistic programming at the REACH; that the Center shall continue its partnership with and support of the National Symphony Orchestra in performances at off-site venues; that the Center shall continue signature artistic productions offsite including but not limited to the Kennedy Center Honors and the Mark Twain Prize for American Humor; that the Memorial to President John F. Kennedy be temporarily relocated to the REACH where it will remain open to the public; and that, based on technical assessments and expert opinions confirming the necessity of a closure, the main building be closed to the public for restoration

and renovation in line with Delta Consulting Group expert opinion as well as the Comprehensive Project Development Plan dated June 8, 2026, and subsequent updates thereto.

IT IS FURTHER RESOLVED that the Executive Director and Chief Operating Officer shall undertake all legal means to effectuate the Board's direction in this matter, including by seeking to dissolve the preliminary injunction, entered in *Beatty v. Trump*, No. 25-cv-4480 (D.D.C.), currently preventing closure of the main building of the Kennedy Center for construction.

**Motion:** John Falconetti, Treasurer

**Second:** Not recorded

**Vote:** Motion carried by roll call, 23 in favor, 3 opposed. Representative Beatty, Representative Larsen and Senator Whitehouse were recorded in opposition.

**Roll call — appointed members**

| Trustee | Vote | Trustee | Vote |
|---|---|---|---|
| Brian Ballard | Yes | Mindy Levine | Yes |
| Maria Bartiromo | Yes | Lynda Lomangino | Yes |
| Pamela Bondi | Yes *(by email)* | Barbara Long | Absent |
| Mary Helen Bowers | Yes | Allison Lutnick | Yes |
| Hannah Buchan | Yes | Douglas Manchester | Yes *(by email)* |
| Bob Castellani | Yes | Laurie Perlmutter | Yes |
| Elaine Chao | Absent | Catherine B. Reynolds | Present, not voting |
| Pamella Roland DeVos | Yes | Denise Saul | Yes |
| Patricia Duggan | Yes *(by email)* | Dan Scavino | Absent |
| John Falconetti | Yes | Cheri Summerall | Absent |
| Emilia Fanjul | Absent | Susie Wiles | Yes *(relayed)* |
| Jennifer Fischer | Yes | Andrea Wynn | Yes |
| Lynn Friess | Yes | Paolo Zampolli | Yes |
| Alma Gildenhorn | Absent | President Donald J. Trump | Yes *(relayed)* |
| Sergio Gor | Yes | | |
| Lee Greenwood | Absent | | |
| Pamela Gross | Yes | | |
| Kate Haselwood | Yes | | |

| Trustee | Vote | Trustee | Vote |
|---|---|---|---|
| Laura Ingraham | Yes | | |
| Dana Kraft | Present, not voting | | |

**Roll call — ex-officio members**

| Member | Vote |
|---|---|
| Representative Joyce Beatty | No |
| Representative Rick Larsen | No |
| Senator Sheldon Whitehouse | No |

All remaining ex-officio members were called and were absent.

Trustees in attendance who experienced technical difficulties during the roll call subsequently recorded their votes by email, each in the affirmative: Pam Bondi, Mr. Manchester and Ms. Duggan, whose connection was lost while travelling. During the roll call, Secretary Lutnick advised the Board that both Ms. Wiles and the Chairman had contacted him directly and asked that their votes be recorded in the affirmative. Trustee Denise Saul noted that her name had not been called; Mr. LaFauci confirmed that her vote was recorded in the affirmative.

## IX. Discussion Following the Vote

Jennifer Fischer

Secretary Lutnick addressed the three members who had voted in the negative, asking whether their position was that the Center should remain open and renovate over four years, or whether they lacked sufficient information, stating that his objective was for the Board to reach agreement.

Representative Larsen responded that he had received and read everything sent to him, but that the materials addressed the two-year scenario and that the Board did not have the full four-year analysis. He noted that, as a member of Congress serving on the relevant committees, he and his colleagues would be accountable for any future appropriations. Rep. Larsen stated that the trustees had taken a vote, the majority had prevailed, and the discussion was concluded, and offered to speak with Secretary Lutnick separately.

Secretary Lutnick stated that he would like to speak separately with each member who voted in the negative. Senator Whitehouse agreed to speak separately and reiterated that the pro forma he had requested was elementary.

Representative Beatty stated that her position reflected a combination of the concerns raised by Rep. Larsen and Senator Whitehouse, that it was difficult for her — as a member of Congress, a board member, and a businessperson — to make a decision of this magnitude in this manner, and that the matter appeared to have been predetermined. She stated that she agreed the renovations are needed and that she was willing to have offline discussions; but this seems predetermined and exaggerated. The

Center held the Mark Twain Prize despite the conditions. She does not believe other members read it all or understood it and that it was predetermined.

Trustee Mindy Levine stated that obstacles have been put in place that preclude communication among trustees, and that the pending litigation has created hesitancy on both sides. She said that no one had contacted her to discuss concerns and that she had received only an email directing the preservation of documents, and urged that lines of communication be opened. She has respect for Representative Beatty and she knows they can find common ground.

Representative Beatty responded that she has undertaken such efforts, noting that she sat next to Ms. Levine at the in-person Board meeting and discussed these matters, that she has taken the tour, spoken with staff, and personally contacted the Center's prior administrative officer to arrange a tour. She observed that communication is a two-way street and acknowledged that Vice Chair Fischer had reached out to her. Vice Chair Fischer responded that everyone wants to say we've made good decisions.

Secretary Lutnick reflected on the due-diligence process and on his approximately twenty-two years of involvement with the Kennedy Center, and committed to reaching out to Rep. Beatty and others.

## X. Board Action — Resolution Recognizing the Chairman

Brian Ballard

Secretary Lutnick introduced a discussion regarding recognition of the Chairman, stating that if the Chairman is to complete the renovation in two years for $257 million, and has further committed to help raise money to endow the institution, it is appropriate that he be recognized. It is important to President Trump that if he's going to put his time and effort into the building and fundraising, that he be recognized. Secretary Lutnick stated that the name on the exterior of the building will remain the John F. Kennedy Memorial Center for the Performing Arts. Secretary Lutnick would like to talk about recognizing President Trump for renovating and restoring the building; also if he raises $100 million to endow, the Center would recognize the Trump Kennedy Center Fund.

Representative Larsen asked if the Board was going to be faced with a resolution to vote on immediately, stating that the renovation had not yet occurred and he had seen no endowment figure, and that if a resolution were brought forward at this meeting he would vote against it. Senator Whitehouse raised a procedural objection, noting that the item was not on the agenda and had not been raised by a member of the Board, and urged that it be handled through regular order. Vice Chair Fischer clarified that the item was framed as a discussion and not yet a vote.

Secretary Ballard asked whether the Board had voted unanimously at the previous meeting to establish an endowment fund. Senator Whitehouse and Vice Chair Fischer both responded that it had not; the earlier vote recognized the Chairman's contribution toward raising the $257 million and did not establish a fund.

Representative Beatty noted that Congress had appropriated the funds; and observed from long experience on the Board that the Center has always had to approach Congress and has never received the full amount needed. She stated that she had no objection to recognizing the Chairman inside the

building, but opposed any change to the exterior name, which she regarded as unlawful given the governing statute and the pending litigation. Ambassador Gor responded that he had been present when the Chairman personally lobbied senators to increase Kennedy Center funding, and argued that this merited recognition. Representative Beatty responded that she had no objection to recognizing the Chairman's role, but opposed doing so by changing the exterior name.

**Remarks of the Chairman**

Secretary Lutnick advised the Board that the Chairman wished to address the meeting, and the Board invited him to do so. President Trump addressed the Board at length, commenting on prior management and spending at the Center, the condition of the building including the parking structure, and the White House ballroom project, which he described as on time, under budget and privately funded. He responded to earlier comments by Rep. Larsen and Senator Whitehouse, described improvements in Washington, D.C., and stated his commitment to complete the renovation within two years with the building closed, and to reopen it in a substantially improved condition.

**Resolution**

Secretary Ballard brought forward a resolution that the Center recognize the Chairman for his contributions, and asked that it be displayed. General Counsel Berke read the resolution aloud. The resolution, as executed, provides as follows:

**RESOLUTION OF THE BOARD OF TRUSTEES**
**OF THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS**

WHEREAS, the John F. Kennedy Center for the Performing Arts (“Center”) is currently experiencing decades of physical neglect and deferred maintenance that have resulted in significant degradation to the structure of the facility;

WHEREAS, the Center has been in dire need of funding for both the physical plant and the programming mission, historically losing $100M per year;

WHEREAS, President Donald J. Trump is successfully engaging in fundraising efforts, already raising hundreds of millions of dollars for the Center, both in appropriated funds and private funds, and bringing the Center back from the brink of disaster by overseeing an extensive restoration and renovation;

WHEREAS, the Center would be in financial ruin without President Trump’s unique stature as both an unparalleled fundraiser and world-class developer, and it is due to President Trump’s position as the head of the Center that both financial backers and Congress have been willing to, and remain willing to, support the Center to prevent financial ruin;

IT IS HEREBY RESOLVED that the Center desires to recognize and honor President Trump's current and future existential and unprecedented contributions to the survival of the Center by all legal means, in any or all of the following ways:

FIRST, the Center desires to honor the President's contributions, current and future, with an inscribed recognition on the building, below the name of the Center, as follows:

**The John F. Kennedy Memorial Center for the Performing Arts**
**renovated and restored by**
**President Donald J. Trump**

SECOND, the Center desires to further recognize the President's contributions, current and future, upon the endowment of the Trump Kennedy Center Fund reaching $100M, with an inscribed recognition on or in the building, below the name of the Center, once the $100M threshold is met, as follows:

**The John F. Kennedy Memorial Center for the Performing Arts**
**renovated and restored by**
**President Donald J. Trump**
**endowed by**
**The Trump Kennedy Center Fund**

THIRD, the Center desires to name the physical site and grounds upon which the Center sits, which are not named in the governing statutes, the "President Donald J. Trump Plaza."

IT IS FURTHER RESOLVED, that the Executive Director and Chief Operating Officer shall undertake all legal means to effectuate such recognition after fourteen (14) days from the date of the adoption of this resolution.

Secretary Ballard explained that the intent was to honor the Chairman for the $250 million raised and for the future fundraising needed to keep the Center open.

Representative Beatty asked whether the resolution complies with the statute governing the Center, which restricts inscriptions and plaques to specified exceptions, stating that she had no objection to recognition after an endowment is raised, nor to the naming of the plaza, but sought clarity. General Counsel Berke responded that he could not get into privileged conversations, but that we would not be moving forward with a resolution that DOJ did not think was legally defensible. In consultation with outside counsel at the Department of Justice and with the Office of Management and Budget, the position is that the proposed recognition does not constitute a memorial or a plaque in the nature of a memorial within the meaning of the statute.

Senator Whitehouse raised a further procedural objection, noting that the item was not on the agenda, had not been circulated in advance, and that the Board had received assurances rather than a formal

written legal opinion. Mr. Berke responded that, in consultation with the Department of Justice as outside counsel, the resolution is considered legally defensible. Mr. Berke reiterated that nothing should constitute a waiver of attorney/client privilege. Secretary Lutnick stated that if the court were to disagree, the Board would not execute it, confirming that the Center will not proceed unless it is within legal parameters and that this is the purpose of the fourteen-day period

Trustee Mindy Levine asked whether the Center had in fact obtained an advisory opinion from the Department of Justice. Representative Beatty stated that she would vote against the resolution, having been advised that it may not be in compliance, and that revisiting the matter after fourteen days does not resolve that concern. Mr. Berke reiterated that our position is that this resolution will not violate the injunction currently in place.

Vice Chair Fischer asked whether Secretary Lutnick's remarks were being added to Secretary Ballard's motion or whether the Board was voting on the original motion. Mr. Berke clarified that the fourteen-day provision is already contained in the resolution text. Mr. Ballard called for the vote.

**Motion:** Brian Ballard, Secretary
**Second: John Falconetti**
**Vote:** Motion carried by roll call, 20 in favor, 3 opposed. Representative Beatty, Representative Larsen and Senator Whitehouse were recorded in opposition.

**Roll call — appointed members**

| Trustee | Vote | Trustee | Vote |
|---|---|---|---|
| Brian Ballard | Yes | Mindy Levine | Yes |
| Maria Bartiromo | Present, not voting | Lynda Lomangino | Yes |
| Pamela Bondi | Yes *(by email)* | Barbara Long | Absent |
| Mary Helen Bowers | Yes | Allison Lutnick | Yes |
| Hannah Buchan | Yes | Douglas Manchester | Yes *(by email)* |
| Bob Castellani | Yes | Laurie Perlmutter | Yes |
| Elaine Chao | Absent | Catherine B. Reynolds | Present, not voting |
| Pamella Roland DeVos | Yes | Denise Saul | Yes |
| Patricia Duggan | Yes *(by email)* | Dan Scavino | Absent |
| John Falconetti | Yes | Cheri Summerall | Absent |
| Emilia Fanjul | Absent | Susie Wiles | Yes *(relayed)* |
| Jennifer Fischer | Yes | Andrea Wynn | Yes |
| Lynn Friess | Yes | Paolo Zampolli | Yes |
| Alma Gildenhorn | Absent | President Donald J. Trump | Yes *(relayed)* |
| Sergio Gor | Yes | | |
| Lee Greenwood | Absent | | |

| Trustee | Vote | Trustee | Vote |
|---|---|---|---|
| Pamela Gross | Yes | | |
| Kate Haselwood | Yes | | |
| Laura Ingraham | Present, not voting | | |
| Dana Kraft | Present, not voting | | |

**Roll call — ex-officio members**

| Member | Vote |
|---|---|
| Representative Joyce Beatty | No |
| Representative Rick Larsen | No |
| Senator Sheldon Whitehouse | No |

Trustees in attendance who experienced technical difficulties during the roll call subsequently recorded their votes by email, each in the affirmative: Ms. Bondi, Mr. Manchester and Ms. Duggan. The tally above is as announced at the meeting.

## XI. Other Business

Mindy Levine

Trustee Levine raised a matter for future meetings, asking for clarification between an "executive session" and an "executive committee" meeting. She stated that she had been excluded from the executive session at the previous meeting, that she still did not have access to what took place, and that under Robert's Rules the terminology should be used precisely so that members are not unnecessarily excluded.

General Counsel Berke clarified that an executive committee had been called at the previous meeting, and that Secretary Lutnick had referenced that executive sessions are normally warranted for every board meeting, but that the Board never in fact moved into an executive session and no executive committee meeting was held. Mr. Berke confirmed that the Center will be precise in its use of these terms going forward. Vice Chair Fischer thanked Ms. Levine for raising the matter.

Trustee Paolo Zampolli addressed the Board, observing that the building is fifty-five years old, is deteriorating and is not safe, that the Board has now voted, and that the Center should move forward.

## XII. Adjournment

Jennifer Fischer

Vice Chair Fischer thanked the trustees for their time, thanked Secretary Lutnick for his participation, and thanked the Chairman for making time to join the meeting. There being no further business, a motion to adjourn was made and seconded.

**Motion:** Jennifer Fischer, Vice Chair
**Second:** Ambassador Sergio Gor, and from the floor

**Vote:** Motion carried. The meeting was adjourned at 1:07 p.m. ET.

___________________________________
Brian Ballard, Secretary

___________________________________
Date