**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOYCE BEATTY,

*Plaintiff*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

No. 25 Civ. 4480 (CRC)

**REPLY IN SUPPORT OF MOTION**
**FOR EMERGENCY INJUNCTIVE RELIEF**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 3

I. The Organic Statute Prohibits Returning President Trump's Name To The Façade And Renaming The Plaza. .......... 3

II. The Resolution Is Unlawful For Additional Reasons. .......... 13

III. There Are No Procedural Impediments To Awarding Immediate Relief. .......... 14

IV. The Equities Cry Out For Relief. .......... 16

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**Cases**

*Adair v. England*, 193 F. Supp. 2d 196 (D.D.C. 2002) .......... 14

*Am. Hist. Ass'n v. Trump*, No. CV 26-1169 (JDB), 2026 WL 1412395 (D.D.C. May 20, 2026) .. 6

*League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) .......... 5

*Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418 (D.C. Cir. June 17 2026) .......... 3

*Kirkland v. D.C.*, 70 F.3d 629 (D.C. Cir. 1995) .......... 16

*Kuhn v. C.A.B.*, 183 F.2d 839 (D.C. Cir. 1950) .......... 16

*Martinez-Andino v. DHS*, No. CV 26-1208, 2026 WL 1801137 (D.D.C. June 23, 2026) .......... 15

*Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13 (D.D.C. 2025) .......... 3

*United States v. Long*, 997 F.3d 342 (D.C. Cir. 2021) .......... 12

**Statutes**

20 U.S.C. § 76h(a)(1) .......... 8, 10

20 U.S.C. § 76j(a)(2)(F) .......... 8

20 U.S.C. § 76j(b) .......... 4

20 U.S.C. § 76j(b)(1) .......... 4, 5, 7, 8

20 U.S.C. § 76j(b)(2)(C) .......... 4, 8

20 U.S.C. § 76j(b)(3), .......... 4

**Other Authorities**

Blair, Elizabeth, *Kennedy Center Unveils Progress On New Extension For Artistic Projects*, NPR (June 5, 2018) .......... 8

Comp. Gen. Op. B-178528 L/M (July 27, 1978) .......... 13

*Explore the REACH*, John F. Kennedy Center for the Performing Arts (last visited Aug. 26, 2026). .......... 8

Gal, Harold, *President Pays Visit to Kennedy Center*, N.Y. Times (Oct. 8, 1971) .......... 9

Gal, Harold, *Theater in Kennedy Arts Center To Be Named for Eisenhowers*, N.Y. Times (Oct. 20, 1968) ..... 9

Kingsberry, Janay, *Trump's New Plan to Get His Name Back on the Kennedy Center*, The Atlantic (Aug. 13, 2026) ..... 7

**Restatements**

Restatement (Third) of Trusts § 81 cmt. d ..... 11

**INTRODUCTION**

On May 29, this Court told Defendants they could not rename the Kennedy Center for President Trump nor memorialize him on the building's façade. In response, Defendants made a deliberate decision to defy the Court. On August 13, Defendants voted to reattempt their earlier abuse of authority—this time, by inscribing President Trump's name onto the Center's façade *twice* and rebranding the grounds after him too. Despite Plaintiff's repeated requests, Defendants refuse to wait to effectuate this latest gambit until after the Court rules, instead plowing ahead based on an artificial September 8 deadline, thereby manufacturing an unnecessary fire drill for all involved.

Defendants' Response confirms that this Court's urgent intervention is imperative. The filing is not signed by any career government lawyers, including those who have appeared in this case. For good reason. The Department of Justice has offered up a cocktail of fabulous pronouncements and stunning inaccuracies untethered to law or reality. In open defiance of the Court's decision, Defendants take direct aim at the Court's prior conclusions of law, disputing whether Plaintiff has a "legal right to vote" at Board meetings and repeatedly advancing statutory arguments which they admit the Court "previously rejected." Defs.' Resp., ECF No. 68 at 3, 7.

Tellingly, Defendants do not dispute that their prior efforts to emblazon the building with President Trump's name may have irrevocably damaged the Center's historic marble façade. Instead, Defendants now openly threaten to do *further* damage to this sacred memorial if they do not get their way in emblazoning that historic marble with Trump's name once again and renaming the grounds for him. In their words, astonishingly, if the Court prevents them from returning President Trump's name to the Kennedy Center, they will "be required to" demolish the Center and build "a large outdoor amphitheater" as a "replacement." *Id*. at 2; *see id*. at 3 (suggesting

ruling for Plaintiff will "probably" require "the construction of a new, but very different kind, of venue").

In plain English, Defendants have not-so-subtly said: "What a nice Kennedy Center you have here. What a shame should something happen to it." This is a breathtaking assault on the rule of law. It is delusional. And it must stop.

It also bears emphasis that Defendants are actively misleading the Court and the public about the facts. Defendants state that the "undisputed evidence demonstrates" that "the Center will continue to be in a financial and structural death spiral" unless President Trump's name is added to the building, and that "President Trump's efforts promise to stem the Center's tremendous financial losses." *Id*. at 2-4. This is not true. As the Washington Post recently reported, the Kennedy Center is in serious financial distress *because of* Defendants' effort to rebrand the institution. Zelinsky Suppl. Decl. Ex. A. Moreover, internal documents confirm "that leaders knew" ticket sales and donations "were cratering *even as they publicly portrayed Trump's takeover as a financial rescue*"—including before this Court. *Id*. (emphasis added). This doublespeak is unconscionable. Moreover, to the extent Defendants cannot fundraise, the solution is to ask Congress to appropriate needed funds and hire professional management with expertise in the performing arts to supplement appropriations as needed—not to violate the law on the ridiculous conceit that putting "Trump" all over the place will open a spigot of contributions. Notably, Defendants are finally compelled to admit that their contemptuous "Trump Kennedy Center Fund" has yet to raise a single dime. Defs.' Resp. at 6.

This Court should immediately enter an order granting a temporary stay, to go into effect on September 8, 2026. The Court should then permanently enjoin this latest maneuver and make clear that their intolerable conduct must end—now. To do anything less, in this enormously

consequential and closely watched case, would reward Defendants' underhanded tactics and undermine public faith in our system of justice.[1]

## ARGUMENT

### I. The Organic Statute Prohibits Returning President Trump's Name To The Façade And Renaming The Plaza.

This Court decided this matter three months ago. It was clear: "Congress gave the Kennedy Center its name, and only Congress can change it." Mem. Op., ECF No. 50 at 2. By law, "the Kennedy Center's public spaces honor President Kennedy and President Kennedy alone." *Id*. at 49. No one other than President Kennedy may "be memorialized on the front portico of the building." *Id*. at 48. But Defendants can't take "no" for an answer. After this Court invalidated their first try at rebranding this sacred memorial, Defendants voted to return Trump's name to the front portico and decided to rechristen the entire "campus" for him as well. Defs.' Resp. at 12.

In the Response, Defendants have doubled down on a strategy of openly flouting the Court's decision. Defendants assert that their two new inscriptions on the façade—"Renovated and Restored by President Donald J. Trump" and "Endowed by the Trump Kennedy Center Fund"—do not rename the Kennedy Center. *Id.* at 7. But in the next breath, Defendants state the recognition resolution is the latest iteration of their "attempt to find" any "way to honor President

[1] Defendants do not dispute that the Court can enter a temporary restraining order for up to 28 days to allow the Court more time to consider this motion. Defs.' Resp. at 20. Plaintiff respectfully suggests the Court immediately enter a temporary stay based on that authority, noting in the order that the stay will go into effect on September 8 and initially last for 14 days. Such an order would permit the Court more time to decide this matter and write a reasoned decision. Defendants separately dispute whether the Court can grant an administrative stay. *Id.* But they are wrong. District courts possess authority to enter administrative stays—particularly in this circumstance, in which the Court has already ruled for Plaintiff—based on the All Writs Act and their inherent authority to manage their dockets. *Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13, 16-17 (D.D.C. 2025). The D.C. Circuit's decision in *Kingdom* is unreasoned and unpublished, and does not bind this Court. *Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418 (D.C. Cir. June 17, 2026) (per curiam).

Trump's contributions *for the last nine months*." *Id*. at 17 (emphasis added). In short, by their own admission, Defendants are reprising the unlawful renaming scheme this Court previously enjoined. This Court told Defendants this was illegal and a breach of their fiduciary duties. It should not permit their open defiance of its authority.

Moreover, even if these two inscriptions do not constitute a renaming (they do), the inscriptions plainly run afoul of the Kennedy Center's organic statute, which prohibits any "additional memorials or plaques in the nature of memorials" at the Center, absent exceedingly narrow exceptions not relevant here. 20 U.S.C. § 76j(b)(1). In response, Defendants simply repeat their prior arguments regarding the meaning of Section 76j(b). But they admit "that this Court previously rejected Defendants' reading" of Section 76j(b). Defs.' Resp. at 7. That admission proves why their actions are so improper: The Court already decided this issue. In the Court's words, Section 76j(b)'s "prohibition is unambiguous, and the narrow exceptions only serve to reinforce the breadth of the bar." Mem. Op. at 50. Defendants disagree. They appealed, which is their right. But Defendants may not defy the Court's ruling in the interim by reviving their unlawful behavior.[2]

Defendants say that their two new inscriptions do not run afoul of Section 76j(b) because the inscriptions only honor "present and future commitments," and so the inscriptions do not constitute a memorial to the President's past work. Defs.' Resp. at 8. This rationale is too cute by

---

[2] Defendants' latest attempt to parse Section 76j(b) anew falls flat. The fact that "Congress made clear," Defs.' Resp. at 8, that "testimonials and benefit performances shall not be construed to be memorials," 20 U.S.C. § 76j(b)(3), underscores the breadth of the prohibition. After all, if the prohibition were as narrow as Defendants claim, this exception would not be necessary. *See* Mem. Op. at 50. Moreover, the fact that Congress articulated how the Board may acknowledge "a major contribution" with an "inscription on the marble walls in the north or south galleries, the Hall of States, or the Hall of Nations," underscores that Congress did *not* want an inscription acknowledging such a contribution anywhere else in the building. 20 U.S.C. § 76j(b)(2)(C); *see* Defs.' Resp. at 9.

half. For one, the inscriptions are literally written *in the past tense*, memorializing President Trump's past efforts to restore, renovate, and endow the Kennedy Center. For another, the recognition resolution is part of the same effort to memorialize President Trump's past contributions to the Center, which has been ongoing "for the last nine months," Defs.' Resp. at 17, and which was meant to ensure "future visitors would be aware of the President's 'past' work," Mem. Op. at 52. For yet another, the Board's effort to memorialize Trump's "present" deeds today becomes memorialization of "past" events tomorrow. Regardless, this Court did not hold that Section 76j(b)(1) prohibits tributes to past deeds only. That was Defendants' strained interpretation of the statute—which this Court rejected as "more than a stretch." Mem. Op. at 52. In truth, Section 76j(b)(1) has a broad sweep that "ensure[s] that the Kennedy Center's public spaces honor President Kennedy and President Kennedy alone." *Id*. at 49. It encompasses all memorials—including memorials meant to honor present and future deeds.

Against this unambiguous legal backdrop, Defendants offer the thinnest rationale for why adding a reference to the "Trump Kennedy Center Fund" on the façade nevertheless does not violate the Court's order or necessitate an immediate injunction. Defendants say no injunction is needed because they will not add the inscription imminently and "the Fund has not yet started raising money." Defs.' Resp. at 6. But in the D.C. Circuit, Defendants intimated that the Fund had already raised "hundreds of millions of dollars." Defs.' Stay Mot. at 2, No. 26-5224 (D.C. Cir. June 12, 2026) ("D.C. Circuit Stay Mot.") ("All of this money, hundreds of millions of dollars, will have to be immediately returned, or not received by the Center."). Meanwhile, the whole thrust of Defendants' opposition brief is the notion that adding President Trump's name to the façade will imminently raise "hundreds of millions of dollars." Defs.' Resp. at 1.

Defendants cannot have it both ways. Regardless, Defendants' actions satisfy any meaningful imminency requirement. *Cf. League of Women Voters of United States v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) ("Damocles's sword does not have to actually fall on appellants before the court will issue an injunction."); *Am. Hist. Ass'n v. Trump*, No. CV 26-1169 (JDB), 2026 WL 1412395, at *25 (D.D.C. May 20, 2026) (finding that plaintiffs demonstrated imminence "by showing a substantial risk that defendants . . . soon will be failing to adequately preserve records"). They have asserted—in a Board resolution—that they will add this inscription as soon as they reach the $100 million threshold. That is more than enough of an imminent threat for an injunction to issue. Moreover, Plaintiff will have no warning before Defendants act and no chance to seek relief from the Court. Defendants' own prior conduct proves the point: When the Board previously resolved to add President Trump's name to the façade, Defendants installed the new signage the next day, having already purchased it before the Board approved its installation. As a result, if the Court does not enjoin Defendants from effectuating the resolution in its entirety, and leaves a loophole open, Defendants can deem the $100 million threshold met (including by some pretext, such as a meaningless pledge) and put Trump's name on the façade overnight, just like they did last December. That would be untenable—particularly because we now know that Defendants harmed the historic marble façade the last time they placed President Trump's name on the building. It bears emphasis: This further relief should not be necessary. The Court *already enjoined Defendants* from using the name "Trump Kennedy Center" (or otherwise "impl[ying] that the institution is named for" Trump). *See* ECF No. 49 at 2. Voting to return that phrase to the Center's façade openly flouts the Court's order. At the very least, in whatever order it issues on Plaintiff's motion, the Court should make clear to Defendants that placing this inscription onto the building would be unlawful and would constitute contempt.

With respect to the Fund's bylaws, Defendants walk an even more mendacious path. They now try to distance themselves from the Fund entirely and argue that the use of the phrase "Trump Kennedy Center" by a supposed "private party in a non-official setting does not run afoul of the order." Defs.' Resp. at 9. But Defendants and "their officers, agents, servants, employees, attorneys, and" "persons in active concert or participation with them" are plainly behind this unlawful Fund. ECF No. 49 at 2. Defendants have endorsed it in their official resolutions and propose to put it on the building itself. Indeed, in the D.C. Circuit, Defendants suggested that "President Trump" would personally be "raising the money" for the Fund. D.C. Circuit Stay Mot. at 3. The Court should reject the charade that Defendants are somehow separate from the Fund; make clear that the Fund's bylaws are manifestly unlawful (because they condition the receipt of donations on the unlawful renaming of the Center after Trump); and enjoin Defendants from effectuating them.

Defendants' effort to rename the grounds the "President Donald J. Trump Plaza" is just as improper as their effort to add new inscriptions on the façade. As explained in Plaintiff's motion, this new plaza plainly violates the prohibitions on "additional memorials or plaques in the nature of memorials." 20 U.S.C. § 76j(b)(1). To argue otherwise, Defendants suggest that the "Board's resolution in and of itself" does not "constitute[] a memorial or a plaque in the nature of a memorial." Defs.' Resp. at 15. But Section 76j(b)(1) prohibits "designat[ing] or install[ing]" new memorials. 20 U.S.C. § 76j(b)(1). At minimum, the resolution is an impermissible *designation* of a new memorial. Meanwhile, Defendants will surely follow through on that designation by erecting signage with the name "Trump" in short order. *See* Janay Kingsberry, *Trump's New Plan to Get His Name Back on the Kennedy Center*, The Atlantic (Aug. 13, 2026),

https://tinyurl.com/47rjztrf (trustee stating he "would support Trump's name being included 'everywhere that it could be possible' at the center").

Defendants' other statutory arguments only further confirm the Board lacks any authority to rechristen the grounds. Defendants have no answer to the fact that the statute expressly prohibits the Board from effectuating a "change in the management and operation of the grounds" "without the express approval of Congress." 20 U.S.C. § 76j(a)(2)(F). Whatever the precise contours of that prohibition, it plainly covers a wholesale redesignation of the grounds' name for someone other than the Kennedy Center's namesake. Moreover, Congress specifically instructed that the "site" serve as "a living memorial to John Fitzgerald Kennedy." *Id*. § 76h(a)(1). Renaming the "site" "the 'President Donald J. Trump Plaza' " is incompatible with that statutory mandate. ECF No. 66-2 at 1. Full stop.

Defendants now suggest the grounds can do double duty as a memorial to both President Kennedy and President Trump. Defs.' Resp. at 14. But Congress rejected this idea. That is *why* Congress mandated that, "after December 2, 1983," the Board could not add any "additional memorials or plaques in the nature of memorials," and limited "inscription[s]" to specified locations. 20 U.S.C. §§ 76j(b)(1), (b)(2)(C); *see also* Mem. Op. at 49.

Defendants note that the Kennedy Center has named other spaces within the institution and argue the Board can therefore name the grounds after President Trump. Defs.' Resp. at 11-12. Yet the examples Defendants offer either memorialize President Kennedy in some fashion, or are an innocuous descriptor of a physical location, such as the North Plaza. For example, the "REACH" is an acronym which stands for "Renew, Experience, Activate, Create and Honor *the legacy of Kennedy*." Elizabeth Blair, *Kennedy Center Unveils Progress On New Extension For Artistic Projects*, NPR (June 5, 2018), https://tinyurl.com/2u578wkt. Likewise, the "Victura

Deck," Defs.' Resp. at 11, borrows its name from "President Kennedy's iconic wooden sailboat, the Victura," which is the Latin word for "to conquer." *Explore the REACH*, John F. Kennedy Center for the Performing Arts, https://www.kennedy-center.org/reach/explore/ (last visited Aug. 26, 2026).

The only two examples of spaces named for individuals—the Eisenhower Theater and the Sousa Concert Hall stage—predate the statutory prohibition on additional memorials.[3] Again, the Court already explained all of this: "[T]he Kennedy Center's public spaces honor President Kennedy and President Kennedy alone." Mem. Op. at 49. Defendants cannot evade that rule by renaming the entire campus for President Trump (or, of course, anyone else).

Defendants similarly suggest only the building is named for President Kennedy, implying they can name anything else at the Center after President Trump, from the gift shop to the garage. *See* Defs.' Resp. at 13. But Defendants ultimately agree "the Center" that bears President Kennedy's name "is not just a building," *id*. (quotation marks omitted), but instead encompasses the entire eponymous institution. This important admission underscores why the Board cannot rename the Center's "campus" for President Trump without doing serious violence to the organic statute. Defs.' Resp. at 12. It would rename a major component of the institution, indeed a piece of the Center which is expressly designated as part of the "living memorial to John Fitzgerald Kennedy." 20 U.S.C. § 76h(a)(1).

---

[3] *See, e.g.*, Harold Gal, *Theater in Kennedy Arts Center To Be Named for Eisenhowers*, N.Y. Times (Oct. 20, 1968),https://www.nytimes.com/1968/10/20/archives/theater-in-kennedy-arts-center-to-be-named-for-eisenhowers.html; *President Pays Visit to Kennedy Center*, N.Y. Times (Oct. 8, 1971), https://www.nytimes.com/1971/10/08/archives/president-pays-visit-to-kennedy-center.html
.

The fact that the Kennedy Center is an institution—not just a building—also explains why Congress referred to the grounds by reference to the Center it houses. For these purposes, Congress did not distinguish between the building, the site on which it sits, and the institution of which it is a part: it named all of them for President Kennedy. Moreover, the fact that Congress authorized the Board to construct a new plaza designated the "John F. Kennedy Center Plaza" does not indicate "that the grounds are otherwise without a codified name." *Id*. at 14. Instead, that fact confirms that Congress did not want this particular physical location to be named for anything or anyone other than the Center which it houses and the namesake it memorializes.

Defendants argue that "the Board is vested with general authority 'to maintain and administer' the sprawling site," and this "authority includes the power to name the unnamed complex 'President Donald J. Trump Plaza.' " Defs.' Resp. at 12 (quoting 20 U.S.C. § 76h(a)(1)). But Defendants do not quote the entire statute. The provision they quote states that the Board shall "maintain and administer the John F. Kennedy Center for the Performing Arts and site thereof as the National Center for the Performing Arts, *a living memorial to John Fitzgerald Kennedy*." 20 U.S.C. § 76h(a)(1). This is not a general grant of authority to do whatever the Board wants. Instead, that language confirms Defendants' central duty is to memorialize *President Kennedy*—and no one else. At bottom, whatever limited grant of operational authority the Board possesses, Defendants cannot transform that authority into a permission slip to rebrand the institution for President Trump.

Finally, Defendants are wrong when they suggest that Plaintiff cannot challenge the effort to rename the campus because of any less-than-precise statements she made at the Board meeting when she was deliberately forced to respond to the surprise resolution—a copy of which was not provided to her—without any preparation. To be very clear: Defendants are distorting the record.

As both the draft minutes and attached declaration make clear, Plaintiff voted unequivocally "no" on this latest measure. *See* ECF No. 68-3 at 18; Beatty Decl. ¶ 3. Plaintiff staunchly opposed the resolution because it appeared to be unlawful, and because the resolution was presented to the Board in a bizarrely rushed fashion.

During her remarks, in a good-faith effort to steer the Board away from more consequential actions and to respond constructively to the events as they unfolded, Plaintiff expressed a willingness to consider alternatives, so long as the Board remained within the bounds of the law. Beatty Decl. ¶¶ 6-9. As her declaration makes clear, however, this willingness to consider alternatives was always conditioned on the lawfulness of any final action. *Id.* ¶ 8. If there was any ambiguity about where she stood, her vote removed any doubt—as did subsequent communications between the parties' counsel and her filings in this Court. *Id.* ¶ 10. It also bears repeating: Plaintiff was shown the resolution and asked to speak and vote on it in a matter of minutes, without any preparation or prior deliberation. *Id.* ¶ 9. Any confusion about where she stood (and there wasn't any) is entirely due to Defendants, who intentionally sprung this measure upon an unsuspecting Board, leaving Plaintiff no time to prepare.

Regardless, as a legal matter, under trust law, even had Plaintiff affirmatively voted "yes" and facilitated a breach of fiduciary duty, Plaintiff would *still* have standing to sue to halt Defendants' ongoing breach of trust. As the Restatement explains, "[a] trustee is not precluded from maintaining a suit for redress by the fact that the trustee participated in the breach of trust, because the suit is on behalf of the trust and its beneficiaries." Restatement (Third) of Trusts § 81 cmt. d. This makes sense: Defendants' actions constitute an ongoing breach of the trust's terms. Their ongoing refusal to desist from their unlawful actions, in turn, "prevents" Plaintiff "from

fulfilling her fiduciary duty to administer the trust according to its terms and governing law, and more specifically to protect the trust *res*." Mem. Op. at 32.

Defendants liken this case to one of invited error. But that analogy only further underscores why their argument is baseless. Defs.' Resp. at 10. As the D.C. Circuit has explained, invited error is an "equitable doctrine that seeks to avoid rewarding mistakes" on appeal "stemming from a [party's] own intelligent, deliberate course of conduct in pursuing his" case in a district court. *United States v. Long*, 997 F.3d 342, 353 (D.C. Cir. 2021) (quotation marks omitted). Appellate courts apply this doctrine only if the party seeking to challenge the error "convince[s] the district court to do something that it would not otherwise have done." *Id*. (cleaned up). In other words, a party is prevented from later contesting "intentional strategic gambits designed to induce the trial court to take a desired action." *Id*. (same).

It should go without saying, but we say it anyway: The facts of this case look *nothing* like a circumstance of invited error. Plaintiff did not make an "intelligent, deliberate course" to dupe Defendants to do something they "would not otherwise have done," as part of a "strategic gambit[]." *Id*. (same). No aspect of this resolution was Congresswoman Beatty's idea. Defendants cooked it up and sprung it on Board members not-in-the-know without any prior notice. Plaintiff opposed the recognition resolution and voted "no." Meanwhile, the record demonstrates that Defendants were dead set on this course of action. After all, in their own words, they have spent "nine months" trying to find any "way to honor President Trump's contributions." Defs.' Resp. at 17. In the end, it is Defendants who engaged in inequitable tactics and are now grasping at straws to evade accountability. This Court should not reward their contemptuous behavior.

## II. The Resolution Is Unlawful For Additional Reasons.

That should be the end of the analysis—and the Court can stop there. But as explained in the motion, the recognition resolution is unlawful for three additional reasons: (i) the resolution violates statutory prohibitions against using federal funds to engage in propaganda; (ii) it was a breach of fiduciary duty, even if it did not violate an express statutory prohibition; and (iii) the slapdash manner in which Defendants proposed and adopted the resolution was quintessential imprudence.

*First*, Defendants neither dispute that the prohibition on propaganda applies to them nor contest the conclusion that naming something after a sitting government official using federal funds would constitute aggrandizement. Instead, Defendants state *only* that "any expenditure of appropriated funds" by the Kennedy Center would not aggrandize "the Kennedy Center, its activities, or any of its officials." Defs.' Resp. 16. That is not true. This resolution aggrandizes a Kennedy Center official: Donald Trump, the *Chairman of the Kennedy Center*. This is precisely the kind of propaganda Congress intended to prohibit.[4]

*Second*, Defendants' actions are plainly undermining Congress's intent that "the Kennedy Center's public spaces honor President Kennedy and President Kennedy alone," Mem. Op. at 49,

---

[4] Defendants mischaracterize the case involving a State Department official who mailed copies of an editorial praising President Nixon. In that case, "the mailing was made by the Republican National Committee at the suggestion of members of the White House staff and paid for by the committee using its own funds and mailing lists. The only State Department involvement appears to have been the signing by [the] Ambassador . . . of the original letter which was typed on official department of state stationery." Comp. Gen. Op. B-178528 L/M (July 27, 1978). In that narrow context, the Comptroller General concluded the prohibition on propaganda was not "intended to reach cases," in which "high officials" communicate a message to the public "in explanation and defense of th[eir] policies." *Id.* The Comptroller General also stated that the minimal federal funds expended on the project were not used to aggrandize the State Department. *Id.* To describe that case is to explain its inapplicability as an analogy here. Defendants intend to emblazon the name of their self-appointed chairman onto the building and rename the grounds after him.

so that this institution serves as the sole national memorial to the fallen President. Defendants are, by their admission, engaged in a concerted effort to find *any* way to circumvent the statutory prohibitions designed to ensure the Kennedy Center honors its namesake only. This kind of bad faith effort to evade the trust's terms constitutes a breach of fiduciary duty.

Defendants have no response—other than to argue that, so long as "Congress has not prohibited the Board" from undertaking a specific action, whatever the Board does cannot constitute a breach of fiduciary duty. Defs.' Resp. at 17. Not true. This slavish attempt to corrupt the Kennedy Center at all costs is precisely the kind of bad faith on the trustees' part that demands a court's intervention.

*Third*, Defendants have no excuse for failing to provide advance notice to Board members regarding the latest resolution to recognize President Trump. Defendants' only answer is to say that this resolution is part of a "nine months" long process that began with the first rushed renaming vote in December 2025. *Id*. So what? That is no justification for keeping the Board in the dark on this proposal, which prevented Plaintiff and other Board members from evaluating the newest idea, preparing considered thoughts in advance, and engaging in informed deliberations about whether the resolution comported with the Center's organic statute and the Board's fiduciary obligations.

## III. There Are No Procedural Impediments To Awarding Immediate Relief.

Defendants challenge this Court's authority to entertain Plaintiff's emergency motion on the absurd theory that her motion is not "closely related to the facts, legal issues, and parties addressed in the complaint." Defs.' Resp. at 18 (quoting *Adair v. England*, 193 F. Supp. 2d 196, 201 (D.D.C. 2002) (cleaned up)). It seems Defendants are contending that Plaintiff should have initiated a new case and filed a new complaint—which would then have been related to the matter

before the Court. Or perhaps Defendants are arguing that Plaintiff should have amended the existing complaint before seeking relief. Either way, this is nonsense. Nothing prevents the Court from entering relief.

Indeed, the Court's prior decision clearly disproves Defendants' argument that the present emergency before the Court is not closely related to the original complaint. As explained above and in the motion, this Court squarely resolved the statutory questions that control the legality (or lack thereof) of Defendants' latest attempt to tack President Trump's name onto the Center. Moreover, the recognition resolution, like the previous resolution before it from December 2025, directs that Trump's name be "affixed to the front portico of the main Kennedy Center building" to memorialize Trump. Mem. Op. at 51. The recognition resolution does so for substantially the same reasons as the December 2025 resolution—to "recognize and honor President Trump's" "contributions to the survival of the Center." ECF No. 66-2 at 1; *compare* Mem. Op. at 52 (finding that December resolution was "meant to honor President Trump's work on the Center"). And the recognition resolution was prompted by—and transparently designed to circumvent—the Court's recent decision. In short, the issue before the Court today could not be more closely related to the controversy in the original complaint and this Court's subsequent decision.

Were this not enough, Defendants' own precedent—which does not involve an attempt to evade a prior judicial decision—recognizes that a court has authority to "respon[d] to [a] new development." *Martinez-Andino v. DHS*, No. CV 26-1208, 2026 WL 1801137, at *15 (D.D.C. June 23, 2026). Indeed, the only "different" legal issue before the Court that Defendants purport to identify is the question whether the Board could name the Center's grounds for Trump. Defs.' Resp. at 18. But that issue is intimately connected to the legal issues this Court already decided, including the Court's repeated pronouncement that Congress intended to foreclose the erection of

memorials to anyone other than President Kennedy in the Center's "public spaces." Mem. Op. at 49, 50, 91.

Moreover, even if Defendants were correct that this latest emergency falls outside the complaint, their argument would not warrant denial of emergency relief. Defendants have received actual notice of the challenge, submitted a substantive opposition on the merits (to include their own factual submissions), and will have a full opportunity to litigate the issue at the hearing. There is thus neither surprise nor conceivable prejudice in treating the pleadings as encompassing that claim. *See Kuhn v. C.A.B.*, 183 F.2d 839, 842 (D.C. Cir. 1950) (declining to decide whether complaint encompassed an issue because "[t]he whole thrust of modern pleading is towards fulfillment of a notice-giving function and away from rigid formalism," and holding that where parties understand the issues and have an adequate opportunity to address them, "[a]ctuality of notice there must be, but the actuality, not the technicality, must govern"); *see also Kirkland v. D.C.*, 70 F.3d 629, 634 (D.C. Cir. 1995) (finding constructive amendment where the parties "fully understood that [the issue] was being contested").

## IV. The Equities Cry Out For Relief.

The equities starkly warrant relief. As they must, Defendants recognize that any argument that Plaintiff lacks irreparable injury runs headlong into the Court's prior decision. *See* Defs.' Resp. at 19. Moreover, and notably, Defendants do not contest that their previous attempts to alter the façade damaged one-of-a-kind marble. This is a stunning admission and confirms why this Court's rapid intervention is so critical. Unless this Court issues an order soon, Defendants are poised to do further harm to the Kennedy Center's historic façade.

Defendants try to wave away the financial harm this latest resolution will cause the Kennedy Center. *See id.* at 19. But there is nothing "speculat[ive]" about Plaintiff's concerns. *Id.*

The Court detailed the considerable harms caused by the December 2025 renaming. *See* Mem. Op. at 56 n.23. There is every reason to conclude past will be prologue, and this latest effort to honor President Trump will likewise do serious damage to the Kennedy Center. Defendants cannot present a shred of evidence to the contrary—let alone support for their own fabulous speculations that adding President Trump's name to the Kennedy Center will produce a financial miracle.

Indeed, just this week, the *Washington Post* published a stunning expose confirming that "[t]icket sales and fundraising collapsed after President Donald Trump's name was added to the John F. Kennedy Center for the Performing Arts, even as the center's leaders publicly touted a financial turnaround." *See* Zelinsky Suppl. Decl. Ex. A. Internal documents also showed "that leaders knew" ticket sales and donations "were cratering *even as they publicly portrayed Trump's takeover as a financial rescue*"—including before this Court. *Id.* (emphasis added). The Court should not allow Defendants, who will suffer no harm from being forced to follow the law, to continue to drive this sacred memorial into financial ruin as part of a vain effort to glorify President Trump or damage it as an act of spite. If Defendants cannot raise funds for *any* reason, the solution is to inform Congress of their need—not violate the law Congress passed by defacing this sacred memorial.

The public interest factor also strongly warrants a stay. In their latest filing, Defendants threaten to demolish the Kennedy Center and replace it with "a large outdoor amphitheater" if they do not get their way. Defs.' Resp. at 2. These tactics are deeply concerning. They mirror Defendants' earlier efforts to inject a poison pill into the Trump Kennedy Center Fund's bylaws to frustrate the Court's decision. It would do enormous damage to public confidence in the rule of law if Defendants' not-so-subtle threats prevail, particularly in a case of this public salience.

Finally, Plaintiff is mindful that the immediate motion before the Court involves the unlawful renaming resolution. But the Response also confirms that discovery is critical on the shutdown portion of this case. In their latest filing, Defendants state that "undisputed evidence demonstrates that without the prominent recognition of The Trump Administration, and President Trump's efforts, the donors will not contribute, and the Center will continue to be in a financial and structural death spiral." Defs.' Resp. at 2. That, however, is manifestly false. Again, "the center's own financial projections showed ticket revenue and fundraising had plummeted after the name change, putting it on track to fall nearly $100 million short of its revenue target." Zelinsky Suppl. Decl. Ex. A. Meanwhile, Defendants "knew both were cratering even as they publicly portrayed Trump's takeover as a financial rescue." *Id*. This disconnect between the truth and Defendants' public assertions, including before this Court, bolsters the conclusion that the entire shutdown scheme is simply an effort to hide Defendants' abysmal fiscal mismanagement and the damage they have done by their prior efforts to glorify the current President to the detriment of the one Congress intended to honor. This Court should not let Defendants sweep their misconduct under the rug.

* * *

Defendants consciously chose to play a dangerous game of chicken with the law. They voted to defy the Court's decision and restore Donald Trump's name to the Kennedy Center. They refused to wait for the Court to rule, manufacturing an unnecessary fire drill. And now they have threatened the destruction of the Kennedy Center, a sacred memorial to a fallen President, all in the name of one man's vanity. Enough is enough. This has to stop.

## CONCLUSION

For the foregoing reasons and those in the initial memorandum, the Court should enter an immediate temporary stay and order permanent injunctive relief.

Dated: August 26, 2026

Respectfully submitted,

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
KYLE R. FREENY
(D.C. Bar No. 1684764)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID W. OGDEN
(D.C. Bar No. 375951)
DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*