**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOYCE BEATTY,

*Plaintiff*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

No. 25 Civ. 4480 (CRC)

# MOTION TO UNSEAL

On August 13, Defendants voted to shut down the Kennedy Center for the second time. Their latest conduct closely mirrored their first rushed effort to shutter the institution—which this Court previously enjoined. As before, Defendants provided the Board members with the preparatory documents just "two days before the closure vote." Mem. Op., ECF No. 50, at 78 n.30. And as before, these new documents were "light-on-details," contained no meaningful "cost-benefit analysis of the closure," and constituted a "stacked deck." *Id*. at 78 n.30, 79, 83.

This motion concerns whether Defendants may hide these documents from public view. Because these documents underscored why discovery is critical to resolving the shutdown portion of the case, Plaintiff requested their inclusion in the joint status report. But Defendants insisted on filing the documents under seal. Today, the documents remain inaccessible to the public. This is improper. The party seeking to seal, here Defendants, must "come forward with specific reasons why the record, or any part thereof, should remain under seal." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991). Any resulting sealing order "should be no broader than is necessary to protect those specific interests identified as in need of protection." *Id*.

Defendants never even filed a motion to seal, in violation of Local Civil Rule 5.1(h)(1). Defendants have likewise never identified a fact meriting sealing. Nor have Defendants explained why any legitimate concerns (to the extent any exist) cannot be ameliorated through limited redactions.

This is a case of enormous public interest about public officials' maintenance of a public memorial to a slain President. Plaintiff respectfully moves the Court to unseal the documents. At minimum, Plaintiffs moves the Court to require Defendants to redact only those limited portions of the documents that they can justify sealing under the D.C. Circuit's rigorous precedent. Defendants indicate that they oppose this motion.

## BACKGROUND

On February 1, 2026, President Trump announced that the Kennedy Center would close for two years starting in July 2026 for renovations. Mem. Op. at 11. On March 16, Defendants voted to rubberstamp the closure and shutter the Center. *Id.* at 20-21.

On May 29, 2026, the Court held that Defendants had violated their duty of prudence because they rendered an "ill-informed and seemingly preordained decision." Mem. Op. at 91. The Court noted that Defendants provided the Board with preparatory documents just "two days before the closure vote." *Id*. at 78 n.30. The Court also noted that information Defendants relied on to make their decision was "light-on-details," contained no meaningful "cost-benefit analysis of the closure," and appear to be a "stacked deck" to justify a closure. *Id*. at 78 n.30, 79, 83.[1]

[1] At that juncture, because the Court ruled on the Board's imprudence, it did not need to consider whether the closure "was a pretextual maneuver meant to hide the fact that the (unlawful) name-change has led patrons and artists to flee the Center." *Id*. at 82 n.34. But the Court underscored that, under trust law, a court reviews a trustee's decision to determine not only whether the trustee was "derelict in her duties" but also whether the trustee acted "in bad faith." *Id*. at 75.

Defendants indicated they would conduct another Board meeting to determine whether to shut down the Kennedy Center for two years. The Court ordered the parties to submit a joint status report within five days of the Board meeting. Min. Order (July 28, 2026).

Defendants set a Board meeting for August 13. On August 11, forty-eight hours before the meeting, Defendants transmitted two documents to the Board. The first document—the "JLL Plan"—is a building plan that assumes the Center must close and outlines the construction plan Defendants intend to undertake once they completely close the Center. The JLL Plan contains no cost-benefit analysis of closure. The second document—the "Delta Consulting Group PowerPoint"—is a five-slide PowerPoint presentation—only two slides of which contained any purported analysis— that was the *sole* assessment of whether to close the Kennedy Center that was presented to the Board. As Plaintiff detailed in the August 18 joint status report, the two substantive slides are riddled with internal inconsistencies and do not identify even a single benefit to remaining partially open while renovating. *See* JSR, ECF No. 64, at 14-16.

The Board voted to close based on these documents. Pursuant to the Court's order, the parties filed their joint status report on August 18. Defendants intimated that they would move for summary judgment and to dissolve the preliminary injunction before the parties conduct any discovery, and that they intend to rely heavily on the JLL Plan and the Delta Consulting Group PowerPoint. *Id.* at 2-3.

Because the documents affirmatively underscored why discovery is so critical in this case, Plaintiff requested that both documents be provided to the Court. Defendants insisted on filing them under seal. ECF No. 65. But Defendants did not move for leave to file under seal. Instead, in a footnote in the JSR, they stated that the JLL Plan "contains highly sensitive information about the Center's physical building structures and safety elements," that the Delta Consulting Group

PowerPoint "contains confidential information regarding the Center's financial projections," and that both "were marked 'confidential and privileged.' " JSR at 4 n.1. Defendants then wrote: "Defendants have filed these attachments separately and under seal and ask that the Court accept those sealed filings." *Id.* Defendants did not cite any authority for this request, did not provide any declaration to substantiate their assertions, and did not explain why the documents could not be produced with redactions instead of wholesale sealing.

Plaintiff categorically objected to the sealing of the Delta Consulting Group PowerPoint. *Id.* at 6 n.2. Because Defendants represented that the document "might provide details about the building's security," and intimated that they would take future steps to ensure "all sensitive information is properly redacted," Plaintiff did not object to Defendants provisionally submitting the JLL Plan under seal at that juncture. *Id.* at 4 n.1, 6 n.2.

At the recent emergency motions hearing, the Court invited Plaintiff to file a motion to unseal. *See* Tr. 77. Plaintiff's motion to unseal follows.

## LEGAL STANDARD

"The right of public access is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017). "Although the right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests." *Id.* The presumption of public access attaches to "judicial records," a category of documents defined by the "role [the document] plays in the adjudicatory process," *id.* at 666 (quoting *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013)), or, put differently, by whether the document is "intended to 'influence a judge's decisionmaking,'" *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 296 (D.C. Cir. 2022) (quoting *CNN v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021)).

The proponent of sealing bears the burden of rebutting the presumption of public access. *In re McCormick & Co.*, 316 F. Supp. 3d 455, 464 (D.D.C. 2018). Courts balance six factors derived from *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), to determine whether a proponent can overcome the presumption: (1) the need for public access; (2) the extent of previous public access; (3) the fact of an objection to disclosure and the identity of the objector; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced. *Metlife*, 865 F.3d at 665. A seal may be maintained only if the court, "after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires." *Metlife*, 865 F.3d at 665-66 (quoting *In re Nat'l Broad. Co.*, 653 F.2d 609, 613 (D.C. Cir. 1981)). Furthermore, any sealing order "should be no broader than is necessary to protect those specific interests identified as in need of protection." *Johnson*, 951 F.2d at 1278; *cf. McCormick*, 316 F. Supp. 3d at 468 (explaining that any "redactions must be narrowly tailored and specifically supported").

In addition, Local Civil Rule 5.1(h)(1) provides that, absent statutory authority, no document may be sealed without an order of the Court, and that a document filed with the intention of being sealed must be accompanied by a motion to seal. Under the Local Rules, a party's "[f]ailure to file a motion to seal will result in the document being placed on the public record." Local Civ. R. 5.1(h)(1).

## ARGUMENT

### I. The PowerPoint And JLL Report Are Judicial Records, Yet Defendants Neither Moved To File Under Seal Nor Rebutted the Presumption of Public Access.

Defendants failed to file the necessary motion to seal. Under the Local Rules, that failure

in itself requires unsealing. Moreover, the two documents at issue in this motion are plainly judicial records which must presumptively be accessible to the public. The rationale Defendants provided in the joint status report falls woefully short of the rigorous standard for sealing and does not even engage with the *Hubbard* factors.

First, Defendants failed to file a motion to seal. That fact alone is dispositive. Under Local Civil Rule 5.1(h)(1), "[f]ailure to file a motion to seal will result in the document being placed on the public record." This is not a mere procedural misstep. The D.C. Circuit has instructed that its district courts "should require [the sealing proponent] to come forward with specific reasons why the record, or any part thereof, should remain under seal." *Johnson*, 951 F.2d at 1278. Local Civil Rule 5.1(h)(1) implements that process by requiring a party to come forward and affirmatively prove that sealing is necessary. Defendants completely failed to do so.

Second, even if they had filed a motion, Defendants have not satisfied the test for sealing. Start with the obvious point. The JLL Report and the Delta Consulting Group PowerPoint are the kinds of judicial records to which public access is presumptively required. The joint status report was filed pursuant to this Court's orders, which directed the parties to inform the Court of "pertinent factual developments." Min. Order (June 24, 2026). This was thus a submission "intended to influence a judge's decisionmaking," which constitutes a judicial record and which must be publicly accessible. *In re L.A. Times*, 28 F.4th at 296. Moreover, Defendants have announced that they "intend to rely on these materials in [any] forthcoming dispositive motion," meaning that these will become the heart of disputed filings between the parties. JSR at 4 n.1. Accordingly, the presumption of access attaches to these documents, and Defendants bore the heavy burden of explaining why these documents should not be publicly available.

Accordingly, the presumption of public access applies, and what little Defendants have

said do not amount to "specific reasons" that justify sealing. Defendants made no effort to address the *Hubbard* factors, saying only in a conclusory fashion: "One of the documents, a comprehensive building plan, contains highly sensitive information about the Center's physical building structures and safety elements. And the other, a consulting report, contains confidential information regarding the Center's financial projections." JSR at 4 n.1. But the D.C. Circuit has rejected parties' efforts to seal documents based on this kind of thin ipse dixit. In *Johnson*, a district court sealed an entire record based on a hospital's asserted interest in the confidentiality of peer review. The D.C. Circuit held that such blanket sealing was inappropriate. In that case, it was not "sufficient merely to allude to the Hospital's general interest in keeping peer review processes out of the public eye," because "[t]hat rationale sweeps far too broadly and would encompass all litigation involving public and private institutions that provide essential services to the public." *Johnson*, 951 F.2d at 1277. So too here. Defendants cannot simply "allude" to their "general interest" in keeping their documents "out of the public eye," because doing so would seal everything under the sun in a case of enormous public significance. *Id.*

The contrast with *Johnson* makes the point sharper still. There, the sealing proponents moved to seal, and the district court entered an order. The Court of Appeals nonetheless remanded, because it could not "discern" where the district court "considered [the *Hubbard*] factors." *Id.* at 1277. Here Defendants never even mentioned the factors, providing only a conclusory footnote in a status report. That is plainly not sufficient to meet their burden to file under seal.

## II. The *Hubbard* Factors Cut Decisively Against Sealing.

Defendants' failure to move or to address the *Hubbard* factors are sufficient grounds, alone, to order the unsealing of the documents at issue. But in any event, the *Hubbard* factors plainly do not support sealing these two documents here.

***1. The need for public access is at its apex.*** The need for public access to documents is

"accentuated in cases where the government is a party," *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)), and is particularly acute when public officials are involved in the litigation, *see In re L.A. Times*, 28 F.4th at 298 (recognizing a "powerful public interest" in a sitting Senator's conduct in his official capacity).

Here, the public need for access could not be greater. All parties are public officials sued in their capacity as trustees of the Kennedy Center. The question at issue is whether to close the nation's preeminent performing arts center for two years as part of a renovation being conducted with appropriated public monies. This Court has already found that the first attempt at this decision fell "grossly short of prudent decision-making." Mem. Op. at 83. The public has an incredibly strong interest in ensuring that Defendants do not commit a second unlawful shutdown.

***2. The public already has some access to some information Defendants seek to seal.*** "[E]xtensive media reporting" reduces any "privacy interests at stake." *In re L.A. Times*, 28 F.4th at 298. In this case, several media outlets have already received and reported about the contents of the JLL Plan.[2] In addition, two days before the Board vote, Axios published an account of the Center's renovation scenarios, including financial projections for the National Symphony Orchestra under competing options.[3] The following day, Axios published another article on the

[2] *See, e.g.*, Travis M. Andrews et. al, *The Biggest Changes Kennedy Center Leaders Are Planning for the Arts Building*, Washington Post (Aug. 19, 2026), https://www.washingtonpost.com/style/2026/08/19/biggest-changes-kennedy-center-leaders-are-planning-arts-building/; Anastasia Tsioulcas, *Kennedy Center Board Votes Again To Shut Main Building Down—And Add Trump's Name Back*, NPR (Aug. 13, 2026); Julia Jacobs, *Kennedy Center Board Decides To Inscribe Trump's Name on Building*, N.Y. Times (Aug. 13, 2026).

[3] *See* Cuneyt Dil, *Scoop: Inside Kennedy Center's Renovation Scenarios*, Axios (Aug. 11, 2026), https://www.axios.com/local/washington-dc/2026/08/11/kennedy-center-national-symphony-orchestra.

renovations, which featured a discussion of the Delta Consulting Group PowerPoint.[4] And more recently, the Washington Post published a broad exposé on the Kennedy Center's financial meltdown following the name change.[5] Given the widespread public reporting into the renovation and the Kennedy Center's finances, there is no plausible justification for sealing these documents.

***3. The identity of the objector cuts against sealing.*** Here, only Defendants object to disclosure—a factor which cuts strongly against sealing. *See Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) (finding "the strength of [a party's] objections . . . do not have the same strength as a third-party objection").

***4. There is no property or privacy interest to protect.*** The Kennedy Center is a public institution that serves as a national memorial and is partially funded with appropriated funds. Its cost estimates and revenue forecasts are not trade secrets. It has no commercial competitor that stands to gain from their disclosure. Defendants have not asserted otherwise, and have not invoked trade secrets, competitive harm, or proprietary interest. *See In re McCormick & Co., Inc.*, No. MC 15-1825, 2017 WL 2560911, at *2 (D.D.C. June 13, 2017). Accordingly, this factor favors unsealing the Delta Consulting Group PowerPoint immediately.

To the extent Defendants may have legitimate security concerns regarding portions of the JLL Plan being released, Defendants were obligated to provide concrete evidence, which they have failed to do. Moreover, even if they had, there is no reason that modest redactions could not accommodate their concerns.

---

[4] *See* Cuneyt Dil, *Scoop: Take a Look at Trump's Kennedy Center Renovation Plans*, Axios (Aug. 12, 2026), https://www.axios.com/local/washington-dc/2026/08/12/trump-kennedy-center-renovation-plans.

[5] Zelinsky Suppl. Decl., ECF 70-1.

***5. Defendants have identified no prejudice.*** The party opposing disclosure "must have identified how the disclosure of the relevant material causes legal prejudice." *Michaels v. NCO Fin. Sys. Inc.*, No. 16-cv-1339, 2023 WL 4857413, at *5 (D.D.C. July 31, 2023) (quoting *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 85 (D.D.C. 2020)). Defendants have identified no prejudice of any kind.

***6. The documents were introduced to influence this Court.*** As explained above, the documents were introduced to influence the Court and will be invoked in subsequent litigation. Accordingly, this factor favors unsealing. *Cf. Friedman v. Sebelius*, 672 F. Supp. 2d 54, 61 (D.D.C. 2009) (explaining that documents entered in evidence carry a "strong presumption against sealing").

## III. Any Protection Must Come Through Targeted Redaction, As Defendants Seemingly Concede.

Even if Defendants had identified a legitimate interest in some portion of these documents remaining under seal—such as a portion of the JLL Plan that legitimately bears on security—wholesale sealing is inappropriate. "Should the court determine that some kind of sealing order is warranted, that order should be no broader than is necessary to protect those specific interests identified as in need of protection." *Johnson*, 951 F.2d at 1278; *see also Stone v. Univ. of Md. Med. Sys. Corp.*, 948 F.2d 128, 130 (4th Cir. 1991).

Indeed, Defendants themselves appear to have conceded that redaction is both feasible and appropriate. Their footnote states that they "must take steps to ensure that all sensitive information is properly redacted prior to those materials being made public." JSR at 4 n.1. That sentence implies that only *some* of the information is sensitive; that redaction can ameliorate any concerns; and that public disclosure of the remainder is necessary. Accordingly, Defendants should be required to propose redactions that are "narrowly tailored and specifically supported."

*McCormick*, 316 F. Supp. 3d at 468. But to repeat: Under no circumstances is there any scenario in which the Delta Consulting Group PowerPoint should not be made public in its entirety.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order unsealing the two exhibits or requiring Defendants to propose and substantiate any narrowly tailored redactions.

Dated: September 1, 2026

Respectfully submitted,

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
KYLE R. FREENY
(D.C. Bar No. 1684764)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID W. OGDEN
(D.C. Bar No. 375951)
DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*