**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOYCE BEATTY,

*Plaintiff*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25-4480 (CRC)

**RESPONSE TO MOTION FOR EMERGENCY HEARING**

On May 29, 2026, this Court preliminary enjoined Defendants from taking "steps to further effectuate" a March 16, 2026, Board decision to close the John F. Kennedy Center for the Performing Arts for "such time as is required to complete the repair and restoration funded by Section 60025 of the One Big Beautiful Bill Act." Doc. 48 at 1. Defendants are in compliance with this order and, after two recent Board votes, intend to move for dissolution of the preliminary injunction to allow for the closure necessary to complete the restoration and renovations. *See* Doc. 82 at 1 (providing that Defendants may move to vacate the preliminary injunction "by September 18, 2026").

Yesterday morning—separate from any Board decision related to closure for ongoing renovations—Matt Floca, the Executive Director and Chief Operating Officer, decided to temporarily close the Center due to "acute risks to public safety resulting from continued structural deterioration at the Center." Declaration of Charles Matthew ("Matt") Floca (Floca Decl.) ¶ 3.[1] During this temporary closure, "which will last for seven days, unless extended, [Floca] intend[s] to assess existing safety risks in those portions of the main building exhibiting severe structural deterioration." *Id.*

Mr. Floca did not make this decision, which is within his authority, in a vacuum. Instead, his decision "was and has been informed by the wide array of evidence made available to [him] in the course of [his] duties, which [he] evaluated based on [his] more than 15 years of experience in managing complex programs, facilities, and large-scale budgets." *Id.* ¶ 4. This evidence includes a recent assessment by the engineering firm Walter P Moore, which "indicated more advanced

[1] Two nights ago, "an alarm was improperly triggered in the Center that communicated that people should leave the building and that the building was closed to public access." Floca Decl. ¶ 9. An investigation is underway, as Mr. Floca is unaware "of a legitimate reason why that alarm may have been triggered." *Id.*

deterioration in the overhead soffit panels than recently documented" and revealed an active falling hazard. *Id.* ¶¶ 4-5. These soffit panels are 2,500-pound slabs of concrete hanging 60 feet in the air around the full exterior of the center. The evidence considered by Mr. Floca also includes the "structural failure of a five-by-four-foot piece of one-inch-thick ceiling plaster on September 4 due to water damage following severe storms in the District of Columbia." *Id.* ¶ 4. The Center, with the assistance of third parties, is currently investigating the failure of the plaster, among other issues. *Id.*

No part of the Court's preliminary injunction order forbids a temporary closure like this one. *Contra* Doc. 84 at 3. This Court's order forbids only the further effectuation of a Board decision to close for "such time as is required to complete the repair and restoration funded by Section 60025 of the One Big Beautiful Bill Act." Doc. 48 at 1. This Court did not enjoin the Center from temporarily closing the building to address significant safety hazards. *See United States v. Philip Morris USA Inc.*, 778 F. Supp. 2d 8, 11 (D.D.C. 2011) (explaining that language must be read "in conjunction with the purpose to be accomplished by the requirements set forth in" the injunction). Indeed, in the opinion concerning the preliminary injunction, the Court refused to interpret the relevant statutes to require the Center "to remain open at all times" and recognized that the Center could "close[] on an emergency basis." Doc. 50 at 70. And Beatty seemed, at one point, to agree that an "emergency" could warrant closure. *See* Doc. 13-1 at 22. This is a case in equity, after all, and there is nothing equitable about forcing management to keep a building open in these circumstances. *Cf. Providence Rubber Co. v. Goodyear*, 76 U.S. 805, 807 (1869) (a court must "exercise its flexible jurisdiction in equity as to protect all rights and do justice to all concerned"). For all these reasons, the Court should refuse Plaintiff's suggestion that Defendants are in violation of the preliminary injunction.

As for Plaintiff's pending motion, the request for a hearing should be denied. There is no emergency caused by Defendants' temporary closure of the Center; the only emergency is the risk to the public and the Center's employees and artists if it remained fully open without further safety assessment. As Plaintiff's motion notes, her attorneys communicated their concerns to Defendants' attorneys, and Defendants' attorneys agreed to discuss those concerns with Plaintiff's counsel. According to Plaintiff, her attorneys sent a staff member to conduct an investigation in the morning, and while their staff member was on site demanded a response from Defendants first by noon and then by 1 p.m. There is no justification for Plaintiff's motion without Plaintiff having allowed a reasonable time for Defendants to respond to their requests. In any event, Defendants have filed with this response a declaration explaining yesterday's closure. The Court should deny Plaintiff's request. If, however, the Court grants Plaintiff's motion for a hearing, Mr. Floca intends to attend the hearing and provide live testimony if the Court requests it.

Dated: September 17, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

*/s/ Brantley T. Mayers*
BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 890-9874
brantley.t.mayers@usdoj.gov

CHRISTOPHER M. LYNCH
Chief Litigation Counsel

WILLIAM S. JANKOWSKI
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch

*Counsel for Defendants*