**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOYCE BEATTY,<br><br>*Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-4480 (CRC) |

**DECLARATION OF CHARLES MATTHEW ("MATT") FLOCA**

In accordance with the provisions of 28 U.S.C. § 1746, I, Charles Matthew Floca, state as follows, under penalty of perjury, pertinent to the above-styled and numbered case:

1. I currently serve as the Executive Director and Chief Operating Officer of the John F. Kennedy Center for the Performing Arts ("the Center"). In this capacity, I exercise operational authority over all institutional departments, managing a complex integration of both trust and federal functions, including all elements of the Center's physical footprint. I represent the executive management of the Center before its Board of Trustees. In my employment, I report to the Board.

2. The matters set forth in this Declaration are true and correct from my own personal knowledge and from information made available to me in the course of my official duties. I make this Declaration in support of Defendants' Response to Plaintiff's Motion for an Emergency Hearing.

3. On September 16, 2026, I came to the conclusion that acute risks to public safety resulting from continued structural deterioration at the Center necessitated a temporary closure of most public spaces in the main building of the Center to general public access. As indicated in the attached exhibit, I communicated that conclusion to the Center's staff by email on the same day. As the official responsible for the executive operations of the building, I determined that continued life-safety hazards to individuals who might access certain public portions of the building have created untenable risks to the health and safety of those individuals. During this temporary closure, which will last for seven days, unless extended, I intend to assess existing safety risks in those portions of the main building exhibiting severe structural deterioration. I further intend to reevaluate the need for continued closure on a weekly basis. Should the structural assessments indicate that certain portions of the building remain safe for public access, I intend for the Center to establish protocols for enabling partial public access to safe spaces.

4. My conclusion was and has been informed by the wide array of evidence made available to me in the course of those duties, which I evaluated based on my more than 15 years of experience in managing complex programs, facilities, and large-scale budgets. Certain pieces of evidence have long been in existence, like the continued series of comprehensive building reports (including, but not limited to, the building's 2021 and 2022 comprehensive building reports) in recent years. And more recent evidence—including, but not limited to, the comprehensive building plan developed by JLL and finalized in August 2026—has added further support to my conclusion that structural deterioration at the Center has continued to compound in recent years. But the acute need for my decision was informed by two main pieces of evidence: (1) a roof terrace canopy assessment by the engineering firm Walter P Moore, which was completed in June and July of 2026; and (2) structural failure of a five-by-four-foot piece of one-inch-thick ceiling plaster on September 4 due to water damage following severe storms in the District of Columbia.

5. The Walter P Moore assessment indicated more advanced deterioration in the overhead soffit panels than recently documented: severe corrosion in 46 panels and mild-to-moderate corrosion in 93 panels (out of a total of 278 panels). One-third of all panels require immediate replacement. And preliminary analysis of ceiling plaster inside the main building of the Center has indicated that at least seven additional ceiling locations have visible water-related deterioration and conditions like those observed in the original failure location.

6. Walter P Moore and the internal facilities team are currently investigating the primary point of failure for the ceiling plaster and any adjacent compromised areas. No access is permitted into the Grand Foyer of the Center. Access restrictions may extend into the Hall of States and Hall of Nations if the investigation uncovers any additional moisture penetration or ceiling plaster instability. Similar temporary access restrictions have been placed under outdoor overhead soffits in areas beneath active falling hazards identified by Walter P Moore.

7. The Center is currently conducting other investigative and restoration work authorized by the July 2025 congressional appropriation of funds. That work includes a survey of mechanical deficiencies in the overhead rigging grids of the Center's performance spaces; survey and reinforcement of distressed bays in the Center's parking garage and below-grade thoroughfares; and a survey of the Center's electrical infrastructure.

8. The above facts, considered together, led to my conclusion that a temporary closure of access is required at this time to ensure that the building remains safe for public access. Upon further assessment, I intend to communicate additional changes to the building's safe level of access to Center staff as soon as I am able.

9. On September 15, 2026, an alarm was improperly triggered in the Center that communicated that people should leave the building and that the building was closed to public access. I did not authorize that alarm, nor am I aware of a legitimate reason why that alarm may have been triggered. Facilities and maintenance teams employed by the Center are currently investigating the circumstances that could have led to that alarm being issued.

Executed in Washington, DC, on Wednesday, September 16, 2026.

Charles Matthew Floca