**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOYCE BEATTY,<br>*Plaintiff*,<br>v.<br>DONALD J. TRUMP, *et al.*,<br>*Defendants*. | No. 25 Civ. 4480 (CRC) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR EMERGENCY HEARING REGARDING CLOSURE**

This Court enjoined Defendants from shutting down the Kennedy Center "until the Board approves any closure consistent with the Court's Memorandum Opinion, and the Court issues a further order dissolving or modifying this preliminary injunction." ECF No. 48 at 1. Defendants have not sought such an order, nor has the Court issued one. But on the night of Tuesday, September 15, 2026, Defendants closed the Kennedy Center's main building. After initially telling Plaintiff that the closure was the result of someone pulling a fire alarm, Defendants now say the closure is a "distinct decision by management to address imminent life-safety risks" and claim it is "not a decision to effectuate the Board's separate vote." ECF No. 86-2 at 2.[1]

This latest explanation cannot be squared with the record. Defendants' rationale that they are only temporarily closing the Kennedy Center is a plain pretext to justify shutting down the Center permanently. The facts before the Court are deeply concerning. Defendants announced the closure directly after the President stated that the Center would close "immediately"—not

[1] Notably, although Defendants state in their response that the decision was not made by the Board, Mr. Floca's sworn declaration does not make that representation. *See generally* Floca Decl., ECF No. 86-1.

temporarily but in response to the Board vote held on September 15, 2026. Indeed, despite the parties discussing how Defendants might seek to lift the preliminary injunction, Defendants notably did *not* inform the Court at the Tuesday hearing that they were planning on shutting down the Kennedy Center imminently to purportedly address safety concerns. Meanwhile, Defendants have now told the Court that they will close the Center—not just for seven days—but indefinitely until *they* decide when the Center should reopen. **This directly contravenes the Court's preliminary injunction**. It is a recipe for Defendants extending their shutdown forever and closing the Kennedy Center for the next two years—the very thing this Court said they could not do without its permission. Finally, Defendants cannot point to any new meaningful information or true exigency to justify this sudden shutdown. Instead, they merely say that Mr. Floca reviewed the existing evidence—including prior building plans—and decided a closure was necessary. This was not permissible under the Court's order.

The Court need not accept Defendants' implausible assertions without scrutiny. It should recognize Defendants' latest filing for what it is: Pretext for doing unilaterally what the injunction forbids. Indeed, it would do enormous damage to the public confidence in the rule of law, and send the exact wrong message to Defendants, to permit this concerning behavior to go unaddressed. **A hearing is imperative to clarify what Defendants are doing.** Indeed, Defendants effectively concede that a hearing is warranted, stating that "Mr. Floca intends to attend" and would willingly "provide live testimony." ECF No. 86 at 4.

This matter has also taken on additional urgency overnight. New evidence now shows that Defendants appear to be actively considering the demolition of the Center—something that they have also threatened in their papers before the Court. *See* ECF No. 85. It goes without saying that demolishing the Kennedy Center's main building would violate the Court's preliminary injunction:

Closure is both a prelude to and the necessary consequence of demolition.[2] But out of an abundance of caution, **Plaintiff also respectfully requests the Court to make crystal clear that its order prohibits demolishing the structure.**

**ARGUMENT**

The facts in the record strongly suggest that Defendants' explanation is pretextual and was instead manufactured to skirt the Court's preliminary injunction order without first seeking modification or dissolution, as the Court indicated that Defendants must do before shutting down the Kennedy Center.

1. <u>The closure did not follow the safety incident it cites.</u> Mr. Floca justified the closure as based on the September 4 storm, during which "water-damaged plaster detached from the Grand Foyer ceiling." ECF No. 86-2 at 2. But Defendants did not close the building immediately, and kept the building open *for twelve days* after September 4. Instead, as their counsel indicated during the hearing on Tuesday, in response to plaster falling, management cordoned off a section of the building to address that incident. They identified no meaningfully new information that occurred between September 4 and September 16 that could explain waiting to shut down until September 16.

Indeed, Mr. Floca states that the "evidence" motivating his decision has "long been in existence," such as the Center's prior comprehensive building plans—which do not recommend closure. Floca Decl. ¶ 4. Mr. Floca *never* acknowledges that his own handpicked consultant, in an August 20 report, disclaimed providing any opinion that the building was unsafe for occupancy. *See* ECF No. 75 at 2. Moreover, Mr. Floca states that he relied on an analysis from Walter P

[2] Plaintiff notes with concern President Trump's repeated recent statement that no renovations will occur unless his name is inscribed on the exterior. If taken seriously, then the only consequence can be permanent closure and demolition, absent intervention by the Court.

Moore. But by his own admission, that analysis "was completed in June and July of 2026," Floca Decl. ¶ 4, meaning it cannot justify suddenly shuttering the Kennedy Center's main building without notifying the Court.

2. The closure instead immediately followed the Board's closure vote and Trump's subsequent announcement. The Board voted to close the main building on September 15. ECF No. 78. Shortly thereafter, President Trump announced on social media that the Kennedy Center would close "immediately" as a result. *Id*. The closure came right on the heels of both. The clear inference is that *those* are the events that precipitated the closure, not any legitimate exigency identified by management.

3. Defendants first blamed a fire alarm. On the night of September 15, after hearing reports of an announcement made over the loudspeakers at the Kennedy Center about a shutdown, undersigned counsel contacted Defendants' counsel for clarification out of concern that Defendants were defying the Court's injunction. Defendants' counsel responded that the closure announcement happened because "someone improperly triggered the fire alarm and the loudspeaker announcement followed accordingly," and that "[t]he alarm has since been turned off." ECF No. 84 at 1. Counsel added that Defendants had no "further information at this time." *Id.* Less than a day later, Defendants call the closure a deliberate management decision driven by "acute risks to public safety." Floca Decl. ¶ 3. At minimum, the fact that Defendants were apparently preparing to close, but did not inform Plaintiff's counsel of that fact in response to counsel's inquiry on Tuesday evening, is deeply concerning.

4. Defendants' public, staff, and litigation accounts do not match. At 11:04 AM on September 16, the Center's spokesperson publicly blamed "[c]ompounding systemic infrastructure failures from decades of neglect" and a "crumbling building" for the building's closure. ECF No.

84 at 2 & n.2. Thirty-two minutes later, Defendants' counsel told Plaintiff only that Defendants "will respond with an explanation as soon as we can." *Id.* at 2. Defendants did not respond by the requested 1:00 PM deadline, prompting Plaintiff to file the present motion. *Id.* Management's explanation went to staff at 4:44 PM. ECF No. 86-2 at 2. In sum, Defendants gave an explanation regarding the closure to the press and to their employees before they explained it to this Court and to Plaintiff, let alone sought relief from the injunction. Their own counsel would not even commit to what their spokesperson had already announced. And the spokesperson's explanation, "decades of neglect," is not some new exigency at all—it was the purported basis for the original closure decision, which resulted in the injunction.

5. <u>The "seven-day" closure is built to last.</u> Mr. Floca states that the closure will be "for seven days," but says he will "reevaluate the need for continued closure on a weekly basis." Floca Decl. ¶ 3. It suspends "[a]ll on-site operations in the main building . . . for the duration of this closure." ECF No. 86-2 at 2. It moves the gift shop and food and beverage services to the REACH. *Id.* at 3. It reroutes all shuttle buses to the REACH. *Id.* Moreover, the Center has installed barricades around the building.[3]

One does not relocate retail and transit operations or install barricades (which seemingly would have needed to be acquired in advance) for a one-week inspection. These measures are consistent with an open-ended shutdown. Defendants have thus effectively arrogated to themselves the power that the Court clearly stated they do not have without the Court's approval: To decide when and if the Center would close.

[3] *See* Matthew Daly and Nathan Ellgren, *Fencing Goes Up Around the Main Kennedy Center Building After Trump-Aligned Board Votes To Close It*, Assoc. Press (Sept. 16, 2026), https://apnews.com/article/kennedy-center-fencing-trump-close-repairs-76857d537ec8cabd87be5065fb9428ac.

6. The stated purpose is to look for a risk, not to respond to one. Mr. Floca's email to employees says the closure "will allow operations staff to determine whether any other severe safety incident is imminent and, if necessary, to remediate such issues." ECF No. 86-2 at 2. That wording admits Defendants have *not* found any imminent hazard that requires closing the whole building. They closed the building first and plan to look for a reason afterward. This is a shell game.

7. Defendants did not inform the Court they were considering this immediate closure. At the September 15 hearing—held *the day before* the closure was publicly announced and formally effectuated—the Court made clear that if Defendants wished to close the Center, they must move to lift or modify the injunction.

Defendants did not. And Defendants' counsel did not indicate at the hearing—including in response to the colloquy with the Court about the operative effect of the preliminary injunction and the Board's vote later that day to close the building—that Center management was weighing a separate, imminent closure, even though the September 4 incident they now rely on had happened eleven days earlier, and all of the other purported risks were long known to the Defendants.

8. Defendants never told the Board either. If management planned to close the Center that same day (or the day thereafter) to address an imminent safety issue (and that decision was separate and distinct from the Board's closure decision, as now claimed), one would expect the trustees responsible for the Center would have been informed about it at the Board meeting held just hours earlier. Undersigned counsel understands that they were not.

9. Defendants are considering demolition. President Trump's statements and images of materials he was reading suggest demolition is at least being considered. In response to questions from reporters he stated that if he is not recognized on the building, it will close and be

ripped down.[4] Separately, images on social media depict him reading a placard on Air Force One that reads "Kennedy Center DEMOLISHED."[5] This—on its own—is deeply concerning. It would represent a monumental breach of fiduciary duty, a clear violation of the organic statute, and also potentially a violation of criminal law. *See* 18 U.S.C § 1361. And Defendants have also stated that unless Trump's name goes on the Kennedy Center's façade, no renovations will be undertaken.

When "the evidence tells a story that does not match the explanation" offered, a court may, and indeed should, reject that explanation. *Dep't of Com. v. New York*, 588 U.S. 752, 784 (2019). Judges are "not required to exhibit a naiveté from which ordinary citizens are free." *Id.* at 785 (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)). That principle applies even under the deferential standard of review under the Administrative Procedure Act. *Id.* It applies with greater force here, where the question is whether a party is complying with an injunction.

Every inconsistency above points in the same direction. The fact that Defendants adopted this exigent-circumstances rationale on the heels of the President's announcement of an "immediate" closure, and after the Court told them to first seek modification, is not a coincidence but instead is powerful evidence that the asserted exigency is a post hoc rationale for circumventing the injunction without first seeking its modification. The Court should not accept an explanation by Defendants that defies common sense and logic.

In any event, regardless of justification, a party must obey "a clear and unambiguous order of the Court." *Potter v. District of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025). And a party

---

[4] Acyn (@Acyn), X (Sept. 16, 2026, at 6:41 PM), https://x.com/Acyn/status/2100354290858750212.
[5] Aaron Rupar (@atrupar), X (Sept. 16, 2026, at 11:12 PM), https://x.com/atrupar/status/2100422728440217733.

that believes an order is wrong must challenge it through orderly process, not ignore it. *Maness v. Meyers*, 419 U.S. 449, 458–59 (1975). Relabeling the enjoined conduct does not change that duty. Neither does couching it as a decision by "management" rather than the Board. Mr. Floca is bound by the Court's order, which forbids effectuating a shutdown. Closing the building is closing the building. Accordingly, even if the Court takes Defendants' explanation at face value, the closure was a clear violation of the Court's order.

* * *

As Plaintiff explained in her opening brief, a deep concern is that this pretextual closure will enable Defendants to undertake immediate steps to make public access practically impossible for the foreseeable future, including by demolishing public avenues of access to the building, and thereby evade the Court's order by *fait accompli*. This concern looms large in light of Defendants' demolition of the East Wing of the White House, and evidence showing that President Trump is actively considering demolition of the entire structure. Indeed, it is particularly telling that Defendants are completely silent about President Trump's comments and evidence showing him contemplating demolition, which Plaintiff filed before this Court as a notice of supplemental authority. *See* ECF No. 85.

Defendants' failure to follow the orderly process of seeking to modify or dissolve the preliminary injunction—or even to seek an emergency or temporary modification—adds to the well-established pattern of officials in this Administration moving faster and one step ahead of the courts in an effort to evade the constraints imposed by judicial orders and frustrate meaningful judicial review. Plaintiff implores the Court not to stand by while Defendants repeat that pattern here. **To that end, at a minimum, Plaintiff requests the Court enter an order making clear**

**that either the wholesale demolition of the building or demolition that would make public access impossible would violate the Court's existing order.**

## CONCLUSION

It would do enormous harm to the public faith in the rule of law—to say nothing of the orderly administration of this case—if Defendants can violate the Court's order without consequence. Plaintiff respectfully requests that the Court hold an emergency hearing. Indeed, Defendants effectively concede to a hearing, stating that "Mr. Floca intends to attend" and would "provide live testimony." ECF No. 86 at 4. Alternatively, Plaintiff requests that the Court hold that the closure violated its preliminary injunction. Additionally, at a minimum, and in light of events that occurred overnight, Plaintiff requests that the Court make clear that demolishing the structure would violate its order.

Dated: September 17, 2026

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
KYLE R. FREENY
(D.C. Bar No. 1684764)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)

WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org
kfreeny@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID OGDEN
(D.C. Bar No. 375951)

DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*