**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOYCE BEATTY,<br>*Plaintiff*,<br>v.<br>DONALD J. TRUMP, *et al.*,<br>*Defendants*. | No. 25 Civ. 4480 (CRC) |

**PLAINTIFF'S POSITION STATEMENT**

Plaintiff requests that the Court order Defendants to (i) promptly cure substantial deficiencies in their September 30 production; (ii) extend the close of discovery and briefing schedule on Defendants' motion to lift the preliminary injunction (PI) for a brief period (one to two weeks) to allow Defendants to obtain critical financial information; and/or (iii) at a minimum, extend the summary judgment discovery period and delay further briefing on Defendants' motion for summary judgment (and the deadline for Plaintiff to file her own summary judgment motion) until Plaintiff has had a meaningful opportunity to obtain and develop the discovery to which she is entitled before being required to litigate the merits on an incomplete factual record effectively curated by Defendants.

As explained more fully below, Plaintiff has identified multiple systemic issues in Defendants' September 30, 2026 production that raise serious concerns about the adequacy of their collection and review process, compounded by an extremely narrow and inappropriate construction of the permissible scope of discovery. To understand just how narrowly Defendants construe the permissible scope of discovery, Defendants have refused to respond to requests for admission regarding Plaintiff's Supplemental Authority on the basis that such information is outside the scope of discovery, **despite this Court expressly authorizing discovery by minute order into that precise topic.** In total, Defendants provided approximately 100 documents consisting primarily of contracts and reports (including segments of the JLL report), only 35 emails, and no text messages at all. And they have refused to provide core financial information, as set forth further below. Even under the Court's expedited schedules, this is untenable; and combined with the obvious deficiencies in response to the few categories of documents to which Defendants provided records and their improperly cramped understanding of relevance, it strongly indicates that the production is incomplete by any metric.

The deficiencies in the production are further exacerbated by the fact that Defendants have withheld swaths of highly relevant materials under blanket assertions of Executive Privilege, which plainly does not apply here. Plaintiff will shortly file a separate motion to

compel to tee up the Executive Privilege issue for the Court's resolution. But the combination of these two distinct problems—(i) the systemic discovery issues, which are the focus of this statement, and (ii) the widescale assertion of Executive Privilege—places Plaintiff in an untenable position in which **Defendants have essentially curated a stacked deck of discovery** by cherry-picking a handful of documents (or cherry-picking the few requests to which they would provide documents) to present their preferred version of events, while withholding the information necessary for Plaintiff—and ultimately the Court—to test the accuracy and completeness of that account. Without meaningful document discovery into issues not implicated by Defendants' sham invocation of Executive Privilege, Plaintiff is severely hampered in her ability to develop the factual record necessary to litigate the merits of the parties' competing motions.

The bottom line is this: This is a significant matter closely watched around the country, if not the world. Plaintiff takes her obligations to protect and preserve the Kennedy Center enormously seriously, which is why she brought this lawsuit in the first place. She is attempting to proceed as expeditiously as possible, for the benefit of this sacred national memorial. As this Court has repeatedly stressed, the matters at issue before the Court are some of the most consequential in the institution's history. But Defendants are stonewalling, hoping to run out the clock on discovery—and therefore on the sunlight and accountability that discovery provides. It would be deeply regrettable if—after the Court found that Defendants violated their fiduciary duties by creating a stacked deck to justify shuttering the Kennedy Center in March 2026, and twice more found fiduciary violations arising from the unlawful renaming of the Kennedy Center for Trump—Defendants were permitted to run out the clock on discovery and thereby insulate their latest actions from meaningful examination by the Court.[1]

**<u>Indications of Systemic Issues with Defendants' Scant Document Production</u>**

Plaintiff received Defendants' initial production at around 8:30 pm on September 30, 2026, hours before depositions began October 1, 2026. In total, Defendants produced roughly 100 documents, including just 35 emails. Plaintiff has already identified multiple serious deficiencies. Although Plaintiff provides specific examples below, **these issues appear systemic rather than limited to discrete disagreements about particular requests.**

The examples are necessarily illustrative: They involve documents Plaintiff independently knows exist or categories the parties specifically discussed before production, but which Defendants did not provide. The absence of documents that should have been in the production raises broader concerns about whether Defendants employed a reasonable process to identify, collect, review, and produce responsive materials—particularly given Defendants' extremely narrow view on relevance, which Plaintiff is deeply concerned reflects another effort to cherrypick what material the Court considers in evaluating the Board's decisions, and to stonewall Plaintiff and the Court into submission. To be clear, Plaintiff understands the highly expedited timeframe for discovery. That is why Plaintiff engaged in extensive conferrals with Defendants to try to find a manageable scope that could be accomplished within the expedited

---

[1] Plaintiff also informs the Court that, by agreement of the parties, Congresswoman Beatty's deposition has been postponed, without prejudice to a motion to quash or a motion to compel.

timeframe while also satisfying her needs for both the motion to lift the PI and summary judgment. *See* Ex. A. Indeed, Plaintiff raised the possibility with Defendants of extending the schedule as necessary. But Defendants' production, when it came, was grossly inadequate, withheld readily available material in Defendants' sole possession, and effectively amounts to a denial of meaningful discovery of anything that Defendants do not wish to share.

**First, Defendants failed to produce core financial documents that they had previously agreed to produce, and which are readily producible.** Plaintiff raised the need for financial information underlying the Kennedy Center's and Delta's analysis presented at the two Board meetings at the hearing held on September 16 and again on September 21, before written discovery was served. The parties discussed the issue repeatedly thereafter to ensure ample time to resolve any disputes before key depositions. Based on these discussions, Plaintiff understood she would receive underlying core financial data for FY25 and FY26, including things like the financial statements and the general ledger (which are typically readily available and producible). But Defendants did not provide those documents on September 30. And although they produced a few additional documents after this Court made clear its expectation that they provide financial information to Plaintiff, they continue to refuse to provide other readily available data.

During the parties' meet-and-confer, Plaintiff agreed to narrow her requests for underlying financial data to FY2025 and FY2026—the years that have not yet been audited. Yet Defendants' September 30 production contained none of that underlying financial data—which should be easy to gather and produce. Instead, Defendants produced the summary spreadsheets reflecting the information prepared for and provided to Delta, without the records underlying those conclusory figures. Opposing counsel agreed to discuss the issue with the Center and provided a handful of additional documents—including only one spreadsheet/workbook not provided to Delta. But there are still numerous categories of readily available documents—such as financial statements (*e.g.*, income statements, statements of cash flows, and balance sheets), the general ledger, internal financial reporting to management, recent payroll information, and reporting or other information underlying their own conclusion that they are within weeks of running out of money—that are critical to Plaintiff's evaluation of Defendants' claims about the state of their finances.

This afternoon, Defendants indicated they would provide no further financial records. *See* Ex. B. Defendants refuse to provide basic data necessary to understanding the Center's financial position, including financial statements, internal financial reporting, and payroll records—documents that *must* exist for the Center to have made representations in recent weeks about its solvency and ability to make payroll. Defendants claim that the data regarding the most current fiscal year, FY26, is "not necessarily verified at this point in time" and that it would be "unduly burdensome" to provide more complete and verified information. But Plaintiff is not asking for Defendants to verify or perform adjustments to the financial information she requested. And it would be quite surprising if normal year-end adjustments and the like substantially changed the high-level overview of the Center's finances. The representations that management just made to the Board and that Defendants made to the Court about the dire state of the Center's finances were presumably based on that unverified and incomplete data from FY26. Defendants should be required to provide that information to Plaintiff. It is also cause for

concern that Defendants raised these categorical concerns about providing underlying FY26 financial data for the first time *only today* and did not raise them during the prior two weeks of discussion, when there was more time for Court intervention.

**Second, Plaintiff has independently identified other responsive documents that Defendants failed to produce that raise concerns about the adequacy of the production.** For example, Plaintiff sought materials provided to some but not all trustees, as well as documents specifically provided to the Audit and Finance Committee. On September 26, 2026—three days after the requests for production were served—Senator Whitehouse released hundreds of pages of documents, including PowerPoint slides dated June 1, 2026, for a presentation at the Audit and Finance Committee. That presentation would be responsive to Plaintiff's Request for Production Number 10, which requests materials about closure or the Center's finances that were circulated to one or more or fewer than all trustees. That is the type of document readily identifiable by the Center through basic diligence (especially because Defendants produced at least one other presentation to the Audit and Finance Committee). **But the PowerPoint inexplicably was not included in the discovery.**

When Plaintiff's counsel raised this issue to Defendants' counsel by phone, Defendants' counsel were unaware of the Whitehouse disclosure. Thus, it does *not* appear this was an intentional decision on Defendants' part to withhold documents in the public domain. Instead, there is a **very serious concern** that the absence of these documents indicates that production was either **intentionally cherrypicked by Defendants or searches were undertaken in a way that prevented Defendants from providing highly probative information.** That is particularly true because the PowerPoint slides expressly link the collapse of the Center's revenue to the current leadership's tenure, expressly stating for example that the decline in ticket sales "accelerates in 2025 when the new board is announced" and that by "2Q 2026, ticket sales further drop to pandemic levels."

Plaintiff is in possession of at least one other similar document that was prepared for the Board on finances, but ultimately not presented to it (and which is therefore responsive to her Request for Production Number 11), which was not included in Defendants' production.

To reiterate, this is not about individual deficiencies. Even if Defendants were willing to cure each individual deficiency brought to their attention, seriatim supplementation as Plaintiff identifies particular omissions cannot cure a deficient production process on the existing schedule. Defendants' conduct with respect to financial records demonstrates the problem: Defendants produced a handful of additional financial materials only after the Court made unmistakably clear that financial materials must be produced. This pattern of recalcitrant conduct makes clear that, absent express instruction from the Court, Defendants are unlikely to comply with their discovery obligations more broadly. And the timeframe remaining for discovery—including on summary judgment—makes it unlikely that Plaintiff will have an opportunity to meaningfully resolve disputes over discovery unless this Court extends the schedule and/or bifurcates PI and summary judgment proceedings.

**Third**, **Defendants' responses do not permit Plaintiff to determine what universe of documents Defendants actually searched and reviewed for responsiveness.** Defendants state

in a categorical objection, repeated throughout their responses, that they are not producing materials created before May 29, 2026, unless Defendants deem them relevant to the "substance, justification, mechanics, and process" of the August 13 and September 15 Board meetings or to Plaintiff's Notice of Supplemental Authority.

That limitation is circular: It does not disclose what Defendants treated as falling within those categories or permit Plaintiff to determine what responsive materials were excluded. This is particularly concerning because, during the parties' pre-production conferrals, Defendants repeatedly articulated an extremely narrow view of relevance—including, at times, the position that information not presented to the Board (or not related to finances—since this has been a focus of the Court) falls outside the permissible scope of discovery. But this limitation would allow Defendants to doubly stack the deck and prevent Plaintiff from understanding if Center management—including Defendant Matthew Floca—withheld material from Delta, JLL, or the Board that undermined Mr. Floca's (or another Defendant's) preferred outcome on closure.

Defendants' limitation, as set forth in their R&Os, also omits the Court's express authorization of discovery concerning the "surrounding equities of the decision." And although Defendants responded, in a recent meet-and-confer, that they *were* providing information relevant to the equities, they refused to further clarify how they were drawing the line. Defendants should not be permitted to define the scope of discovery through undisclosed relevance determinations while simultaneously limiting their production based on burden, leaving Plaintiff with no way to determine whether responsive materials were reviewed and withheld, or never searched or collected at all.

**Fourth, Defendants' cramped view of relevance is borne out by their relevance objection to clearly relevant requests.** This includes a request for production related to the Center's prior plans to keep the Center open during renovation. Contrary to Defendants' conclusory objection, even if such documents pre-date the Court's May 29 decision, they are inherently *relevant* to the "substance, justification, mechanics, and process" for the subsequent Board meetings where full closure was approved, as well as to "the surrounding equities." For example, if the Center is in possession of plans showing a feasible path forward for phased renovation, and those were not provided to Delta, JLL, or the Board for consideration, Plaintiff is entitled to those documents because they bear directly on whether the subsequent consideration was bona fide and on the equities of the closure decision. Defendants merely categorically refuse to produce any documents related to Plaintiff's request for these documents.

Defendants have also refused to produce, on grounds of relevance, any documents *dated after May 29, 2026* concerning or referring to Chairman Trump's February 1 Announcement. To take a hypothetical, under this theory, if Defendants are in possession of communications from this summer, for example, in which Center management stated that they felt compelled to implement the February 1 announcement, Defendants would not produce that material but it would undoubtedly be relevant to the recent Board decision and equities.

Defendants have also repeatedly confused the Court's relevance limitation with a temporal one. For example, Defendants raised a blanket objection to Plaintiff's deposition of a former Kennedy Center employee on the theory that, because she left the Center before May 29,

she could not possibly have information relevant to the Board's decisionmaking in August and September—even though that witness undoubtedly had knowledge about the state of the facilities and needed capital projects not long before those Board votes.

Furthermore, Defendants contend that admissions regarding the timeline for obligating congressionally appropriated funds are irrelevant and outside of the scope of discovery. But Delta Consulting Group premised its recommendation of closure on the need to expend these funds (something which is different from *obligating* the funds) within a specific timeframe. ECF No. 89-4 at 48. Documents and analyses related to the appropriated funds are plainly relevant.

**Perhaps most starkly,** Defendants have categorically refused to respond to admissions regarding Plaintiff's Supplemental Authority, which addressed two separate threats by Chairman Trump to close or demolish the Kennedy Center if he was not adequately recognized. Defendants objected and withheld a response on the basis that such information is outside the scope of discovery, despite this Court expressly authorizing discovery by minute order into that precise topic. On Defendants' telling, although "the information requested" is the " 'subject' of Plaintiff's Notice of Supplemental Authority and facially within the Court's minute order," it is not "related to the 'substance, justification, mechanics, and process' of the Board at its August and September meetings." **This directly violates the Court's minute order which made crystal clear that this is a topic for discovery.**

**<u>Defendants Withheld Swaths of Relevant Information Via Executive Privilege</u>**

These concerns about the systemic deficiencies in Defendants' responses to written discovery requests—which are exemplary rather than comprehensive—are compounded by the fact that Defendants have improperly withheld swaths of material based on blanket claims of *potential* Executive Privilege, in ways that are plainly inappropriate.

Plaintiff intends shortly to file a motion to compel with respect to Executive Privilege. Plaintiff briefly mentions her concerns with respect to Executive Privilege now to demonstrate how the sum of the two issues outlined in this statement has essentially left her without meaningful discovery in this important matter, absent extension of existing deadlines (in particular, briefing and resolution of summary judgment). Among other things, Defendants have instructed one witness already not to answer any questions regarding the substance of communications involving the Chairman. They have told Plaintiff's counsel that they will instruct Mr. Floca similarly not to answer any questions about conversations with the Chairman (despite relying on Mr. Floca's testimony regarding conversations with the Chairman in their summary judgment motion). Meanwhile, Defendants have asserted a blanket privilege over any written document that "**may** have the effect of seeking information protected by the presidential communications privilege."

As Plaintiff explained in writing to Defendants earlier this week, and as she will detail in her forthcoming motion to compel, these kinds of blanket assertions of Executive Privilege are extremely improper. It is simply not true, as the Department of Justice now seems to believe, that any communications that the President has with anyone are *per se* privileged. And there is a careful procedural process, rooted in D.C. Circuit precedent, that must be followed before

Executive Privilege may be invoked. But for purposes of this statement, the problem is that Defendants have withheld any response to Plaintiff's discovery requests about conversations with Trump, for example about whether Trump discussed possible demolition with Kennedy Center staff or indicated that the renovation approved on August 13, 2026, was contingent upon his receiving the recognition he seeks for his involvement with the Center. It cannot be that Plaintiff is expected to forgo discovery into communications with the Chairman, while Defendants' separate discovery deficiencies simultaneously leave her with an artificially constrained record on the very issues those communications bear upon.

**The Court Should Briefly Extend Discovery with Respect to the Lift Motion and Bifurcate the Lift Motion from Summary Judgment**

As Plaintiff suggested at the hearing, a very brief extension of 1-2 weeks would allow her to assemble necessary documents—such as financial information—which directly bears on the equities and merits of Defendants' motion to lift the PI. In addition, Plaintiff respectfully urges the Court to bifurcate its consideration of the preliminary injunction from the motion for summary judgment. This would enable the parties to complete any outstanding discovery (including resolution of Plaintiff's forthcoming motion to compel on Executive Privilege) before proceeding to final judgment.

Defendants have repeatedly placed the Kennedy Center's finances and financial projections at the heart of this case. It would be bizarre if Plaintiff—who prevailed at the preliminary injunction stage, and does not bear the burden on the lift motion—cannot receive core and readily available information to test Defendants' assertions raised by that motion. Plaintiff respectfully suggests that extending the discovery period and briefing schedule for Defendants' motion to lift the preliminary injunction for a brief period—by only one or two weeks—would not meaningfully alter the timeline for resolving the motion. Moreover, a brief 1-2 week extension will not prevent the Kennedy Center from conducting any needed repairs. Today, the Kennedy Center is closed to the public. At the discovery conference, counsel represented that "there are remediation activities occurring at the Center" and that people "prepared to start working on remediating these issues." And as this Court has underscored, Defendants **can** proceed with renovations, including major projects, so long as they do not completely shutter the Kennedy Center.

It would be doubly unfair to require Plaintiff to oppose Defendants' motion for summary judgment *and* file her own motion by October 16 (as currently contemplated by the schedule), in the face of these outstanding discovery issues—the precise magnitude of which Plaintiff has not yet even had an opportunity to uncover. At this juncture, with such large gaps in the factual record and faced with a plainly stacked deck of discovery, Plaintiff cannot fairly oppose or move for summary judgment. Plaintiff will therefore need to move under Rule 56(d), if necessary, to continue discovery prior to opposing Defendants' summary judgment motion and seeking summary judgment herself. Fairness and the interests of efficiency strongly counsel against requiring such a motion, where there are serious outstanding issues about the scope of discovery and the sufficiency of Defendants' production.

Accordingly, Plaintiff also respectfully requests that the Court bifurcate consideration of the motion to lift the preliminary injunction from summary judgment, permitting the government to finish any outstanding discovery in this critical matter before the final resolution of the case.

***

Plaintiff cannot identify missing documents that she does not know exist. The omissions Plaintiff has already identified, coupled with Defendants' undisclosed collection and relevance criteria, and broad and vague relevance objections, strongly suggest that Defendants either failed to collect responsive materials or excluded them based on an improperly narrow view of relevance. Even if these omissions were done with the best of intentions—and Defendants' stonewalling on finances and other issues suggests otherwise—the appropriate recourse would be to allow more time for resolution before the Court considers final judgment in this case.

The Court has already cautioned against a "stacked deck." Plaintiff should not now be required to litigate from a discovery record whose completeness and selection it has no means to assess, especially knowing that Defendants intend to continue to instruct witnesses not to answer questions that, in Plaintiff's view, are squarely relevant to the August and September Board meetings and the surrounding equities.

Plaintiff is extremely mindful of the Court's desire to come to a speedy resolution of the lift motion and the resolution of this enormously important case. She is likewise eager to help the Kennedy Center reach a stable position. But it is simply unfeasible and unfair to proceed on this timeline—especially as it relates to summary judgment—given Defendants' deficient productions, without the Court's swift intervention.

Respectfully submitted,

/s/ Kyle R. Freeny
KYLE R. FREENY
(D.C. Bar No. 1684764)
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
kfreeny@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID W. OGDEN
(D.C. Bar No. 375951)
DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*