**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOYCE BEATTY,<br>*Plaintiff*,<br>v.<br>DONALD J. TRUMP, *et al.*,<br>*Defendants*. | No. 25 Civ. 4480 (CRC) |

**PLAINTIFF'S FIRST SET OF EXPEDITED DISCOVERY REQUESTS**

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 36; Local Civil Rule 26.2; the Court's Scheduling Order of September 16, 2026 (ECF No. 82); and the Court's September 17, 2026 minute order (the "Minute Order"), Plaintiff Joyce Beatty ("Plaintiff"), by and through undersigned counsel, requests that Defendants produce the documents described below for inspection and copying, answer the following interrogatories under oath, and respond to the following requests for admission (collectively, the "Discovery Requests"), and serve all such responses at the offices of the Washington Litigation Group, 1717 K Street NW, Suite 1120, Washington, D.C. 20006, or by electronic delivery to undersigned counsel. Responsive documents, answers to interrogatories, responses to requests for admission, and any responses and objections shall be served no later than September 30, 2026, as required by Paragraph 1 of the Scheduling Order.

## INSTRUCTIONS

1. These Discovery Requests are served pursuant to: (a) Paragraph 2 of the Scheduling Order, which permits discovery into "the substance, justification, mechanics, and process of the Board of Trustees of the John F. Kennedy Center for the Performing Arts, at its August 13, 2026

meeting, resolving to close the main building of the Center to the public to conduct repairs, as well as the surrounding equities of the decision;" and (b) the Minute Order, which permits discovery into "the subject of [Plaintiff's] 85 Notice of Supplemental Authority to the extent permitted by the Federal Rules and the Court's scheduling order."

2. Because depositions must be completed by October 7, 2026, production of all responsive documents shall be completed by September 30, 2026. Documents shall be produced on a rolling basis as they become available, beginning as soon as practicable.

3. These Instructions and Definitions apply to each of the Discovery Requests and should be construed to require answers based upon the knowledge of, and information available to, the responding party as well as its agents, representatives, and, unless privileged, attorneys.

4. These Discovery Requests are continuing in character pursuant to Federal Rule of Civil Procedure 26(e). Supplemental answers must be served if further or different information is obtained with respect to any request, and responsive documents obtained or discovered after service of your answers must be promptly produced.

5. No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part. If a partial or incomplete answer is provided, the responding party shall state that the answer is partial or incomplete.

6. The document requests extend to all documents in your possession, custody, or control, or that of anyone acting on your behalf. A document is in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you: (a) own the document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy the document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy the document on any terms; or (d) have,

as a practical matter, been able to use, inspect, examine, or copy the document when you have sought to do so. This Instruction extends to documents in the possession of any consultant retained by the Kennedy Center, including Delta and JLL, that the Kennedy Center has the legal right or practical ability to obtain.

7. Documents shall be produced (a) organized and designated to correspond to the categories in these requests, or (b) as they are maintained in the ordinary course of business.

8. Electronically stored information ("ESI") shall be produced in reasonably usable form, as single-page TIFF images or searchable PDFs, in either case with document-level extracted text and standard load files, together with associated metadata (including custodian, author, recipients, date sent/received/created/modified, file name, and file path), except that spreadsheets, financial models, workbooks, schedules, presentation files, audio/video files, and other documents that cannot reasonably be reviewed in image format shall be produced in native format. Spreadsheets, workbooks, models, schedules, and presentation files shall be produced with all formulas, hidden rows, hidden columns, hidden worksheets, comments, tracked changes, speaker notes, and linked data intact. Documents should be produced in entire families, with parent-child relationships between documents preserved in the load file. Text messages and messages sent through any messaging application shall be produced with full thread context. Each produced page shall bear a unique Bates number. Documents that exist in hard copy shall be scanned and produced in the same format, unitized as they are kept, with file folders and labels included. To the extent the parties enter a stipulated ESI protocol, the terms of that protocol shall supplant the requirements in this paragraph.

9. If a document called for by these requests has been destroyed, lost, discarded, or otherwise disposed of, including any communication sent through a messaging application with

auto-delete or ephemeral functionality, identify the document as completely as possible, including: author(s), recipient(s), subject matter, date prepared or received, date and manner of disposal, reason for disposal, person(s) authorizing disposal, and person(s) with knowledge of its contents.

10. If more than one copy of a document exists, produce every copy bearing any notation or marking not appearing on any other copy, and every copy with different attachments.

11. Produce all documents in their entirety, without abbreviation or redaction, including all attachments and matters affixed thereto, except for material properly withheld on the basis of privilege or protection.

12. Pursuant to Rules 33(b)(4), 34(b)(2)(B)–(C), and 36(a)(5), the grounds for each objection must be stated with specificity, and each objection must state whether any responsive information or materials are being withheld on the basis of that objection.

13. Where a document or information is withheld under a claim of privilege or protection, provide the information required by Federal Rule of Civil Procedure 26(b)(5) in a searchable and sortable privilege log, served with Your responses, including, for each withheld or partially withheld document: type of document, general subject matter, date, author, addressee(s), all recipients (including the To, From, CC, and BCC fields), custodian, and the relationship of those persons to one another; and, for each oral communication: the persons present, their relationships, the date and place, and the general subject matter.

14. Where a claim of privilege is asserted as to part of a document, the non-privileged portions must be produced with the privileged portions clearly redacted, and the log shall identify the basis for each redaction.

15. If, in answering these Discovery Requests, you encounter any ambiguity in construing a request, Instruction, or Definition, set forth the matter deemed ambiguous and the construction used in answering.

16. Unless otherwise specified, the relevant time period for these Discovery Requests is the date "in the fall of 2025" when "Defendants first undertook activities that would lead to the development of the plan to temporarily close the main building of the John F. Kennedy Center for the Performing Arts" (as referenced in Defendants' Statement of Undisputed Material Facts, ECF No. 89-2 ¶ 1) through the date of Your response.

**DEFINITIONS**

1. "Appropriated Funds" means the funds appropriated for the Kennedy Center in Pub. L. No. 119-21.

2. "Audit and Finance Committee" means the Audit and Finance Committee of the Board, including its members acting in that capacity.

3. "August 13 Decision" means the Board's action at its August 13, 2026, meeting resolving to close the main building of the Kennedy Center to the public to conduct repairs, including every resolution adopted at that meeting relating to the closure or renovation of the Main Building, in every version, including any version filed with the Court by errata or otherwise, and any subsequent ratification, confirmation, or modification of that action.

4. "Board" means the Board of Trustees of the Kennedy Center, including any committee or subcommittee thereof, and each individual trustee acting in that capacity.

5. "Board Decisions" means the August 13 Decision and the September 15 Decision, collectively.

6. "Board Materials" means all documents provided or made available to one or more trustees in connection with either of the Board Decisions, including all Board presentations

(including the presentation reproduced as Appendix H to the Delta Report), the Delta Report and its appendices, the CPDP, and all agendas, notices, resolutions, and reading materials.

7. "Center" or "Kennedy Center" means the John F. Kennedy Center for the Performing Arts established by 20 U.S.C. § 76h *et seq.*, including its officers, employees, agents, contractors, consultants, and representatives, and any person acting on its behalf.

8. "Chairman" means Donald J. Trump in his capacity as Chairman of the Board, and any person acting on his behalf with respect to the Kennedy Center.

9. "Closure" means the cessation, in whole or in part, of public performances, programming, events, tours, or other public operations at the Kennedy Center, whether as announced on or about February 1, 2026, or as approved by the Board on March 16, August 13, and September 15, 2026, and as announced by management on September 16, 2026.

10. "Communication" means the transmittal of information by any means, including but not limited to, in person, by telephone, by mail, by electronic mail, by text message, by direct message on any social-media platform, and by any messaging application, including applications with auto-delete or ephemeral functionality such as Signal.

11. "CPDP" means the Comprehensive Project Development Plan dated June 8, 2026, together with every update, revision, and successor version thereto.

12. "Delta" means Delta Consulting Group, including Darin L. Buchalter and every other person who performed work on the Kennedy Center engagement.

13. "Delta Report" means Delta's Construction Program Assessment Report relating to the Kennedy Center, dated August 20, 2026, together with all appendices, all drafts, all prior or interim versions, presentations, and summaries of Delta's findings, and all workpapers, models, and underlying data.

14. "Demolition" means the wrecking, razing, dismantling, gutting, or removal of all or any portion of the Main Building or any structure on the Kennedy Center campus, including any façade, exterior wall, entrance, or structural element, and including partial or staged demolition.

15. "Demolition Statements" means the statements and materials identified in Plaintiff's Notice of Supplemental Authority, ECF No. 85.

16. "Document" is synonymous in meaning and equal in scope to "items" in Federal Rule of Civil Procedure 34(a)(1), and includes all physically and electronically stored information, including emails, text messages, instant messages, direct messages, calendar entries, voicemails, and messages sent through ephemeral messaging applications. A draft or non-identical copy is a separate document.

17. "Engineering Reports" means: (a) the 2021 DLR Group Comprehensive Building Plan Presentation of Facts and Findings; (b) the 2022 DLR Group Comprehensive Building Plan; (c) the 2022 Soffit Failure Field Report; and (d) the 2024 Leak Investigation Report, together with any drafts, appendices, updates, or supplements to any of them.

18. "February 1 Announcement" means the announcement on or about February 1, 2026, including the Chairman's Truth Social post, that the Kennedy Center would close for approximately two years.

19. "Floca Declarations" means the declarations of Defendant Matt Floca dated March 15, 2026 (ECF Nos. 29-2, 29-3), April 6, 2026 (ECF No. 34-4), and May 26, 2026 (ECF No. 47-1), any declaration or sworn statement of Mr. Floca filed in support of Defendants' Motion to Vacate the Preliminary Injunction or Motion for Summary Judgment, and any other declaration or sworn statement by Mr. Floca in this action.

20. "Identify," with respect to a natural person, means to state the person's full name, title or position, employer, and present or last known contact information. "Identify," with respect to a document, means to state its type, general subject matter, date, author(s), addressee(s), and recipient(s), or, alternatively, to produce the document. "Identify," with respect to a communication, means to identify the participants, date, location, means of communication, and general subject matter.

21. "Interim Period" means May 29, 2026, through August 13, 2026.

22. "JLL" means Jones Lang LaSalle or any affiliate engaged by the Kennedy Center, including as owner's representative.

23. "JLL Plan" means JLL's comprehensive project development plan for the Kennedy Center and JLL's Integrated Project Schedule (also referred to as the master or unified construction schedule), in every version and draft.

24. "Main Building" means the main building of the Kennedy Center.

25. "Naming Condition" means any condition or understanding that renovation, restoration, construction, or funding of the Kennedy Center depends on placing any person's name on the Center or its exterior, renaming the Kennedy Center or any component part thereof after a person other than John F. Kennedy, renaming the grounds, or otherwise memorializing a person at the Kennedy Center.

26. "No-Demolition Representation" means Defendants' representation that "the building will not be demolished and that no new structure will be constructed." Joint Meet & Confer Report (Aug. 28, 2026), Case No. 26-cv-981 (CRC), ECF No. 62 at 2.

27. "One-Year Review" means the review referenced in the Chairman's February 1, 2026 Truth Social post—described there as a "one year review . . . that ha[d] taken place with

Contractors, Musical Experts, Art Institutions, and other Advisors and Consultants," and any review conducted by Mr. Floca and referenced in the Floca Declarations.

28. "Relating to" means concerning, referring to, describing, evidencing, supporting, contradicting, or constituting.

29. "Renewal Project" means the construction, renovation, repair, or capital-improvement program associated with the Closure.

30. "Scenario" means each alternative course of action evaluated in connection with either of the Board Decisions, whether or not presented to the full Board, including every option described as operating while partially renovating, partially closing, fully closing, or any variant thereof.

31. "September 4 Incident" means the incident in which plaster fell from the ceiling in the Grand Foyer of the Main Building referenced in the resolution adopted by the Board on September 15, 2026.

32. "September 15 Decision" means the Board's actions at its September 15, 2026 meeting relating to the closure or renovation of the Main Building, including every resolution adopted at that meeting, in every version, and any subsequent ratification, confirmation, or modification of that action.

33. "You" or "Your" means the Defendants, together with all agents, representatives, and attorneys.

34. The present tense includes the past and future tenses; the singular includes the plural and vice versa; "all" and "any" mean "any and all"; "including" means "including but not limited to"; "and" and "or" encompass both.

**REQUESTS FOR PRODUCTION**

1. All Documents and Communications concerning the decision to present Closure to the Board for another vote on September 15, 2026, including the purpose of that vote and its relationship to the August 13 Decision.

2. All Documents and Communications relating to the selection, retention, objectives, and scope of the engagement of Delta, including the statement of work, any task order, or GSA schedule order, any engagement letter, all modifications to any of the foregoing, all invoices, and any Documents or Communications concerning the alternatives or Scenarios that Delta was asked, instructed, or expected to evaluate.

3. All Documents provided to Delta, instructions or assumptions given to Delta, and documents Delta requested but did not receive.

4. All Communications between Delta and any officer, employee, trustee, or representative of the Kennedy Center.

5. All Documents and Communications relating to the selection, retention, objectives, and scope of the engagement of JLL, including the statement of work, any task order or GSA schedule order, any engagement letter, all modifications to any of the foregoing, all invoices, and any Documents or Communications concerning the alternatives or Scenarios that JLL was asked, instructed, or expected to evaluate.

6. All Communications between the Chairman and any officer, employee, or trustee of the Kennedy Center relating to either of the Board Decisions, the Delta engagement, Demolition, any Scenario, or the facts described in Paragraphs 3 and 4 of Defendants' Statement of Undisputed Material Facts (ECF No. 89-2), and any Documents or Communications memorializing or discussing any such communication (whether written or oral).

7. For each Scenario, all financial, budget, revenue, expense, cost, and cash-flow projections, including projected revenue from attendance and donations; all data and assumptions underlying those projections, including the data underlying any revenue, attendance, and contribution assumptions; all related workpapers; and all communications regarding the same, including, in native format, the Comparative Cost Assessment Workbook (Delta Report, App. T), the FY25 financial statement (App. W), the FY27 Budget Scenarios (App. X), and the Sources and Uses table (App. Y).

8. The JLL Plan, in native format, and all communications with JLL relating to the duration, sequencing, phasing, or cost of the Renewal Project, including any re-baselining of the construction start date.

9. All Documents and Communications relating to the consideration by any committee of the Board (including but not limited to the Audit and Finance Committee) of the Closure or any Scenario on or after May 29, 2026, including all materials for the Audit and Finance Committee's August 3, 2026, meeting, every version of any multi-option or scenario analysis, and all minutes and notes.

10. All Documents relating to the Closure, the Renewal Project, or the Kennedy Center's financial condition that were provided to one or more, but fewer than all, trustees, together with documents sufficient to show the recipients and dates of transmittal.

11. All Documents relating to the Closure, the Renewal Project, or the Kennedy Center's financial condition that were prepared for the Board, but were not provided to the Board.

12. All Documents and Communications reflecting any analysis of the deadline by which the Appropriated Funds must be obligated or expended, or of whether any Scenario could

meet that deadline, including any such analysis by the Kennedy Center, JLL, Delta, or any budget or finance office.

13. All Documents and Communications relating to any Scenario considered but not presented to the full Board, including the scenarios reported in Cuneyt Dil, *Scoop: Inside Kennedy Center's Renovation Scenarios*, Axios (Aug. 11, 2026), https://www.axios.com/local/washington-dc/2026/08/11/kennedy-center-national-symphony-orchestra.

14. All Documents and Communications concerning whether any Document, information, analysis, recommendation, or Scenario concerning Closure or the Renewal Project would, would not, should, or should not be provided or presented to the Board in connection with either Board Decision, including any decision to provide, present, withhold, omit, summarize, or modify such material.

15. All Documents and Communications reflecting any analysis, performed in connection with either of the Board Decisions, of the effect of the Closure on programming, performers, staffing, audiences, donors, finances, the Kennedy Center's memorial function, or the Kennedy Center's reputation.

16. All Documents and Communications reflecting any engineering, structural, mechanical, electrical, plumbing, or building-envelope findings that bear on the scope, duration, or cost of the Renewal Project, including any draft or final report by Walter P Moore, and all documents reflecting whether the Renewal Project schedule or cost estimates were revised in light of those findings.

17. Documents sufficient to show every booking, contract, engagement, residency, or rental for the Main Building that was declined, deferred, canceled, left unbooked, or not renewed during the Interim Period.

18. All instructions, directives, and communications during the Interim Period concerning whether to book, schedule, or contract for performances or events in the Main Building and outside the Main Building occurring on or after July 6, 2026.

19. All Documents and Communications during the Interim Period concerning staffing actions taken in connection with the Closure, including separations, non-renewals, furloughs, hiring freezes, hiring or termination of vendors, and workforce planning.

20. All Documents and Communications on or after August 13, 2026, concerning staffing actions taken in connection with the Closure, including separations, non-renewals, furloughs, hiring freezes, hiring or termination of vendors, and workforce planning.

21. All Documents and Communications dated on or before August 13, 2026, reflecting a decision, assumption, or plan that the Main Building would be closed for renovations.

22. All Documents and Communications reflecting the Kennedy Center's prior plans to conduct renovations in phases in an occupied building, as admitted by Mr. Floca in his April 29, 2026 testimony, relied upon by the Board or management in evaluating or rejecting any Scenario under which the Main Building would remain open in whole or in part.

23. All Documents and Communications dated on or after May 29, 2026, concerning or referring to (i) the February 1 Announcement; (ii) the Board's March 16, 2026, vote concerning Closure; or (iii) Mr. Floca's conclusion prior to February 1, 2026, that a 24-month closure was the best path forward, *see* ECF No. 88-1 at 4, including any such Documents or Communications concerning the effect of the Court's May 29, 2026, Opinion and Order or the steps to be taken in response thereto.

24. Documents sufficient to show the data underlying the revenue, attendance, and contribution assumptions used in any Scenario, for the periods reflected in the Fiscal Year 2025 financial statement and the Fiscal Year 2027 Budget Scenarios.

25. Documents sufficient to show, on a monthly basis from January 1, 2024, through the present, the Kennedy Center's revenues, expenses, cash and other available fiscal resources, accounts payable, and other liabilities, including revenues from ticket sales, donations and other contributed revenue, memberships, sponsorships, and other material sources of revenue.

26. Documents sufficient to show, from January 1, 2025, through the present, the balance of each cash, deposit, investment, reserve, sustainability fund, endowment, or other account or fund maintained by or available to the Kennedy Center; all restrictions or limitations on the use of each such account or fund; and all transfers into or out of such accounts or funds.

27. The January 21, 2025, Finance Committee Presentation (as referenced in the Sept. 15, 2026 Board materials), together with Documents sufficient to show the data underlying the financial information (including historical financial information) reflected therein.

28. The Kennedy Center's general ledger, trial balances, and chart of accounts, in native electronic format, for FY2022 through the present.

29. All cash-flow, liquidity, or treasury forecasts prepared from January 1, 2026, through the present, including weekly or daily cash forecasts and all versions of any forecast projecting that the Kennedy Center would be unable to satisfy payroll, vendor, maintenance, or other obligations.

30. Bank and investment-account statements and reconciliations from January 1, 2025, through the present.

31. Documents sufficient to substantiate the draft resolution presented to the Board in connection with its September 15, 2026, meeting that the Kennedy Center had "exhausted its fiscal resources," would be unable to "support its payroll obligations" or "routine maintenance contracts within a matter of weeks," and faced "certain fiscal collapse within weeks."

32. Documents sufficient to show each messaging platform, account, or application (including any personal account and any application with auto-delete or ephemeral functionality) used by Defendants Floca and Grenell to communicate regarding either of the Board Decisions, and all documents reflecting the steps taken to preserve those communications.

33. All Documents and Communications relating to Delta's presentation to, or discussion with, the Board on September 15, 2026, including all materials presented, all preparation materials, and all communications relating to arranging that presentation.

34. All Documents and Communications relating to the September 4 Incident, including incident reports, photographs, video, engineering or safety assessments, work orders, insurance notices, and all communications regarding the September 4 Incident, together with all inspection, maintenance, and repair records for the affected area of the Grand Foyer.

35. All Documents and Communications reflecting any determination or opinion, by Delta or by any officer or employee of the Kennedy Center, that the Main Building is unsafe for continued occupancy, including all documents reflecting when each such determination or opinion was formed and its basis.

36. All Documents and Communications supporting the statements in the September 15, 2026 resolution concerning continued programming at the REACH, continued support for the National Symphony Orchestra at offsite venues, presentation of the Kennedy Center Honors and the Mark Twain Prize offsite, and temporary relocation of the Memorial to President John F.

Kennedy to the REACH, including all venue agreements, cost estimates, feasibility analyses, and plans for the relocation of the Memorial and for public access to it.

37. All Documents and Communications relating to Demolition or to construction of any new structure on the Kennedy Center campus, including feasibility studies, drawings, renderings, schedules, scopes of work, and cost estimates.

38. All Documents and Communications relating to the Demolition Statements, including any placard, briefing paper, memorandum, or talking points referring to demolition of the Kennedy Center, and all documents relating to their preparation or transmittal.

39. All Documents and Communications relating to the Naming Condition, including any statement reflecting that renovation, construction, or funding will or may not proceed unless a name is placed on the Kennedy Center's exterior or other recognition is extended to Chairman Trump.

40. All Documents and Communications relating to the decision to implement the September 16 Closure, including documents reflecting who made it, when, the source of that person's authority, and any Board approval or notification.

41. All Documents and Communications relating to the procurement, specification, ordering, delivery, preparation, and installation of the fencing or barricades installed at the Main Building in September 2026.

42. All Documents and Communications relating to the investigation of the alarm described in ECF No. 86-1 ¶ 9, and all documents relating to any communication or announcement to the public or to Kennedy Center personnel on September 15 or 16, 2026, stating that the Main Building was closed.

43. All Documents and Communications relating to the Walter P Moore roof terrace canopy assessment and the preliminary ceiling-plaster analysis described in ECF No. 86-1 ¶¶ 4–5, including all drafts, transmittal communications, and documents sufficient to show when each was provided to any officer or trustee.

44. All Documents and Communications relating to any work performed, scheduled, or contracted for in the Main Building on or after September 15, 2026, that involves removal or alteration of structural elements, façade elements, or public means of ingress or egress.

45. All agendas, notices, minutes, transcripts, recordings, notes, chat logs, and vote tallies from the Board's August 13, 2026, and September 15, 2026, meetings, including notes taken by any staff member.

46. All drafts of each resolution constituting the Board Decisions, and all communications relating to the drafting or revision thereof.

47. All Documents and Communications relating to the $17 million which according to the Chairman's September 15, 2026, Truth Social post were "raised by President Trump" and have "been put into the Kennedy Center account."

## INTERROGATORIES

1. Identify each person who participated in selecting, retaining, or defining the scope of work for Delta and/or in providing input to Delta on the scope or output of the engagement in any form, and state the date and nature of each person's participation.

2. Describe each instruction, assumption, constraint, or directive given to Delta by any person acting for the Kennedy Center, the Board, or the Chairman, including whether Delta was asked to evaluate any Scenario other than full closure of the Main Building, and identify the person who gave each instruction.

3. Identify each person who prepared or was involved in preparing the revenue, expense, and cost figures presented to the Board at the August and September Board Meetings.

4. Identify each Document related to the Closure, the Renewal Project or Mr. Floca's recommendation to close the Center during renovations that were provided to or shared with one or more, but fewer than all, the Trustees, and state the date and method of transmittal.

5. Identify each person who has participated in any Communication concerning whether to withhold or delay the start of renovation of the Kennedy Center (including as referenced in ECF No. 78 and 85) or otherwise alter the plan(s) with respect to the Center's future, if the Chairman's name is not affixed to the façade or grounds of the Center or if any other condition related to "recognition" of Chairman or his Administration is not met, and the substance of such communication.

6. Identify each person who has participated in any consideration, planning, or approval of Demolition or the construction of a new structure on the Kennedy Center campus (including but not limited to an amphitheater); state whether any Defendant currently contemplates Demolition or of construction of a new structure on the Kennedy Center campus and, if so, its

scope and status; and identify each communication with the Chairman or any government official concerning Demolition or the Naming Condition.

7. Identify each person with professional expertise in performing-arts management who was consulted by the Kennedy Center, the Board, or Delta on a matter related to either of the Board Decisions, and for each state the subject of the consultation and the nature of that person's performing-arts management professional experience.

8. Describe each instruction given during the Interim Period, by any officer or employee of the Kennedy Center, to any other Kennedy Center officer or employee, concerning whether to book, schedule, or contract for performances or events occurring after July 6, 2026, and identify the person who gave it.

9. Identify each employee whose employment ended, was not renewed, or was materially altered between May 29, 2029, and September 16, 2026, and for each state the date and reason for that action.

10. Identify each Scenario or recommendation that was prepared or evaluated but not presented to the full Board, and state why it was not presented.

11. Describe each analysis, whether by the Kennedy Center, JLL, Delta, or any other person, of the deadline by which the Appropriated Funds must be obligated or expended, and for each state whether and when it was communicated to the Board.

12. Describe the Audit and Finance Committee's consideration of the Closure on or after May 29, 2026, including the options it considered, the materials it reviewed, its members in attendance, and any recommendation it made.

13. Identify each person who drafted, reviewed, or approved the Board presentations or the resolutions provided to the Board in connection with the Board Decisions.

14. Identify each performance, engagement, residency, or rental in the Main Building that was declined, deferred, canceled, left unbooked, or not renewed during the Interim Period, and for each state the date, identify the decisionmaker, and state the reason given.

15. Describe the reason or reasons that Chief Financial Officer Donna Arduin ceased to be employed by the Kennedy Center.

16. Identify each contract, purchase order, or commitment that was canceled or not renewed during the Interim Period in connection with the Closure, and for each identify who authorized the decision and state the reason for it.

17. Describe all steps taken during the Interim Period to determine whether the Main Building could remain open during the Renewal Project, including any analysis of phased or partial renovation, and identify each Document reflecting that work.

18. State what Kennedy Center personnel communicated during the Interim Period to Kennedy Center personnel, performers, vendors, or donors regarding the Main Building's operating status after July 6, 2026, and identify the person who authorized each such communication.

19. Describe the September 4 Incident, including its cause, each assessment or inspection performed in response to it, each person who evaluated it, and each communication regarding it with any trustee or with the Chairman.

20. State when, and on what basis Walter P Moore or any officer, employee, or representative of the Kennedy Center concluded that the Main Building is unsafe for continued occupancy, identify each person who reached that conclusion, and identify each Document reflecting that conclusion.

21. Identify the person(s) who decided to implement the September 16 Closure, state the date and time of that decision and the source of the decisionmaker's authority, identify each person consulted, state whether any trustee was informed before implementation, and identify the criteria governing reopening.

22. Identify the precise amount raised, the dates the funding was secured, the date funds were transmitted into accounts controlled by the Kennedy Center, and the source or sources of the $17 million, which according to the Chairman's September 15, 2026, Truth Social post were "raised by President Trump" and have "been put into the Kennedy Center account."

23. Identify each person who provided factual information used in, or otherwise substantively assisted in preparing, Your answers to these Interrogatories, and identify the Interrogatory or Interrogatories as to which each person provided information or assistance.

## REQUESTS FOR ADMISSION

1. Admit that the Kennedy Center first engaged Delta on or after July 15, 2026.

2. Admit that no trustee was provided a copy of the Delta Report, in draft or final form, before the Board voted on August 13, 2026.

3. Admit that Joyce Beatty was not provided with a copy of the Delta Report, in draft or final form, before the Board vote on August 13, 2026.

4. Admit that the Kennedy Center did not transmit the Comparative Cost Assessment Workbook to any trustee before the Board voted on August 13, 2026.

5. Admit that the Kennedy Center did not transmit the FY27 Budget Scenarios to any trustee before the Board voted on August 13, 2026.

6. Admit that Delta did not perform physical testing, code inspection, or an engineering condition assessment of the Main Building.

7. Admit that Delta did not conclude that renovation of the Main Building while it remains open in whole or in part is infeasible.

8. Admit that no person with professional expertise in performing-arts management advised the Board in connection with either of the Board Decisions.

9. Admit that no Document presented to the Board in connection with the August 13, 2026, and September 15, 2026, votes quantified, or attempted to estimate, the effect of the Closure on the Kennedy Center's programming, performers, audiences, or donors.

10. Admit that the FY27 Budget Scenarios contain no scenario under which the Main Building remains open.

11. Admit that JLL did not develop an Integrated Project Schedule for a scenario where the Center remains open.

12. Admit that no Document presented to the Board before the August 13, 2026, and September 15, 2026, votes stated that the Appropriated Funds need only be obligated, rather than expended, by September 30, 2029.

13. Admit that no analysis of whether a phased or partial renovation could obligate the Appropriated Funds by September 30, 2029, was presented to the Board before the August 13, 2026, and September 15, 2026, votes.

14. Admit that the financial projections presented to the Board in connection with either of the Board Decisions did not separately account for any effect of the renaming of the Kennedy Center on revenue, attendance, or donations.

15. Admit that the Kennedy Center has not revised its estimated duration for the Renewal Project since August 13, 2026.

16. Admit that during the Interim Period the Kennedy Center did not book any public performance to take place in the Main Building after July 6, 2026.

17. Admit that during the Interim Period, the Kennedy Center notified one or more employees that their employment would end or change in connection with the Closure.

18. Admit that on or after August 13, 2026, the Kennedy Center notified one or more employees that their employment would end or change in connection with the Closure.

19. Admit that during the Interim Period, the Kennedy Center informed one or more performers or vendors that the Main Building would not be available after July 6, 2026.

20. Admit that none of the Engineering Reports recommend closing the Main Building to the public in its entirety.

21. Admit that the Board was not provided a revised construction schedule or a revised cost estimate reflecting engineering findings received after August 13, 2026, before voting on September 15, 2026.

22. Admit that before September 15, 2026, no trustee met with the principal of Delta concerning Delta's recommendation that the Main Building close for renovations.

23. Admit that no written analysis of the cost or feasibility of presenting the Kennedy Center Honors or the Mark Twain Prize at an offsite venue was provided to the Board before the September 15, 2026, vote.

24. Admit that the Walter P Moore assessment described in ECF No. 86-1 ¶ 4 was completed in July 2026.

25. Admit that the Walter P Moore assessment described in ECF No. 86-1 ¶ 4 was not provided to the Board in advance of the August 13, 2026, vote.

26. Admit that before September 16, 2026, the Kennedy Center had restricted public access to the Grand Foyer.

27. Admit that before September 16, 2026, the Kennedy Center had restricted public access to areas beneath the outdoor soffits.

28. Admit that on September 15, 2026, the Chairman stated publicly that "the closing" of the Center "will take place immediately, however, the Renovation and Reconstruction . . . cannot begin until such time as the D.C. Circuit rules on the Board's approved name."

29. Admit that on September 15, 2026, the Chairman stated publicly that, if the D.C. Circuit's ruling concerning the Board's approved name is adverse and is not overturned by the Supreme Court, "the Reconstruction and the Renovation of The Kennedy Center will not take place."

30. Admit that, as of September 15, 2026, the Chairman's statement that renovation and reconstruction "cannot begin" until the D.C. Circuit rules accurately described the Kennedy Center's plan concerning when renovation and reconstruction would begin.

31. Admit that if the Chairman directs Mr. Floca not to commence renovation or reconstruction of the Kennedy Center, Mr. Floca will comply with that direction.

32. Admit that Kennedy Center personnel will not commence or complete renovation or reconstruction of the Kennedy Center contrary to the Chairman's direction.

33. Admit that the Kennedy Center will remain closed to the public for a period during which no renovation or reconstruction is being performed because litigation concerning the Board's approved name remains pending.

34. Admit that the Kennedy Center will remain closed to the public for a period during which no renovation or reconstruction is being performed because the Chairman's name has not been returned to the Kennedy Center.

35. Admit that Kennedy Center personnel prepared the proposed Board resolution at ECF No. 75-2.

36. Admit that, when the proposed resolution appearing at ECF No. 75-2 was prepared, Kennedy Center personnel who prepared the resolution contemplated that the Chairman would be involved in overseeing and/or managing the renovation of the Kennedy Center's main building.

37. Admit that, when the proposed resolution at ECF No. 75-2 was prepared, Kennedy Center personnel who prepared the resolution believed that, absent "appropriate recognition" of the Chairman, it was unlikely that Trump would provide "fundamental oversight of the renovation of the main building."

38. Admit that, when the proposed resolution at ECF No. 75-2 was prepared, Kennedy Center personnel who prepared the resolution believed that, absent "appropriate recognition" of the Chairman, it was unlikely that the Chairman would "lead the fiscal rescue of the Center."

39. Admit that, when the proposed resolution at ECF No. 75-2 was prepared, Kennedy Center personnel believed the Center would be unable to support its payroll obligations or routine maintenance contracts "within a matter of weeks."

40. Admit that the proposed resolution at ECF No. 75-2 was distributed to Board members on or about September 12, 2026, contemporaneously with a proposed resolution related to closure of the Center.

41. Admit that the distribution of the proposed resolution at ECF No. 75-2 was the first time the Board, as a whole, was informed that the Center was at risk of financial collapse before the end of the fiscal year.

42. Admit that the Chairman was informed of the Center's financial condition during one or more conversations with Center personnel about potential closure of the Center, prior to his announcement about the Center's closure on February 1, 2026.

43. Admit that, before the Chairman's February 1, 2026, announcement, Kennedy Center personnel informed the Chairman that the Center was experiencing financial difficulties.

44. Admit that, before the Chairman's February 1, 2026, announcement, the Chairman was informed that the Center's financial condition could require it to cease or substantially curtail operations.

45. Admit that concerns about the Center's financial condition were among the matters considered by personnel in deciding whether to recommend closure of the Center for two years during renovation.

46. Admit that concerns about the Center's financial condition were discussed with the Chairman in connection with the possibility of closing the Center during renovations.

47. Admit that on September 16, 2026, the Chairman stated publicly that if his Administration does not receive recognition for its involvement with the Kennedy Center, the Center "will end up being ripped down."

48. Admit that the Chairman's statement that the Center would "end up being ripped down" was a reference to demolition of the Kennedy Center's main building.

49. Admit that the photograph attached to Plaintiff's Supplemental Authority at ECF No. 85 accurately depicts the Chairman viewing a placard bearing the words "Kennedy Center DEMOLISHED."

50. Admit that the placard bearing the words "Kennedy Center DEMOLISHED," depicted in the photograph attached to ECF No. 85, was provided to the Chairman by an officer, employee, or agent of the United States.

51. Admit that, before September 16, 2026, the Chairman discussed the possible demolition of the Kennedy Center's main building with at least one officer, employee, or trustee of the Kennedy Center.

52. Admit that the Chairman has stated to one or more Kennedy Center officers, employees, or trustees that he will not provide support for the renovation of the Kennedy Center if his name is not placed on the Center.

53. Admit that the Chairman communicated to one or more Kennedy Center officers, employees, or trustees that the renovation approved on August 13, 2026, was contingent upon his receiving the recognition he seeks for his involvement with the Center.

54. Admit that one or more of the Defendants have discussed the prospect of constructing an outdoor amphitheater on the site of the Kennedy Center's main building.

55. Admit that Defendants' statement in ECF No. 68 that the Kennedy Center may be "required to be taken down" was based, in whole or in part, on communications with the Chairman.

56. Admit that the Kennedy Center experienced a decrease in total revenue from sources other than congressional appropriations after the Chairman's name was added to the Kennedy Center.

57. Admit that the Kennedy Center experienced a decrease in ticket sales after the Chairman's name was added to the Kennedy Center.

58. Admit that the Kennedy Center experienced a decrease in contributed revenue after the Chairman's name was added to the Kennedy Center.

Dated: September 23, 2026

/s/ *Kyle R. Freeny*
KYLE R. FREENY
(D.C. Bar No. 1684764)
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)

WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
kfreeny@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID OGDEN
(D.C. Bar No. 375951)

DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*

## CERTIFICATE OF SERVICE

I, Kyle R. Freeny, hereby certify that on September 23, 2026, I served the foregoing on Defendants' counsel via email.

*/s/ Kyle R. Freeny*
Kyle R. Freeny

*Counsel for Plaintiff*