**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOYCE BEATTY,<br><br>*Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | No. 25 Civ. 4480 (CRC) |

**SUPPLEMENTAL MEMORANDUM REGARDING MOTION TO COMPEL**

On October 5, 2026, Plaintiff filed a motion to compel written discovery which Defendants improperly withheld based on a blanket assertion of potential executive privilege. ECF No. 96. Prior to that motion's filing, Defendants had indicated that they would assert executive privilege with respect to testimony provided by Defendant Matthew Floca in upcoming depositions. In her motion, Plaintiff noted that she would supplement her request should Defendants direct Mr. Floca not to answer questions based on executive privilege. *Id*. at 11. Because Defendants have now done so, Plaintiff submits this supplemental memorandum to update the Court and to respectfully request the Court resolve the materially identical privilege issues that have now arisen in Mr. Floca's testimony.[1]

On October 6, 2026, the parties deposed Mr. Floca in his personal capacity. In his prior testimony before the Court, Mr. Floca had indicated that he routinely speaks with President Trump.

[1] Excerpts of the transcript of Mr. Floca's deposition in his personal capacity are attached as Exhibit A and cited herein as "Floca Tr." Excerpts of the transcript of Mr. Floca's deposition in his capacity as a Rule 30(b)(6) witness are attached as Exhibit B and are cited herein as "Center 30(b)(6) Tr."

In his October 6 deposition, Mr. Floca additionally indicated that he now frequently speaks with Commerce Secretary Howard Lutnick. Floca Tr. 36. Defendants asserted executive privilege, however, when Plaintiff sought to probe the precise role that Mr. Lutnick plays at the Kennedy Center. Floca Tr. 34.[2]

Defendants then asserted executive privilege numerous additional times, on highly pertinent topics, such as:

- Whether Mr. Floca had any communications with the Chairman about the 2-year timeline for closure—as opposed to some other interval of closure. The discovery taken to date shows that the 2-year timeline for closure was a fixed assumption the Defendants' consultants were provided as part of their scope of work. That timetable was not meaningfully analyzed, originated from Chairman Trump's February 1, 2026 social media post, *see infra*, appears tailor-made to allow the Chairman to reopen the Center shortly before leaving his separate role as President, bears on the prudence of the decision and the equities, and would inform the potential avenues toward resolving this case. Floca Tr. 161-162.

- Whether Mr. Lutnick conveyed information from the Chairman directly to Delta Consulting Group. Delta is ostensibly acting as an independent consultant but had at least one in-person meeting with Mr. Lutnick and Floca to discuss their upcoming presentation to the Board on August 13. Floca Tr. 194-195.

- Whether Mr. Floca spoke with the Chairman, at any point this year, about the Center's cash position. As the Court noted at the discovery conference, the current state of the Center's finances and its relationship to closure has become an increasingly important issue with respect to the merits and the equities. Floca Tr. 273-275.

- Whether Mr. Floca spoke with the Chairman about the fiscal harms caused by renaming—harm that the Center itself identified and presented to the Audit & Finance Committee in June 2026, but did not share with the full Board. This is a topic which directly relates to the Center's financial position, the motivation for closure, and the equities. Floca Tr. 274.

- Whether Mr. Floca spoke with the Chairman about the decline in artists, patrons, and donors, a topic which likewise directly relates to the cash position, closure, and the equities and which the Center had discussed with the Audit & Finance Committee but not the full Board. Floca Tr. 275.

- Whether Mr. Floca spoke with the Chairman about how to proceed following the May 29 order, and whether the Chairman provided input or instructions regarding how to proceed. The input and instructions provided by the Kennedy Center's highest officer directly bear

[2] Defendants characterized their assertions as "protective." Floca Tr. 34-35, 147-148, 163-164.

on the prudence of the decision-making and whether the process was predetermined to produce a preferred result. *Id.*

- Whether Mr. Floca talked to the Chairman about whether the Chairman would withhold conducting renovations absent his name being placed on the building. This topic directly bears on the prudence of the closure and the equities. Floca Tr. 275-276.

- Whether Mr. Floca spoke with the Chairman regarding potential demolition. This topic directly bears on the merits and the equities. Floca Tr. 276.

- Whether Mr. Floca spoke with the Chairman regarding the decision to close the Center on September 16. This topic directly bears on whether the Center's alleged safety concerns are a pretext to effectuate a closure by another means. *Id.*

On October 7, 2026, the parties also conducted a deposition of Mr. Floca in his capacity as the Center's designee under Federal Rule of Civil Procedure 30(b)(6). Defendants again repeatedly instructed Mr. Floca not to answer questions based on executive privilege. *See, e.g.*, Center 30(b)(6) Tr. 95-96 (asserting executive privilege over whether anyone at the Kennedy Center discussed with Mr. Lutnick receipt of donations from the Trump Kennedy Center for the Performing Arts Foundation); 206, 301 (asserting executive privilege over whether Chairman Trump told anyone at the Kennedy Center that he may not oversee the renovation of the main building if he was not recognized); 215-216 (asserting executive privilege over whether Chairman Trump or Mr. Lutnick discussed with anyone at the Kennedy Center whether the renovations would not happen unless the Center was renamed); 235 (asserting executive privilege over whether Mr. Lutnick encouraged Kennedy Center management to send the Board materials from Delta Consulting Group as quickly as possible so that construction could be completed during Trump's term); 297-298 (asserting executive privilege over whether Chairman Trump provided any input used in Delta Consulting Group's analysis presented to the Board on August 13, 2026); 299 (asserting executive privilege over whether anyone at the Kennedy Center spoke with Chairman Trump regarding the Kennedy Center's cash position); 299 (asserting executive privilege over whether anyone at the Kennedy Center spoke with Chairman Trump regarding the impact of the

Center's renaming on revenue); 299-301 (asserting executive privilege over whether Chairman Trump instructed anyone or provided any input on how to proceed following the Court's May 29, 2026 order); 301 (asserting executive privilege over whether Chairman Trump spoke with anyone at the Kennedy Center regarding the September 16 decision to close the main building).

For the reasons outlined in the motion to compel, these blanket assertions of executive privilege are both procedurally and substantively improper, and the Court should order relief with respect to the depositions in addition to relief with respect to written discovery.

Finally, Plaintiff separately apprises the Court that—in Mr. Floca's depositions—Defendants took an improperly cramped view of the Court's discovery order and principles of relevancy, which directly bear on the pending discovery disputes before the Court. For example, an important fact to plumb is why Defendants are insistent on a two-year closure—as opposed to a closure of a shorter or longer duration, or no closure at all. The two consultants whose materials were provided to the Board, JLL and Delta, both were instructed by Defendants to assume a period of closure of the Main Building for two years rather than to evaluate the duration of closure that might be warranted.

In the October 6 deposition, Defendants asked Mr. Floca to explain who decided on this two-year timeline, which is a key fact undergirding the Board's decisions on August 13 and September 15. Mr. Floca stated that the duration of the two-year shutdown was decided by Chairman Donald Trump in his February 1, 2026 Truth Social Announcement. But when Plaintiff sought to plumb the circumstances surrounding that decision, which still motivates the Board's action, Defendants objected that the questions were outside of the scope of discovery, and counsel instructed the witness not to answer. Floca Tr. 74-75, 78-82. Defendants have repeatedly articulated the view that any actions or equities that predated the Court's May 29, 2026 decision

are not proper subjects of discovery, because, in their view, the August 13 Board vote somehow wiped the slate clean. Plaintiff has already explained why this cramped view of relevance is inconsistent with trust law and basic principles of relevance under Rule 26(b)(1). *See* ECF No. 95 ("Defendants repeatedly articulated an extremely narrow view of relevance—including, at times, the position that information not presented to the Board (or not related to finances—since this has been a focus of the Court) falls outside the permissible scope of discovery."). The Board's subsequent decisions did not wipe the slate clean; they incorporated and perpetuated the central premise of Chairman Trump's February 1 decision. But now that it is clear that the duration of the Center's proposed closure was decided by Chairman Trump on February 1, 2026, and never revisited by the Center thereafter, there is no plausible basis to draw the temporal restriction on relevance that Defendants have attempted to impose.

Defendants' persistence in trying to obscure relevant—and indeed, core—discovery is untenable. Defendants hired consultants and told them the two-year period was a fixed window for construction. If the basis for the fixed variable predated the May 29 decision, but underlies Defendants' most recent decisions, it is obviously relevant and is an appropriate topic of discovery. This example, moreover, is just one illustration of the problem. Time and again, Defendants have taken an impossibly narrow understanding of relevance and have refused to provide discovery on that basis. Defendants' cramped view of relevance underscores the need for this Court's relief.

Dated: October 8, 2026

Respectfully submitted,

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
KYLE R. FREENY
(D.C. Bar No. 1684764)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)
ROSA L. BAUM
(D.C. Bar No. 90032839)

WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID W. OGDEN
(D.C. Bar No. 375951)

DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Counsel for Plaintiff Joyce Beatty*