# Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x

JOYCE BEATTY, :

Plaintiff, :

v. : Case No.

DONALD J. TRUMP, et al., : 25 Civ 4480 (CRC)

Defendants. :

- - - - - - - - - - - - - - - - x

Wednesday, October 7, 2026
Washington, D.C.

Deposition of:

MATT FLOCA 30(b)(6),

called for oral examination by counsel for the Plaintiff, pursuant to notice, at the law offices of Washington Litigation Group, 1717 K Street, Northwest, Suite 1120, Washington, D.C. 20006, before Christina S. Hotsko, RPR, CRR, CA CSR, of Lexitas, a Notary Public in and for the District of Columbia, beginning at 9:45 a.m., when were present on behalf of the respective parties:

A P P E A R A N C E S

On behalf of Plaintiff:
KYLE R. FREENY ESQUIRE
ALEXANDER KRISTOFCAK, ESQUIRE
ROSA BAUM, ESQUIRE
Washington Litigation Group
1717 K Street, Northwest, Suite 1120
Washington, D.C. 20006
(202) 521-8750

On behalf of Defendants:
WILLIAM JANKOWSKI, EQUIRE
CHRISTOPHER M. LYNCH, ESQUIRE
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, Northwest
Washington, D.C. 20530-0001
(202) 514-2000

Also Present:
Elliot Berke, Kennedy Center General Counsel
Bridget Kennedy-Bailey, Washington Legal Group

director, which also happens to be you.

And so who did -- if you want me to phrase it this way: Who did executive director Matt Floca express concerns to about any conditions being placed on foundation donations.

A. It was mainly Donna and myself --

Q. Okay. But did you --

A. -- having those conversations.

Q. Okay. So those were conversations between the two of you?

A. Yes.

Q. Did you express concerns to Secretary Lutnick about -- about any conditions that would be placed on donations received by the Center from the foundation?

MR. JANKOWSKI: Object to the extent that that could be construed as advising the president or his advisors on the president's behalf. On executive privilege grounds, I'll instruct the witness not to answer.

But if you can answer beyond that, feel free.

THE WITNESS: I never expressed any concerns to Secretary Lutnick about the restricted giving or conditional giving from the foundation to the Center. These are mainly internal conversations about what needs to happen to -- to prolong our operations within the expect- -- or within the conditions that we find ourselves in. And if those conditions change and, you know, down the road we need to do something differently...

BY MS. FREENY:

Q. Okay. Did you discuss with Secretary Lutnick the prospect of the Center's receipt of donations from the foundation as a source of funds for Center operations?

MR. JANKOWSKI: Same objection on executive privilege. To the extent any concerns or advice were communicated with the understanding they'd be communicated to the president, we would invoke the executive privilege.

MS. FREENY: And here, just to make the

record -- like, just to make it clear, I don't understand what is being withheld from me. You obviously were challenging the invocation of executive privilege here, so I just need help understanding what information you're directing him not to answer because it's conditional.

MR. JANKOWSKI: Well, maybe Mr. Floca can explain further.

I'll be candid, I don't have specific details as to what was discussed and to say that we're withholding this --

MS. FREENY: Okay.

MR. JANKOWSKI: -- specific statement and we're not withholding --

MS. FREENY: Would it be easier if we put a pin in that question and returned to it after you had time to consult with him just so that we can -- you can figure out what he might say and whether it's going to be withheld?

MR. JANKOWSKI: Sure. Could we maybe ask on the record whether he believes there is any information that will be withheld on that basis?

resolution was to be responsive to the board and give them options about different naming and recognition possibilities. And that's a -- that seems like a, you know, prudent, good decision to make and give the board.

Again, these things in fundraising and development and the Center's FY '27 financials will be discussed --

Q. Okay.

A. -- with the board soon.

Q. And so I take it, then, also, since the Center sent this, the Center also thought it was a good idea to let the board know that, without appropriate recognition for President Trump, it's unlikely that President Trump will provide the fundamental oversight of the renovation of the main building; is that right?

MR. JANKOWSKI: Objection. Vague and argumentative.

THE WITNESS: As it's written there, recognition -- appropriate recognition is -- it is unlikely.

BY MS. FREENY:

Q. Okay. And at the time that the Center circulated this resolution to the board, it believed that that was true, that it was unlikely the President would provide that support; is that right?

MR. JANKOWSKI: Objection. Vague. And misstates.

THE WITNESS: It is an unlikely and uncertain thing. Yes.

BY MS. FREENY:

Q. Okay. On what basis did the Center reach that conclusion?

A. I believe the president has said that publicly multiple times.

Q. Has the president said that to anyone at the Center?

MR. JANKOWSKI: Objection. Executive privilege. I'll instruct the witness not to answer.

MS. FREENY: And I would confirm, Counsel, you're invoking what I call the

presidential communications privilege. You can give it whatever appellation you think is more technical. I just want to confirm the nature of the privilege that you are either invoking, or at least asserting.

MR. JANKOWSKI: Yes. The executive privilege, the presidential communications component of the executive privilege.

MS. FREENY: And just to be clear, you are not going to let him tell me whether President Trump told anyone at the Center that he would not -- or it would not be likely that he would provide oversight for the renovation if he did not receive appropriate recognition.

MR. JANKOWSKI: I guess I should be clear. To the extent that any communications were private and confidential, yes.

MS. FREENY: Okay.

MR. JANKOWSKI: But other than public statements.

MS. FREENY: Okay. And so for example, if the president had called someone at the Center

and said, I am not going to support renovation unless I get recognition, you would not permit him to answer that question.

MR. JANKOWSKI: Correct. Again, assuming -- so, like, I think during a board meeting is different than an individual phone conversation or --

MS. FREENY: Okay.

MR. JANKOWSKI: -- something along those lines.

MS. FREENY: And are you asserting -- are you making that assertion at the direction of the president or his representatives?

MR. JANKOWSKI: That calls for attorney-client privileged information. We're doing so pursuant to the Justice Department's procedures.

MS. FREENY: Okay.

BY MS. FREENY:

Q. And then just for the record, Mr. Floca, are you not going to answer my question at the direction of your counsel?

A. Correct.

Q. Okay. If President Trump directed the board not to proceed with renovation until he got recognition that he was seeking -- let me just start that again because I might have made a mistake.

If the -- if Chairman Trump directed the Center or Center management not to proceed with renovation until he received certain recognition by the Center, would the Center follow that instruction?

MR. JANKOWSKI: Objection. Vague and speculative.

THE WITNESS: An instruction like that would need to come by way of resolution. That is counter to the resolution that was passed in the previous board meeting.

BY MS. FREENY:

Q. Which resolution? In -- the September resolution?

A. Yes.

Q. Okay. And so if Chairman Trump made that

Q. Uh-huh.
A. Resolutions or committee meeting guidance, that's the direction that the Center takes.
Q. Has anyone at the Center had any discussions with President Trump about his public statement that the reconstruction and renovation of the Kennedy Center will not take place unless certain things happen in the legal proceedings around renaming?
MR. JANKOWSKI: Object on executive privilege grounds and instruct the witness not to answer.
MS. FREENY: And I assume that's the same presidential communications aspect.
MR. JANKOWSKI: Yes.
MS. FREENY: And I assume that the answer will be the same when I ask whether you have -- whether you're making an assertion at the direction of the president or his designee.
MR. JANKOWSKI: Same answer.

BY MS. FREENY:

Q. Okay. And sir, you're not going to answer that question at the direction of your counsel?

A. Correct.

Q. All right. I'm going to ask the same question just for the record.

Did you have any discussions with Secretary Lutnick about President Trump's indication that -- whether in this tweet or otherwise -- that the reconstruction and renovation of the Center would or should not take place unless certain things happened in the renaming legal proceedings?

MR. JANKOWSKI: Same objection on executive privilege grounds. Instruct the witness not to answer.

MS. FREENY: Okay. And I assume all the same provisos apply.

MR. JANKOWSKI: Yes.

MS. FREENY: You're not going to fight me on that? Okay.

BY MS. FREENY:
Q. And I assume, sir, you're not going to answer the question at the instruction of your counsel.
A. Yes.
Q. All right. Next I would like to turn you to tab 21. This is going to be a new topic, and this is related to topic C in our notice, board decisions.
MR. JANKOWSKI: Exhibit 10, we said?
MS. BAUM: Yes. It's Exhibit 10.
MS. FREENY: So tab 21 will be marked as Exhibit 10.
(Floca (30(b)(6) Deposition Exhibit 10 marked for identification and attached to the transcript.)
BY MS. FREENY:
Q. If you take a look, you can see that this is a filing in the Beatty versus Trump litigation, and it's titled, "Joint Status Report."
Do you see that?

the time of the August 13th presentation about, I guess, the status of such a report?
A. It needed to be compiled, but it was mainly -- the content and the message and the research was already complete.
Q. Okay. Was the board made aware that Delta had been retained approximately three weeks earlier?
A. No.
Q. Okay. Was the board informed that the timeline for the completion of Delta's work that ultimately materialized was shorter than the original timeline contemplated by the statement of work?
A. No.
Q. Who at the Kennedy Center -- no.
Did Secretary Lutnick play a role in deciding the timeline for the board meeting?
A. Not outside of -- of providing an urgency to inform the board more.
Q. Okay. But not in terms of, for example, it needs to be August 6th or it needs to be

August 13th?

A. There's likely routine scheduling of, you know -- there's scheduling, it can be this date or this date, but his -- his guidance has always been you need to do this as soon as you're ready.

Q. And did you understand that that encouragement to do this as soon as you're ready was driven at all by President Trump's stated preference that the construction be completed during his term?

MR. JANKOWSKI: Objection on the basis of executive privilege. I instruct the witness not to answer.

MS. FREENY: And I assume all the same provisos apply.

BY MS. FREENY:

Q. And sir, I assume that you're also not going to answer that question at the direction of your counsel.

A. Yes.

Q. Did management have a prep session with Secretary Lutnick before the August 13th board

you're amenable, Will. I just need to make a record of questions that -- because in some cases I have skipped over questions I would otherwise ask just to move things along. These are questions where I anticipate that defendants' counsel is going to raise an executive privilege/presidential communications assertion. And rather than go through the whole process, if we can -- if I can read the first one, we can do it the way that I think -- with sort of a full explication of both sides' positions. And then, afterwards, if we agree, I will read the rest of the questions. And then I will assume, if you don't tell me otherwise, that you would raise the same objections; we would make the same statements unless you tell me otherwise.

Is that fair?

MR. JANKOWSKI: Agreed.

MS. FREENY: Okay.

BY MS. FREENY:

Q. And so one of the questions that I would want to ask is, did Chairman Trump provide any

input that was used in Delta Consulting Group's analysis for the board's August 13th meeting?

MR. JANKOWSKI: Object on executive privilege grounds and instruct the witness not to answer.

MS. FREENY: And that is the presidential communications privilege, or assertion; is that right?

MR. JANKOWSKI: That's correct. Presidential communications component of the executive privilege. Yes.

MS. FREENY: And are you making that assertion at the direction of the president or his representatives?

MR. JANKOWSKI: Decline to answer specifically on the basis of the attorney-client privilege, but represent that we're following the standard procedures of the Department of Justice.

BY MS. FREENY:

Q. And sir, I -- I think, for the record, I'm just going to ask, you would refuse to answer that question at the instruction of your

attorney?
A. Yes.
Q. And for the rest of these, I can also take that you will -- if your attorney instructs you not to answer, you would not answer, correct?
A. Correct.
Q. Okay. So then I'm going to proceed with the additional questions that we would want answers to if there was not an objection and an instruction not to answer.
Did anyone at the Kennedy Center speak with Chairman Trump regarding the Center's cash position?
MR. JANKOWSKI: Objection.
BY MS. FREENY:
Q. Did anyone at the Kennedy Center speak with Chairman Trump regarding the drop in revenue following renaming?
MR. JANKOWSKI: Objection. And -- objection.
BY MS. FREENY:
Q. Did anyone at the Kennedy Center receive

input from the chairman regarding how to proceed following the Court's preliminary injunction order?

MR. JANKOWSKI: Objection. And attorney-client privilege.

MS. FREENY: Help me understand that.

Did anyone at the Kennedy Center receive input from the chairman regarding --

MR. JANKOWSKI: To the extent that the communications were between the president and the general counsel's office or --

MS. FREENY: Ah. Okay. And so if I ask, did anyone other than the general counsel's office receive input from the chairman regarding how to proceed following the court's preliminary injunction, that would be -- you would not assert attorney-client; you would just assert executive privilege?

MR. JANKOWSKI: Correct.

MS. FREENY: Okay.

BY MS. FREENY:

Q. Did Chairman Trump instruct anyone at the

Center on steps to take following the May 29th preliminary injunction?

MR. JANKOWSKI: Objection. And same scoping issue on attorney-client privilege.

BY MS. FREENY:

Q. Did Chairman Trump provide information about -- information or input about whether he would support renovation if he was not recognized in some way by the Kennedy Center?

MR. JANKOWSKI: Objection.

BY MS. FREENY:

Q. Did Chairman Trump speak with anyone about the September 16th decision to shut down the Kennedy Center's main building?

MR. JANKOWSKI: Objection and scope.

MS. FREENY: All right. And I think, with that, I would just put on the record that, again, as with yesterday, I think -- our position is that you would be subject to recall pending the outcome of certain discovery disputes that we have about our access to information. And I understand that your counsel opposes that. And