UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOYCE BEATTY,**<br><br>Plaintiff,<br><br>v.<br><br>**DONALD J. TRUMP *et al.*,**<br><br>Defendants. | Case No. 25-cv-4480 (CRC) |

**ORDER**

On August 13 and again on September 15, 2026, the Board of Trustees of the John F. Kennedy Center for the Performing Arts voted to close the Center's main building for approximately two years to allow for the completion of congressionally funded renovations. The Board's closure plan cannot presently proceed, however, due to the May 2026 preliminary injunction issued by this Court, which blocked implementation of an earlier vote by the Board to close the building. See Beatty v. Trump, 834 F. Supp. 3d 41, 89–103 (D.D.C. 2026). In issuing that injunction, the Court concluded that the Board had likely violated its fiduciary duty by "bas[ing] its decision on an insufficient, one-sided presentation of information and neglected to consider the full range of its statutory obligations and potential adverse consequences of closure on [the Center's] programming and memorial functions." Id. at 53. The Court did not prohibit the Board from reaching a closure decision anew, after prudent and informed consideration of the issue, at least if other parts of the Kennedy Center campus remained open and some performances were held at other venues. Nor did it prevent the Board from commencing renovations while leaving the main building partially open, as was contemplated when the Center sought and obtained the necessary funding from Congress. See id. at 102.

The Board has since moved, following its August and September votes, to lift the preliminary injunction. See Dkt. 89. It has also moved for summary judgment on Plaintiff Joyce Beatty's claim that a two-year closure would violate both the Board's trust duties and the Kennedy Center's governing statute. See id. The Board takes the position that the recent closure decisions are amply supported by materials that were not available to the Board before its initial vote—primarily, a project-development plan prepared by the real estate firm JLL, Inc. and a report prepared by the firm Delta Consulting Group, which purports to analyze the relative costs and benefits of closing the main building during renovations, on one hand, and leaving the building partially open during a phased renovation, on the other.[1] See id. at 23–24, 38.

To enable Representative Beatty to test the evidence the Board has presented in support of its motions and to develop her own evidence related to the merits of the Board's decision and the equities surrounding its request to lift the preliminary injunction, the Court has permitted Plaintiff to take targeted discovery. See Scheduling Order, Dkt. 82. The Court expedited that discovery due to the public's interest in resolving the closure and renovation issues without further delay.

The discovery period began on September 16, 2026, and is scheduled to end today, October 9, 2026. Last week, however, the parties informed chambers of several discovery disputes. Following a remote hearing on October 1, 2026, the Court directed the parties to memorialize their positions in writing. It further invited Plaintiff to file a motion to compel production of materials and information that she claimed Defendants are improperly withholding

---

[1] Meanwhile, the Center's Executive Director has taken the decision to temporarily close the main building due to purported safety concerns stemming from the collapse of part of its ceiling on September 4, 2026. See Defs.' Status Report, Dkt. 91 at 2–3. That emergency closure is not implicated by the Court's preliminary injunction.

on grounds of executive privilege. That information consists of any relevant internal communications that might exist involving President Trump in his capacity as the Chairman of the Kennedy Center Board. The parties have submitted their position statements. See Pl.'s Position Statement, Dkt. 95 ("Position Statement"); Defs.' Resp., Dkt. 97; Pl.'s Reply, Dkt. 98. Representative Beatty has also filed her motion to compel on the executive-privilege issue. See Dkt. 96. The government's response is not yet due.

Having considered the arguments presented at the remote hearing and in the parties' position statements, the Court rules as follows:

***FY 2026 financial documents.*** The biggest bone of contention between the parties appears to be Plaintiff's requests for financial records from FY 2026, which ran from October 2025 through September 2026. (FY 2025 records apparently were produced. See Resp. at 3 n.2.) Plaintiff seeks a large trove of records, including "financial statements (income statements, statements of cash flow, balance sheets), the general ledger, internal financial reporting to management, recent payroll information, and reporting and other information underlying their own conclusion that [the Center is] within weeks of running out of money." Position Statement at 3. The government responds that fulfilling Plaintiff's request would be unduly burdensome under the expedited discovery schedule because the requested data, which resides on a recently updated financial system, is neither "reasonably available" nor "necessarily verified." Resp. at 4–5.

The Court sides mostly with Plaintiff. Documentation of the Center's financial performance over the past year clearly meets the low bar for relevance in discovery. Recent finances presumably played some part in at least some trustees' votes. Shortly before the closure vote at the August 13 meeting, the vice chair told Board members that "costs escalate and money

is lost each day a decision is deferred." See Bd. of Trs. Meeting Mins. (Aug. 13, 2026), ECF No. 68-3 at 10; see also Defs.' Statement of Undisputed Material Facts, Dkt. 89-2 at 19 (stating that Delta "interviewed the Center's finance . . . personnel" to conduct its report). Recent finances also implicate the equities of lifting the current injunction. And while Defendants may be correct that information confirming the Center's financial peril could be used to undercut Plaintiff's opposition to closure, see Resp. at 4 n.3, the Court will not attempt to anticipate Representative Beatty's arguments. They are hers to make, not the Court's. As for burden, the Court highly doubts that the Center has operated without core financial reporting over the past year. Surely the Center has ready access to periodic income statements, balance sheets, cash flow reports, and budget documents that reflect actual financial performance over FY 2026, not just projections. The Center should be able to gather these materials from existing sources without having to query its "updated" financial system for bespoke reports. If that is not the case, standardized reports will do. So, although Plaintiff's exhaustive requests are unduly broad given the expedited timetable, the Court hereby orders Defendants to produce FY 2026 financial statements of the nature noted above sufficient to show the Center's financial performance and condition over FY 2026. Defendants need not produce the Center's full general ledger, payroll reports, or all internal financial management reports. To the extent the produced statements are unaudited or unverified, Defendants may indicate as much.

***Admissions related to Plaintiff's Supplemental Authority.*** Plaintiff insists that the Board has not responded to requests for admissions related to her Notice of Supplemental Authority. See Dkt. 85. That notice relates to news reports depicting a photograph of President Trump on Air Force One appearing to review a document that might suggest the potential "demolition" of the Center. The government represents that it has now responded to Plaintiff's

requests. See Resp. at 7. To the extent any dispute over this issue remains, the Court simply notes that the circumstances surrounding the photograph, and what it may say about any intention to deviate from the renovation plans that have been presented to the Court, are within the scope of the Court's discovery order, as Defendants seem to acknowledge. See id.

***Resolution purportedly withdrawn from consideration at the September 15 Board meeting.*** At the remote hearing, Plaintiff complained that Defendants have not permitted witnesses to answer questions related to a Center-renaming resolution that was slated to be considered by the Board at its September 15 meeting. However, as Plaintiff acknowledges, that resolution was withdrawn. See Hr'g. Tr. (Oct. 1, 2026) at 35:21–23. The Court fails to see the relevance of that withdrawn resolution to the closure votes.

***Generalized concerns about the Board's discovery responses.*** In addition to her objections to the Board's responses on the specific discovery requests noted above, Plaintiff voices a general concern about the Board's purported "systemic" discovery deficiencies. This concern boils down to a disagreement over how the government has interpreted the scope of the Court's discovery order and the care with which it has searched for responsive documents. See Position Statement at 1–2.

As to scope, Plaintiff faults the government for adopting a cramped construction of relevance. By way of example, she contends that the Board has declined to produce, on relevance grounds, plans that showed the feasibility of leaving the Center open during construction but that were concealed from JLL and Delta Consulting. See Position Statement at 5. The government reports that no such plans exist. See Resp. at 7. If that is so, the example is inapposite.

As another example, Plaintiff reports that the Board has refused to produce, also on relevance grounds, any document dated after May 29, 2026 (the date of the Court's preliminary injunction) concerning President Trump's February 1, 2026 announcement that the Center would close for renovations. See Position Statement at 5. On this issue, the Court agrees with the government that information bearing on the reasoning behind the Board's now-enjoined initial decision to close the Center, including President Trump's pre-announcement of the decision, is outside the scope of the Court's discovery order. That said, if non-privileged documents exist showing that the President's February 1 announcement affected Board members' August or September votes, then those documents would be relevant to the Court's inquiry and should be produced.

Plaintiff also suggests that the government lodged a relevance objection to the deposition of a former Kennedy Center employee who was no longer employed when the preliminary injunction issued. See Position Statement at 5–6. But the government indicates that the deposition proceeded nonetheless, so any objection the government may have made appears to have been overtaken by events. See Resp. at 7 n.5.

Plaintiff further states that Defendants have produced "no text messages at all." Position Statement at 1. Nothing in the Court's scheduling order exempts certain media of communication, such as text messages, from discovery. Non-privileged text messages falling within the scope of the discovery order must therefore be produced, absent some other valid objection.

Finally, Plaintiff objects to the Board's purported refusal to respond to requests for admissions concerning the timeline for spending funds that have been appropriated by Congress for the renovations. See Position Statement at 6. The Court is unaware of the particular requests

for admission at issue, and the government's position on this issue is not clear from the Board's response. In any case, the duration of the availability of appropriated funds appears relevant to the Board's selection of the closure alternative. The Board shall therefore provide responses to any requests targeted to that issue.[2]

Apart from these specific examples, the Court cannot respond to Plaintiff's scope concerns in the abstract. The discovery order is reasonably clear as to what materials are on the table. The Court will leave it to the parties to interpret the order in good faith.

As for concerns over the adequacy of the Board's search and production, Plaintiff points to a few responsive and non-privileged documents that she believes exists yet were not produced in discovery. For example, Plaintiff states that Executive Director Floca testified at his deposition that JLL provided a letter to Center management about the feasibility of phased construction. See Reply, Dkt. 98 at 1. According to Plaintiff, that document has not been produced. The government commits to resolving any such instances of non-production on a case-by-case basis. See Resp. at 5. To the extent the non-production of any such documents remains at issue, the Court stands ready to resolve specific disputes.

***Executive Privilege.*** The Court will await completion of the briefing on executive privilege before addressing Plaintiff's objections concerning that issue. See Dkt. 96; Min. Order of Oct. 8, 2026.

***Extension of discovery schedule and bifurcation of briefing on the Board's motion to vacate and motion for summary judgment.*** Plaintiff requests that the discovery period be enlarged slightly to accommodate the resolution of the above disputes. The Court agrees that an

[2] That said, the Court would expect that the appropriation itself would specify how long the funds are available.

extension is warranted. The Court therefore modifies the Scheduling Order to extend the discovery period by two weeks, through October 23, 2026, to allow for responses to discovery requests already made, as consistent with this Order.[3] Both parties seem amenable to bifurcating briefing on the two pending motions. See Position Statement at 7–8 (proposing bifurcation); Resp. at 2 n.1 (not opposing bifurcation). Accordingly, the Court will bifurcate briefing. The parties shall confer and propose a revised briefing schedule by October 13, 2026. The Court will then issue a Revised Scheduling Order.

SO ORDERED.

CHRISTOPHER R. COOPER
United States District Judge

Date: October 9, 2026

[3] Consistent with how the parties have apparently proceeded through discovery, the Court amends paragraph 2 of the September 16, 2026 Scheduling Order to clarify that discovery extends also to the substance, justification, mechanics, and process of the Board's decision at its September 15 meeting—in addition to its decision at the August 13 meeting—to close the main building of the Center to the public to conduct repairs, as well as the surrounding equities of the decision.