**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOYCE BEATTY,<br><br>*Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP *et al.*,<br><br>*Defendants*. | No. 25 Civ. 4480 (CRC) |

**PLAINTIFF'S NOTICE REGARDING PRIVILEGE LOG**

On Friday, October 23, 2026, the last day of the extended discovery period, Defendants served a privilege log listing nine categories of documents, emails, and text-message threads in the possession of the Kennedy Center, which Defendants withheld based on presidential communications privilege. *See* Ex. A ("Log"). Because the lack of an adequate privilege log is one of the issues implicated by Plaintiff's pending motion to compel, Plaintiff submits this notice to ensure the Court is promptly made aware of this latest development. For the reasons discussed below, the last-minute log overwhelmingly reveals that Defendants have indiscriminately claimed executive privilege over highly pertinent communications regarding the management of the Kennedy Center. These communications directly bear on the issues before the Court, and the claim of privilege cannot stand.[1]

The log does not fully satisfy Defendants' procedural obligations. At even a cursory

[1] The log also asserts attorney-client privilege and work product over portions of Log Nos. 4, 6, and 9. Plaintiff will confer with Defendants regarding those assertions and will raise any remaining dispute with the Court in accordance with its procedures. Plaintiff notes, however, that those assertions raise substantial questions. Log No. 9, for example, consists of text messages between two non-lawyers, one of whom—Secretary Lutnick—is not an officer, employee, or trustee of the Kennedy Center. Voluntary disclosure of privileged communications to a third party waives the privilege. *See In re Sealed Case*, 877 F.2d 976, 980–81 (D.C. Cir. 1989).

glance, the log is underinclusive. It covers only documentary communications in which Matthew Floca was involved. The log notably also does not identify any information withheld in response to deposition questions, interrogatories, or requests for admission, as to which Defendants have invoked privilege on a blanket basis. *See* ECF No. 106-1 ¶¶ 7-12; ECF No. 102.

But what the log does contain is deeply revealing. It shows that Chairman Donald Trump has been in near-constant contact with Kennedy Center management directly and through intermediaries, including on the days of the Board's closure votes. Defendants themselves characterize these conversations as involving the "operations" and "management" of the performing arts center—confirming that Trump is acting as the Chairman of the institution in these conversations.[2]

The log specifically identifies nine categories of withheld documents, all dated between April 23 and September 15, 2026, which the Court should immediately compel Defendants to produce:

(1) Log Nos. 1-2: A July 30, 2026 email from Defendant Floca, with an attached "summary document discussing Kennedy Center matters." Floca sent the document to two "advisers at the Department of Commerce," Meghan Danner (2:30 p.m.) and Walker Shippy (2:40 p.m.), and later (3:07 p.m.) to an employee of the Executive Office of the President.

(2) Log No. 3: A June 17, 2026 exchange "discussing distribution of presidential correspondence," described as concerning "the facilitation of correspondence between President and Mr. Floca."

(3) Log No. 4: A seventeen-email thread, running from April to June 2026, about "planning for the Kennedy Center Honors program."[3]

[2] Defendants describe the withheld communications as concerning "Kennedy Center matters" (Log Nos. 1-2), "planning for the Kennedy Center Honors program" (Log No. 4), "Kennedy Center operations" (Log Nos. 5-6), "operations, renovation, Board of Trustee matters" (Log No. 8), and "Kennedy Center Board of Trustees and management matters" (Log No. 9).

[3] Over the summer—after the Court issued its preliminary injunction—Defendants scheduled the Kennedy Center Honors program offsite at the Capital One Arena. This scheduling demonstrates

(4) Log Nos. 5-6: A May 29, 2026 email from Floca—sent the day this Court entered its preliminary injunction—attaching an "executive memorandum on Kennedy Center operations, statutory duties, and litigation risks" **and the Center's "financial outlook."**

(5) Log No. 7: An email "regarding scheduling presidential meeting on July 30, 2026 and White House logistical details."

(6) Log No. 8: **Nineteen text messages** between Floca and Natalie Harp, sent between June 18 and September 15, 2026, "regarding operations, renovation, Board of Trustee matters at Kennedy Center." **Eleven messages were exchanged on September 15, 2026**—the day the Board voted for the third time to close the Center and the day before the Center abruptly closed to the public.

(7) Log No. 9: **A thread of roughly 180 text messages between Floca and Howard Lutnick**, sent between May 30 and September 15, 2026, about "operations, renovation, and other planning related to Kennedy Center Board of Trustees and management matters."

As the entries themselves demonstrate, Defendants are withholding documents regarding Trump's ongoing, direct management of the Kennedy Center, including roughly 180 messages between Floca and Lutnick acting as Trump's go-between. By logging these communications, Defendants have conceded that each is responsive to requests within the scope of the Court's discovery orders. *See* ECF No. 82 at 2; ECF No. 103.

Indeed, the log shows sustained communication between Floca, the Chairman, and the intermediaries across the entire period leading up to the challenged votes. That communication begins the day the Court enjoined the closure, with a memorandum on the Center's "operations, statutory duties, litigation risks, [and] financial outlook" (Log Nos. 5-6). It continues through an in-person meeting with the President on July 30—two weeks before the August 13 vote—which Floca followed the same day with a "summary document" (Log Nos. 1-2, 7). And it includes dozens of messages on and around the days of the August 13 and September 15 votes (Log Nos.

---

that, even after the Court's decision, Defendants always intended to shut down. It is thus imperative for Plaintiff to have access to this information.

8–9).

Defendants themselves describe these communications as intended to "reflect advice from" Trump (Log No. 9) and to reflect Trump's "deliberations" (Log No. 8). That is precisely the input and instruction from the Chairman to the Kennedy Center that Plaintiff seeks to examine. These communications thus bear directly on whether the Board's votes reflected independent judgment or again ratified a predetermined result, and on whether management "orchestrated" the two-year timeline that drove the Delta and JLL analyses. The documents also shed light on Defendants' assessment of the Center's "financial outlook" (Log No. 6), something this Court has specifically said is important for understanding the equities.

Without access to these materials, Plaintiff will lack a complete picture of Defendants' actions. It should not have taken Defendants this long to produce a privilege log, and their delay unfortunately suggests gamesmanship. Plaintiff respectfully submits that, if the Court orders production of these materials immediately, she could swiftly provide the Court with an analysis prior to its resolution of Defendants' lift-stay motion.

Dated: October 25, 2026

Respectfully submitted,

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
KYLE R. FREENY
(D.C. Bar No. 1684764)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)

WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
kfreeny@washingtonlitigationgroup.org
nzelinsky@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID W. OGDEN
(D.C. Bar No. 375951)

DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*