# Exhibit I

SHELLEY MOORE CAPITO, WEST VIRGINIA, *CHAIRMAN*
SHELDON WHITEHOUSE, RHODE ISLAND, *RANKING MEMBER*

KEVIN CRAMER, NORTH DAKOTA
CYNTHIA M. LUMMIS, WYOMING
JOHN R. CURTIS, UTAH
DAN SULLIVAN, ALASKA
PETE RICKETTS, NEBRASKA
ROGER F. WICKER, MISSISSIPPI
JOHN BOOZMAN, ARKANSAS
JON HUSTED, OHIO
DARLINE GRAHAM, SOUTH CAROLINA

BERNARD SANDERS, VERMONT
JEFF MERKLEY, OREGON
EDWARD J. MARKEY, MASSACHUSETTS
MARK KELLY, ARIZONA
ALEX PADILLA, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
LISA BLUNT ROCHESTER, DELAWARE
ANGELA D. ALSOBROOKS, MARYLAND

ADAM TOMLINSON, REPUBLICAN STAFF DIRECTOR
DAN DUDIS, DEMOCRATIC STAFF DIRECTOR

# United States Senate

COMMITTEE ON ENVIRONMENT AND PUBLIC WORKS
WASHINGTON, DC 20510–6175

October 29, 2026

Elliot Berke
General Counsel
John F. Kennedy Center for the Performing Arts
2700 F Street NW
Washington, DC 20566

Dear Mr. Berke:

I write to you in your capacity as General Counsel of the Kennedy Center for the Performing Arts (the "Center") and as the listed "Authorized Person" signing official documents on behalf of the Trump Kennedy Center for the Performing Arts Foundation (the "Foundation"). Documents obtained by Democratic staff of the Senate Committee on Environment and Public Works give reason to believe that lawyers for the Center made representations to the United States Court of Appeals for the District of Columbia Circuit that suggest that Center leadership may have willfully ignored their obligation to engage the Center's Board about a significant change to the Foundation's bylaws. The Trustees of the Center deserve an explanation.

The Foundation is not an entity created by current Center leadership. On February 26, 2025, under previous President Deborah Rutter, the Center incorporated what was then known as The Kennedy Center Foundation; its sole purpose was to serve as a fundraising vehicle for the Center.[1] The creation of the Foundation came after more than a year of scrupulous planning that was reflected in discussions of the entire Center Board, as reflected in prior Board minutes.[2] The Foundation's initial set of directors adopted its bylaws in May 2024 and elected Ms. Rutter to serve as the Foundation's President.[3] On July 10, 2024, Ms. Rutter signed the Foundation's application to the Internal Revenue Service for recognition of tax-exempt status. That application described a single activity: raising money to make grants to the Center. On March 18, 2026, you signed articles of amendment to rename the entity the Trump Kennedy Center for the Performing Arts Foundation. The amendment also rewrote the organization's purpose as supporting "The Donald J. Trump and the John F. Kennedy Center for the Performing Arts," removed all three initial directors without naming replacements, and listed you as the Foundation's beneficial owner. You

---

[1] Articles of Incorporation of The Kennedy Center Foundation, arts. THIRD, SIXTH (filed Feb. 26, 2024).

[2] *See* John F. Kennedy Center for the Performing Arts, Minutes of the Board of Trustees Meetings (Sept. 16, 2022; May 15, 2023; Sept. 18, 2023; Jan. 29, 2024; May 20, 2024).

[3] Kennedy Center Foundation, Board Meeting Draft Minutes (May 13, 2024), App. at 55–56 (recording adoption of the bylaws and approval of the organizational meeting action); Kennedy Center Foundation, Board Meeting Reading Materials (May 13, 2024), App. at 48–49 (resolution electing Deborah F. Rutter as President).

attested, under penalty of law, that the amendment was adopted "without member approval" and that "member approval was not required."[4]

But the Foundation's own governing documents say otherwise. Under what appear to be the only legally adopted bylaws of the Foundation, attached as an appendix to this letter, the Center serves as its sole Voting Member; more specifically, "[a]ny act of the Voting Member is considered a vote of the majority of members of the Kennedy Center Board of Trustees."[5] In other words, a vote of the Center's Board of Trustees—as the Foundation's sole Voting Member—is required for the foundation to effectuate certain enumerated actions. Among other things, the Voting Member alone appoints and removes the Foundation's directors.[6] No one may change the Foundation's name, articles, or bylaws without the Voting Member's prior written approval.[7] The Voting Member also controls the Foundation's gift acceptance policy, major disbursements, and every other significant transaction.[8]

Since at least February 2025, no meeting of the full Board has discussed or voted on any matters related to the Foundation. The Center's Board never approved a new name, new articles, or new bylaws; never removed or appointed any Foundation director; and never adopted a gift acceptance policy. Because the bylaws specifically define an act of the Foundation's Voting Member as" a vote of a majority of members of the Kennedy Center Board of Trustees," only the Board could have approved such changes. The Board has not.

And yet, on June 12, 2026, lawyers for the Center wrote in a briefing to the D.C. Circuit that the Foundation's bylaws explicitly required the Foundation to claw back every dollar it had given the Center if President Trump's name was removed from the building:

> The Bylaws of The Trump Kennedy Center for the Performing Arts Foundation state, unequivocally: "The Corporation may make donations to the Center in support of its educational, artistic, cultural, and performing arts functions; provided, however, that in so doing, the Board of Directors shall condition such donations to the Center upon the name of the Center remaining unchanged as the 'Donald J. Trump and John F. Kennedy Memorial Center for the Performing Arts.' In the event the Center should at any time remove the name of President Donald J. Trump from its filings, marketing, branding, façade, or any other affiliated location, the Corporation shall recover from the Center the total of all gifts, donations, and contributions made to the Center by or on behalf of the Corporation."[9]

---

[4] D.C. Dep't of Licensing & Consumer Prot., Articles of Amendment of Domestic Nonprofit Corporation, The Trump Kennedy Center for the Performing Arts Foundation, Filing No. N00007933596-01, pts. I, VI, IX, XI–XV (filed Mar. 18, 2026).

[5] Bylaws of The Kennedy Center Foundation, art. II, § 1 (approved May 13, 2024); Articles of Incorporation of The Kennedy Center Foundation, art. FOURTH (filed Feb. 26, 2024).

[6] Bylaws of The Kennedy Center Foundation, art. II, § 1 (approved May 13, 2024); Articles of Incorporation of The Kennedy Center Foundation, art. FOURTH (filed Feb. 26, 2024).

[7] Articles of Incorporation of The Kennedy Center Foundation, arts. ELEVENTH, TWELFTH (filed Feb. 26, 2024); Bylaws of The Kennedy Center Foundation, art. II, § 3; art. X (approved May 13, 2024).

[8] Bylaws of The Kennedy Center Foundation, art. II, § 2 (approved May 13, 2024).

But as set out above, the Foundation's operative bylaws adopted in 2024 do not say that—nor can they. Either someone inserted that bylaw language without approval of the Center's Board, or the language was simply created for the filing to a federal court of appeals.

Without any required approval from its sole Voting Member, the Foundation now carries President Trump's name, has no directors of record, and operates under bylaws trustees have not seen. I demand a full explanation of how that happened and who made it happen.

Sincerely,

Sheldon Whitehouse
Ranking Member, Senate
Committee on Environment
and Public Works
Trustee, John F. Kennedy
Center for the Performing
Arts

cc: Matt Floca
Executive Director & Chief Operating Officer
John F. Kennedy Center for the Performing Arts

Board of Trustees
John F. Kennedy Center for the Performing Arts

[9] Appellants' Emergency Motion for a Stay Pending Appeal and an Immediate Administrative Stay at 2, *Beatty v. Trump*, No. 26-5224 (D.C. Cir. June 12, 2026).

# Appendix

Email attaching Foundation Bylaws and Articles of Incorporation (May 9, 2024) ....................1

Attachment: Bylaws of The Kennedy Center Foundation ....................2–8

Attachment: Certificate and Articles of Incorporation ....................9–13

Email Transmitting 5.13.2024 Board Meeting Materials (May 10, 2024) ....................14

Attachment: Kennedy Center Foundation Board Meeting Presentation ....................15–36

Attachment: Kennedy Center Foundation Board Meeting Reading Materials ....................37–48

Emails Transmitting 9.4.2024 Board Meeting Materials (Aug. 9 and 28, 2024) ....................49–50

Attachment: Kennedy Center Foundation Board Meeting Agenda ....................51

Attachment: Kennedy Center Foundation May Board Meeting Draft Minutes ....................52–53

Attachment: Kennedy Center Foundation Fall Board Meeting Presentation ....................54–73

**From:** [redacted]
**Sent:** Thursday, May 9, 2024 4:58 PM
**To:** [redacted]
**Cc:** [redacted]
**Subject:** RE: State of the Center for Foundation
**Attachments:** Bylaws c3 sole member FINAL.docx; KCF - Filed DC Articles of Incorporation.pdf

Hi all:
Attaching the bylaws here (that folks will be approving) and the articles of incorporation (already filed) to include in the read-ahead materials going out.

Thank you,
[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# BYLAWS
# OF
# THE KENNEDY CENTER FOUNDATION

## ARTICLE I
## NAME, PURPOSE, AND MISSION

The name of this non-profit corporation is The Kennedy Center Foundation. It is hereinafter referred to in these Bylaws as the Corporation.

As stated in the Articles of Incorporation, the operation of the Corporation is exclusively for charitable and educational purposes.

The mission of the Corporation is to sustain and advance the John F. Kennedy Center for the Performing Arts' unique stature as the nation's cultural center.

## ARTICLE II
## MEMBERS

1. Members. The membership of the Corporation shall consist of the Voting Member, which shall be John F. Kennedy Center for the Performing Arts (the "Kennedy Center" or "Center"), a Section 501(c)(3) corporation, with such powers as set forth in the Articles of Incorporation and these Bylaws. Any act of the Voting Member is considered a vote of the majority of members of the Kennedy Center Board of Trustees.

2. Voting Rights. The Voting Member shall have the right to vote on such matters as set out in these Bylaws:

a. Disposition of all or substantially all of the assets of the Corporation;

b. Any merger of this Corporation;

c. Any dissolution of this Corporation;

d. Any charitable disbursement by this Corporation to or in excess of an amount to be determined from time to time by the Voting Member;

e. Any gift acceptance policy of the Corporation;

f. Any other major actions proposed by the Board of Directors such as but not limited to hiring and firing executive-level employees of the corporation, grants, terms of loans or other debt instruments, leasing, selling or purchasing real estate, or other significant transactions, as solely determined by the Voting Member; and

g. Any other matter that may be presented to the Voting Member pursuant to the Corporation's Articles of Incorporation, Bylaws, or action of the Board of Directors, or by operation of law.

3. <u>Additional Powers</u>. The Voting Member shall have the following additional powers:

a. Prior to the adoption of the Board of Directors, the initial Bylaws of the Corporation are subject to the prior written approval by the Voting Member;

b. Appoint Directors to the Board of Directors;

c. Remove Directors from the Board of Directors with or without cause;

d. Provide prior written approval of any amendments, changes, or repeal of provisions to these Bylaws; and

e. All amendments, changes, or repeals of provisions to the Articles of Incorporation of this Corporation;

4. <u>Non-liability of Voting Member</u>. The Voting Member shall not be liable for the debts, liabilities, or obligations of the Corporation.

5. <u>Inspection Rights</u>.

a. <u>Articles and Bylaws</u>. The Corporation shall keep at its principal office in the District of Columbia current copies of its Articles of Incorporation and Bylaws, which shall be open to inspection by the Voting Member at all reasonable times.

b. <u>Accounting Records; Minutes</u>. On written request, the Voting Member or its designee, may inspect and copy the accounting books and records of the Corporation and the minutes of the proceedings of the Board of Directors, or any Committee for any purpose reasonably related to the Voting Member's membership interests.

6. <u>Voting Member Meetings</u>.

a. <u>Annual meeting</u>. There shall be one annual meeting of the Voting Member of the Corporation, to be held at a time and place to be determined by the Voting Member, to conduct of such business as may properly come before the meeting.

b. <u>Special meetings</u>. A special meeting of the Voting Member shall be held upon the call of the Board of Directors or the Voting Member, at the time and place stated in the call. If no place is stated, the meeting shall be held at the Corporation's principal office.

c. <u>Form of Meeting</u>. An annual or regular meeting of the Voting Member may be held by means of the Internet or other electronic communications technology provided any

natural persons attending the meeting have the opportunity to read or hear the proceedings substantially concurrently with their occurrence. At such meeting, the Voting Member may also vote on any matter as so elected by the Voting Member.

7. Successor Member. If the Voting Member is no longer able to serve as the Voting Member, the Voting Member may appoint a successor Voting Member.

## ARTICLE III
## BOARD OF DIRECTORS

1. General Powers. The property, affairs, and business of the Corporation shall be managed and controlled by its Board of Directors. The Board of Directors may by general resolution delegate to officers of the Corporation and to committees such powers as provided for in these Bylaws.

2. Number. The number of Directors shall be three (3), or such other number as determined from time to time by the Voting Member, so long as that number is not less than three (3). The maximum number of Directors at any given time shall be twenty-five (25), or such other number as determined from time to time by the Voting Member.

3. Terms. Directors shall be appointed for four (4) year terms or until their successors are appointed. Directors may succeed themselves in office. No Director shall serve more than two (2) successive Terms. However, a prior Director may return after an absence of two years for a maximum of one (1) additional term of four (4) years.

4. Resignation. Any Director may resign at any time by giving written notice to the President. Such resignation shall take effect at the time specified therein, or, if no time is specified, at the time of acceptance thereof as determined by the President or Board of Directors.

5. Vacancies. Vacancies among the Directors, whether caused by resignation, death, removal, or expiration of a term, shall be filled by the Voting Member.

6. Removal. The Voting Member may remove any number of Directors from the Board of Directors at any time with or without cause.

6. Board of Director Meetings.

(a) The Board of Directors shall provide by resolution the time and place, whether within or outside the District of Columbia, for the holding of an annual meeting of the Board of Directors and at least one regular meeting of the Board of Directors.

(b) Special meetings of the Board of Directors may be called by the President, or by a majority of the voting Directors then in office, who may fix any place, whether within or without the District of Columbia, as the place for holding any special meeting.

7. Notice. Notice of any special meeting of the Board of Directors shall be given at least one (1) day previous thereto by written notice delivered personally, electronic methods or mail delivered to each director at his physical or electronic address as shown in the records of the Corporation. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail so addressed, with postage thereon prepaid. If notice be given by electronic methods, such notice shall be deemed to be delivered when the notice is sent to an address or number previously designated by the recipient. The attendance of a Director at a meeting shall constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting, unless specifically required by law or by these Bylaws.

8. Quorum. The presence in person of a majority of the Board of Directors shall constitute a quorum for the transaction of business at any meeting of the Board of Directors; but if less than a majority of the Directors are present in person at said meeting, a majority of the Directors present may adjourn the meeting from time to time without further notice.

9. Manner of Acting. Unless otherwise provided herein, the act of a majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, unless the act of a greater number is required by law or by these Bylaws. Directors may attend a meeting by telephonic, electronic or videoconferencing facilities, or similar equipment by means of which all persons participating in the meeting can hear each other.

10. Informal Action. Any action required by law to be taken at a meeting of Directors, or any action that may be taken at a meeting of Directors, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the Directors.

11. Compensation. Directors shall not receive any stated salaries for their services as such, but by resolution of the Board of Directors a fixed sum and expenses of attendance may be allowed for attendance at each regular or special meeting of the Board of Directors; however, nothing herein contained shall be construed to preclude any Director from serving the Corporation in any other capacity and receiving reasonable compensation therefor.

## ARTICLE IV
## OFFICERS

1. Officers. The officers of the Corporation shall include at least a Chair and Secretary and such other officers as may be elected or appointed by the Board of Directors as noted in Section 2 below. The individuals serving as Chair and Secretary shall be well qualified by experience and training to perform the duties of their respective offices. The Chair and Secretary shall be members of the Board of Directors and shall be elected by the Board of Directors at the annual meeting of the Board of Directors.

2. Other Officers and Executive Committee. A Vice Chair(s), Treasurer, President, General Counsel, and Executive Director shall be elected by the Board of Directors at the annual

meeting of the Board of Directors, subject to the balance of terms of this Section 2. The Vice Chair(s) shall be a member of the Board of Directors. The President of the Kennedy Center shall occupy the President position of the Corporation. The General Counsel of the Kennedy Center shall occupy the General Counsel officer position on the Board of Directors. The Chief Financial Officer of the Kennedy Center may occupy the Treasurer officer position on the Board of Directors. The Executive Director of the Corporation shall be the Senior Vice President of Development of the Kennedy Center.

3. Selection. Any officers of the Corporation shall be elected or appointed annually at a meeting of the Board of Directors. If the election or appointment of these officers shall not be held at such meeting, such election or appointment shall be held as soon thereafter as convenient. New offices may be created and filled at any meeting of the Board of Directors. Each officer shall hold office until his successor shall have been duly elected and shall have qualified.

4. Removal. Any officer, except the President, elected or appointed by the Board of Directors may be removed by the Board of Directors whenever in its judgment the best interests of the Corporation would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the officer so removed. The President shall be removed only upon a two-thirds vote of the Directors.

5. Vacancy. A vacancy in any office because of death, resignation, removal, disqualification, or otherwise, may be filled by the Board of Directors for the unexpired portion of the term.

6. President. The President shall be the Chief Executive Officer of the Corporation and shall exercise general supervision over the affairs of the Corporation, its officers, and personnel, consistent with policies established by the Board of Directors. The President may sign any deeds, mortgages, bonds, contracts, or other instruments, except in cases where the signing and execution thereof shall be expressly delegated by the Board of Directors by statute to some other officer or agent of the Corporation; and in general, shall perform all duties incident to the office of the President and such other duties as may be prescribed by the Board of Directors. The President may authorize and approve expenditures and take such other steps they shall deem necessary to advance the purposes of the Corporation, provided such steps do not exceed the scope of authority granted by these Bylaws.

7. Secretary and Treasurer. The Secretary and Treasurer shall have charge and custody of and be responsible for all funds and securities of the Corporation; receive and give receipts for monies due and payable to the Corporation from any source whatsoever and deposit all such monies in the name of the Corporation in such banks, trust companies, or other depositories; keep the minutes of the meetings of the Board of Directors; oversee the keeping, preparation, and filing of all other records required by law or by the policies of the Board of Directors; be custodian of the Corporation records; keep a register of the post office address of each Director which shall be furnished to the Secretary and Treasurer by such Director; and in general perform all duties incident to the office of Secretary and Treasurer and such other duties as from time to time may be assigned by the President or by the Board of Directors.

## ARTICLE V
## COMMITTEES

1. Authority. The Board of Directors, by resolution adopted by a majority of the Directors in office, may designate and appoint one or more committees.

2. Term. Each member of a committee shall continue until replaced, unless the committee shall be sooner terminated, or unless such member be removed from such committee, or unless such member shall cease to qualify as a member thereof.

3. Chairperson. One member of each committee shall be appointed Chairperson by the Board of Directors.

4. Vacancies. Vacancies in the membership of any committee may be filled by appointments made in the same manner as provided in the case of the original appointments.

5. Manner of Acting. Unless otherwise provided in the resolution of the Board of Directors designating a committee, a majority of the whole committee shall constitute a quorum and the act of a majority of the members present at a meeting at which a quorum is present shall be the act of the committee. Each committee may adopt rules for its own governance not inconsistent with these Bylaws or with rules adopted by the Board of Directors.

6. Executive Committee. The Board of Directors Executive Committee shall include all officers and the Executive Director of the Corporation.

## ARTICLE VI
## CONTRACTS, CHECKS, DEPOSITS AND FUNDS

1. Contracts. The Board of Directors or President may authorize any officer or officers, agent, or agents of the Corporation in addition to the officers so authorized by these Bylaws, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Corporation and such authority may be general or confined to specific instances.

2. Checks. All checks, drafts, or orders for the payment of money, notes, or other evidences of indebtedness issued in the name of the Corporation, shall be signed by such officer or officers, agent, or agents of the Corporation and in such manner as shall from time to time be determined by resolution of the Board of Directors. In the absence of such determination by the Board of Directors, such instruments shall be signed by the President of the Corporation.

3. Deposits. All funds of the Corporation shall be deposited from time to time to the credit of the Corporation in such banks, trust companies, or other depositories as the President may select.

4. Funds. The Board of Directors may accept on behalf of the Corporation any contribution, gift, bequest, or devise for the general purposes or for any special purpose of the Corporation.

**ARTICLE VII**
**BOOKS AND RECORDS**

The Corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its Board of Directors and committees having any of the authority of the Board of Directors.

**ARTICLE VIII**
**FISCAL YEAR**

The fiscal year of the Corporation shall begin on the first day of October and end on the last day of September.

**ARTICLE IX**
**INDEMNIFICATION**

Any present or former Director, officer, employee, or agent of the Corporation, or other such persons so designated in the discretion of the Board of Directors, or the legal representative of such person, shall be indemnified (including advances against expenses) by the Corporation against all judgments, fines, settlements, and other reasonable costs, expenses, and counsel fees paid or incurred in connection with any action, suit, or proceeding to which any such person or his legal representative may be made a party by reason of his being or having been such a Director, officer, employee, or agent, to the extent authorized by law. No indemnification or advance against expenses shall be approved by the Board of Directors or paid by the Corporation until after receipt from legal counsel of an opinion concerning the authority of the Corporation to provide the proposed indemnification or advance.

**ARTICLE X**
**AMENDMENTS TO BYLAWS**

These Bylaws may be altered, amended, or repealed and new Bylaws may be adopted by a majority of the Directors present at any regular meeting or at any special meeting, if at least seven days' written notice is given of intention to alter, amend, or repeal, or to adopt new Bylaws at such meeting and if such action is thereafter approved by written consent by the Voting Member. Any change to the Bylaws that is not approved by prior written consent by the Voting Member shall be considered invalid.