# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOYCE BEATTY,<br><br>*Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | No. 25 Civ. 4480 (CRC) |

**<u>PLAINTIFF'S PROPOSED SUR-REPLY</u>**

This sur-reply responds to five new points in Defendants' reply ("Reply," ECF No. 115). These new points are not exhaustive of the inaccuracies and errors in the reply. But they are representative of the flaws in Defendants' arguments, and each demonstrates why the Court should deny Defendants' motion. At minimum, these new points underscore that Defendant Matthew Floca's live testimony is critical to resolving the pending motion.

*First*, the reply relies on a November 6 declaration from Floca and an October 30 e-mail that postdate Plaintiff's opposition. ECF Nos. 115-1, 115-2. In those new materials, Floca states that the Center is planning to reopen, and that, if the Court maintains the preliminary injunction, "the Center is planning a phased approach to occupancy in the main building." ECF No. 115-1 ¶ 8. To Plaintiff's knowledge, this is the first time Floca has mentioned ongoing plans for phased occupancy. According to Floca, the Center is also "coordinating the procurement of a contractor who will install specialized overhead shoring above exterior doors and pathways as part of the larger soffit replacement project and capital improvement plan." *Id.* ¶ 10. These representations undermine Defendants' repeated assertions that the building cannot be safely occupied.

*Second*, in their reply, Defendants assert that the $17.5 million funneled through the

Foundation is unrestricted, citing Floca's testimony. Reply at 18. But Floca's testimony does not align with text messages—which Defendants disclosed only after the deposition—demonstrating Trump (or someone else) is trying to claw the funds back. ECF No. 112-9 at 47-48, 54. More broadly, Defendants' reply fails to provide a clear answer about the Center's current finances, which the Court has stressed is critical to the equities.

The Court should not permit this evasiveness. It should, at minimum, hear Floca's testimony regarding the Center's finances. To the extent the Court modifies the preliminary injunction because it finds Defendants drove the Center into insolvency, it is imperative for the Court to appoint "an independent monitor or receiver." Pl.'s Opp'n at 44, ECF No. 112; *see* Restatement (Third) of Trusts § 95 cmt. c (court may appoint "receiver or other special fiduciary").

*Third*, Defendants' reply offers a new reading of the August 20 JLL plan. Reply at 5-8. Thus, for example, Defendants quibble over whether the JLL plan showed a $41 million difference in cost for phased renovation or a $100 million difference. Reply at 6. But when Defendants accidentally cited the August 20 JLL report in their motion, *they* stated that JLL "estimate[d] that a phased closure of parts of the building *would cost $41 million more than a temporary closure*." Defs.' Mot. at 32, ECF No. 88-1 (emphasis added). Regardless, even under Defendants' preferred reading of the August 20 JLL plan, they agree JLL offered a *significantly lower cost estimate than Delta*—on their account, *$200 million less* than Delta's sky-high projection.[1]

[1] Defendants mischaracterize the differences in August 20 JLL plan and Delta's report. Delta did *not* estimate the costs of "an all-in improvement" that would meet *all* the Center's needs. Reply at 6. Instead, Delta *also* excluded "approximately $100 million in projects" in either a phased or closed approach. Pl.'s Opp'n at 12 n.5. As her opposition makes clear, moreover, Plaintiff did not misunderstand that the JLL phased renovation contained "an adjusted scope of work." *Id.* Defendants assert that Delta's analysis was "founded directly on information from JLL." Reply at 7. Not for phased renovation. Delta reported (incorrectly) that no comparable schedule had been prepared by JLL for that alternative and built its own. Delta Rep. ¶ 156, ECF No. 88-3; *see also* ECF No. 115-8 at 199.

At bottom, Defendants cannot explain why Floca withheld the updated JLL plan from Delta and the Board. Defendants did not disclose the August 20 JLL plan until after depositions. Floca incorrectly stated in testimony that no plan regarding phased renovations existed in JLL's Comprehensive Project Development Plan. ECF No. 112-7 at 8-9. In the end, this much is clear: The Board was repeatedly told phased work would cost "twice as much," ECF No. 68-3 at 9; ECF No. 88-9 at 8 (Floca stating the phased approach would "double the cost" at the September meeting *after* receiving the August 20 JLL report), while JLL said otherwise.

*Fourth*, Defendants do not contest that Floca (at minimum) influenced the content of Delta's nominally independent presentation. They instead attempt to recast Floca's changes as "minor." Reply at 19 n.10. That reframing is not accurate. Indeed, "between August 7 and 10, Delta's conclusions changed considerably." Pl.'s Opp'n at 34 n.17. Plaintiff had no opportunity to inquire from Floca about management-driven changes to Delta's presentation in depositions because Defendants *again* did not disclose these documents until after depositions.

*Fifth*, Defendants also now attempt to recast the appropriations deadline as the date after which the Center can no longer "contract for" new work—and suggest, as a result, that they never made a basic error regarding the date by which the congressional appropriations must be spent. Reply at 9. But that is incorrect. Here's what Defendants told the Court in their initial motion: "Congress adjudged that funding for the Center's renovation *be used prior* to September 30, 2029." Defs.' Mot. at 43 (emphasis added). This glaring error on a basic aspect of appropriations law—on which the Board apparently received no legal advice—is problematic on its own. But it is emblematic of the entire flawed process, which was transparently designed to rubber-stamp a foreordained result.

Dated: November 9, 2026

Respectfully submitted,

/s/ Nathaniel A.G. Zelinsky
NATHANIEL A.G. ZELINSKY
(D.C. Bar No. 1724093)
KYLE R. FREENY
(D.C. Bar No. 1684764)
ALEXANDER KRISTOFCAK
(D.C. Bar No. 90045623)
ROSA L. BAUM
(D.C. Bar No. 90032839)
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org

NORMAN EISEN
(D.C. Bar No. 435051)
STEPHEN JONAS
(D.C. Bar No. 90037069)
DAVID W. OGDEN
(D.C. Bar No. 375951)
DEMOCRACY DEFENDERS ACTION
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
202-594-9958
norman@democracydefenders.org

*Attorneys for Plaintiff Joyce Beatty*