**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOYCE BEATTY,

*Plaintiff*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25-4480 (CRC)

**DEFENDANTS' POSITION STATEMENT**

Defendants submit this statement in compliance with the Court's November 4, 2026 Minute Order directing the parties "to file" a "joint submission specifically identifying the disputed objections and privilege assertions by the government that require the Court's intervention, and proposing procedures for resolving those disputed issues." Min. Order (Nov. 4, 2026).[1]

The parties have agreed that the remaining privilege assertions that require the Court's attention are limited to those identified in Defendants' privilege log, ECF No. 111-1, and those identified in the attachments to Plaintiff's Supplemental Memorandum Regarding Motion to Compel, ECF No. 102, *see* ECF No. 102-1; ECF No. 102-2. Defendants submit that no further briefing is necessary to resolve Plaintiff's pending Motion to Compel. *See* ECF No. 96. Defendants further submit, for the reasons explained in the response to that Motion, *see* ECF No. 106, that the issues can be resolved on the record before the Court, including this submission, and

[1] Before filing, Defendants shared their position statement with Plaintiff, who filed her position statement last evening. *See* ECF No. 119. Plaintiff asked that Defendants include the following: "Plaintiff did not receive Defendants' written statement until 5:37pm on Friday evening, and has not had the opportunity to digest it or respond. Plaintiff reserves her right to respond and provide her position to the Court."

that no further review (including *in camera* review) is necessary or required. Defendants do not intend to submit a new privilege log and rest on the privilege log that Plaintiff previously submitted to the Court (ECF No. 111-1) as their final version.

In addition, Defendants dispute Plaintiff's contention that the Court need resolve any dispute over privilege to grant Defendants' motion for dissolution of the preliminary injunction.[2] As noted in Defendants' reply in support of its motion to lift the preliminary injunction, *see* ECF No. 115 at 22 n.10, the only argument involving withheld communications Plaintiff offers in her opposition to that motion relates to Secretary Lutnick's purported influence on Delta, and that argument is wholly refuted by the record before the Court without any need to resort to addressing the withheld communications. Plaintiff has waived any other argument with respect to privileged communications for purposes of the motion to lift the preliminary injunction, including with respect to any communications directly with the President or any other of his close advisors.

Defendants' positions are informed by two main considerations. First, if the Court should disagree with Defendants and conclude, along the lines it suggested at the status conference, that certain types of discussions with the President—such as those that concern design details—are not privileged, then that would not move the needle with respect to any issue before the Court. Any conversation that would be material to the issues before the Court—policy decisions about the

[2] Although the issue is not squarely before the Court at present and Defendants reserve all rights to object if and when it becomes so, Defendants further dispute Plaintiff's suggestion (ECF No. 119 at 2) that she would be entitled to any additional discovery in connection with resolving Defendants' motion for summary judgment. Defendants also renew their objection to Plaintiff's request that Matt Floca testify at the November 19 hearing. *See* ECF No. 114 at 3-4. Not only are the issues in this case capable of being resolved solely on the record presented to the Board at its August and September 2026 meetings, but they can certainly be resolved on the voluminous discovery record Plaintiff has already obtained (including the full scope of depositions and interrogatory responses they requested in the parties' 26(f) report). *See* ECF No. 63 at 14. Plaintiff has subjected the Center and its management to extraordinary burdens through this litigation. Enough is enough.

decision to close the Center for a two-year period for renovation or to undertake an alternate path and why—would be subject to the presidential communications privilege. Second, to the extent any document or conversation contains information protected by the presidential communications privilege, the entirety of that communication is protected from disclosure, even if it also includes non-privileged material. *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997) ("The presidential communications privilege applies to documents in their entirety."). Defendants submit that both of these points militate against any further need for review and that the Court can decide any issues on the record before it.

**1.** Subject to the above, in order to aid the Court in consideration of Defendants' privilege assertions with respect to questions asked at Mr. Floca's deposition or the Center's 30(b)(6), Defendants offer the following additional information regarding questions related to Secretary Lutnick. As noted above, because Plaintiff has waived any argument as to the motion to dissolve the preliminary injunction as to privileged communications other than those related to Secretary Lutnick's purported influence on Delta, these are the only questions arguably relevant to Plaintiff's arguments in opposition to Defendants' motion.

- Plaintiff asked about the contents of a conversation Mr. Floca had with Secretary Lutnick upon Secretary Lutnick being "brought in" to help at the Center. Tr. of Dep. of Matthew Floca ("Floca Tr.") at 34:2–8, ECF No. 102-1.
    - The deposition transcript provides sufficient detail to establish the number of conversations (here, one) between Mr. Floca and Secretary Lutnick responsive to Plaintiff's question at the deposition.
- Plaintiff asked about any discussion between Mr. Floca and Secretary Lutnick of the Center's "dire fiscal position" in September 2026. Floca Tr. at 147:3–7.
    - Mr. Floca recalls engaging in conversation with Secretary Lutnick concerning the state of the Center's finances in September 2026.
- In the Center's Rule 30(b)(6) deposition, Plaintiff asked Mr. Floca whether he discussed "with Secretary Lutnick the prospect of the Center's receipt of donations from the foundation as a source of funds for Center operations." Tr. of R. 30(b)(6) Dep. of Matthew Floca ("Floca 30(b)(6) Tr.") at 96:13–15, ECF No. 102-2.

  - Mr. Floca estimates that, between May and September 2026, he engaged in approximately 2 conversations with Secretary Lutnick about the relationship between the Center and the Foundation.

- Plaintiff asked whether Mr. Floca had any discussions with Secretary Lutnick about the President's public statements about reconstruction and renovation of the Center. *See* Floca 30(b)(6) Tr. at 216:8–14.
  - Mr. Floca avers that no such conversations took place.

- Plaintiff asked whether Mr. Floca understood that Secretary Lutnick's "encouragement to" move as quickly as possible in conducting analysis for the Board "was driven at all by President Trump's stated preference that the construction be completed during" the President's term. Floca 30(b)(6) Tr. at 235:6–10.
  - Defendants object that answering whether such conversations discussing that fact occurred would, as the question is phrased, disclose the content of such conversations. Notwithstanding that objection, Mr. Floca avers that he understood the urgency conveyed by Secretary Lutnick to be driven by the harm to the Center caused by continued delay in reaching decisions about the building.

**2.** With respect to deposition questions related to potential communications with President Trump, Defendants are unable to provide more information while preserving the confidentiality guaranteed by the presidential communications privilege. Given how the relevant questions are framed, providing any more information would reveal the content of any responsive communications in derogation of the President's "ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Loving v. Dep't of Def.,* 550 F.3d 32, 37 (D.C. Cir. 2008). To be clear, this does not mean that responsive communications exist with respect to each question. But to preserve confidentiality with respect to communications that are responsive, Defendants are unable to provide any additional information; to confirm the absence of responsive communications with respect to some questions would be to confirm the presence of responsive communications with respect to others. For the Court's reference, the relevant questions are listed below.

- Plaintiff asked whether Mr. Floca has had "conversations with the President about the timeline for construction." Floca Tr. at 162:14–15.

- Plaintiff asked about a meeting between Mr. Floca, Darin Buchalter, and Secretary Lutnick that occurred in August 2026. *See* Floca Tr. at 194:8–11. Plaintiff then asked whether "Secretary Lutnick communicate[d] any input from Chairman Trump" at that meeting. *Id.* at 195:11–12.
- Plaintiff asked whether Mr. Floca spoke with President Trump about the Center's cash position at any point in 2026. *See* Floca Tr. at 273:6–8.
- Plaintiff asked about whether Mr. Floca spoke with President Trump about "fiscal harms caused by renaming." Floca Tr. at 274:20.
- Plaintiff asked whether Mr. Floca spoke with President Trump "about the decline in patrons, donations, and artists this year." Floca Tr. at 275:3–4.
- Plaintiff asked whether Mr. Floca "talk[ed] to Chairman Trump about how to proceed following the Court's May 29th" preliminary injunction. Floca Tr. at 275:6–8.
- Plaintiff asked whether President Trump instructed or provided input to Mr. Floca following the Court's May 29th preliminary injunction. *See* Floca Tr. at 275:10–12.
- Plaintiff asked whether President Trump instructed Mr. Floca "regarding the limitations on the funds from the Foundation." Floca Tr. at 275:14–15.
- Plaintiff asked whether "anyone on Trump's behalf instruct[ed]" Mr. Floca "regarding the limitations on the funds from the Foundation." Floca Tr. at 275:17–19.
- Plaintiff asked whether Mr. Floca ever spoke with President Trump about whether he would "support renovation if he was not recognized in some way by the Kennedy Center." Floca Tr. at 276:1–2.
- Plaintiff asked whether Mr. Floca ever talked to President Trump about "whether the Kennedy Center would potentially be demolished." Floca Tr. at 276:5–6.
- Plaintiff asked whether Mr. Floca ever spoke with President Trump about the "September 16th" decision "to shut down the Kennedy Center main building on an emergency basis." Floca Tr. at 276:9–11.
- Plaintiff asked whether President Trump had ever said to anyone at the Center that the President would decline to provide "fundamental oversight" of the renovation of the Center. Floca 30(b)(6) Tr. at 205:16–17, 206:16–17.
- Plaintiff asked whether anyone at the Center has had any "discussions with President Trump about his public statement that the reconstruction and renovation of the Kennedy Center will not take place unless certain things happen in the legal proceedings around renaming." Floca 30(b)(6) Tr. at 215:5–10.
- Plaintiff asked whether President Trump "provide[d] any input that was used in the Delta Consulting Group's analysis for the board's August 13th meeting." Floca 30(b)(6) Tr. at 297:22–298:2.

- Plaintiff asked whether anyone at the Center spoke with "Chairman Trump regarding the Center's cash position." Floca 30(b)(6) Tr. at 299:12–13.
- Plaintiff asked whether anyone at the Center spoke with "Chairman Trump regarding the drop in revenue following renaming." Floca 30(b)(6) Tr. at 299:17–18.
- Plaintiff, upon an attorney-client privilege objection from counsel, asked whether "anyone other than the general counsel's office" received "input from the chairman regarding how to proceed following the court's preliminary injunction." Floca 30(b)(6) Tr. at 300:13–16.
- Plaintiff asked whether President Trump "instruct[ed] anyone at the Center on steps to take following the May 29th preliminary injunction." Floca 30(b)(6) Tr. at 300:22–301:2.
- Plaintiff asked whether President Trump provided "information or input about whether he would support renovation if he was not recognized in some way by the Kennedy Center." Floca 30(b)(6) Tr. at 301:7–9.
- Plaintiff asked whether President Trump spoke with "anyone about the September 16th decision to shut down the Kennedy Center's main building." Floca 30(b)(6) Tr. at 301:12–14.

Dated: November 13, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

*/s/ Brantley T. Mayers*
BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 890-9874
brantley.t.mayers@usdoj.gov

STEPHEN M. ELLIOTT
Assistant Branch Director

CHRISTOPHER M. LYNCH
Chief Litigation Counsel

WILLIAM S. JANKOWSKI
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch

*Counsel for Defendants*